No. 21-2835

*In the United States Court of Appeals for the Third Circuit*

===============================

BRYAN DAVID RANGE,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL UNITED STATES, ET AL.,

Defendants-Appellees.

===============================

Appeal from a Judgment of the United States District Court
for the Eastern District of Pennsylvania (Pratter, J.)
(Dist. Ct. No. 5:20-CV-03488-GEKP)

———————————————

APPELLANT'S OPENING BRIEF
AND JOINT APPENDIX VOL. I, pp. Appx001-Appx014

———————————————

Michael P. Gottlieb
  PA Bar No. 36678
VANGROSSI & RECCHUITI
319 Swede Street
Norristown, PA 19401
610.279.4200
Mikem1a1@aol.com

December 20, 2021                Counsel for Appellant

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      1.    The regulatory scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      2.    Bryan Range's Misdemeanor Conviction . . . . . . . . . . . . . . . 5

      3.    Bryan Range's Personal Background . . . . . . . . . . . . . . . . . 7

      4.    Section 922(g)(1)'s Impact on Bryan Range . . . . . . . . . . . . 8

      5.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.    Bryan Range is entitled to relief from Section 922(g)(1)'s
    enforcement under the two-step framework for evaluating
    Second Amendment claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Bryan Range's misdemeanor was not a "serious crime" . . 17

1.    The legislature did not believe that Range's offense was "serious" . . . . . . . . . . . . . . . . . . . . . . . . . 18

2.    Range's misdemeanor was nonviolent . . . . . . . . . . . 21

3.    Range's misdemeanor was not dangerous . . . . . . . . 22

4.    The prosecution and the court agreed that Range should receive a light sentence . . . . . . . . . . . . . . . . . 22

5.    There is no clear cross-jurisdictional consensus as to seriousness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.    The government cannot carry its step two burden . . . . . . . 26

II.    Bryan Range is entitled to relief from Section 922(g)(1)'s enforcement because he is not dangerous . . . . . . . . . . . . . . . . . . 28

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Required Certifications

Joint Appendix, Volume I (Pages Appx001-014)

# TABLE OF AUTHORITIES

Cases

Binderup v. Att'y Gen.,
    836 F.3d 336 (3d Cir. 2016) (en banc). . 2, 10, 11, 13, 14, 16-22, 26-29

Danforth v. Minnesota,
    552 U.S. 264 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Folajtar v. Att'y Gen.,
    980 F.3d 897 (3d Cir. 2020) . . . . . . . . . . . . . . 16, 18-20, 26, 28, 29

Gayle v. Warden Monmouth Cty. Corr. Inst.,
    12 F.4th 321 (3d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Holloway v. Att'y Gen.,
    948 F.3d 164 (3d Cir. 2020). . . . . . . . . . . . . . 11, 16-19, 21, 22, 26

Kanter v. Barr,
    919 F.3d 437 (7th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Irving,
    316 F. Supp. 3d 879 (E.D. Pa. 2018). . . . . . . . . . . . . . . . . . . . . . 21

United States v. Marzzarella,
    614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


Statutes and Rules

18 Pa. C.S. § 1104(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 Pa. C.S. § 6105(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

18 U.S.C. § 924(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

27 C.F.R. § 478.124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

305 Ill. Comp. Stat. Ann. § 5/8A-6(a)(3) . . . . . . . . . . . . . . . . . . . . . . 24

62 Pa. C.S. § 481(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21, 25

Ala. Code § 13A-9-150(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Alaska Stat. § 47.25.985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ariz. Rev. Stat. § 46-215(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ark. Code Ann. § 5-36-202(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cal. Wel. & Inst. Code § 10980(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Colo. Rev. Stat. § 18-4-401(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conn. Gen. Stat. § 17b-97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conn. Gen. Stat. § 53a-122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.C. Code § 4-218.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Del. Code Ann. tit. 11, § 841(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

Del. Code Ann. tit. 11, § 843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fla. Stat. § 414.39(5)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ga. Code Ann. § 49-4-15(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Haw. Rev. Stat. § 346-34(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Idaho Code § 18-2408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Idaho Code § 56-227(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ind. Code § 35-43-5-7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Iowa Code § 714.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Iowa Code § 714.8(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kan. Stat. Ann. § 21-5801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kan. Stat. Ann. § 39-720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ky. Rev. Stat. Ann. § 205.8463(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

La. Rev. Stat. Ann. § 14:67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

La. Rev. Stat. Ann. § 46:114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mass. Gen. Laws ch.18, § 5b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Md. Code Ann., Crim. Law § 8-504(c) . . . . . . . . . . . . . . . . . . . . . . . . 25

Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E) . . . . . . . . . . . . . . . . . . . . . 25

Me. Rev. Stat. Ann. tit. 22, § 4315 . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Minn. Stat. § 256.984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mo. Rev. Stat. § 205.967. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mo. Rev. Stat. § 570.030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mont. Code § 45-6-301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mont. Code § 53-2-107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.C. Gen. Stat. § 108A-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

N.D. Cent. Code § 12.1-23-02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.D. Cent. Code § 12.1-23-05. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.H. Rev. Stat. Ann. § 167:17-b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

N.H. Rev. Stat. Ann. § 167:17-c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

N.J. Stat. Ann. § 2C:20-2(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.J. Stat. Ann. § 2C:20-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.J. Stat. Ann. § 2C:43-6(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.M. Stat. Ann. § 30-40-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

N.Y. Penal Law § 158.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Nev. Rev. Stat. Ann. § 422.410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ohio Rev. Code § 2921.13(A)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ohio Rev. Code § 2921.13(F)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Okla. Stat. Ann. tit. 56, § 185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Or. Rev. Stat. Ann. § 161.705(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Or. Rev. Stat. Ann. § 411.630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Or. Rev. Stat. Ann. § 411.990(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R.I. Gen. Laws § 40-6-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

S.C. Code Ann. § 16-13-430(C)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

S.D. Codified Laws § 22-29-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

S.D. Codified Laws § 22-29-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tenn. Code Ann. § 71-5-314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tex. Penal Code § 31.03(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

Utah Code Ann. § 76-8-1206(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Va. Code Ann. § 18.2-95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Va. Code Ann. § 63.2-522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Vt. Stat. Ann. tit. 33, § 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Vt. Stat. Ann. tit. 33, § 143(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

W. Va. Code Ann. § 9-5-4(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Wash. Rev. Code Ann. § 74.08.331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Wis. Stat. § 946.92(3)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Wyo. Stat. Ann. § 42-2-112(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Other Authorities

2018 Pa. Act 125, § 5 (Oct. 24, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. Dept. of Justice, Firearms Transaction Record, ATF Form 4473,
    https://www.atf.gov/firearms/docs/4473-part-1-firearms-
    transaction-record-over-counter-atf-form-53009/download
    (last visited Dec. 9, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Victor Hugo, Les Misérables (Norman Denny trans.,
    Penguin Books 1982) (1862) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPELLANT'S OPENING BRIEF

INTRODUCTION

Twenty-six years ago, Bryan Range was convicted of concealing some of his meager income so that he could obtain additional food stamps for his family—a class one misdemeanor. Range served no jail time, and eventually made restitution. He remains a gainfully employed, peaceful and productive family man, with no meaningful criminal record.

Yet on account of this one ancient misdemeanor transgression, the government bars Range forever from possessing firearms.

Nearly every element this Court considers in evaluating the constitutionality of the so-called "felon in possession" ban indicates that its application against Range violates the Second Amendment. Range's offense was a misdemeanor. It was nonviolent. It was not dangerous. And the sentence imposed involved no prison term. But because it deemed that Pennsylvania's misdemeanor classification of Range's offense was uncommon among the other states, the district court declined to afford Range relief.

That decision was legally erroneous. It should be reversed.

JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, and 1346, as it involved a challenge to the constitutionality of federal law. On August 31, 2021, the district court issued an opinion and final order resolving all claims, denying Plaintiff's motion for summary judgment and granting Defendants' motion for summary judgment. Appx003-014. Plaintiff timely noticed the appeal on September 29, 2021. Appx001. This Court has jurisdiction over the matter under 28 U.S.C. § 1291.

STATEMENT OF THE ISSUES

1.      In 1995, Bryan Range was convicted of one misdemeanor count of making a false statement on a food-stamp application. In evaluating the cross-jurisdictional consensus as to the crime's seriousness for purposes of a Binderup challenge, should courts consider only similarly-defined offenses that focus on public assistance, or all offenses that broadly reach theft? [Preserved: Appx010-011, R.13-1 at 11-15].

2.     Range is barred from possessing firearms per 18 U.S.C. §
922(g)(1) on account of a misdemeanor offense which posed no danger
to anyone, did not involve force or the threat of force, and resulted in no
jail sentence. Would cross-jurisdictional consensus that this
misdemeanor ought to have been classified as a felony preclude Range's
Second Amendment challenge to the application of 18 U.S.C. §
922(g)(1)? [Preserved: Appx014; R.13-1 at 13; R.17 at 10-13.]

3.     Bryan Range remains dedicated to his family. He has never
ceased being a productive and peaceful member of his community. He
has not been convicted of any other misdemeanors, or felonies, nor has
he ever engaged in any violent or dangerous behavior. Considering the
lack of evidence that his possession of firearms poses any particular
risk, does application of 18 U.S.C. § 922(g)(1) to Bryan Range violate
his Second Amendment rights? [Preserved: Appx009; R.13-1 at 15-16.]

STATEMENT OF RELATED CASES

Plaintiff is unaware of any pending related cases.

STATEMENT OF THE CASE

1.        The Regulatory Scheme

Federal law prohibits the possession of firearms by any person
convicted of "a crime punishable by imprisonment for a term exceeding
one year." 18 U.S.C. § 922(g)(1).[1] Violation of this provision is a felony
criminal offense punishable by fine and imprisonment of up to ten
years. See Section 924(a)(2). Section 922(d)(1) prohibits anyone from
transferring firearms or ammunition to anyone whom the transferor
has reason to know was convicted of "a crime punishable by
imprisonment for a term exceeding one year." Violation of this
provision is a felony criminal offense punishable by fine and
imprisonment of up to ten years. See Section 924(a)(2).

All firearms purchasers within the United States who do not possess
a Federal Firearms License, meaning, virtually all ordinary civilian
consumers of firearms, must complete "Form 4473, Firearms
Transaction Record Part I – Over-The-Counter," administered under
Defendants' authority, in order to purchase a firearm. 27 C.F.R. §

---

[1]All further statutory references are to Title 18 of the United
States Code unless otherwise noted.

478.124. Question 21(c) on Form 4473 asks:

> Have you ever been convicted in any court, including a military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?

U.S. Dept. of Justice, Firearms Transaction Record, ATF Form 4473, https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (last visited Dec. 9, 2021). Defendants instruct dealers not to sell firearms to prospective purchasers who answer "yes" to this question. Appx173 ¶ 27.

### 2.    Bryan Range's Misdemeanor Conviction

In January 1994, Bryan Range was earning approximately $9-$9.50 an hour mowing lawns, taking home approximately $300 a week. Appx004, 170 ¶ 6. Range and his then-wife were struggling to raise three children—a three and a half year old and twin two-year olds—on this income. Appx004, 170 ¶ 7. Range's wife could not work as she was the children's primary caregiver. Appx170 ¶ 4. Range's then-wife prepared an application for public assistance, which she and Range both signed. The application did not fully report Range's income. Appx004, 170 ¶¶ 8-9. Range does not recall reviewing the application,

but he accepted responsibility for signing it and acknowledged that it was wrong for him to receive additional food stamps without having fully disclosed his income. Appx004, 005, 170 ¶ 10.

Accordingly, on August 8, 1995, Range pleaded guilty and was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing his income. Appx004, 169 ¶ 3; Appx170 ¶ 11. The offense was graded as a first degree misdemeanor. Appx005, 170 ¶ 4. Range was sentenced to three years' probation, which he successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which he paid. Appx005, 170 ¶ 11. In Pennsylvania, a first degree misdemeanor is punishable by up to five years' imprisonment, but carries no mandatory minimum sentence. 18 Pa. C.S. § 1104(1); Appx170 ¶ 5.

Range was not represented by counsel during his prosecution for violating 62 Pa. C.S. § 481(a). Appx172, ¶ 20; Appx049. When Range pleaded guilty, he understood only that he was pleading guilty to a misdemeanor, for which he would receive probation, be fined, and

6

ordered to make restitution. Appx046, ¶ 12. Range was not advised of the maximum potential sentence, and he was not advised that the plea would cause him to be barred from possessing firearms. Id.

3.    Bryan Range's Personal Background

Range has never engaged in violence, nor has he ever threatened anyone with violence. Appx045 ¶ 8; Appx171 ¶ 13. To the extent that Range has possessed firearms and other weapons, he has always been careful to keep and use these responsibly. Appx045 ¶ 8.

Range has been married for over 18 years to his second wife, with whom he has been together for over 25 years. Appx171 ¶ 16. He has lived at the same address for over 24 years. Appx171 ¶ 17. The couple has successfully raised five now-adult children. Appx171 ¶ 18. Range has been productively employed throughout his adult life. He is in his thirteenth year of employment as a machinist, prior to which he was self-employed as a painter for five years. Before then, was employed for ten years as a color technician for a printer. Appx172 ¶ 19.

"Since 1995, Mr. Range's only other 'criminal' history includes minor traffic and parking infractions, as well as a fishing offense in 2011. He testified that he thought he had renewed his fishing license, and that

after paying the fine, he renewed the license." Appx005; see Appx045 ¶ 7. Range has always strived to obey the law, including weapons laws, which he has never knowingly violated. Appx045, ¶ 8; Appx046, ¶ 14.

4.    Section 922(g)(1)'s Impact on Bryan Range

Not suspecting that he was barred from possessing firearms, Range attempted to purchase a firearm, and was rejected by the instant background check system. Appx005, Appx046 ¶ 13. Upon that rejection, a gun store employee reviewed with Range a list of prohibiting offenses, none of which Range committed. The employee then advised that the rejection was a typical error and that Range should just retry at a later time. Appx005-006, Appx046 ¶ 13.[2] Range's wife, however, gifted him a rifle; when that rifle was destroyed in a house fire, she gifted him another one. Appx006.[3] Years later, Range was again denied a firearms purchase, and was again led to believe the rejection was a mistake as he had not committed any of the  offenses that he was told were

---

[2]Pennsylvania forbids firearm possession by those who have committed specifically enumerated crimes. That list does not include Range's offense. See 18 Pa. C.S. § 6105(b).

[3]This was Range's second wife, not the woman to whom Range was married at the time of his conviction.

prohibiting. Appx006, 046 ¶ 13; Appx173 ¶ 25. Range researched the matter further and was surprised to learn that he was barred from possessing firearms on account of his public assistance conviction. He thus immediately disposed of the only firearm within his possession. Appx006, 173 ¶ 26. Range is not subject to any other firearms prohibition under Section 922(g). Appx169 ¶ 2; Section 922(g).

"Section 922(g)(1) is by far the most frequently applied of Section 922(g)'s firearms disqualifications, forming the basis for thousands of criminal prosecutions and tens of thousands of firearm-purchase denials each year." Appx173 ¶ 28. Range presently intends to purchase and possess firearms for self-defense within his own home and for hunting. Appx169 ¶ 1. He refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Section 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. Appx173 ¶ 29. Range suffers the on-going harm of being unable to obtain firearms, which he would, in fact, obtain but for Defendants' enforcement of Section 922(g)(1). Appx173 ¶ 30.

5.      Procedural history

Range brought suit against the Attorney General and the Acting

BATFE Director in the United States District Court for the Eastern

District of Pennsylvania, seeking declaratory and injunctive relief from

Section 922(g)(1)'s enforcement. Appx019-029. Range claimed that

Section 922(g)(1) is unconstitutional as applied against him on account

of his 1995 misdemeanor conviction. Range argued that Section

922(g)(1) violates his Second Amendment rights under this Court's test

announced in Binderup v. Att'y Gen., 836 F.3d 336 (3d Cir. 2016) (en

banc), R.13-1 at 7-15, but also preserved a claim that the law is

unconstitutional because, as maintained in Judge Hardiman's Binderup

concurrence, the Second Amendment simply does not allow the

disarmament of non-dangerous people, R.13-1 at 15-16.

Following discovery, the parties cross-moved for summary judgment.

On July 31, 2021, the district court granted the government's motion,

denied Range's motion, dismissed Range's complaint with prejudice,

and entered final judgment for the government. Appx003.

The district court applied the two-step framework set forth in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), as adopted for as-applied disarmament challenges by Judge Ambro's Binderup plurality. The District Court declared that it would "first consider whether Mr. Range's conduct is sufficiently 'serious' for Mr. Rage to lose his Second Amendment rights," and then, should it find "that the Second Amendment is implicated," it would "consider whether the Government has carried its [heightened scrutiny] burden." Appx009.

"The Government concedes that Mr. Range satisfies four out of the five factors" announced in Binderup and Holloway v. Att'y Gen., 948 F.3d 164 (3d Cir. 2020), for determining whether a predicate conviction passes step one. Appx009. "His conviction was classified as a misdemeanor, the criminal offense does not involve violence or attempted violence as an element, he was not sentenced to any jail time, and the crime involved no potential for physical harm to others." Appx009-010. But the parties disputed the fifth factor—cross-jurisdictional consensus as to the offense's seriousness.

"The parties agree[d] that between 39 and 41 jurisdictions in the United States would have classified Mr. Range's conduct as a felony." Appx010 (footnote omitted). "Range concede[d] that 39 jurisdictions would likely constitute a consensus, and the Court agree[d] . . . ." Id. "But Mr. Range argue[d] that the proper point of reference is not all 50 states, but rather only those states that criminalize the making of a false statement regarding food stamps specifically," which would reduce the number of disqualifying jurisdiction by 15. Id. The district court disagreed with this reduction, and held that the level of specificity at which jurisdictions legislated against the offense was irrelevant. Appx.010-011.

Having found that a consensus exists among American jurisdictions that Range's misdemeanor ought to have been a felony, the district court then held that this one factor suffices to determine that Range's offense was "serious," and thus, Range's challenge failed at step one. "While the Court acknowledges that this can be considered a matter of first impression, it concludes that the cross-jurisdictional consensus factor–like the subject law's classification as a felony, and the likelihood

of physical harm–is generally conclusive that a crime is serious." Appx.014 (citation omitted). Accordingly, the court did not reach step two. Id. n.4.

Range timely appealed. Appx.001.

## SUMMARY OF ARGUMENT

As the district court noted, "the compelling tug on the human heart such as Mr. Range appears to present has stood the test of time and modalities in literature." Appx.011 n.8 (citing Victor Hugo, Les Misérables (Norman Denny trans., Penguin Books 1982) (1862)). But prohibiting Range from possessing firearms on account of his misdemeanor conviction is not merely unjust and pointless. It is unconstitutional.

Range's predicate offense is in no way a "serious crime," as that term is understood under Judge Ambro's Binderup plurality and its progeny, and the government cannot carry its burden in showing that disarming Range advances public safety. The latter factor should be the only one considered, a point Range preserves in the event of further proceedings, but existing precedent points toward reversal.

The government concedes, as it must, that Range established at least five of the six factors needed to determine that a crime is not "serious," including the most crucial, all-but determinative factor: classification. Range's misdemeanor was not violent, posed no risk of harm to anyone, and merited no jail sentence. The question of cross-jurisdictional consensus is closer, yet still favors Range. States have varying methods to distinguish serious from non-serious crimes, but in practical reality, no jurisdiction treats a few extra food stamps for one's children like highway robbery or sophisticated financial fraud. The proper comparison is with those states that, like Pennsylvania, addressed food stamp fraud as a discrete crime, separate from other theft offenses. There is no consensus that Range's offense, as detailed in Pennsylvania, ought to have been classified differently.

In any event, this Court has instructed that the Binderup inquiry contains no litmus tests. Even the classification factor is not dispositive. It is error, then, to treat what appears to be the least important factor—the views of other jurisdictions—as dispositive. After

all, countless misdemeanors in various states are felonies in others, yet they do not trigger Section 922(g)(1) on account of such disagreement.

To the contrary: if classification is so critical, it must work for challengers and for the government equally. Just as a felon faces a daunting task of establishing that his crime was not "serious," a misdemeanant should have an easier go of proving that his crime was not serious. And where a misdemeanor was not violent, involved no risk of harm to anyone, and did not merit a jail sentence, the fact that some portion of other jurisdictions would classify it differently would be too thin a reed upon which to deny as-applied relief from Section 922(g)(1). The judgment below should be reversed.

## STANDARD OF REVIEW

"We review the District Court's summary judgment decision de novo." Gayle v. Warden Monmouth Cty. Corr. Inst., 12 F.4th 321, 327 (3d Cir. 2021) (citation omitted).

ARGUMENT

I. BRYAN RANGE IS ENTITLED TO RELIEF FROM SECTION 922(G)(1)'S ENFORCEMENT UNDER THE TWO-STEP FRAMEWORK FOR EVALUATING SECOND AMENDMENT CLAIMS.

"We do . . . permit Second Amendment challenges to § 922(g)(1) as applied to individuals, which we analyze using a two-pronged approach first announced in [Marzzarella]." Folajtar v. Att'y Gen., 980 F.3d 897, 901 (3d Cir. 2020) (citing Holloway, 948 F.3d at 171) (other citation omitted); Binderup, 836 F.3d at 356.

"At Marzzarella step one for challenges to § 922(g)(1), we determine whether an individual has committed a 'serious' offense, and thus was an 'unvirtuous citizen[]' who was historically barred from possessing firearms and fell out of the Second Amendment's scope." Holloway, 948 F.3d at 171 (citations omitted).

"[I]f the challenger succeeds at step one, the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." Binderup, 836 F.3d at 347.

No doubt § 922(g)(1) is intended to further the government interest of promoting public safety by preventing armed mayhem, an interest that is both important and compelling. But whether we apply intermediate scrutiny or strict scrutiny—and we continue to follow

16

the lead of Marzzarella in choosing intermediate scrutiny, 614 F.3d
at 97—the Government bears the burden of proof on the
appropriateness of the means it employs to further its interest.

Id. at 353 (citations and internal quotation marks omitted).

Bryan Range satisfies his step one burden. The government cannot

meet its step two burden.

A. Bryan Range's misdemeanor was not a "serious crime."

Bryan Range's crime in seeking public assistance while struggling to

raise his children did not forever tar him as "unvirtuous," to the point

of losing fundamental rights.

At step one, "the challenger must show that he was not previously

convicted of a serious crime." Holloway, 948 F.3d at 172 (citing

Binderup, 836 F.3d at 350). "[T]here are no fixed criteria for

determining whether crimes are serious enough to destroy Second

Amendment rights." Binderup, 836 F.3d at 351; Holloway, 948 F.3d at

172. "[B]ut various factors may be informative including, but not

limited to, whether the crime poses a danger or risk of harm to self or

others, whether the crime involves violence or threatened violence, the

classification of the offense, the maximum penalty, the penalty

imposed, and how other jurisdictions view the crimes." Holloway, 948 F.3d at 172 (citing Binderup, 836 F.3d at 351-52).

While the criteria for "seriousness" are still unfixed, Folajtar, 980 F.3d at 902, this Court has since provided two important points of guidance. In Holloway, this Court held that the offense's potential for public harm, not a relevant factor for either of the Binderup challengers, can be an overriding fifth factor. And in Folajtar, this Court noted that the judiciary' strong deference to legislative prerogative means that the first Binderup prong—classification—is all but determinative in cases that are not otherwise disqualified.

Bryan Range's offense is not "serious" under at least four of the five factors. Most critically, it is not "serious" under the first, most important factor—the judgment of Pennsylvania's legislature, to which this Court shows a measure of deference.

    1.    The legislature did not believe that Range's offense was "serious."

In assessing a crime's seriousness, this Court "giv[es] primary weight to the legislature's determination" of whether the offense is a felony or misdemeanor. Folajtar, 980 F.3d at 907. "[W]e have never

held that felonies and state misdemeanors should be analyzed similarly or that the considerations we examined in Binderup and Holloway should be weighed equally. Instead, we consistently viewed the legislature's classification of the offense as a powerful consideration." Id. at 903 (citation omitted). Indeed, "a state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious enough to be disqualifying." Binderup, 836 F.3d at 351. "Congress may not overlook so generally the misdemeanor label, which, in the Second Amendment context, is also important." Id. at 352.

Of course, not all misdemeanors are unserious, id. at 351-52, just as not all felonies are serious, Folajtar, 980 F.3d at 903. Classification is not "dispositive." Holloway, 948 F.3d at 174. But it's fairly close: "generally conclusive." Folajtar, 980 F.3d at 903.

An offense's classification is given "primary weight," and is "generally conclusive," precisely because classification is a legislative prerogative. "In upholding Congress's decision to disarm individuals who commit felonies, we respect the legislatures' choices about which

crimes count as serious and preserve the states' traditional autonomy to 'define crimes [and] punishments.'" Id. at 906 (quoting Danforth v. Minnesota, 552 U.S. 264, 280 (2008)). "This ensures that disarmament decisions reflect the views and values of our communities, as well as the expertise and experience of legislatures far better equipped than the judiciary to make sensitive public policy judgments." Id. (internal quotation marks and citations omitted).

Classification is not a one-way ratchet, employed only in felony cases to assist the government's defense but relegated to a lower status when considering misdemeanors. Legislative judgment is what it is—equally important in all cases. The legislature's view is either important or it isn't. It isn't important only in cases involving actual felons, where it supports the government's desired outcome. Indeed, this Court's holding that "the legislature's decision to label an offense a felony is generally conclusive in our analysis of seriousness . . . aligns with our earlier reasoning that '[m]isdemeanors are, and traditionally have been, considered less serious than felonies.'" Folajtar, 980 F.3d at 903 (quoting Binderup, 836 F.3d at 351). For a misdemeanor to be

considered a "serious" offense notwithstanding the legislature's determination, it must have some other elevating characteristic, such as violence, dangerousness, or an especially high potential sentence. See Binderup, 836 F.3d at 351-52; Holloway, 948 F.3d at 173-74.

In Binderup, this Court determined that a Pennsylvania class 1 misdemeanor involving no violence or danger was not "serious." Range's misdemeanor is no different.[4]

2.    Range's misdemeanor was nonviolent.

Range's offense did not have "the use or attempted use of force as an element." Binderup, 836 F.3d at 352 (footnote omitted).

---

[4]Range notes that his offense would be graded differently today. In 2018, the legislature amended 62 Pa. C.S. § 481 to reduce the felony threshold to $1,000. See 2018 Pa. Act 125, § 5 (Oct. 24, 2018). But that is irrelevant. "[T]he category of serious crimes changes over time as legislative judgments regarding virtue evolve." Binderup, 836 F.3d at 351. Indeed, theft offenses have never been treated with uniform severity, and some states have moved in the other direction. Texas, for example, has raised the felony threshold from $1,500 to $2,500. Compare current and 1995 versions of Tex. Penal Code § 31.03(e)(3). Regardless, Section 922(g)(1) cannot reach non-qualifying convictions just because they would be tried differently today. This "would 'require some form of judicial time travel.'" Appx005 (quoting United States v. Irving, 316 F. Supp. 3d 879, 890 (E.D. Pa. 2018), aff'd sub nom United States v. Mills, 858 F. App'x 463 (3d Cir. 2021)).

3.    Range's misdemeanor was not dangerous.

Range's offense did not "present[] a potential for danger and risk of harm to self and others." Holloway, 948 F.3d at 173 (footnote and citation omitted).

4.    The prosecution and the court agreed that Range should receive a light sentence.

Range "received a minor sentence by any measure," Binderup, 836 F.3d at 352: probation, a fine, and restitution. "With not a single day of jail time, the punishment[] here reflect[s] the sentencing judge['s] assessment of how minor the violation[] [was]." Id. It also reflects the prosecution's position. Range was in pro se, and this deal was readily offered him.

5.    There is no clear cross-jurisdictional consensus as to seriousness.

At first glance, cross-jurisdictional consensus weighs in the government's favor: thirty-nine jurisdictions would, at least today, punish Range's conduct as a felony.[5] Nine would clearly treat the

---

[5]The government counts 41 felony jurisdictions, and Range agrees that the dispute with respect to this number is immaterial. Appx010 n.2.

offense as a misdemeanor, one would likely treat it as a misdemeanor, another would likely not convict Range of anything, and yet another does not use such classification. But on closer look, the consensus evaporates.

Jurisdictions are divided as to whether making false statements in the procurement of public assistance is a discreet crime. Those that accept this distinction, like Pennsylvania, tend to treat the offense more leniently. Only twenty-seven of these jurisdictions, a bare majority of the states and something less than a consensus, would today treat Range's specific offense—making false statements in obtaining food stamps—as a felony.

In fifteen states, Range's offense would be lumped together with theft or falsification as a categorical matter, either because the state apparently lacks a more-specific crime addressing that conduct, or because a statute actually directs that public assistance misstatements be prosecuted as these generalized offenses. Of these jurisdictions, twelve would treat Range's offense as a felony,[6] one would treat it as a

---

[6]Colo. Rev. Stat. § 18-4-401(2)(f); Conn. Gen. Stat. §§ 17b-97, 53a-122; Del. Code Ann. tit. 11, §§ 841(c), 843; Idaho Code §§ 18-2408, 56-

misdemeanor,[7] and one does not use felony-misdemeanor classification.[8]

But there is a difference between a poor parent who applies for too many food stamps, and a sophisticated fraudster who schemes to systematically bilk Medicare of millions. Many people would more quickly condemn the latter as "unvirtuous." Range submits that the better point of reference would be those jurisdictions that, like Pennsylvania, understand that distinction. The focus ought not to be on the maximum theoretical charge, but on what Range was convicted of. Barely over half the states, 27, today specify that making false statements to procure public assistance is a felony offense on Range's facts.[9] Eight jurisdictions that criminalize Range's specific behavior

---

227(1); Iowa Code §§ 714.8(3), 714.10; Kan. Stat. Ann. §§ 21-5801, 39-720; La. Rev. Stat. Ann. §§ 14:67, 46:114; Minn. Stat. § 256.984; Mo. Rev. Stat. §§ 205.967, 570.030; Mont. Code §§ 45-6-301, 53-2-107; N.D. Cent. Code §§ 12.1-23-02, 05; Va. Code Ann. §§ 18.2-95, 63.2-522.

[7]Tex. Penal Code § 31.03(e)(3).

[8]N.J. Stat. Ann. § 2C:20-4, theft by deception, is a "third degree crime," id. 2C:20-2(b)(2), punishable by 3-5 years imprisonment, id. § 2C:43-6(a)(3).

[9]Ala. Code § 13A-9-150(e); Ariz. Rev. Stat. § 46-215(F); Ark. Code Ann. § 5-36-202(c)(2); Fla. Stat. § 414.39(5)(b); 305 Ill. Comp. Stat. Ann. § 5/8A-6(a)(3); Ind. Code § 35-43-5-7(b); Ky. Rev. Stat. Ann. § 205.8463(5); Mich. Comp. Laws Ann. 400.60; Miss. Code Ann. §

would treat him as a misdemeanant,[10] a ninth would likely treat him as

a misdemeanant,[11] and one state would likely not convict Range of

anything, as diversion is built-in to the statute for first offenders.[12]

---

97-19-71; Neb. Rev. Stat. Ann. § 68-1017; Nev. Rev. Stat. Ann. § 422.410; N.H. Rev. Stat. Ann. §§ 167:17-b, 17-c; N.M. Stat. Ann. § 30-40-1; N.Y. Penal Law § 158.10; N.C. Gen. Stat. § 108A-53; Okla. Stat. Ann. tit. 56, § 185; 62 Pa. C.S. § 481; R.I. Gen. Laws § 40-6-15; S.C. Code Ann. § 16-13-430(C)(2); S.D. Codified Laws §§ 22-29-11, 16; Tenn. Code Ann. § 71-5-314; Utah Code Ann. § 76-8-1206(1)(b); Vt. Stat. Ann. tit. 33, §§ 141, 143(a)(2); Wash. Rev. Code Ann. § 74.08.331; W. Va. Code Ann. § 9-5-4(2)(b); Wisc. Stat. § 946.92(3)(a); Wyo. Stat. Ann. § 42-2-112(k).

[10]Alaska Stat. § 47.25.985; Cal. Wel. & Inst. Code § 10980(a); D.C. Code § 4-218.01(a); Haw. Rev. Stat. § 346-34(h); Me. Rev. Stat. Ann. tit. 22, § 4315 ("Class E Crime" punishable by 6 months imprisonment per Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E)); Md. Code Ann., Crim. Law § 8-504(c); Mass. Gen. Laws ch.18, § 5b; Ohio Rev. Code §§ 2921.13(A)(4), (F)(1).

[11]Oregon provides that the offense of "unlawfully obtaining public assistance," Or. Rev. Stat. Ann. §§ 411.630, is a felony that can be reduced to a misdemeanor, id. § 411.990(2), if "[t]he court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that a felony conviction would be unduly harsh." Id. § 161.705(1)(b).

[12]Ga. Code Ann. § 49-4-15(e). Diversion is also available in other states, including Pennsylvania. Had Range been represented by counsel, he would have more likely avoided conviction.

That twenty-seven jurisdictions would distinguish Range's particular offense from other forms of theft, yet still consider it a felony, is not nothing. But it is short of a "consensus."

And even if one takes the broader view and gives the government this final prong of the seriousness test, Range makes his step one burden by satisfying the four other factors—the "primary," "generally conclusive" element of classification, Foljatar, 980 F.3d at 907, 903; non-violence; lack of dangerousness; and a very lenient sentence. Time and again, this Court has held that the seriousness inquiry contains no fixed criteria. Folajtar, 980 F.3d at 903; Holloway, 948 F.3d at 172; Binderup, 836 F.3d at 351. And if even a felon might theoretically be able to carry a step one burden, Folajtar, 980 F.3d at 903, how could a misdemeanant be precluded from doing so because his offense would have been a felony somewhere else?

B. The government cannot carry its step two burden.

In Binderup, the government failed to carry its step two burden because it could provide "no evidence explaining why banning people like [plaintiffs] (i.e., people who decades ago committed similar

misdemeanors) from possessing firearms promotes public safety." Binderup, 836 F.3d at 353-54. That failure repeats itself here.

Indeed, to address the government's persistent complaints (rejected by this Court) that as-applied challenges should not be recognized because it is too difficult to investigate a challenger's fitness to possess firearms, Range agreed that discovery be allowed, and fully cooperated in that process. In the end, the government grudgingly admitted that Range has never threatened or engaged in any violence. Appx171 ¶ 13.

There is no logical reason to suppose that making false statements in connection with a food stamp application suggests a firearms risk. Even if such a claim could be made, any discussion of Range's propensity for violence must begin and end with his nearly thirty years of peaceful behavior. "[T]he passage of time since a conviction can be a relevant consideration in assessing recidivism risks." Binderup, 836 F.3d at 354 n.7. Speaking of one of the successful Binderup challengers, twenty-six years after his misdemeanor conviction, this Court noted that "[c]ommon sense tells us that recidivism rates would change with

the passage of [time] and vary based on the circumstances of the prior conviction." Id. at 355.

Twenty-six years following Range's conviction for a nonviolent, non-dangerous misdemeanor offense that garnered no jail time, the notion that he would recidivate with, for the first time ever, a violent offense, is far-fetched. The government fails to carry its step two burden.

## II. BRYAN RANGE IS ENTITLED TO RELIEF FROM SECTION 922(G)(1)'S ENFORCEMENT BECAUSE HE IS NOT DANGEROUS.

By prevailing at step two under Judge Ambro's controlling two-step test, Range necessarily prevails under the alternative analysis, which holds that "[t]he historical touchstone is danger, not virtue." Folajtar, 980 F.3d at 912 (Bibas, J., dissenting). There is no need to reargue the matter of Range's peaceable nature and lack of risk.

Range hopes, but cannot presume, that his case will end favorably under Judge Ambro's Binderup approach. But because the case may yet be heard by a court authorized to take a different course, and considering the Supreme Court's current consideration of the Second Amendment in New York State Rifle & Pistol Ass'n v. Bruen, Supreme Ct. No. 20-843 (argued Nov. 3, 2021), Range respectfully preserves the

argument persistently endorsed by Judges Hardiman and Bibas, and now-Justice Barrett: the Second Amendment does not permit the government to disarm people whose possession of arms would not pose any heightened risk to society.

The framers understood that "the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed." Binderup, 836 F.3d at 369 (Hardiman, J., concurring) (footnote omitted). Courts must focus on a person's "propensity for violence." Id. at 374. "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." Kanter v. Barr, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting). The "virtuousness" rationale underlying the prevailing approach is ahistorical—"flimsy," Folajtar, 980 F.3d at 919 (Bibas, J., dissenting), and "fall[ing] somewhere between guesswork and ipse dixit." Binderup, 836 F.3d at 372 (Hardiman, J., concurring).

The two-step virtuousness-based method is currently the law, but Range would be remiss if he did not reserve the right to argue further against it. Fortunately for Range, he need not do so to prevail here.

CONCLUSION

The decision below should be reversed.

Dated:   December 20, 2021          Respectfully submitted,

 /s/ Michael P. Gottlieb
Michael P. Gottlieb
   PA Bar No. 36678
VANGROSSI & RECCHUITI
319 Swede Street
Norristown, PA 19401
610.279.4200
Mikem1a1@aol.com

Counsel for Appellant

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney in good standing of the bar of the Third Circuit.

/s/ Michael P. Gottlieb

Michael P. Gottlieb

DATED: December 20, 2021

CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6407 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Corel WordPerfect in 14 point Century Schoolbook font.

3. The text of the electronic brief is identical to the text in the paper copies.

4. This file was scanned for viruses using Norton and was found to be virus-free.

/s/ Michael P. Gottlieb
Michael P. Gottlieb
Attorney for Appellant
Dated: December 20, 2021

No. 21-2835

*In the United States Court of Appeals
for the Third Circuit*

BRYAN DAVID RANGE,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL UNITED STATES, ET AL.,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court
for the Eastern District of Pennsylvania (Pratter, J.)
(Dist. Ct. No. 5:20-CV-03488-GEKP)

JOINT APPENDIX
VOL. I, pp. Appx001-Appx014

Michael P. Gottlieb
  PA Bar No. 36678
VANGROSSI & RECCHUITI
319 Swede Stree
Norristown, PA 19401
610.279.4200
Mikem1a1@aol.com

December 20, 2021              Counsel for Appellant

JOINT APPENDIX
TABLE OF CONTENTS

Volume I

Notice of Appeal [Dkt. 24] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx001

District Court Order [Dkt. 23] . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx003

District Court Opinion [Dkt. 22] . . . . . . . . . . . . . . . . . . . . . . . .  Appx004

Volume II

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx015

Complaint [Dkt. 1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx019

Answer [Dkt. 5] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx030

Separate Statement of Undisputed Material Fact in Support of
    Plaintiff's Motion for Summary Judgment, [Dkt. 13-2] . . . .  Appx039

Declaration of Bryan Range [Dkt. 13-3] . . . . . . . . . . . . . . . . . .  Appx044

Range Exh. A, Court of Common Pleas Lancaster County,
    Docket No. CP-36-CR-0002677-1995 [Dkt. 13-4] . . . . . . . . .  Appx048

Range Exh. B, Criminal History Record [Dkt. 13-5] . . . . . . . .  Appx051

Range Exh. C, Defendants' Responses to Plaintiff Bryan Range's
    First Set of Requests for Admission [Dkt. 13-6] . . . . . . . . . .  Appx054

Range Exh. D, Defendants' Responses to Plaintiff Bryan Range's
    First Set of Interrogatories and Request for Production
    of Documents [Dkt. 13-7] . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx059

i

Defendants' Statement of Undisputed Facts [Dkt. 14] . . . . . . .  Appx067

Defendants' Exh. 1, Defendant's Fifty State Survey of Laws
    Criminalizing Fraudulently Obtaining Food Stamps
    [Dkt. 14-1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx071

Defendants' Exh. 3, Plaintiff Bryan Range's Responses to
    Defendants' First Set of Interrogatories [Dkt. 14-2] . . . . . .  Appx165

Defendants' Response to Statement of Undisputed Material Facts
    in Support of Plaintiff's Motion for Summary Judgment
    [Dkt. 16] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx169

Plaintiff's Response to Defendants' Statement of Undisputed Facts
    [Dkt. 17-1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx176

Transcript, Deposition of Plaintiff Bryan David Range
    [Dkt. 17-3] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx186

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. 5:20-CV-03488-GEKP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERRICK GARLAND, Attorney General | ) | |
| of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

NOTICE OF APPEAL

Notice is hereby given that Bryan David Range, plaintiff in the above-named case, hereby

appeals to the United States Court of Appeals for the Third Circuit from the Court's Opinion and

Judgment (Dkt. 22, 23) entered August 31, 2021.

Dated: September 29, 2021                    Respectfully submitted,

By: /s/ Alan Gura                By: /s/ Michael P. Gottlieb
    Alan Gura*                        Michael P. Gottlieb
    Gura PLLC                          PA Bar No. 36678
    916 Prince Street, Suite 107       319 Swede Street
    Alexandria, VA 22314               Norristown, PA 19401
    703.835.9085/Fax 703.997.7665      610.279.4200
    alan@gurapllc.com                  Mikem1a1@aol.com

    *Admitted pro hac vice             Attorneys for Plaintiff

Appx001

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2021, a copy of the foregoing notice of appeal was electronically served upon all parties by filing the same with the Clerk of Court using the CM/ECF system and forwarding to all counsel of record.

/s/ Alan Gura_____
Alan Gura

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN DAVID RANGE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 20-3488** |
| **REGINA LOMBARDO** *et al.*, | : | |
| *Defendants* | : | |

## <u>ORDER</u>

**AND NOW**, this 30th  day of August, 2021, upon consideration of the Government's Motion for Summary Judgment (Doc. No. 12), Mr. Range's Motion for Summary Judgment (Doc. No. 13), the Government's Statement of Undisputed Facts (Doc. No. 14), the Government's Response in Opposition to Mr. Range's Motion for Summary Judgment (Doc. No. 15), the Government's Response in Opposition to Mr. Range's Statement of Undisputed Material Facts (Doc. No. 16), Mr. Range's Response in Opposition to the Government's Motion for Summary Judgment (Doc. No. 17), and the Government's Reply in Support of its Motion for Summary Judgment (Doc. No. 18), it is **ORDERED** that:

1. The Government's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**.

2. Mr. Range's Motion for Summary Judgment (Doc. No. 13) is **DENIED**.

3. Mr. Range's Complaint (Doc. No. 1) is **DISMISSED** with prejudice.

4. The Clerk of Court shall mark this case **CLOSED** for all purposes, including statistics.

**BY THE COURT:**

*s/Gene E.K. Pratter*
_____
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

Appx003

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN DAVID RANGE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 20-3488** |
| **REGINA LOMBARDO** *et al.,* | : | |
| *Defendants* | : | |

## <u>M E M O R A N D U M</u>

PRATTER, J.                                                                                       AUGUST 30, 2021

     Bryan Range pled guilty to making a false statement to obtain food stamps assistance more than 25 years ago, which was then a misdemeanor offense. While Mr. Range served no time in prison because of this conviction, the crime to which he pled guilty was punishable by up to five years' imprisonment. As a result, 18 U.S.C. § 922(g) prohibits him from owning a weapon.

     Mr. Range seeks the Court's declaratory judgment that § 922(g) as applied to him violates the Second Amendment. Because the Court concludes that Mr. Range's conduct is sufficiently "serious," as that term is defined by Third Circuit precedent, § 922(g) is constitutional as applied. The Court will grant the Government's motion for summary judgment, and deny Mr. Range's motion for summary judgment.

## BACKGROUND

     Mr. Range pled guilty, in August 1995, to one count of making a false statement to obtain food stamps assistance, in violation of 62 Pa. C.S. § 481(a). At that time, Mr. Range mowed lawns for a living, earning between $9 and $9.50 an hour, or approximately $300 per week. He and his wife struggled to make ends meet caring for their three children—a three-year-old and twin two-year-olds. Mrs. Range prepared an application for food stamps, which she and Mr. Range both signed. The application omitted Mr. Range's income. Mr. Range alleges that he did not review

1

the application, but accepted responsibility for it and acknowledged that it was wrong to not fully disclose his income. Mr. Range was sentenced to three years' probation, which he satisfactorily completed, $2,458 in restitution, $288.29 in costs, and a $100 fine. He served no time in jail. But as will become relevant later, Mrs. Range—who allegedly prepared the application and also signed it—was not charged with a crime.

Violations of 62 Pa. C.S. § 481(a) were at the time classified as first-degree misdemeanors,[1] punishable by up to five years' imprisonment. Mr. Range alleges that when he pled guilty, neither the prosecution nor the judge informed him of the maximum potential sentence, or of the fact that by pleading guilty, he thereafter would be barred from possessing firearms.

Since 1995, Mr. Range's only other "criminal" history includes minor traffic and parking infractions, as well as a fishing offense in 2011. He testified that he thought he had renewed his fishing license, and that after paying the fine, he renewed the license.

At one time, Mr. Range attempted to purchase a firearm, but was rejected by the background check system. The employee at the gun store Mr. Range visited reviewed a list of prohibiting offenses with Mr. Range, and Mr. Range verified that he had not committed any of them. The employee told Mr. Range that the rejection was likely due to a computer error (a

---

[1]     Mr. Range's conduct was classified as a first-degree misdemeanor at the time, but in 2018 the Pennsylvania legislature amended 62 Pa. C.S. § 481 so that fraudulently obtained assistance of $1,000 or more is now classified as a felony of the third degree. However, the parties agree—as does the Court—that the classification of Mr. Range's conduct at the time of his conviction governs. *See Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 351 (3d Cir. 2016) (en banc) ("[T]he category of serious crimes changes over time as legislative judgments regarding virtue evolve."); *United States v. Irving*, 316 F. Supp. 3d 879, 890 (E.D. Pa. 2018), *aff'd sub nom. United States v. Mills*, No. 18-3736, 2021 WL 2351114 (3d Cir. June 9, 2021) (applying *Binderup* and noting that "having the Court rule on the constitutionality of an [indictment] based on a jury's verdict some two months later" would "require some form of judicial time travel").

common refrain of modern life), and that he should retry his purchase at a later time. But because Mrs. Range had not been convicted of falsifying the application (or any other crime), she was able to pass a background check. She purchased a hunting rifle and gifted it to Mr. Range. When that gun later was destroyed in a house fire, she gifted him a different rifle.

Years later, Mr. Range again tried to purchase a gun and was again rejected. Once more, the store employee told him that the rejection was a mistake. But when Mr. Range researched the matter further, he learned that he was barred from possessing firearms because of his public assistance application conviction. Mr. Range sold his only firearm so that he would be compliant with the law, and then he brought this lawsuit.

### LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

On a motion for summary judgment, the Court views the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

3

The movant is initially responsible for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## Discussion

The controlling issue in this case is what limits the Second Amendment puts on the ability of governments to limit access to firearms because of a citizen's non-violent misdemeanor conviction. This debate asks how to interpret language in the Supreme Court's watershed Second Amendment case, *District of Columbia v. Heller*, 554 U.S. 570 (2008). After concluding that the Second Amendment protects an individual's right to possess firearms, the Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," and that such laws are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26. However, courts have grappled with whether a

4

challenger could rebut *Heller*'s "presumption" that such laws are lawful, at least as applied to them, and whether laws that prohibit the possession of firearms by misdemeanants are also consistent with the Second Amendment.

Our Third Circuit Court of Appeals very recently addressed and tackled one of the "uncharted frontiers" remaining after *Heller*. *See Drummond v. Robinson Twp.*, No. 20-1722, 2021 WL 3627106 (3d Cir. Aug. 17, 2021). While analyzing the issue of the possible interference of zoning rules with citizens' Second Amendment right to bear arms, the appellate panel underscored lessons from *Heller* that demand the delicate balancing of the right to bear arms with the not unlimited nature of that right that leaves room for lawful restrictions, subject to heightened judicial scrutiny on it. *Id.* at *11-12.

Turning to the specific *Heller* frontier presented by Mr. Range, the Third Circuit Court of Appeals first considered this question en banc in *Binderup v. Attorney General of the United States of America*, 836 F.3d 336 (3d Cir. 2016) (en banc). *Binderup* itself shows the challenging topography of the topic. Three opinions were issued in *Binderup*, none of which represented a majority. Judge Ambro, joined by two other judges, wrote for the court. Judge Hardiman was joined by four other judges, concurring in the judgment. Judge Fuentes was joined by six other judges in an opinion concurring in part and dissenting in part. The Third Circuit Court of Appeals has since treated Judge Ambro's opinion as controlling based on an analysis under *Marks v. United States*, 430 U.S. 188, 193 (1977), because it represented the median position between the dissenting and concurring opinions. *See Beers v. Attorney General*, 927 F.3d 150, 155-56 (3d Cir. 2019), *judgment vacated on other grounds*, *Beers v. Barr*, 140 S. Ct. 2758 (mem.) (2020).

*Binderup* adopted, with some modifications, *United States v. Marzzarella*'s two-step approach to determining whether a crime was "serious." *Binderup*, 836 F.3d at 345 (citing *United*

Appx008

*States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). At the first step, a court considers whether the Second Amendment is implicated. *See Drummond*, 2021 WL 3627106, at *3 (citing *Marzzarella*, 614 F.3d at 89). If the claimant has committed a "serious" offense, rendering that person an "unvirtuous citizen" who was historically barred from possessing a firearm, that person is judged to have lost his or her Second Amendment rights. *Holloway v. Attorney General United States*, 948 F.3d 164, 171 (3d Cir. 2020) (quoting *Binderup*, 836 F.3d at 348-49). "[I]f the challenger succeeds at step one, the burden shifts to the Government to determine that the regulation satisfied some form of heightened scrutiny." *Binderup*, 836 F.3d at 347. *See also Drummond*, 2021 WL 3627106, at *3.

Accordingly, the Court will first consider whether Mr. Range's conduct is sufficiently "serious" for Mr. Range to lose his Second Amendment rights. Then, if it finds that the Second Amendment is implicated, it will consider whether the Government has carried its burden of demonstrating that the regulation satisfies heightened scrutiny.

### A. *Marzzarella* Step One: Whether the Second Amendment is Implicated

*Binderup* set forth a nonexclusive four-factor test for determining whether a crime is "serious": "(1) whether the conviction was classified as a misdemeanor or a felony, (2) whether the criminal offense involves violence or attempted violence as an element, (3) the sentence imposed, and (4) whether there is a cross-jurisdictional consensus as to the seriousness of the crime." *Holloway*, 948 F.3d at 172 n.10 (citing *Binderup*, 836 F.3d at 351-52). *Holloway* itself added one more factor: (5) the potential for physical harm to others. *See id.* at 173.

The Government concedes that Mr. Range satisfies four out of the five factors. His conviction was classified as a misdemeanor, the criminal offense does not involve violence or attempted violence as an element, he was not sentenced to any jail time, and the crime involved

6

no potential for physical harm to others. But the parties dispute whether there is a "cross-jurisdictional consensus" as to the seriousness of his crime.

The parties agree that between 39 and 41 jurisdictions in the United States would have classified Mr. Range's conduct as a felony.[2] Mr. Range concedes that 39 jurisdictions would likely constitute a consensus, and the Court agrees—for at least two reasons. First, the word "consensus" implies something short of total unanimity, but rather the acknowledged existence of a "general agreement." *See* Consensus, Black's Law Dictionary (11th ed. 2019) ("A general agreement; collective opinion."); Consensus, Shorter Oxford English Dictionary (6th ed. 2007) ("Agreement or unity of opinion, testimony, etc.; the majority view, a collective opinion . . . ."). Second, as the challenger, the burden rests with Mr. Range to make a "'strong' showing that . . . he has not committed a 'serious' crime." *Holloway*, 948 F.3d at 172 (quoting *Binderup*, 836 F.3d at 347). Therefore, even if this particular case falls close to the line, it is Mr. Range's burden to prove that there is *not* a consensus.

But Mr. Range argues that the proper point of reference is not all 50 states, but rather only those states that criminalize the making of a false statement regarding food stamps specifically. He argues that the Court should disregard the 15 states that punish conduct like Mr. Range's as a felony under a general theft or falsification statute.

The Court disagrees. Every time that the Third Circuit Court of Appeals has applied the *Binderup* balancing test, it has considered the laws of all 50 states. Mr. Range cites no authority for his argument that the Court should only consider laws that define the elements of a crime in the same way as the state in which the challenger was convicted. Instead, he argues that the law

---

[2] *See* Doc. Nos. 17 at 18; 18 at 6. Because the parties agree that the difference between 39 and 41 jurisdictions should make no difference to the Court's analysis, the Court will not discuss the details of the parties' dispute over the classification of the remaining two jurisdictions.

Appx010

should recognize that "there is a difference between a poor parent who applies for too many food stamps, and a sophisticated fraudster who schemes to systematically bilk Medicare of millions." Perhaps, like compassionate human nature, or a personal gauge of morality, the law should make such a distinction. Indeed, it can certainly be said that the law should be written in a way to recognize many finer or closer distinctions than it does. No doubt there are even finer gradations of guilt between the two extremes Mr. Range proposes.[3] But under our system of government it is within the prerogative of every state to choose between having a more complex criminal code that defines its statutes narrowly, and more general criminal statutes that are accompanied by a greater range of possible punishments. Nothing in *Binderup*, or any opinion applying its multifactor test, provides that a state's choice to classify conduct like Mr. Range's as a felony is irrelevant merely because the drafters of the laws in any given state choose to define crimes with more general language.

Because the Court has concluded that there is a cross-jurisdictional consensus that making a false statement regarding food stamps is serious, the question is whether this one factor is sufficiently important for the Government to prevail here. Mr. Range argues that it is not, for several reasons. First, he argues that the law's classification as a misdemeanor or a felony is the most important factor. In support of this argument, he notes that the Third Circuit Court of Appeals has described the law's classification as "generally conclusive." *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 900 (3d Cir. 2020), *cert. denied sub nom. Folajtar v. Garland*, No. 20-812, 2021 WL 1520793 (U.S. Apr. 19, 2021). The Third Circuit Court of Appeals has also held that the underlying conduct's "potential for danger and risk of harm to self and others" was

---

[3]     Indeed, the compelling tug on the human heart such as Mr. Range appears to present has stood the test of time and modalities in literature. *See* Victor Hugo, Les Misérables (Norman Denny trans., Penguin Books 1982) (1862).

sufficiently important that the Government prevailed even though the other four factors weighed in favor of the challenger. *See Holloway*, 948 F.3d at 164. Mr. Range reasons that because *Binderup* endorsed a balancing test, he need not prevail on every factor, especially where, as here, both of the factors that the Third Circuit Court of Appeals has treated as most important support his claim.

Mr. Range's position is not without merit. The plurality opinion in *Binderup* described the factor test as a balancing test, not a set of elements that all petitioners must meet. *See Binderup*, 836 F.3d at 351. And Judge Fuentes's opinion dissenting in part likewise viewed the plurality's holding as endorsing a balancing test of factors. *See id.* at 411 ("Judge Ambro's approach . . . would require district court judges to consider a variety of factors in order to assess a crime's 'seriousness' . . . .") (Fuentes, J., dissenting). One could reason that had *Binderup* intended future challengers to "run the gauntlet," satisfying every factor, it would have said so.

However, that is not how subsequent opinions interpreting *Binderup* have used the multifactor test. Both times that it has applied *Binderup*, the Third Circuit Court of Appeals has held for the Government even though only one factor weighed in its favor. The Government prevailed in *Holloway* even though only the (newly-minted) "likelihood of physical harm" factor weighed in its favor. *Holloway*, 948 F.3d at 173. The Government also prevailed in *Folajtar* even though the only factor in its favor was the law's classification as a felony rather than a misdemeanor. *Follajtar*, 980 F.3d at 900. Indeed, the fact that the dissents in *Folajtar* and *Holloway* both argued that the majorities had improperly treated one factor as dispositive only confirms this interpretation of those opinions. Even more important is language in *Binderup* itself. While no court has held that the cross-jurisdictional factor is similarly important, dicta in *Binderup* suggests that its absence would have been dispositive. *See Binderup*, 836 F.3d at 353 ("Were the

Appx012

Challengers unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one.").

Mr. Range next argues that the Government's proposed approach improperly renders the law's classification as a "one-way rachet, employed only in felony cases to assist the government's defense but relegated to a lower status when considering misdemeanors." Doc. No. 13-1 at 16. But a one-way rachet is exactly what the Third Circuit Court of Appeals has twice imposed, once in *Folajtar* where it treated a crime's classification as dispositive, and once in *Holloway* where it relied solely on the likelihood of physical harm. While Mr. Range argues that *Folajtar* stands for the proposition that a law's classification as a felony or a misdemeanor is "generally conclusive," that is not what *Folajtar* said. Rather, it said that "the legislature's designation of an offense as a felony is generally conclusive in determining whether that offense is serious." *Folajtar*, 980 F.3d at 900. It simply did not speak to the relative importance of a law's classification as a misdemeanor. Thus, this Court cannot adopt Mr. Range's view that a law's classification as a misdemeanor is generally conclusive that a law is not serious, because this would be inconsistent with *Holloway*, which held for the Government even though the offense was a misdemeanor. *See Holloway*, 948 F.3d at 174 ("While 'generally the misdemeanor label . . . in the Second Amendment context is . . . important' and is a 'powerful expression' of the state legislature's view, it is not dispositive." (alterations in original) (quoting *Binderup*, 836 F.3d at 352)).

While Mr. Range argues that this approach is inconsistent with *Binderup*'s description of the standard as a "balancing test," the Court is bound to follow *Folajtar* and *Holloway*. Moreover, this route makes sense when considered against the wider context of as applied challenges to § 922(g)(1). Challengers like Mr. Range do face an uphill battle because statutes are presumptively constitutional. *See, e.g.*, *Holloway*, 948 F.3d at 172 (noting that the burden rests

Appx013

with the challenger to demonstrate that § 922(g) is unconstitutional as applied); *Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 270 (1827) (noting that courts should "presume in favor of [a statute's] validity, until its violation of the Constitution is proved beyond a reasonable doubt"). And it is not merely each state's determination of a statute's seriousness that the Court is considering. Congress has also determined that the conduct in question was sufficiently serious to justify disarmament. This fact operates as a powerful "sixth factor" present in every case, weighing in favor of the Government.

While the Court acknowledges that this can be considered a matter of first impression, it concludes that the cross-jurisdictional consensus factor—like the subject law's classification as a felony, and the likelihood of physical harm—is generally conclusive that a crime is serious.[4] *See Binderup*, 836 F.3d at 353.

CONCLUSION

For the foregoing reasons, the Court will grant the Government's Motion for Summary Judgment, and deny Mr. Range's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] Because the Government prevails at *Marzarella* step one, the Court will not proceed to step two to consider whether the Government has produced sufficient evidence to withstand heightened scrutiny.

Appx014