No. 21-2835

*In the United States Court of Appeals
for the Third Circuit*

═══════════════════════════

BRYAN DAVID RANGE,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL UNITED STATES, ET AL.,

Defendants-Appellees.

═══════════════════════════

Appeal from a Judgment of the United States District Court
for the Eastern District of Pennsylvania (Pratter, J.)
(Dist. Ct. No. 5:20-CV-03488-GEKP)

───────────────

JOINT APPENDIX
VOL. II, pp. Appx015-Appx247

───────────────

Michael P. Gottlieb
  PA Bar No. 36678
VANGROSSI & RECCHUITI
319 Swede Street
Norristown, PA 19401
610.279.4200
Mikem1a1@aol.com

December 20, 2021                Counsel for Appellant

JOINT APPENDIX
TABLE OF CONTENTS

Volume I

Notice of Appeal [Dkt. 24] . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx001

District Court Order [Dkt. 23] . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx003

District Court Opinion [Dkt. 22] . . . . . . . . . . . . . . . . . . . . . . . .  Appx004

Volume II

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx015

Complaint [Dkt. 1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx019

Answer [Dkt. 5] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx030

Separate Statement of Undisputed Material Fact in Support of
    Plaintiff's Motion for Summary Judgment, [Dkt. 13-2] . .  Appx039

Declaration of Bryan Range [Dkt. 13-3] . . . . . . . . . . . . . . . . . .  Appx044

Range Exh. A, Court of Common Pleas Lancaster County,
    Docket No. CP-36-CR-0002677-1995 [Dkt. 13-4] . . . . . . .  Appx048

Range Exh. B, Criminal History Record [Dkt. 13-5] . . . . . . . . .  Appx051

Range Exh. C, Defendants' Responses to Plaintiff Bryan Range's
    First Set of Requests for Admission [Dkt. 13-6] . . . . . . . .  Appx054

Range Exh. D, Defendants' Responses to Plaintiff Bryan Range's
    First Set of Interrogatories and Request for Production
    of Documents [Dkt. 13-7] . . . . . . . . . . . . . . . . . . . . . . . . . .  Appx059

i

Defendants' Statement of Undisputed Facts [Dkt. 14] . . . . . . .   Appx067

Defendants' Exh. 1, Defendant's Fifty State Survey of Laws
    Criminalizing Fraudulently Obtaining Food Stamps
    [Dkt. 14-1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Appx071

Defendants' Exh. 3, Plaintiff Bryan Range's Responses to
    Defendants' First Set of Interrogatories [Dkt. 14-2] . . . .   Appx165

Defendants' Response to Statement of Undisputed Material Facts
    in Support of Plaintiff's Motion for Summary Judgment
    [Dkt. 16] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Appx169

Plaintiff's Response to Defendants' Statement of Undisputed Facts
    [Dkt. 17-1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Appx176

Transcript, Deposition of Plaintiff Bryan David Range
    [Dkt. 17-3] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Appx186

United States District Court Eastern District of Pennsylvania

CLOSED,APPEAL,A/R,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Allentown)
## CIVIL DOCKET FOR CASE #: 5:20-cv-03488-GEKP

Range v. LOMBARDO
Assigned to: HONORABLE GENE E.K. PRATTER
Case in other court:  US COURT OF APPEALS, 21-02835
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 07/15/2020
Date Terminated: 08/31/2021
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Bryan David Range**

represented by **MICHAEL P. GOTTLIEB**
VANGROSSI & RECCHUITI
319 SWEDE STREET
NORRISTOWN, PA 19401
610-279-4200
Fax: FAX 610-279-4306
Email: Judy.Zona@verizon.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ALAN GURA**
GURA PLLC
916 PRINCE ST SUITE 107
ALEXANDRIA, VA 22314
703-835-9085
Email: alan@gurapllc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**WILLIAM BARR**
*Attorney General of the United States*

represented by **PAUL J. KOOB**
U.S. ATTORNEY'S OFFICE
615 Chestnut Street
Suite 1250
PHILADELPHIA, PA 19106
215-861-8432
Fax: 215-861-8618
Email: paul.koob@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ERIC D. GILL**
U.S. ATTORNEY'S OFFICE
615 CHESTNUT ST. STE 1250
PHILADELPHIA, PA 19106
215-861-8250

Email: eric.gill@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**REGINA LOMBARDO**
*Acting Director, Bureau of Alcohol,*
*Tobacco, Firearms and Explosives*

represented by **PAUL J. KOOB**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ERIC D. GILL**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2020 | 1 | COMPLAINT against WILLIAM BARR, REGINA LOMBARDO ( Filing fee $ 400 receipt number 0313-14424425.), filed by Bryan David Range. (Attachments: # 1 Civil Cover Sheet, # 2 Case Management Track Form, # 3 Designation Form)(GOTTLIEB, MICHAEL) (Entered: 07/15/2020) |
| 07/17/2020 | | Summons Issued as to WILLIAM BARR, REGINA LOMBARDO. E-mailed To: MICHAEL P. GOTTLIEB, ESQ. on 7/17/2020 (dmc, ) (Entered: 07/17/2020) |
| 08/14/2020 | 2 | CERTIFICATE OF SERVICE by Bryan David Range (GOTTLIEB, MICHAEL) (Entered: 08/14/2020) |
| 08/14/2020 | 3 | CERTIFICATE OF SERVICE by Bryan David Range *Regina Lombardo, Acting Director* (GOTTLIEB, MICHAEL) (Entered: 08/14/2020) |
| 08/14/2020 | 4 | CERTIFICATE OF SERVICE by Bryan David Range re 1 Complaint (Attorney), *U.S. Attorney's Office* (GOTTLIEB, MICHAEL) (Entered: 08/14/2020) |
| 09/21/2020 | 5 | ANSWER to Complaint *and Affirmative Defenses* by WILLIAM BARR, REGINA LOMBARDO.(KOOB, PAUL) (Entered: 09/21/2020) |
| 09/23/2020 | 6 | NOTICE of Appearance by ERIC D. GILL on behalf of WILLIAM BARR, REGINA LOMBARDO with Certificate of Service(GILL, ERIC) (Entered: 09/23/2020) |
| 09/23/2020 | 7 | ORDER RE: THE PARTIES SHALL SUBMIT A JOINT REPORT OF RULE 26(f) MEETING AND PROPOSED DISCOVERY PLAN. SIGNED BY THE HONORABLE GENE E.K. PRATTER ON 9/22/2020. (Attachments: # 1 Supplement, # 2 Supplement, # 3 Supplement) 9/23/2020 ENTERED AND COPIES E-MAILED.(sfl, ) (Entered: 09/23/2020) |
| 09/28/2020 | 8 | MOTION for Pro Hac Vice *Admission Uncontested* filed by Bryan David Range.Declaration. (Attachments: # 1 Declaration Declaration of Alan Gura, # 2 Exhibit Bar Admissions of Alan Gura)(GOTTLIEB, MICHAEL) (Entered: 09/28/2020) |
| 09/30/2020 | 9 | ORDER granting 8 MOTION FOR PRO HAC VICE. SIGNED BY THE HONORABLE GENE E.K. PRATTER ON 9/30/2020.9/30/2020 ENTERED AND COPIES E-MAILED. (sfl, ) (Entered: 09/30/2020) |
| 10/28/2020 | 10 | NOTICE of Hearing: TELEPHONE CONFERENCE IS SET FOR 10/30/2020 AT 2:00 PM BEFORE THE HONORABLE GENE E.K. PRATTER.(sfl, ) (Entered: 10/28/2020) |
| 11/05/2020 | 11 | SCHEDULING ORDER: DISCOVERY DUE BY 12/18/2020. MOTION FOR SUMMARY JUDGMENT DUE BY 1/15/2021.. SIGNED BY THE HONORABLE |

| | | |
|---|---|---|
| | | GENE E.K. PRATTER ON 11/2/2020. 11/5/2020 ENTERED AND COPIES E-MAILED. (sfl, ) (Entered: 11/05/2020) |
| 01/15/2021 | 12 | MOTION for Summary Judgment filed by WILLIAM BARR, REGINA LOMBARDO.Memorandum of Law, Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Text of Proposed Order)(KOOB, PAUL) (Entered: 01/15/2021) |
| 01/15/2021 | 13 | MOTION for Summary Judgment filed by Bryan David Range.Memorandum, Declaration. (Attachments: # 1 Memorandum in Support of Motion for Summary Judgment, # 2 Separate Statement of Undisputed Material Fact, # 3 Declaration of Bryan Range, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Text of Proposed Order)(GURA, ALAN) (Entered: 01/15/2021) |
| 01/15/2021 | 14 | Statement *of Undisputed Facts* by WILLIAM BARR, REGINA LOMBARDO. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(KOOB, PAUL) (Entered: 01/15/2021) |
| 02/05/2021 | 15 | RESPONSE in Opposition re 13 MOTION for Summary Judgment filed by WILLIAM BARR, REGINA LOMBARDO. (KOOB, PAUL) (Entered: 02/05/2021) |
| 02/05/2021 | 16 | Statement *in Response to Plaintiff's Proposed Undisputed Material Facts in Support of his Motion for Summary Judgment* by WILLIAM BARR, REGINA LOMBARDO. (KOOB, PAUL) (Entered: 02/05/2021) |
| 02/05/2021 | 17 | RESPONSE in Opposition re 12 MOTION for Summary Judgment filed by Bryan David Range. (Attachments: # 1 Statement in Opposition to Defendants' Statement of Facts, # 2 Text of Proposed Order, # 3 Deposition Transcript of Bryan Range)(GURA, ALAN) (Entered: 02/05/2021) |
| 02/12/2021 | 18 | REPLY to Response to Motion re 12 MOTION for Summary Judgment filed by WILLIAM BARR, REGINA LOMBARDO. (KOOB, PAUL) (Entered: 02/12/2021) |
| 04/06/2021 | 19 | NOTICE of Hearing on Motion 12 MOTION for Summary Judgment , 13 MOTION for Summary Judgment : ORAL ARGUMENT IS SET FOR 6/1/2021 AT 10:00 AM IN COURTROOM 10B BEFORE THE HONORABLE GENE E.K. PRATTER.(sfl, ) (Entered: 04/06/2021) |
| 05/19/2021 | 20 | NOTICE RESCHEDULING Hearing on Motion 12 MOTION for Summary Judgment , 13 MOTION for Summary Judgment : ORAL ARGUMENT IS SET FOR 7/1/2021 AT 10:00 AM IN Courtroom 10B BEFORE THE HONORABLE GENE E.K. PRATTER.(sfl, ) (Entered: 05/19/2021) |
| 07/07/2021 | 21 | Minute Entry for proceedings held before HONORABLE GENE E.K. PRATTER Motion Hearing held on 7/1/21 re 12 MOTION for Summary Judgment filed by REGINA LOMBARDO, WILLIAM BARR, 13 MOTION for Summary Judgment filed by Bryan David Range (JL ) (Entered: 07/07/2021) |
| 08/31/2021 | 22 | MEMORANDUM AND/OR OPINION RE: MOTIONS FOR SUMMARY JUDGMENT 12 AND 13 .. SIGNED BY THE HONORABLE GENE E.K. PRATTER ON 8/30/2021. 8/31/2021 ENTERED AND COPIES E-MAILED.(sfl, ) (Entered: 08/31/2021) |
| 08/31/2021 | 23 | ORDER RE: THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT 12 IS GRANTED; MR. RANGE'S MOTION FOR SUMMARY JUDGMENT 13 IS DENIED; MR. RANGE'S COMPLAINT IS DISMISSED WITH PREJUDICE; AND THE CLERK OF COURT SHALL MARK THIS CASE CLOSED FOR ALL PURPOSES INCLUDING STATISTICS. SIGNED BY THE HONORABLE GENE E.K. PRATTER ON 8/30/2021. 8/31/2021 ENTERED AND COPIES E-MAILED.(sfl, ) (Entered: 08/31/2021) |

| 09/29/2021 | 24 | NOTICE OF APPEAL as to 23 Order (Memorandum and/or Opinion), 22 Memorandum and/or Opinion by Bryan David Range. Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk. **(REFILED USING THE PAYMENT EVENT, SEE DOCUMENT 25 FOR APPEAL)** (GURA, ALAN) Modified on 10/1/2021 (tjd). (Entered: 09/29/2021) |
| 09/29/2021 | 25 | NOTICE OF APPEAL as to 23 Order (Memorandum and/or Opinion), 22 Memorandum and/or Opinion by Bryan David Range. Filing fee $ 505, receipt number APAEDC-15443048. Copies to Judge, Clerk USCA, and Appeals Clerk. (GURA, ALAN) Modified on 10/1/2021 (tjd). (Entered: 09/29/2021) |
| 09/30/2021 | 26 | NOTICE of Docketing Record on Appeal from USCA re 25 Notice of Appeal (Credit Card Payment) filed by Bryan David Range. USCA Case Number 21-2835 (amas, ) (Entered: 09/30/2021) |
| 09/30/2021 | 27 | TRANSCRIPT of HEARING ON MOTIONS FOR SUMMARY JUDGMENT held on 7/1/21, before Judge GENE E.K. PRATTER. Court Reporter/Transcriber KATHLEEN FELDMAN. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 10/21/2021. Redacted Transcript Deadline set for 11/1/2021. Release of Transcript Restriction set for 12/29/2021. (amas, ) (Entered: 09/30/2021) |
| 09/30/2021 | 28 | Notice of Filing of Official Transcript with Certificate of Service re 27 Transcript - PDF. 9/30/21 Entered and Copies E-Mailed.(amas, ) (Entered: 09/30/2021) |

Appx018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM BARR, Attorney General of the | ) | |
| the United States; REGINA LOMBARDO, | ) | |
| Acting Director, Bureau of Alcohol, | ) | |
| Tobacco, Firearms and Explosives, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Bryan David Range, by and through undersigned counsel, complains of Defendants as follows:

## INTRODUCTION

About a quarter century ago, Bryan Range was convicted of concealing some of his meager income so that he could obtain additional food stamps for his family—a class one misdemeanor. Range served no jail time, and eventually made restitution. Range remains a gainfully employed, peaceful and productive family man, with no other meaningful criminal record. Yet Range suffers from a lifetime prohibition on the possession of firearms, owing to his ancient misdemeanor conviction, in violation of his Second Amendment rights. He deserves relief.

## THE PARTIES

1.      Plaintiff Bryan David Range is a natural person and citizen of Pennsylvania and of the United States, residing in Elizabethtown, Lancaster County, Pennsylvania. Mr. Range presently intends to purchase and possess a handgun and long gun for self-defense within his own home, but is prevented from doing so only by defendants' active enforcement of unconstitutional policies complained of in this action.

2.      Defendant William Barr is sued in his capacity as the Attorney General of the United States. As Attorney General, Barr is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices and policies complained of in this action.

3.      Regina Lombardo is sued in her capacity as the Acting Director and Head of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"). In that capacity, Lombardo is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices and policies complained of in this action.

2

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 1343, 1346, 2201, and 2202.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B) and

(C), as a substantial part of the events and omissions giving rise to the claim

occurred, and the Plaintiff resides, in this judicial district.

## STATEMENT OF FACTS

*Plaintiff's Background*

6.      Bryan David Range is over the age of 21, is not under indictment, has

never been convicted of a felony or misdemeanor crime of domestic violence, is

not a fugitive from justice, is not an unlawful user of or addicted to any controlled

substance, has not been adjudicated a mental defective or committed to a mental

institution, has not been discharged from the Armed Forces under dishonorable

conditions, has never renounced his citizenship, and has never been the subject of

a restraining order relating to an intimate partner.

7.      On August 8, 1995, Range was convicted by the Court of Common

Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a),

making a false statement to obtain $2,458 in food stamps/assistance, by not fully

disclosing his income. The offense allegedly occurred at various times up to and

including January 31, 1994. Owing to the amount at issue, Range's offense was

graded as a first degree misdemeanor.

8.     In Pennsylvania, a first degree misdemeanor is punishable by up to

five years' imprisonment, but carries no mandatory minimum sentence. 18 Pa. C.S.

§ 1104(1).

9.     At the time of Range's violation, his then-wife was unemployed, and

Range was earning approximately $9-$9.50 an hour mowing lawns, taking home

approximately $300 a week. The couple was struggling to raise three children—a

three and a half year old and twin two-year olds—on this income. Range's wife

had made the food stamp application, but no matter: Range pled guilty to under-

reporting his income. He was sentenced to three years probation, which he

successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458

in restitution, which he paid.

10.     Range acknowledges that it was wrong for him to receive the

additional food stamps based on the income information provided in the

application for assistance. He has remained peaceful and on the whole law-

abiding. His only other criminal history consists of minor traffic and parking

infractions, as well as a summary offense of fishing without a license in 2011.

4

11.     Range has been married for the past 18 years to his second wife, with whom he has been together for the past 25 years. He has lived at the same address for the past 24 years. The couple has successfully raised five now-adult children.

12.     Range is in his thirteenth year of employment as a machinist, prior to which he was self-employed as a painter for five years. Before then, was employed for ten years as a color technician for a printer.

*Defendants' Regulatory Scheme*

13.     Title 18, United States Code § 922(g)(1) prohibits the possession of firearms by any person convicted of "a crime punishable by imprisonment for a term exceeding one year." Violation of this provision is a felony criminal offense punishable by fine and imprisonment of up to ten years. See 18 U.S.C. § 924(a)(2).

14.     The term "crime punishable by imprisonment for a term exceeding one year" "does not include . . . (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). The Department of Justice has adopted the position that "crime punishable by imprisonment for a term exceeding one year," as used in 18 U.S.C. § 922(g)(1), includes state misdemeanors carrying statutory sentencing ranges exceeding two years, without regard to any mandatory minimum

Appx023

sentence. The Third Circuit has endorsed this view. *Binderup* v. *Atty. Gen'l*, 836 F.3d 336 (3d Cir. 2016) (en banc).

15.    Title 18, United States Code § 922(d)(1) prohibits anyone from transferring firearms or ammunition to anyone whom the transferor has reason to know was convicted of "a crime punishable by imprisonment for a term exceeding one year." Violation of this provision is a felony criminal offense punishable by fine and imprisonment of up to ten years. See 18 U.S.C. § 924(a)(2).

16.    All firearms purchasers within the United States who do not possess a Federal Firearms License, meaning, virtually all ordinary civilian consumers of firearms, must complete "Form 4473, Firearms Transaction Record Part I – Over-The-Counter," administered under Defendants' authority, in order to purchase a firearm. 27 C.F.R. § 478.124. Question 11(c) on Form 4473 asks:

> Have you ever been convicted in any court of a **felony**, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?

17.    Defendants instruct firearm dealers not to sell firearms to anyone who answers "yes" to this question. Indeed, Defendants instruct firearm dealers to refrain from even running a background check on anyone who answers yes to this question, and simply to deny the transaction on the basis of that answer:

6

> If a prospective purchaser answered "yes" to any of the questions on the ATF Form 4473 (other than questions 9 a. and 9 l. of the 10/98 edition), you should not contact the NICS because the subject is prohibited from purchasing.

BATF FFL Newsletter, May, 2001, Issue I, at 14, available at http://www.atf.gov/

files/publications/newsletters/ffl/ffl-newsletter-2001-05.pdf (last visited June 10,

2020).

> If the prospective purchaser answers "yes" to any of the questions [regarding eligibility to possess firearms], the licensee has reasonable cause to believe that the transferee is prohibited. Accordingly, the transfer of a firearm to such a person would be in violation of Federal law. This is true regardless of whether the licensee received an "proceed" or "denied" response from NICS. In fact, there is no reason for the licensee to even contact NICS after a person indicates on the Form 4473 that he or she is prohibited from receiving firearms. The licensee should simply advise the prospective purchaser that the firearm may not be transferred.

BATF FFL Newsletter, September 1999, Issue II, at 2, available at

https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter

-september-1999/download (last visited June 10, 2020).

*Defendants' Thwarting of Plaintiff's Presently Intended Transactions*

18.     Range desires and intends to possess firearms for self-defense and for

defense of his family.

19.     Owing to his misdemeanor conviction, Range is prohibited by

Defendants from following through with his intent to obtain a firearm, based on

7

Defendants' enforcement of 18 U.S.C. § 922(g)(1).

20.     Range refrains from obtaining a firearm only because he reasonably

fears arrest, prosecution, incarceration and fine, under 18 U.S.C. § 922(g)(1),

instigated and directed by Defendants, should he follow through with his plan to

obtain a firearm.

21.     Range refrains from purchasing a firearm from a private party,

because doing so would subject him to arrest, prosecution, fine, and incarceration,

at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(1).

22.     Should Range answer, on Form 4473, that he has been convicted of a

crime punishable by imprisonment for over one year, any federal firearms licensee

who follows Defendants' directives would refuse to sell Range a firearm on

account of the fact that Range is prohibited from possessing firearms under 18

U.S.C. § 922(g)(1). Thus, Range suffers the on-going harm of being unable to

obtain firearms from licensed federal firearms dealers, which Range would, in fact,

obtain but for the enforcement of 18 U.S.C. § 922(g)(1).

COUNT ONE
INDIVIDUALIZED, AS-APPLIED CLAIM FOR RELIEF
RIGHT TO KEEP AND BEAR ARMS, U.S. CONST. AMEND. II

23.     The allegations of paragraphs 1 through 22 are incorporated as

though fully set forth herein.

8

24.     Range is a responsible, virtuous, law-abiding American citizen. He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen. Range is unlikely to act in a manner dangerous to public safety, and his possession of firearms would not be contrary to the public interest.

25.     On account of Bryan David Range's unique personal circumstances, including but not limited to the non-serious nature of his misdemeanor conviction, the passage of time since that conviction, Range's generally law-abiding record over the years, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose, it is unconstitutional to apply against Range, personally, the firearms prohibition of 18 U.S.C. § 922(g)(1), on account of his misdemeanor conviction under 62 Pa. C.S. § 481(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1.     A declaration that 18 U.S.C. § 922(g)(1) cannot be applied against Bryan David Range on account of his 1995 misdemeanor conviction under 62 Pa. C.S. § 481(a);

9

2.      A declaration that application of 18 U.S.C. § 922(g)(1) against Bryan

David Range, on account of his 1995 misdemeanor conviction under 62 Pa. C.S. §

481(a), violates the Second Amendment to the United States Constitution;

3.      An order permanently enjoining Defendants, their officers, agents,

servants, employees, and all persons in active concert or participation with them

who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(g)(1)

against Bryan David Range on the basis of his1995 misdemeanor conviction under

62 Pa. C.S. § 481(a), and FURTHER directing Defendants to issue Bryan David

Range a Unique Personal Identification Number ("UPIN") under the National

Instant Background Check System ("NICS") with which he may purchase

firearms, unless Range is prohibited from possessing firearms for reasons other

than his 1995 conviction under 62 Pa. C.S. § 481(a);

4.      A declaration that Bryan David Range's 1995 conviction under 62 Pa.

C.S. § 481(a) does not require him to acknowledge a disabling conviction when

purchasing firearms;

5.      Costs of suit;

6.      Attorney Fees and Costs pursuant to 28 U.S.C. § 2412; and

7.      Any other further relief as the Court deems just and appropriate.

Dated: July 8, 2020                    Respectfully Submitted,


                                       By: _/s/ Micahel P. Gottlieb_____

Alan Gura                                  Michael P. Gottlieb
Gura PLLC                                      PA Bar No. 36678
916 Prince Street, Suite 107               319 Swede Street
Alexandria, VA 22314                       Norristown, PA 19401
703.835.9085/Fax 703.997.7665          610.279.4200
alan@gurapllc.com                          Mikem1a1@aol.com

*Admission pro hac vice pending        Attorneys for Plaintiff

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BRYAN DAVID RANGE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BARR, Attorney General | : | |
| of the United States, *et al*, | : | NO. 5:20-CV-03488-GEKP |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## **ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

William Barr, Attorney General of the United States, and Regina Lombardo,

Acting Director, Bureau of Alcohol, Tobacco, Firearms and Explosives, in their

official capacities (collectively, "defendants"), by and through their attorneys,

William M. McSwain, United States Attorney for the Eastern District of

Pennsylvania, Paul J. Koob and Eric D. Gill, Assistant United States Attorneys,

hereby answer plaintiff's Complaint as follows:

## **INTRODUCTION**

Plaintiff's introductory paragraph contains conclusions of law to which no

response is required. To the extent that any of the allegations contained in the

introductory paragraph of the complaint may be deemed to contain allegations of

material fact, those allegations are denied.

1

## THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 1 and therefore denies them.

2.      Admitted in part and denied in part. Defendants admit plaintiff seeks to sue William Bar in his official capacity as Attorney General of the United States. By way of further response, defendants admit that Barr currently serves as Attorney General. The remaining allegations of paragraph 2 contain conclusions of law to which no response is required. To the extent that any of those remaining allegations contained in paragraph 2 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

3.      Admitted in part and denied in part. Defendants admit plaintiff seeks to sue Regina Lombardo in her official capacity as the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives. By way of further response, defendants admit that Lombardo is the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives. The remaining allegations of paragraph 3 contain conclusions of law to which no response is required. To the extent that any of those remaining allegations contained in paragraph 3 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

## JURISDICTION AND VENUE

4.      Paragraph 4 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in

paragraph 4 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

5.    Paragraph 5 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 5 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

## STATEMENT OF FACTS

6.    Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 6 and therefore denies them.

7.    Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 7 and therefore denies them.

8.    Paragraph 8 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 8 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

9.    Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 9 and therefore denies them.

10.     Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 10 and therefore denies them.

11.     Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 11 and therefore denies them.

12.     Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 12 and therefore denies them.

*Defendants' Regulatory Scheme*

13.     Paragraph 13 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 13 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

14.     Paragraph 14 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 14 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

15.     Paragraph 15 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 15 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

4

16.     Paragraph 16 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 16 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

17.     Admitted.

*Defendants' Thwarting of Plaintiff's Presently Intended Transactions*

18.     Defendants lack knowledge or information sufficient to form a reasonable belief as to the truth or falsity of the allegations of paragraph 18 and therefore denies them.

19.     Paragraph 19 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 19 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

20.     Paragraph 20 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 20 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

21.     Paragraph 21 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 21 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

22.     Paragraph 22 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 22 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

## COUNT I

23.     Defendants hereby incorporate their answers and responses to paragraphs 1-22 of plaintiff's complaint as if set forth herein in their entirety.

24.     Paragraph 24 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 24 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

25.     Paragraph 25 of the complaint contains conclusions of law to which no response is required. To the extent that any of the allegations contained in paragraph 25 of the complaint may be deemed to contain allegations of material fact, those allegations are denied.

The WHEREFORE paragraph immediately following paragraph 25 of plaintiff's complaint contains plaintiff's prayer for relief to which no response is required. Defendants deny each and every allegation of material fact set forth in plaintiff's complaint not herein before admitted, denied or otherwise modified.

6

## DEFENDANTS' AFFIRMATIVE DEFENSES

<u>First Affirmative Defense: Laches</u>

Range's lawsuit is barred under the equitable doctrine of laches. "Laches is an equitable defense and as such 'the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir. 1971) (quoting *The Key City*, 81 U.S. 653, 660 (1871)). In this case, Range was convicted of an underlying criminal offense in 1995 that prohibited him from possessing firearms. But Range did not bring this lawsuit until 2020—or twenty-five years after his conviction.

Range's delay prejudices the defense's ability to develop facts from the 1995 conviction that might demonstrate the seriousness of plaintiff's offense. Those facts are important because "there are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." *Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336, 351 (3d Cir. 2016) (en banc). Although a plurality of three judges stated in *Binderup* that a court "look[s] only to a crime's elements rather than to the way it actually was committed," the plurality nonetheless noted the district court's findings about the factual circumstances of the offense. *Id.* at 351 n.4. Range's delay in bringing this lawsuit prejudices the government's ability to develop similar facts in this case.

Respectfully submitted,

/s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney

7

Appx036

s/ Paul J. Koob
PAUL J. KOOB
ERIC D. GILL
Assistant United States Attorneys
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476
215-861-8432/8250 (phone)
215-861-8618 (facsimile)
Paul.Koob@usdoj.gov
Eric.Gill@usdoj.gov

*Attorneys for the United States of America*

Appx037

**CERTIFICATE OF SERVICE**

I certify that on this day, the foregoing "Answer to Complaint and Affirmative Defenses," was filed electronically and is available for viewing and downloading from the court's ECF system.

Dated: September 21, 2020                    s/ Paul J. Koob
                                             PAUL J. KOOB
                                             Assistant United States Attorney

Appx038

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. 5:20-CV-03488-GEKP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. ROSEN, Acting Attorney General of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACT IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| Fact | | Evidence | |
|---|---|---|---|
| 1. | Bryan David Range, residing in Elizabethtown, Lancaster County, Pennsylvania, presently intends to purchase and possess firearms for self-defense within his own home and for hunting. | 1. | Range Decl., ¶ 1. |
| 2. | Range is over the age of 21, is not under indictment, has never been convicted of a felony or misdemeanor crime of domestic violence, is not a fugitive from justice, is not an unlawful user of or addicted to any controlled substance, has not been adjudicated a mental defective or committed to a mental institution, has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner. | 2. | Range Decl., ¶ 2. |

| Fact | | Evidence | |
|---|---|---|---|
| 3. | On August 8, 1995, Range was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing his income. | 3. | Exh. A; Exh. B; Range Decl., ¶ 3. |
| 4. | Range's offense was graded as a first degree misdemeanor. | 4. | Exh. B. |
| 5. | In Pennsylvania, a first degree misdemeanor is punishable by up to five years' imprisonment, but carries no mandatory minimum sentence. | 5. | 18 Pa. C.S. § 1104(1) |
| 6. | At the time of Range's violation in January 1994, he was earning approximately $9-$9.50 an hour mowing lawns, taking home approximately $300 a week. | 6. | Range Decl., ¶ 4. |
| 7. | Range and his then-wife were struggling to raise three children—a three and a half year old and twin two-year olds—on this income. Range's wife could not work as she was the children's primary caregiver. | 7. | Range Decl., ¶ 4. |
| 8. | Range's wife had prepared the food stamp application, which she and Range both signed. | 8. | Range Decl., ¶ 5. |
| 9. | The application under-reported Range's income. | 9. | Range Decl., ¶ 5. |
| 10. | Range does not recall reviewing the application, but he accepted responsibility for signing it and acknowledged that it was wrong for him to receive additional food stamps without having fully disclosed his income. | 10. | Range Decl., ¶ 5. |
| 11. | Accordingly, Range agreed to plead guilty to violating 62 Pa. C.S. § 481(a). He was sentenced to three years' probation, which he successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which he paid. | 11. | Range Decl., ¶¶ 5-6; Exh. A; Exh. B. |

2

| Fact | | Evidence | |
|---|---|---|---|
| 12. | Range's only other criminal history consists of minor traffic and parking infractions, as well as a summary fishing offense in 2011 when he could not produce a license while fishing at the Susquehanna River. Range erred in thinking that he had renewed his fishing license. He paid fines for not having the license when asked by the fishing officer, and for not having the license he claimed. The incident did not impact Range's ability to fish. | 12. | Range Decl., ¶ 7. |
| 13. | Range has never engaged in violence, nor has he ever threatened anyone with violence. | 13. | Range Decl., ¶ 8. |
| 14. | To the extent that Range has possessed firearms and other weapons, he has always been careful to keep and use these responsibly. | 14. | Range Decl., ¶ 8. |
| 15. | Range has always strived to comply with the law, including weapons laws, which he has never knowingly violated. | 15. | Range Decl., ¶ 8. |
| 16. | Range has been married for the past 18 years to his second wife, with whom he has been together for the past 25 years. | 16. | Range Decl., ¶ 9. |
| 17. | He has lived at the same address for the past 24 years. | 17. | Range Decl., ¶ 9. |
| 18. | Range and his wife have successfully raised five now-adult children. | 18. | Range Decl., ¶ 9. |
| 19. | Range has been productively employed throughout his adult life. He is in his thirteenth year of employment as a machinist, prior to which he was self-employed as a painter for five years. Before then, was employed for ten years as a color technician for a printer. | 19. | Range Decl., ¶ 10. |

Appx041

| Fact | | Evidence | |
|------|--|----------|--|
| 20. | Range was not represented by counsel during his prosecution for violating 62 Pa. C.S. § 481(a). | 20. | Range Decl., ¶ 11; Exh. A. |
| 21. | When Range pleaded guilty to violating 62 Pa. C.S. § 481(a), he understood only that he was pleading guilty to a misdemeanor, for which he would receive probation, be fined, and ordered to make restitution. | 21. | Range Decl., ¶ 12. |
| 22. | Range was not advised of the maximum potential sentence, and he was not advised that the plea would cause him to be barred from possessing firearms. | 22. | Range Decl., ¶ 12. |
| 23. | Not suspecting that he was barred from possessing firearms, Range attempted to purchase a firearm, and was rejected by the instant background check system. | 23. | Range Decl., ¶ 13. |
| 24. | Upon that rejection, a gun store employee reviewed with Range a list of prohibiting offenses, none of which Range committed. The employee then advised Range that the rejection was a typical error and that Range should just retry at a later time. | 24. | Range Decl., ¶ 13. |
| 25. | Years later, Range was again denied a firearms purchase, and was again led to believe the rejection was a mistake as he had not committed any of the offenses that he was told were prohibiting. | 25. | Range Decl., ¶ 13. |
| 26. | Range researched the matter further and was surprised to learn that he was barred from possessing firearms on account of his public assistance conviction. He thus immediately disposed of the only firearm within his possession. | 26. | Range Decl., ¶ 14. |
| 27. | Defendants instruct firearm dealers not to sell firearms to prospective purchasers who state that they have been convicted of a felony or other offense punishable by imprisonment for over a year. | 27. | Answer, ¶ 17. |

4

| Facts | | Evidence | |
|---|---|---|---|
| 28. | "Section 922(g)(1) is by far the most frequently applied of Section 922(g)'s firearms disqualifications, forming the basis for thousands of criminal prosecutions and tens of thousands of firearm-purchase denials each year." | 28. | Petition for a Writ of Certiorari, *Lynch* v. *Binderup*, U.S. Supreme Ct. No. 16-847, at 23 (citing U.S. Sent. Comm'n, *Quick Facts: Felon in Possession of a Firearm* (July 2016), http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Felon_in_Possession_FY15). |
| 29. | Range refrains from obtaining a firearm only firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under 18 U.S.C. § 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. | 29. | Range Decl., ¶ 15. |
| 30. | Range suffers the on-going harm of being unable to obtain firearms, which he would, in fact, obtain but for Defendants' enforcement of Section 922(g)(1). | 30. | Range Decl., ¶ 15. |

Dated: January 15, 2021          Respectfully submitted,

By: /s/ Alan Gura               By:   /s/ Michael P. Gottlieb
    Alan Gura*                          Michael P. Gottlieb
    Gura PLLC                             PA Bar No. 36678
    916 Prince Street, Suite 107          319 Swede Street
    Alexandria, VA 22314                  Norristown, PA 19401
    703.835.9085/Fax 703.997.7665        610.279.4200
    alan@gurapllc.com                    Mikem1a1@aol.com

    *Admitted pro hac vice                Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRYAN DAVID RANGE, ) Case. No. 5:20-CV-03488-GEKP
 )
  Plaintiff, )
 )
   v. )
 )
JEFFREY A. ROSEN, Acting Attorney )
General of the United States, et al., )
 )
  Defendants. )
_____ )

### Declaration of Bryan David Range

I, Bryan David Range, declare:

1. I reside in Elizabethtown, Lancaster County, Pennsylvania. I presently intend to possess firearms for self-defense in my home, and for hunting.

2. I am over 21 years old, not under indictment, and have never been convicted of a felony or of a misdemeanor crime of domestic violence. I am not a fugitive from justice or an unlawful user of or addicted to any controlled substance. I have not been adjudicated a mental defective or committed to a mental institution or discharged from the Armed Forces under dishonorable conditions, never renounced my citizenship, and have never been the subject of a restraining order relating to an intimate partner.

3. On August 8, 1995, I was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing my income.

4.      At the time of this violation, I was earning approximately $9-$9.50 an hour mowing lawns, taking home approximately $300 a week. My then-wife and I were struggling to raise three children—a three and a half year old and twin two-year olds—on this income. My wife could not work as she was the children's primary caregiver.

5.      My wife had prepared the food stamp application, which she and I both signed. The application under-reported my income. I do not recall reviewing the application, but I accepted responsibility for signing it and acknowledged that it was wrong for me to receive additional food stamps without having fully disclosed my income. Accordingly, I agreed to plead guilty to violating 62 Pa. C.S. § 481(a).

6.      I was sentenced to three years' probation, which I successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which I paid.

7.      Apart from the welfare conviction, my only other criminal history consists of minor traffic and parking infractions, as well as a summary fishing offense in 2011 when I could not produce a license while fishing at the Susquehanna River. I erred in thinking that I had renewed my fishing license. I paid fines for not having the license when asked for one by the fishing officer, and for not having the license I claimed to have. This incident did not impact my ability to fish.

8.      I have always been a peaceful person. I have never engaged in violence, nor have I ever threatened anyone with violence. To the extent that I have possessed firearms and other weapons in my life, I have always been careful to keep and use these responsibly. I have always strived to comply with the law, including weapons laws, which I have never knowingly violated.

9.      I have been married for the past 18 years to my second wife, with whom I have  been together for the past 25 years. I have lived at the same address for the past 24 years. We have successfully raised five now-adult children.

2

10.     I have been productively employed throughout my adult life. I am in my thirteenth year of employment as a machinist, prior to which I was self-employed as a painter for five years. Before then, I was employed for ten years as a color technician for a printer.

11.     I did not have a lawyer during my prosecution for violating 62 Pa. C.S. § 481(a).

12.     When I pleaded guilty to violating 62 Pa. C.S. § 481(a), I understood only that I was pleading guilty to a misdemeanor, for which I would receive probation, be fined, and be ordered to make restitution. I was not advised of the maximum potential sentence, and I was not advised that the plea would cause me to be barred from possessing firearms.

13.     Not suspecting that I was barred from possessing firearms, I attempted to purchase a firearm, and was rejected by the instant background check system. A gun store employee reviewed with me a list of prohibiting offenses, none of which I had committed. The employee then advised me that the rejection was a typical error and I should just retry at a later time. I tried again years later, was rejected again, and was again led to believe the rejection was a mistake as I had not committed any of the offenses that I was told were prohibiting.

14.     I researched the matter further and was surprised to learn that I was barred from possessing firearms on account of my misdemeanor. I immediately disposed of the only firearm I had at the time, and I was careful not to ever possess firearms or ammunition.

15.     I refrain from obtaining firearms only because I reasonably fear arrest, prosecution, incarceration and fine, under 18 U.S.C. § 922(g)(1), instigated and directed by the Defendants, if I do so. If it were not for their enforcement of 18 U.S.C. § 922(g)(1), I would have firearms.

Appx046

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _12_ day of January, 2021.

Bryan David Range

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

## DOCKET



**Docket Number: CP-36-CR-0002677-1995**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Bryan Range

Page 1 of 3

## CASE INFORMATION

Judge Assigned: Perezous, Michael J.          Date Filed: 01/01/1995          Initiation Date: 05/01/1995

OTN: E 773023-6          LOTN:          Originating Docket No:

Initial Issuing Authority:          Final Issuing Authority:

Arresting Agency: Other          Arresting Officer: Affiant

Complaint/Incident #: Unknown

Case Local Number Type(s)          Case Local Number(s)

    Legacy Docket Number          2677CR1995

    Legacy Docket Number          42304

    Criminal ID#          CR00305-95

## STATUS INFORMATION

Case Status:          Closed          Status Date          Processing Status          Complaint Date:          05/01/1995
                         01/01/1995          Migrated Case

## DEFENDANT INFORMATION

Date Of Birth:          City/State/Zip: Elizabethtown, PA  17022

Alias Name
Range, Bryan D.

## CASE PARTICIPANTS

Participant Type          Name

Defendant          Range, Bryan

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|------|-----------|-------|---------|---------------------|-------------|-----|
| 1 | 1 | | **62 § 481 §§A** | Fraud Obt Foodstamps/Assistance | 01/31/1994 | E 773023-6 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

Case Event          Disposition Date          Final Disposition
  Sequence/Description          Offense Disposition          Grade          Section
    Sentencing Judge          Sentence Date          Credit For Time Served
      Sentence/Diversion Program Type          Incarceration/Diversionary Period          Start Date
        Sentence Conditions

**Migrated Disposition**          Defendant Was Not Present

  Migrated Dispositional Event          08/08/1995          Final Disposition

    1 / Fraud Obt Foodstamps/Assistance          Guilty Plea          62 § 481 §§ A

    Perezous, Michael J.          08/08/1995

      Probation          Max of 3.00 Years          11/09/1995

CPCMS 9082          Printed: 09/08/2016

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

## DOCKET



**Docket Number: CP-36-CR-0002677-1995**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Bryan Range

Page 2 of 3

| COMMONWEALTH INFORMATION | ATTORNEY INFORMATION |
|---|---|
| <u>Name:</u>   Cheryl Ann Ondechek | <u>Name:</u> |
| District Attorney | |
| Supreme Court No:  038903 | <u>Supreme Court No:</u> |
| <u>Phone Number(s):</u> | <u>Rep. Status:</u> |
|   717-299-8100    (Phone) | <u>Phone Number(s):</u> |
| <u>Address:</u> | |
|   Lancaster County District Attorney's Office | |
|   50 N Duke Street | |
|   Lancaster, PA 17602 | |

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 01/01/1995 | | |
| Original Papers Received from Lower Court | | | |
| 1 | 08/08/1995 | | |
| Migrated Disposition | | | |
|   Migrated Automatic Registry Entry (Disposition) Text | | | |
| 2 | 08/08/1995 | | |
| Disposition Filed | | | |
| 3 | 08/08/1995 | | |
| Migrated Sentence | | | |
|   Migrated Sentence | | | |
| 1 | 08/21/1995 | | |
| CRIMINAL COMPLAINT | | | |
|   CRIMINAL COMPLAINT | | | |
| 1 | 08/25/1995 | | |
| INFORMATION FILED | | | |
|   INFORMATION FILED | | | |
| 1 | 11/09/1995 | | |
| BAIL FORFEITED AND BENCH WARRANT OR | | | |
|   BAIL FORFEITED AND BENCH WARRANT ORDERED | | | |
| 2 | 11/09/1995 | | |
| ORDER, BENCH WARRANT DISMISSED, BAI | | | |
|   ORDER, BENCH WARRANT DISMISSED, BAIL REINST. | | | |

CPCMS 9082

Printed: 09/08/2016

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

## DOCKET



**Docket Number: CP-36-CR-0002677-1995**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Bryan Range

Page 3 of 3

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 3 | 11/09/1995 | | |
| GUILTY PLEA & PLEA AGREEMENT ACCPTD | | | |
| GUILTY PLEA & PLEA AGREEMENT ACCPTD BY CT | | | |
| 1 | 10/26/1998 | | |
| CAPIAS FILED | | | |
| CAPIAS FILED | | | |

## CASE FINANCIAL INFORMATION

Last Payment Date:          Total of Last Payment:

| Range, Bryan<br>Defendant | Assessment | Payments | Adjustments | Non Monetary<br>Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Conversion State (Lancaster) | $53.86 | $0.00 | -$53.86 | $0.00 | $0.00 |
| Conversion State (Lancaster) | $3.80 | $0.00 | -$3.80 | $0.00 | $0.00 |
| Conversion County - 6411AB1211 (Lancaster) | $201.97 | $0.00 | -$201.97 | $0.00 | $0.00 |
| Conversion County - 6411AB1211 (Lancaster) | $14.25 | $0.00 | -$14.25 | $0.00 | $0.00 |
| Conversion Local (Lancaster) | $13.46 | $0.00 | -$13.46 | $0.00 | $0.00 |
| Conversion Local (Lancaster) | $0.95 | $0.00 | -$0.95 | $0.00 | $0.00 |
| Costs/Fees Totals: | $288.29 | $0.00 | -$288.29 | $0.00 | $0.00 |
| **Restitution** | | | | | |
| Restitution | $1,668.00 | $0.00 | -$1,668.00 | $0.00 | $0.00 |
| Restitution | $790.00 | $0.00 | -$790.00 | $0.00 | $0.00 |
| Restitution Totals: | $2,458.00 | $0.00 | -$2,458.00 | $0.00 | $0.00 |
| Grand Totals: | $2,746.29 | $0.00 | -$2,746.29 | $0.00 | $0.00 |

** - Indicates assessment is subrogated

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Appx050

**Received Time:**              15:52:02 08-13-20      **Source ORI:**        PAIII0000
**Summary:**              QR: PUR=C FBI=███████
**View Message Details**


**CR.PAIII0000**
**12:50 08/13/2020 50126**
**12:50 08/13/2020 19065 PAATFPH00**
**\*MRI9724353**
**TXT**
**HDR/**2L01MRI9724353
**ATN/**MITCH MAYBRAY
********************** CRIMINAL HISTORY RECORD ***********************

*************************** Introduction ***************************

This rap sheet was produced in response to the following request:

**Subject Name(s)**        RANGE.BRYAN DAVID
**State Id Number**        ████████████
**Purpose Code**           C
**Attention**              MITCH MAYBRAY

The information in this rap sheet is subject to the following caveats:

USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** ███████████ ***
REGULATED BY ACT 47, AS AMENDED. (PA)

*************************** IDENTIFICATION ***************************

**Subject Name(s)**

RANGE, BRYAN DAVID
RANGE, BRYAN DAVID  (AKA)

**Subject Description**

**FBI Number**             **State Id Number**
███████                    ████████████

**Social Security Number**
████████████

**Sex**                    **Race**
███                        ████

**Height**                 **Weight**              **Date of Birth**
██████████                 ██████████              ██████████

**Hair Color**             **Eye Color**
██████████                 ██████████

                           **Citizenship**

Appx051

```
*************************  CRIMINAL HISTORY  *************************

============================= Cycle 001 =============================
Tracking Number          E773023-6
Earliest Event Date      1995-05-18
---------------------------------------------------------------------
Arrest Date              1995-05-18
Arrest Case Number       39507
Arresting Agency         PA0360500 LANCASTER PD
Subject's Name           RANGE,BRYAN DAVID
Charge                   1
        Charge Number    1
Charge Tracking Number   E773023-6
        Charge Literal   VIOLATION PUBLIC WELFARE CODE
    Charge Description
              Statute    VIOLATION PUBLIC WELFARE CODE (PW481A
                         Pennsylvania)
    State Offense Code    PW481A
              Counts     1
            Severity     MISDEMEANOR 1
      Inchoate Charge

---------------------------------------------------------------------
Court Disposition        (Cycle 001)
Final Disposition Date   1995-05-18
Court Agency             PA0360500 LANCASTER PD
Subject's Name           RANGE,BRYAN DAVID
Charge                   1
        Charge Number    1
Charge Tracking Number   E773023-6
        Charge Literal   VIOLATION PUBLIC WELFARE CODE
    Charge Description
              Statute    VIOLATION PUBLIC WELFARE CODE (PW481A
                         Pennsylvania)
    State Offense Code    PW481A
              Counts     1
            Severity     MISDEMEANOR 1
      Inchoate Charge
          Disposition    (Convicted 1995-11-09; PLEAD GUILTY/ COUNTY
                         PROBATION/ 003 YRS/ FINES AND COSTS)
============================= Cycle 002 =============================
Earliest Event Date      1995-11-09
---------------------------------------------------------------------
Corrections              (Cycle 002)
Supervision Date         1995-11-09
Corrections Agency       PA036013G LANCASTER COUNTY
Subject's Name           RANGE, BRYAN DAVID
    Correction Action    PROBATION
        Charge Literal
    Charge Description
            Severity
Release Date             1998-11-09
```

Appx052

Agency                          LANCASTER PD; PA0360500;
Agency Telephone                7177353300
Address

                                39 WEST CHESTNUT STREET
                                LANCASTER, PA 17603

-----------------------------------------------------------------------

Agency                          LANCASTER COUNTY; PA036013G;
Agency Telephone                7176641180
Address

                                ADULT PROBATION & PAROLE,40 E KING STREET,3RD
                                FLOOR
                                LANCASTER, PA 17602

-----------------------------------------------------------------------

Agency                          LANCASTER PD; PA0360500;


* * * END OF RECORD * * *
**MRI:** 9724370 **IN:** NLI1 11888 AT 13AUG2020 15:52:02
**OUT:** M930PA0000 10 AT 13AUG2020 15:52:02

USX053

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRYAN DAVID RANGE,   :
          :  CIVIL ACTION
   Plaintiff,     :
          :
 v.         :
          :
WILLIAM BARR, Attorney General of :  No. 5:20-CV-03488-GEKP
the United States, *et al*,    :
          :
   Defendants.   :

## DEFENDANTS' RESPONSES TO PLAINTIFF BRYAN RANGE'S FIRST SET OF REQUESTS FOR ADMISSION

Under Federal Rules of Civil Procedure 26 and 36, and the Local Rules of the United States District Court for the Eastern District of Pennsylvania, defendants William B Barr, Attorney General of the United States, and Regina Lombardo, Acting Director, Bureau of Alcohol, Tobacco, Firearms and Explosives, in their official capacities (collectively, "defendants"), answer and object to plaintiff Bryan David Range's First Set of Requests for Admission as follows.

## PRELIMINARY STATEMENT

1. Defendants' investigation and development of all facts and circumstances relating to this action are ongoing. These responses and objections are without prejudice to, and are not a waiver of, defendants' right to rely on other facts or documents at trial.

2. These Responses are made without in any way waiving or intending to waive, but on the contrary, intending to preserve:

  a) All objections as to competency, relevancy, materiality, privilege, and

admissibility as evidence for any purpose in subsequent proceedings or the trial of this or any other actions;

        b)    The right to object to the use of any information that may be provided, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any other grounds;

        c)    The right to object on any ground at any time to further discovery proceedings involving or relating to the subject matter of these requests for production of documents; and

        d)    The right at any time to revise, correct, supplement, clarify, or amend this response in accordance with the Federal Rules of Civil Procedure.

3.    Defendants will produce responsive information and documents only to the extent that such information or documents are in the possession, custody, or control of defendants. Defendants' possession, custody, or control does not include any constructive possession that may be conferred by defendants' right or power to request or compel the production of information or documents from third parties or contractors.

4.    A response to a request stating objections or indicating that documents will be produced shall not be construed to mean that responsive information or documents in fact exist, that defendants performed any of the acts or omissions described in any interrogatory, or any definitions or instructions applicable to the interrogatory, or that defendants acquiesce in the characterization of the conduct or activities contained in any interrogatory, or any definitions or instructions applicable to the interrogatories.

5.    Defendants expressly reserve the right to supplement, clarify, revise, or correct any of its objections and responses, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

6.      Defendants will make any responsive documents available for inspection at the Philadelphia offices of the United States Attorney for the Eastern District of Pennsylvania. Alternatively, defendants will produce copies of the documents.

7.      Publicly available information or documents including, but not limited to court papers, and documents available on the Internet, will not be produced.

8.      These responses are not a representation or concession as to the relevance and/or relationship of the information to this action.

## REQUESTS FOR ADMISSION

1.      Defendants lack information suggesting that plaintiff Bryan David Range would potentially be less responsible with firearms than non-prohibited, law-abiding citizens generally are.

   **RESPONSE: Denied.**

2.      Making a false statement to obtain public assistance benefits does not suggest that a person's possession of firearms would pose a heightened risk, beyond that posed by non-prohibited, law-abiding citizens.

   **RESPONSE: Denied.**

3.      If plaintiff Bryan Range's conviction under 62 Pa. C.S. § 481(a) were not a "serious crime," as Defendants contend in the Rule 26(f) Joint Report, Range would be entitled to relief from the application of 18 U.S.C. § 922(g)(1).

   **RESPONSE: Denied.**

Respectfully submitted,

WILLIAM M. McSWAIN
Acting United States Attorney


/s/ Eric D. Gill
PAUL J. KOOB
ERIC D. GILL
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Email: eric.gill@usdoj.gov
Email: paul.koob@usdoj.gov

Date: December 16, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing Defendants'

Responses to Plaintiff's First Set of Requests for Admission has been served by electronic mail on

the following:


Alan Gura, Esq.                              Michael P. Gottlieb, Esq.
Gura PLLC                                    319 Swede Street
916 Prince Street                            Norristown, PA 19401
Alexandria, VA 22314
Alan@gurapllc.com                            Mikem1a1@aol.com


*Counsel for Plaintiff*


Date: December 16, 2020              */s/ Eric D. Gill*
                                     ERIC D. GILL
                                     PAUL J. KOOB
                                     Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BARR, Attorney General of | : | No. 5:20-CV-03488-GEKP |
| the United States, *et al*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Under Federal Rules of Civil Procedure 26 and 33, and the Local Civil Rules of the United

States District Court for the Eastern District of Pennsylvania, defendants William Barr, Attorney

General of the United States, and Regina Lombardo, Acting Director, Bureau of Alcohol,

Tobacco, Firearms and Explosives, in their official capacities (collectively, "defendants"),

answer and object to plaintiff Bryan David Range's First Set of Interrogatories and Request for

Production of Documents as follows:

**PRELIMINARY STATEMENT**

1.      Defendants' investigation and development of all facts and circumstances relating to

this action are ongoing. These responses and objections are without prejudice to, and are not a

waiver of, defendants' right to rely on other facts or documents at trial.

2.      These Responses are made without in any way waiving or intending to waive, but

on the contrary, intending to preserve:

a)      All objections as to competency, relevancy, materiality, privilege, and

admissibility as evidence for any purpose in subsequent proceedings or the trial of this or any other

actions;

1

b)      The right to object to the use of any information that may be provided, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any other grounds;

c)      The right to object on any ground at any time to further discovery proceedings involving or relating to the subject matter of these requests for production of documents; and

d)      The right at any time to revise, correct, supplement, clarify, or amend this response in accordance with the Federal Rules of Civil Procedure.

3.      Defendants will produce responsive information and documents only to the extent that such information or documents are in the possession, custody, or control of defendants. Defendants' possession, custody, or control does not include any constructive possession that may be conferred by defendants' right or power to request or compel the production of information or documents from third parties or contractors.

4.      A response to an interrogatory stating objections or indicating that documents will be produced shall not be construed to mean that responsive information or documents in fact exist, that defendants performed any of the acts or omissions described in any interrogatory, or any definitions or instructions applicable to the interrogatory, or that defendants acquiesce in the characterization of the conduct or activities contained in any interrogatory, or any definitions or instructions applicable to the interrogatories.

5.      Defendants expressly reserve the right to supplement, clarify, revise, or correct any of its objections and responses, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

6.      Defendants will make any responsive documents available for inspection at the Philadelphia offices of the United States Attorney for the Eastern District of Pennsylvania. Alternatively, defendants will produce copies of the documents.

2

7.      Publicly available information or documents including, but not limited to court papers, and documents available on the Internet, will not be produced.

8.      These responses are not a representation or concession as to the relevance and/or relationship of the information to this action.

## **RESPONSES TO INTERROGATORIES**

1.      If your response to Request for Admission 1 is anything other than an unqualified admission, identify all information suggesting that plaintiff Bryan David Range would potentially be less responsible with firearms than non-prohibited, law-abiding citizens generally are.

**RESPONSE: Defendant objects to the term "information," which is not defined in plaintiff's First Set of Interrogatories and Requests for Production of Documents, in so much as it can be read to encapsulate legal conclusions and, therefore, requests a response outside the boundaries of proper factual discovery. Defendants shall interpret the term "information" to include only factual information.**

**Defendants further object to this interrogatory in so much as it seeks information that is "not relevant to any party's claim or defense" nor is it "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiff's request for information regarding plaintiff's potential to be "less responsible with firearms than non-prohibited, law-abiding citizens generally are" does not serve as the standard announced in *Binderup* and reaffirmed in *Folajtar v. Barr*, Slip Op. at 21-22, No. 19-1687 (3d Cir. Nov. 24, 2020) to evaluate whether plaintiff is eligible to possess a firearm.**

**Defendants further object to this interrogatory as overbroad and unduly burdensome to the extent it seeks a response that is readily or more accessible to**

Appx061

**plaintiff.**

> **Finally, defendants object to this interrogatory as a preliminary contention interrogatory that need not be answered until discovery is complete under Fed. R. Civ. P. 33(a)(2).**

2.    If your response to Request for Admission 2 is anything other than an unqualified admission, identify all information supporting the proposition that making a false statement to obtain public assistance benefits suggests that a person's possession of firearms would pose a heightened risk, beyond that posed by non-prohibited, law-abiding citizens.

**RESPONSE: Defendant objects to the term "information," which is not defined in plaintiff's First Set of Interrogatories and Requests for Production of Documents, in so much as it can be read to encapsulate legal conclusions and, therefore, requests a response outside the boundaries of proper factual discovery. Defendants shall interpret the term "information" to include only factual information.**

> **Defendants further object to this interrogatory in so much as it seeks information that is "not relevant to any party's claim or defense" nor is it "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiff's request for information regarding plaintiff's potentially to be "a heightened risk" does not serve as the standard announced in *Binderup* and reaffirmed in *Folajtar v. Barr*, Slip Op. at 21-22, No. 19-1687 (3d Cir. Nov. 24, 2020) to evaluate whether plaintiff is eligible to possess a firearm.**

> **Defendants further object to this interrogatory as overbroad and unduly**

4

burdensome to the extent it seeks a response that is readily or more accessible to

plaintiff.

Finally, defendants object to this interrogatory as a preliminary contention

interrogatory that need not be answered until discovery is complete under Fed. R. Civ.

P. 33(a)(2).

3.      If your response to Request for Admission 3 is anything other than an unqualified

admission, identify all information supporting the proposition that plaintiff Bryan Range

should be subject to the prohibition of 18 U.S.C. § 922(g)(1) even if his conviction under

62 Pa. C.S. § 481(a) were not a "serious crime."

**RESPONSE**: Defendant objects to the term "information," which is not defined in

plaintiff's First Set of Interrogatories and Requests for Production of Documents, in so

much as it can be read to encapsulate legal conclusions and, therefore, requests a

response outside the boundaries of proper factual discovery. Defendants shall interpret

the term "information" to include only factual information.

Defendants further object to this interrogatory as overbroad and unduly

burdensome to the extent it seeks a response that is readily or more accessible to

plaintiff.

Finally, defendants object to this interrogatory as a preliminary contention

interrogatory that need not be answered until discovery is complete under Fed. R. Civ.

P. 33(a)(2).

4.      Please identify all persons who have knowledge or possess information regarding

Plaintiff's claims, and for each such person identified, indicate the subject matter about

which you believe that person is knowledgeable.

**RESPONSE**: **Bryan David Range: plaintiff likely has knowledge about his criminal history, including his disqualifying offense. Defendants explicitly reserve their right to supplement this response.**

5.      Please identify the evidence supporting your contention that Plaintiff's conviction for violating 62 Pa. C.S. § 481(a) was a "serious crime."

**RESPONSE**: **Defendant objects to this interrogatory as a preliminary contention interrogatory that need not be answered until discovery is complete under Fed. R. Civ. P. 33(a)(2).**

Appx064

## REQUEST FOR PRODUCTION

1.  Please produce any and all documents described, identified, relied upon, or referred to in

    your responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of

    Requests for Admission.


**RESPONSE: Defendants direct plaintiff to documents previously produced at USA0001-3.**

Respectfully submitted,

WILLIAM M. McSWAIN
Acting United States Attorney

*/s/ Paul J. Koob*
PAUL J. KOOB
ERIC D. GILL
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Email: eric.gill@usdoj.gov
Email: paul.koob@usdoj.gov

Date: December 16, 2020

Appx065

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing Defendants'

Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents

has been served by electronic mail on the following:

Alan Gura, Esq.                          Michael P. Gottlieb, Esq.
Gura PLLC                                319 Swede Street
916 Prince Street                        Norristown, PA 19401
Alexandria, VA 22314
Alan@gurapllc.com                        Mikem1a1@aol.com

    *Counsel for Plaintiff*

Date: <u>December 16, 2020</u>        <u>*/s/ Paul J. Koob*            </u>
                                      ERIC D. GILL
                                      PAUL J. KOOB
                                      Assistant United States Attorneys

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BRYAN DAVID RANGE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | No. 20-cv-3488 |
| | : | |
| JEFFREY ROSEN, Acting Attorney | : | |
| General of the United States, REGINA | : | |
| LOMBARDO, Acting Director, Bureau of | : | |
| Alcohol, Tobacco, Firearms, and Explosives, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.      On August 8, 1995, in the Court of Common Pleas of Lancaster County, Pennsylvania, Range pled guilty to making a false statement to fraudulently obtain public assistance. Compl. ¶ 7.

2.      Specifically, he falsified his income when he and his wife jointly applied to receive approximately $2,458 in welfare assistance in violation of 62 Pa. C.S.A. § 481(a). *Id.*

3.      The Court of Common Pleas sentenced him to three years of probation; he was assessed a $100 fine, $288.29 in costs and eventually paid $2,458 in restitution. Compl. ¶ 9.

4.      Under Pennsylvania law, Range's crime was graded as a first-degree misdemeanor, which is punishable by up to five years' imprisonment. *See* 18 Pa. C.S.A. § 1104(1); Compl. ¶¶ 7-8.

5.      In the attached survey, *forty-two* states treat welfare fraud in the amount Range stole to be a felony, in many cases punishable by a year or more in prison. *See Defendants' 50 State Survey,* attached hereto as Exhibit 1.

6.      The amount of welfare fraud that triggers felony status varies, with some states treating a $100 violation as a potential felony, and others $2,500. *Id.* (*see* Arkansas statutory threshold at $100 or more and Colorado statutory threshold at $2,500).

7.      By contrast, *only seven* states treated a similar crime as a misdemeanor, and one state was equivocal in its treatment. *See* Exhibit 1.

8.      Range claims to be ignorant that his conviction prevented him from owning a firearm until years later. *See* December 30, 2020 Deposition of Bryan David Range ("Range Dep.") at 17-18, 20-21, excerpts attached hereto as Exhibit 2.

9.      However, he was prevented from purchasing a hunting rifle in 1998. Range Dep. 18-19.

10.      Specifically, Pennsylvania's Instant Check System ("PICS") prevented Range from buying the rifle at a gun store. *Id.*

11.      Shortly thereafter and knowing that the PICS system had denied him the ability to purchase a rifle, his wife circumvented that denial by buying the hunting rifle for him. Range Dep. 14-16; 21-22.

12.      Range possessed that hunting rifle and a shotgun until he lost both firearms in a house fire in 2006. Range Dep. at 15.

13.      After the fire and knowing that he could not legally purchase a firearm because of the PICS system, Range's wife bought him another hunting rifle. Range Dep. at 16-17.

2

14.     He possessed that rifle for a few years of ownership before selling it to a gun shop. Range Dep. at 15-16.

15.     Finally, in 2011, Range violated the law again. Range committed summary offenses of making a false statement and fishing without a license. Range Dep. Tr. at 37-39.

16.     He paid a summary fine of $200. *See* Plaintiffs' Response to Defendants' Interrogatories at 3-4, excerpts attached hereto as Exhibit 3.

                                    Respectfully submitted,

                                    WILLIAM M. MCSWAIN
                                    United States Attorney

                                    s/ Susan R. Becker for GBD
                                    GREGORY B. DAVID
                                    Assistant United States Attorney
                                    Chief, Civil Division


                                    s/ Paul J. Koob
                                    PAUL J. KOOB
                                    ERIC D. GILL
                                    Assistant United States Attorneys
                                    Eastern District of Pennsylvania
                                    615 Chestnut Street, Suite 1250
                                    Philadelphia, PA 19106-4476
                                    215-861-8432/8250 (phone)
                                    215-861-8618 (facsimile)
                                    Paul.Koob@usdoj.gov
                                    Eric.Gill@usdoj.gov

                                    *Attorneys for Defendants*

Dated: January 15, 2021

3

## CERTIFICATE OF SERVICE

I certify that on this day, the foregoing "Statement of Undisputed Facts" and supporting documents were filed electronically and are available for viewing and downloading from the court's ECF system.

Dated: January 15, 2021

s/ Paul J. Koob
PAUL J. KOOB
Assistant United States Attorney

4

# EXHIBIT 1

# Defendant's Fifty State Survey of Laws Criminalizing Fraudulently Obtaining Food Stamps

*Bryan D. Range v. Jeffrey Rosen, et al.*, No. 20-cv-0388 (E.D. Pa.)

**Methodology**:

Pennsylvania makes it either a misdemeanor or felony to fraudulently obtain food stamps or public assistance, depending on the amount of benefits received. *See* 62 Pa. Cons. Stat. Ann. § 481(a). Defendant Bryan D. Range was convicted of this offense.

This survey lists the statutes that would apply to Range's conduct had it occurred in each state. This survey relies upon the narrowest statute that applies, similar to how Range was charged in Pennsylvania. In other words, if a broader statute criminalizes the same conduct, then this survey relies upon any narrower statute that would encompass the alteration of vehicle permits.

Many states classify fraudulently obtaining benefits as both a misdemeanor and a felony, depending on the monetary value of the benefits improperly received. However, the amount of money that triggers a felony conviction differs significantly between states, anywhere between $150-$2,500.

**Summary of Results**:

Forty-two states categorize Range's conduct as a felony. Seven states, including Pennsylvania, categorize the conduct as a misdemeanor. The remaining one state characterizes the conduct in equivocal terms.

For ease of reference, this survey highlights in green the states that treat Range's conduct as a felony, in red color the states that treat it as a misdemeanor, and in yellow the states that treat it equivocally. The survey includes the statutory citations, as well as the excerpted statutory language.

Appx073

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Alabama | Felony | Ala. Code § 13A-9-91(a) <br> Ala. Code § 13A-9-150(a)(b)(e) |

In Alabama, illegal possession of food stamps is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony to illegally possess food stamps valuing $500 or more. In addition, obtaining public assistance, including food stamps, through fraud is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony to fraudulently obtain food stamps valuing $200 or more. It is possible for an individual to illegally obtain food stamps through fraud and be guilty of both a misdemeanor and a felony.

**§ 13A-9-91. Illegal possession of food stamps in the first, second, and third degree.**
(a) A person commits the crime of illegal possession of food stamps if:
  (1) He or she knowingly uses, transfers, acquires, alters, or possesses food stamp coupons or food stamp authorization cards in any manner not authorized by the Food Stamp Act of 1977, 7 U.S.C. § 2011 et seq., or the regulations issued pursuant to the act; or
  (2) He or she presents or causes to be presented food stamp coupons for payment or redemption knowing the same to have been received, transferred, or used in any manner not authorized by the Food Stamp Act of 1977, 7 U.S.C. § 2011 et seq., or the regulations pursuant to the act.
(b) Illegal possession of food stamps which exceed two thousand five hundred dollars ($2,500) in value constitutes illegal possession of food stamps in the first degree and is a Class B felony.
(c) Illegal possession of food stamps which exceed five hundred dollars ($500) in value but do not exceed two thousand five hundred dollars ($2,500) in value constitutes illegal possession of food stamps in the second degree and is a Class C felony.
(d) Illegal possession of food stamps which do not exceed five hundred dollars ($500) in value constitutes illegal possession of food stamps in the third degree and is a Class A misdemeanor.

Ala. Code § 13A-9-91(a)

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 13A-9-150. Public assistance fraud; penalties.** | |
| | (a) For the purposes of this section, public assistance means money or property provided directly or indirectly to eligible persons through programs of the federal government, the state, or any political subdivision thereof, including any program administered by a public housing authority. | |
| | (b) It shall be unlawful for an individual or business entity to knowingly do any of the following: | |
| | (1) Fail, by false statement, misrepresentation, impersonation, or other fraudulent means, to disclose a material fact used in making a determination as to the qualification of the person to receive public assistance. | |
| | (2) Fail to disclose a change in circumstances in order to obtain or continue to receive any public assistance to which he or she is not entitled or in an amount larger than that to which he or she is entitled. | |
| | (3) Aid and abet another person in the commission of the prohibitions enumerated in subdivisions (1) and (2). | |
| | (4) Use, transfer, acquire, traffic, alter, forge, possess, attempt to use, attempt to transfer, attempt to acquire, attempt to traffic, attempt to alter, attempt to forge, attempt to possess, or aid and abet another person in the use, transfer, acquisition, traffic, alteration, forgery, or possession of a food assistance identification card, an authorization, including, but not limited to, an electronic authorization, for the expenditure of food assistance benefits, a certificate of eligibility for medical services, or a Medicaid identification card in any manner not authorized by law, or to re-encode a magnetic strip on any card with information issued by any state or federal agency that grants monetary benefits that were not issued by that agency or that does not match the information on the front of the card. | |
| | (5) File, attempt to file, or aid and abet in the filing of a claim for services to, or on behalf of, a recipient of public assistance for services that were not rendered. | |
| | (6) File a false claim or a claim for nonauthorized items or services under any state or federally funded public assistance program. | |
| | (7) Bill the recipient of public assistance, or his or her family, for an amount in excess of that provided for by law or regulation. | |
| | (8) Fail to credit, return, or pay back to the state or its agents any payments received from Social Security, insurance, or other sources of funds paid or administered by any state agency that are in excess of the approved or listed amount or were received or approved based on fraud or fraudulent conduct. | |
| | (9) In any way receive, attempt to receive, or aid and abet in the receipt of unauthorized payments or other unauthorized public assistance or authorization or identification to obtain public assistance. | |
| | (10) Convert, charge, accept, or in any way take any funds administered by a public assistance program in excess of the listed price plus any applicable taxes. | |
| | (11) Receive payment that includes public assistance funds, in any form, for the purchase of items that are not authorized or are prohibited by state or federal law. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|-------|-----------------------------------|----------------------|
| ... | (e)(1) In addition to any other penalty provided by law, an individual or business entity that violates this section in an aggregate value of two hundred dollars ($200) or more shall be guilty of a Class C felony. (2) In addition to any other penalty provided by law, an individual or business entity that violates this section in an amount less than the aggregate value of two hundred dollars ($200) shall be guilty of a Class A misdemeanor. | |
| Ala. Code § 13A-9-150(a)(b)(e) | | |

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 6 of 94

Appx076

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Alaska | Misdemeanor | Alaska Stat. § 47.25.980(a)<br>Alaska Stat. § 47.25.985 |

In Alaska, illegally obtaining food stamps is a misdemeanor.

**§ 47.25.980(a). Duties of department.**
(a) The department shall
(1) adopt regulations necessary to carry out the food stamp program;
(2) cooperate with the federal government and do all things necessary to continue state eligibility under the food stamp program;
(3) comply with the requirements of 7 U.S.C. 2011 — 2036 (Food Stamp Program).

Alaska Stat. § 47.25.980(a)

**§ 47.25.985. Violations; penalty.**
(a) A person is guilty of a misdemeanor if the person
   (1) knowingly acquires, possesses, uses, alters, or transfers food stamp allotments in violation of AS 47.25.975 — 47.25.980 or the regulations adopted under AS 47.25.980;
   (2) presents food stamp allotments or causes them to be presented for payment or redemption knowing them to have been transferred, received, altered, or used in a manner violating AS 47.25.975 — 47.25.980 or the regulations adopted under AS 47.25.980;
   (3) knowingly acquires, uses, alters, or transfers a wage subsidy authorized under AS 47.25.975(b) in violation of AS 47.25.975 — 47.25.980, AS 47.27.025(e), or the regulations adopted under AS 47.25.980 or AS 47.27.025(e).
(b) Upon conviction a person shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

Alaska Stat. § 47.25.985

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Arizona | Felony | Ariz. Rev. Stat. Ann. § 46-215 |

In Arizona, welfare fraud is a felony.

**§ 46-215. Welfare fraud; program disqualification; classification**

A. A person commits welfare fraud if the person knowingly obtains by means of a false statement or representation, by impersonation or by other fraudulent device any of the following:

  1. Assistance or service to which the person is not entitled.

  2. Assistance or service greater than that to which the person is entitled.

  3. Payment of any forfeited installment grant, or aids or abets in buying or in any way disposing of the property of a recipient of assistance or service without the consent of the department.

…

F. A person who commits welfare fraud pursuant to subsection A is guilty of a class 6 felony.

Ariz. Rev. Stat. Ann. § 46-215 (a)(f)

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Arkansas | Felony | Ark. Code Ann. § 5-55-201(a)<br>Ark. Code Ann. § 5-55-203(a) |

In Arkansas, it is a felony to acquire or use food coupons which are not authorized by federal or state laws in excess of $100.

**§ 5-55-201(a). Traffic in illegal food coupons or vouchers.**
(1) Any individual, partnership, corporation, or other legal entity that issues food coupons in a manner not authorized by federal law and regulations or state law and rules or that uses, transfers, acquires, possesses, or presents any food coupons for payment not authorized by federal and state law or federal regulations and state rules is guilty of a Class D felony.
(2) However, if the food coupons are of a value of less than one hundred dollars ($100), the individual, partnership, corporation, or other legal entity is guilty of a Class A misdemeanor.

Ark. Code Ann. § 5-55-201(a)

**§ 5-55-203(a). Illegal presentation of food coupons or vouchers for payment.**
(1) Any person who presents or causes to be presented food coupons for payment or redemption of the value of one hundred dollars ($100) or more knowing the food coupons to have been received, transferred, or used in any manner in violation of a provision of the Food Stamp Act of 1977, 7 U.S.C. § 2011 et seq., or the federal regulations or state rules issued pursuant to the Food Stamp Act of 1977, 7 U.S.C. § 2011 et seq., is guilty of a Class D felony.
(2) However, if the food coupons are of a value of less than one hundred dollars ($100), the person is guilty of a Class A misdemeanor.

Ark. Code Ann. § 5-55-203(a)

Appx078

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| California | Misdemeanor | Cal. Welf. & Inst. Code § 10980(a)-(b)<br>Cal. Welf. & Inst. Code § 10980(d)<br>Cal. Welf. & Inst. Code § 10980(g) |

In California it is a misdemeanor to obtain or try to obtain state aid by making false or misleading statements. It is a felony, however, to unlawfully obtain or try to obtain aid by using a false identity, filing multiple applications for the same person, or applying for aid for a fictitious person.

**§ 10980(a)-(b). Penalties.**
(a) Any person who, willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact in order to obtain aid under the provisions of this division or who, knowing he or she is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he or she is not entitled, or to receive a larger amount than that to which he or she is legally entitled, is guilty of a misdemeanor, punishable by imprisonment in a county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.
(b) Any person who knowingly makes more than one application for aid under the provisions of this division with the intent of establishing multiple entitlements for any person for the same period or who makes an application for that aid for a fictitious or nonexistent person or by claiming a false identity for any person is guilty of a felony, punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine; or by imprisonment in a county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

Cal. Welf. & Inst. Code § 10980(a)(b)

The use or possession of blank authorizations to participate in SNAP through fraud is a felony.

**§ 10980(d). Penalties.**
(d) Any person who knowingly uses, transfers, acquires, or possesses blank authorizations to participate in the federal Supplemental Nutrition Assistance Program in any manner not authorized by Chapter 10 (commencing with Section 18900) of Part 6 with the intent to defraud is guilty of a felony, punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine.

Cal. Welf. & Inst. Code § 10980(d)

Additionally, it is either a misdemeanor or felony to use, transfer, sell, purchase, or possess CalFresh benefits in any unlawful manner, depending on the value of the benefits. It is a felony if the benefits value more than $950.

**§ 10980(g). Penalties.**
(g) Any person who knowingly uses, transfers, sells, purchases, or possesses CalFresh benefits, electronically transferred benefits, or authorizations to participate in the federal Supplemental Nutrition Assistance Program in any manner not authorized by Chapter 10 (commencing with Section 18900) of Part 6, or by the former federal Food Stamp Act of 1977 (Public Law 95-113 and all amendments thereto) or the federal Food and Nutrition Act of 2008 (7 U.S.C. Sec. 2011 et seq.) (1) is guilty of a misdemeanor if the face value of the benefits or the authorizations to participate is nine hundred fifty dollars ($950) or less, and shall be punished by imprisonment in a county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine, or (2) is guilty of a felony if the face value of the CalFresh benefits or the authorizations to participate exceeds nine hundred fifty dollars ($950), and shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both that imprisonment and fine, or by imprisonment in a county jail for a period of not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

Cal. Welf. & Inst. Code § 10980(g)

Appx081

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 11 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Colorado | Felony | Colo. Rev. Stat. § 26-2-305<br>Colo. Rev. Stat. § 18-4-401(2) |

In Colorado, obtaining food stamps through fraud is classified as either a misdemeanor or felony, depending on the value of the benefits received. It is a felony to fraudulently obtain benefits valuing $2,000 or more.

§ 26-2-305. Fraudulent acts – penalties.

(1) (a) Any person who obtains, or any person who aids or abets another to obtain, food stamp coupons or authorization to purchase cards or an electronic benefits transfer card or similar credit card-type device through which food stamp benefits may be delivered to which the person is not entitled, or food stamp coupons or authorization to purchase cards or an electronic benefits transfer card or similar credit card-type device through which food stamp benefits may be delivered the value of which is greater than that to which the person is justly entitled by means of a willfully false statement or representation, or by impersonation, or by any other fraudulent device with intent to defeat the purposes of the food stamp program commits the crime of theft, which crime shall be classified in accordance with section 18-4-401 (2), C.R.S., and which crime shall be punished as provided in section 18-1.3-401, C.R.S., if the crime is classified as a felony, or section 18-1.3-501, C.R.S., if the crime is classified as a misdemeanor. Any person violating the provisions of this subsection (1) is disqualified from participation in the food stamp program for one year for a first offense, two years for a second offense, and permanently for a third or subsequent offense. Any person convicted of trafficking in food stamp coupons as described in this subsection (1) having a value of five hundred dollars or more shall be permanently disqualified from the food stamp program.

Colo. Rev. Stat. § 26-2-305

**§ 18-4-401(2). Theft.**
(2) Theft is:
  (a) (Deleted by amendment, L. 2007, p. 1690, § 3, effective July 1, 2007.)
  (b) A class 1 petty offense if the value of the thing involved is less than fifty dollars;
  (b.5) Repealed.
  (c) A class 3 misdemeanor if the value of the thing involved is fifty dollars or more but less than three hundred dollars;
  (d) A class 2 misdemeanor if the value of the thing involved is three hundred dollars or more but less than seven hundred fifty dollars;
  (e) A class 1 misdemeanor if the value of the thing involved is seven hundred fifty dollars or more but less than two thousand dollars;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (f) A class 6 felony if the value of the thing involved is two thousand dollars or more but less than five thousand dollars;<br>(g) A class 5 felony if the value of the thing involved is five thousand dollars or more but less than twenty thousand dollars;<br>(h) A class 4 felony if the value of the thing involved is twenty thousand dollars or more but less than one hundred thousand dollars;<br>(i) A class 3 felony if the value of the thing involved is one hundred thousand dollars or more but less than one million dollars; and<br>(j) A class 2 felony if the value of the thing involved is one million dollars or more. | |
| Colo. Rev. Stat. § 18-4-401(2) | | |

Appx082

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Connecticut | Felony | Conn. Gen. Stat. 952 § 53a-119<br>Conn. Gen. Stat. 952 § 53a-122<br>Conn. Gen. Stat. 952 § 53a-123<br>Conn. Gen. Stat. 952 § 53a-124<br>Conn. Gen. Stat. 952 § 53a-125<br>Conn. Gen. Stat. 952 § 53a-125a<br>Conn. Gen. Stat. 952 § 53a-125b |

In Connecticut, obtaining public benefits through fraud is classified as a larceny. Larceny may be charged as a misdemeanor or felony depending on the value of the benefits received. It is a felony to fraudulently apply for or received benefits worth $2,000 or more.

**§ 53a-119. Larceny defined.**
(6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false; or (C) as an officer or agent of any public community, with intent to prejudice it, appropriates its property to the use of any person or draws any order upon its treasury or presents or aids in procuring to be allowed any fraudulent claim against such community. For purposes of this subdivision such order or claim shall be deemed to be property.

Conn. Gen. Stat. 952 § 53a-119

**§ 53a-122. Larceny in the first degree: Class B felony.**
(a) A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and: (1) The property or service, regardless of its nature and value, is obtained by extortion, (2) the value of the property or service exceeds twenty thousand dollars, (3) the property consists of a motor vehicle, the value of which exceeds twenty thousand dollars, or (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars.
…
(c) Larceny in the first degree is a class B felony.

Conn. Gen. Stat. 952 § 53a-122

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 53a-123. Larceny in the second degree: Class C felony.** (a) A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which exceeds ten thousand dollars, (2) the value of the property or service exceeds ten thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less, (5) the property, regardless of its nature or value, is obtained by embezzlement, false pretenses or false promise and the victim of such larceny is sixty years of age or older, or is a conserved person, as defined in section 45a-644, or is blind or physically disabled, as defined in section 1-1f, or (6) the property, regardless of its value, consists of wire, cable or other equipment used in the provision of telecommunications service and the taking of such property causes an interruption in the provision of emergency telecommunications service. ... (c) Larceny in the second degree is a class C felony. Conn. Gen. Stat. 952 § 53a-123 **§ 53a-124. Larceny in the third degree: Class D felony.** (a) A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is ten thousand dollars or less; (2) the value of the property or service exceeds two thousand dollars; (3) the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant; or (4) the property consists of a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof. A process, invention or formula is "secret" when it is not, and is not intended to be, available to anyone other than the owner thereof or selected persons having access thereto for limited purposes with his consent, and when it accords or may accord the owner an advantage over competitors or other persons who do not have knowledge or the benefit thereof. ... (c) Larceny in the third degree is a class D felony. Conn. Gen. Stat. 952 § 53a-124 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 53a-125. Larceny in the fourth degree: Class A misdemeanor.**<br>(a) A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds one thousand dollars.<br>(b) Larceny in the fourth degree is a class A misdemeanor.<br><br>Conn. Gen. Stat. 952 § 53a-125 | |
| | **§ 53a-125a. Larceny in the fifth degree: Class B misdemeanor.**<br>(a) A person is guilty of larceny in the fifth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars.<br>(b) Larceny in the fifth degree is a class B misdemeanor.<br><br>Conn. Gen. Stat. 952 § 53a-125a | |
| | **§ 53a-125b. Larceny in the sixth degree: Class C misdemeanor.**<br>(a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less.<br>(b) Larceny in the sixth degree is a class C misdemeanor.<br><br>Conn. Gen. Stat. 952 § 53a-125b | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Delaware | Felony | Del. Code Ann. tit. 31 § 610 |

In Delaware, acquiring food stamps through fraudulent or unlawful means is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $500 or more.

**§ 610. Unauthorized use, transfer, acquisition, alteration or possession of food stamp coupons, Authorization to Participate Vouchers (ATPs), or access devices; penalties; disqualification from the food stamp program; forfeiture.**

(a) Whoever knowingly uses, transfers, acquires, alters or possesses food stamp coupons, authorization cards, ATPs or access devices in any manner not authorized by the federal Food Stamp Act (7 U.S.C. § 2011 et seq.) or regulations issued pursuant to the Food Stamp Act; or who presents for payment or redemption coupons that have been illegally received, transferred, altered or used shall:

    (1) If such food stamp coupons, authorization cards or ATPs are of a value of $500 or more or the item used, transferred, acquired, altered or possessed is an access device that has a value of $500 or more, be guilty of a class E felony.

    (2) If such coupons, authorization cards or ATPs are of a value of less than $500 or if the item used, transferred, acquired, altered or possessed is an access device that has a value of less than $500, be guilty of a class A misdemeanor.

    (3) In any prosecution under this section where there is a finding that the proceeds of the trafficking involves firearms ammunition, explosives or controlled substances as defined under 21 U.S.C. § 802 be guilty of a class B felony.

(b) In addition to the penalties set forth in subsection (a) of this section, any person convicted of a felony or misdemeanor under this section may be suspended by the court from participation in the food stamp program for an additional period of up to 18 months consecutive to that period of suspension mandated by the federal Food Stamp Act pursuant to 7 U.S.C. § 2015(b)(1).

Del. Code Ann. tit. 31 § 610

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Florida | Felony | Fla. Stat. § 414.39 |

In Florida, acquiring public benefits through fraud is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $200 or more.

§ 414.39. Fraud.
(1)  Any person who knowingly:
(a)  Fails, by false statement, misrepresentation, impersonation, or other fraudulent means, to disclose a material fact used in making a determination as to such person's qualification to receive public assistance under any state or federally funded assistance program;
(b)  Fails to disclose a change in circumstances in order to obtain or continue to receive any such public assistance to which he or she is not entitled or in an amount larger than that to which he or she is entitled; or
(c)  Aids and abets another person in the commission of any such act,
commits a crime and shall be punished as provided in subsection (5).
(2)(a)  Any person who knowingly:
1.  Uses, transfers, acquires, traffics, alters, forges, or possesses;
2.  Attempts to use, transfer, acquire, traffic, alter, forge, or possess; or
3.  Aids and abets another person in the use, transfer, acquisition, traffic, alteration, forgery, or possession of,
a food assistance identification card, an authorization, including, but not limited to, an electronic authorization, for the expenditure of food assistance benefits, a certificate of eligibility for medical services, or a Medicaid identification card in any manner not authorized by law commits a crime and shall be punished as provided in subsection (5).
...
(5)(a)  If the value of the public assistance or identification wrongfully received, retained, misappropriated, sought, or used is less than an aggregate value of $200 in any 12 consecutive months, such person commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(b)  If the value of the public assistance or identification wrongfully received, retained, misappropriated, sought, or used is of an aggregate value of $200 or more, but less than $20,000 in any 12 consecutive months, such person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(c)  If the value of the public assistance or identification wrongfully received, retained, misappropriated, sought, or used is of an aggregate value of $20,000 or more, but less than $100,000 in any 12 consecutive months, such person commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (d) If the value of the public assistance or identification wrongfully received, retained, misappropriated, sought, or used is of an aggregate value of $100,000 or more in any 12 consecutive months, such person commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.<br>(e) As used in this subsection, the value of a food assistance authorization benefit is the cash or exchange value unlawfully obtained by the fraudulent act committed in violation of this section.<br>(f) As used in this section, "fraud" includes the introduction of fraudulent records into a computer system, the unauthorized use of computer facilities, the intentional or deliberate alteration or destruction of computerized information or files, and the stealing of financial instruments, data, and other assets.<br><br>Fla. Stat. § 414.39 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Georgia | Felony | Ga. Code Ann. § 49-4-15 |

In Georgia, acquiring public benefits through fraud is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $1,500 or more.

**§ 49-4-15. Fraud in obtain public assistance, food stamps, or Medicaid; penalties; recovery of overpayments.**

(a) Any person who by means of a false statement, failure to disclose information, or impersonation, or by other fraudulent device, obtains or attempts to obtain, or any person who knowingly or intentionally aids or abets such person in the obtaining or attempting to obtain:

(1) Any grant or payment of public assistance, food stamps, or medical assistance (Medicaid) to which he or she is not entitled;

(2) A larger amount of public assistance, food stamp allotment, or medical assistance (Medicaid) than that to which he or she is entitled; or

(3) Payment of any forfeited grant of public assistance;

or any person who, with intent to defraud the department, aids or abets in the buying or in any way disposing of the real property of a recipient of public assistance shall be guilty of a misdemeanor unless the total amount of the value of public assistance, food stamps, and medical assistance (Medicaid) so obtained exceeds $1,500.00, in which event such person shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than five years. In determining the amount of value of public assistance, food stamps, and medical assistance (Medicaid) obtained by false statement, failure to disclose information, or impersonation, or other fraudulent device, the total amount obtained during any uninterrupted period of time shall be treated as one continuing offense.

(b) It shall be a fraudulent device within the meaning of subsection (a) of this Code section, and punishable as therein provided, for any person:

(1) Knowingly to use, alter, or transfer food stamp coupons or authorizations to purchase food stamp coupons in any manner not authorized by law;

(2) Knowingly to possess food stamp coupons or authorizations to purchase food stamp coupons when he or she is not authorized by law to possess them;

(3) Knowingly to possess or redeem food stamp coupons or benefits when he or she is not authorized by law to possess or redeem them; or

(4) Knowingly to use or redeem food stamp coupons or benefits in any manner or for purposes not authorized by law.

...

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Ga. Code Ann. § 49-4-15 | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Hawaii | Felony | Haw. Rev. Stat. § 346-34 |

In Hawaii, acquiring public benefits through unlawful means is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $300 or more.

**§ 346-34. Frauds, penalties.**

...

(c) No person shall knowingly obtain or attempt to obtain, or aid or abet another person in obtaining or attempting to obtain, any food commodity under a food distribution program or any food stamp or coupon under a food stamp plan or an electronic benefits transfer card or similar debit card type device, to which the person or the other person is not entitled to receive or use under any law, or under any rule adopted pursuant to section 346-14 (11) or chapter 91.

(d) No person shall knowingly give, sell, trade, or otherwise dispose of to another person not entitled to receive or use the same pursuant to any law, or pursuant to any rule adopted pursuant to section 346-14 (11) or chapter 91:

    (1) Any food exceeding $300 in value received under a food distribution program or any food of any value received under a food distribution program if that food is sold or traded by the recipient;

    (2) Any food stamp or coupon received under a food stamp plan;

    (3) Any food commodity received wholly or partially in exchange for a food stamp or coupon received under a food stamp plan; or

    (4) Any electronic benefits transfer card or similar debit card type device through which food stamp benefits may be obtained by the food stamp household.

(e) No person shall knowingly buy or give any other consideration in exchange for any food stamp or coupon issued under a food stamp plan or through any electronic benefits transfer card or similar debit card type device through which food stamp benefits may be obtained by the food stamp household except in compliance with any law or any rule adopted pursuant to section 346-14 (11) or chapter 91.

...

(h) A person convicted under subsections (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor; provided that:

    (1) A person convicted under subsection (d)(2) or (e) for an offense involving food stamps or coupons with a value which exceeds $300 shall be guilty of a class C felony; and

    (2) A person convicted under subsection (d)(2) or (e) for an offense involving food stamps, coupons, an electronic benefits transfer card, or a debit card shall be guilty of a class B felony if the benefit to which the person is not entitled exceeds $20,000.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | Any portion of assistance obtained by any fraudulent device, and any assistance paid after receipt of resources which have not been reported to the department as required in this section shall be recoverable by the State for the use of the department as a debt due the State, or, restitution of the amount may be ordered by the court following conviction.

Haw. Rev. Stat. § 346-34 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Idaho | Felony | Idaho Code § 56-227<br>Idaho Code § 18-2407 |

In Idaho, obtaining public benefits through fraud is classified as a petite or grand theft depending on the monetary value of the benefits. It is a grand theft, and a felony, to fraudulently apply for or received benefits worth $1,000 or more.

**§ 56-227. Fraudulent Acts – Penalty.**

(1) Whoever knowingly obtains, or attempts to obtain, or aids or abets any person in obtaining, by means of a willfully false statement or representation, material omission, or fraudulent devices, public assistance to which he is not entitled, or in an amount greater than that to which he is justly entitled, shall be punished in the same manner and to the same extent as for larceny or theft of the money or value of the public assistance so obtained or attempted to be so obtained.

(2) Whoever sells, conveys, mortgages or otherwise disposes of his property, real or personal, or conceals his income or resources, for the purpose of rendering him eligible for public assistance, theretofore or thereafter applied for, to which he would not otherwise be entitled, shall be punished in the same manner and to the same extent as for larceny or theft of the money or value of the public assistance so obtained or so attempted to be obtained. Provided however, this provision shall not be construed to be more restrictive than federal or state provisions regarding the transfer of property for public assistance.

Idaho Code § 56-227

**§ 18-2407. Grading of Theft.**
Theft is divided into two (2) degrees, grand theft and petit theft.
(1) Grand theft.
    (a) A person is guilty of grand theft when he commits a theft as defined in this chapter and when the property, regardless of its nature and value, is obtained by extortion committed by instilling in the victim a fear that the actor or another person will:
        1. Cause physical injury to some person in the future; or
        2. Cause damage to property; or
        3. Use or abuse his position as a public servant by engaging in conduct within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely.
    (b) A person is guilty of grand theft when he commits a theft as defined in this chapter and when:
        1. The value of the property taken exceeds one thousand dollars ($1,000); or
        2. The property consists of a public record, writing or instrument kept, filed or deposited according to law with or in the keeping of any public office or public servant; or

Appx093

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | 3. The property consists of a check, draft or order for the payment of money upon any bank, or a check, draft or order account number, or a financial transaction card or financial transaction card account number as those terms are defined in section 18-3122, Idaho Code; or | |
| | 4. The property, regardless of its nature or value, is taken from the person of another; or | |
| | 5. The property, regardless of its nature and value, is obtained by extortion; or | |
| | 6. The property consists of one (1) or more firearms, rifles or shotguns; or | |
| | 7. The property taken or deliberately killed is livestock or any other animal exceeding one hundred fifty dollars ($150) in value. | |
| | 8. When any series of thefts, comprised of individual thefts having a value of one thousand dollars ($1,000) or less, are part of a common scheme or plan, the thefts may be aggregated in one (1) count and the sum of the value of all of the thefts shall be the value considered in determining whether the value exceeds one thousand dollars ($1,000); or | |
| | 9. The property has an aggregate value over fifty dollars ($50.00) and is stolen during three (3) or more incidents of theft during a criminal episode. For purposes of this subparagraph a "criminal episode" shall mean a series of unlawful acts committed over a period of up to three (3) days; or | |
| | 10. The property is anhydrous ammonia. | |
| | (2) Petit theft. A person is guilty of petit theft when he commits a theft as defined in this chapter and his actions do not constitute grand theft. | |
| | | Idaho Code § 18-2407 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Illinois | Felony | 305 Ill. Comp. Stat. Ann. 5/8A-2(a)<br>305 Ill. Comp. Stat. Ann. 5/8A-6(a) |

In Illinois, obtaining food stamps through fraudulent means is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $150 or more.

**§ 8A-2. Recipient Fraud**
(a) Any person, who by means of any false statement, willful misrepresentation or failure to notify the county department or the local governmental unit, as the case may be, of a change in his status as required by Sections 11-18 and 11-19, or any person who knowingly causes any applicant or recipient without knowledge to make such a false statement or willful misrepresentation, or by withholding information causes the applicant or recipient to fail to notify the county department or local governmental unit as required, for the purpose of preventing the denial, cancellation or suspension of any grant, or a variation in the amount thereof, or through other fraudulent device obtains or attempts to obtain, or aids or abets any person in obtaining public aid under this Code to which he is not entitled is guilty of a violation of this Article and shall be punished as provided in Section 8A-6.

305 Ill. Comp. Stat. Ann. 5/8A-2(a) (2018)

**§ 8A-6. Classification of violations**
(a) Any person, firm, corporation, association, agency, institution or other legal entity that has been found by a court to have engaged in an act, practice or course of conduct declared unlawful under Sections 8A-2 through 8A-5 or Section 8A-13 or 8A-14 where:

(1) the total amount of money involved in the violation, including the monetary value of federal food stamps and the value of commodities, is less than $150, shall be guilty of a Class A misdemeanor;
(2) the total amount of money involved in the violation, including the monetary value of federal food stamps and the value of commodities, is $150 or more but less than $1,000, shall be guilty of a Class 4 felony;
(3) the total amount of money involved in the violation, including the monetary value of federal food stamps and the value of commodities, is $1,000 or more but less than $5,000, shall be guilty of a Class 3 felony;
(4) the total amount of money involved in the violation, including the monetary value of federal food stamps and the value of commodities, is $5,000 or more but less than $10,000, shall be guilty of a Class 2 felony; or
(5) the total amount of money involved in the violation, including the monetary value of federal food stamps and the value of commodities, is $10,000 or more, shall be guilty of a Class 1 felony and, notwithstanding the provisions of Section 8A-8 except for Subsection (c) of Section 8A-8, shall be ineligible for financial aid under this Article for a period of two years

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | following conviction or until the total amount of money, including the value of federal food stamps, is repaid, whichever first occurs. | |
| | 305 Ill. Comp. Stat. Ann. 5/8A-6(a) (2018) | |

Appx096

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Indiana | Felony | Ind. Code § 35-43-5-7 |

In Indiana, obtaining food stamps through fraudulent means is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $750 or more.

**§35-43-5-7. Welfare fraud.**

Sec. 7. (a) A person who knowingly or intentionally:

(1) obtains public relief or assistance by means of impersonation, fictitious transfer, false or misleading oral or written statement, fraudulent conveyance, or other fraudulent means;

(2) acquires, possesses, uses, transfers, sells, trades, issues, or disposes of:

(A) an authorization document to obtain public relief or assistance; or

(B) public relief or assistance;

except as authorized by law;

(3) uses, transfers, acquires, issues, or possesses a blank or incomplete authorization document to participate in public relief or assistance programs, except as authorized by law;

(4) counterfeits or alters an authorization document to receive public relief or assistance, or knowingly uses, transfers, acquires, or possesses a counterfeit or altered authorization document to receive public relief or assistance; or

(5) conceals information for the purpose of receiving public relief or assistance to which he is not entitled;

commits welfare fraud, a Class A misdemeanor, except as provided in subsection (b).

(b) The offense is:

(1) a Level 6 felony if the amount of public relief or assistance involved is more than seven hundred fifty dollars ($750) but less than fifty thousand dollars ($50,000); and

(2) a Level 5 felony if the amount of public relief or assistance involved is at least fifty thousand dollars ($50,000).

(c) Whenever a person is convicted of welfare fraud under this section, the clerk of the sentencing court shall certify to the appropriate state agency and the appropriate agency of the county of the defendant's residence:

(1) the defendant's conviction; and

(2) whether the defendant is placed on probation and restitution is ordered under IC 35-38-2.

Ind. Code § 35-43-5-7

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Iowa | Felony | Iowa Code § 234.13<br>Iowa Code § 714.9<br>Iowa Code § 714.10<br>Iowa Code § 714.11<br>Iowa Code § 714.12<br>Iowa Code § 714.13 |

In Iowa, acquiring public benefits through fraud is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $1,500 or more.

**234.13. Fraudulent practices relating to food programs.**
For the purposes of this section, unless the context otherwise requires, "benefit transfer instrument" means a food stamp coupon, authorization-to-purchase card, or electronic benefits transfer card. A person commits a fraudulent practice if that person does any of the following:
1. With intent to gain financial assistance to which that person is not entitled, knowingly makes or causes to be made a false statement or representation or knowingly fails to report to an employee of the department of human services any change in income, resources or other circumstances affecting that person's entitlement to such financial assistance.
2. As a beneficiary of the food programs, transfers any food stamp benefit transfer instrument to any other individual with intent that the benefit transfer instrument be used for the benefit of someone other than persons within the beneficiary's food stamp household as certified by the department of human services.
3. Knowingly acquires, uses or attempts to use any food stamp benefit transfer instrument which was not issued for the benefit of that person's food stamp household by the department of human services, or by an agency administering food programs in another state.
4. Acquires, alters, transfers, or redeems a food stamp benefit transfer instrument or possesses a benefit transfer instrument, knowing that the benefit transfer instrument has been received, transferred, or used in violation of this section or the provisions of the federal food stamp program under 7 U.S.C. ch. 51 or the federal regulations issued pursuant to that chapter.

Iowa Code § 234.13

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 714.9. Fraudulent practice in the first degree.**<br>1. Fraudulent practice in the first degree is a fraudulent practice where the amount of money or value of property or services involved exceeds ten thousand dollars.<br>2. Fraudulent practice in the first degree is a class "C" felony.<br><br>Iowa Code § 714.9 | |
| | **§ 714.10. Fraudulent practice in the second degree.**<br>1. Fraudulent practice in the second degree is the following:<br>  a. A fraudulent practice where the amount of money or value of property or services involved exceeds one thousand five hundred dollars but does not exceed ten thousand dollars.<br>  b. A fraudulent practice where the amount of money or value of property or services involved does not exceed one thousand five hundred dollars by one who has been convicted of a fraudulent practice twice before.<br>2. Fraudulent practice in the second degree is a class "D" felony.<br><br>Iowa Code § 714.10 | |
| | **§ 714.11. Fraudulent practice in the third degree.**<br>1. Fraudulent practice in the third degree is the following:<br>  a. A fraudulent practice where the amount of money or value of property or services involved exceeds seven hundred fifty dollars but does not exceed one thousand five hundred dollars.<br>  b. A fraudulent practice as set forth in section 714.8, subsections 2, 8, 9, and 21.<br>  c. A fraudulent practice where it is not possible to determine an amount of money or value of property and services involved.<br>2. Fraudulent practice in the third degree is an aggravated misdemeanor.<br><br>Iowa Code § 714.11 | |
| | **§ 714.12. Fraudulent practice in the fourth degree.**<br>1. Fraudulent practice in the fourth degree is a fraudulent practice where the amount of money or value of property or services involved exceeds three hundred dollars but does not exceed seven hundred fifty dollars.<br>2. Fraudulent practice in the fourth degree is a serious misdemeanor. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Iowa Code § 714.12 | | |
| Iowa Code § 714.13 | **§ 714.13. Fraudulent practice in the fifth degree.**<br>1. Fraudulent practice in the fifth degree is a fraudulent practice where the amount of money or value of property or services involved does not exceed three hundred dollars.<br>2. Fraudulent practice in the fifth degree is a simple misdemeanor. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Kansas | Felony | Kans. Stat. Ann. § 39-720 <br> Kans. Stat. Ann. § 21-5801(b) |

In Kansas, obtaining public benefits through fraud is classified as a theft, and can be either a misdemeanor or felony depending on the monetary value of the benefits. It is a felony to fraudulently apply for or received benefits worth $1,500 or more.

**§ 39-720. Penalty relating to fraudulent acts; civil actions, evidence.**

Any person who obtains or attempts to obtain, or aids or abets any other person to obtain, by means of a willfully false statement or representation, or by impersonation, collusion, or other fraudulent device, assistance to which the applicant or client is not entitled, shall be guilty of the crime of theft, as defined in section K.S.A. 2019 Supp. 21-5801, and amendments thereto. Such person shall be required to remit to the secretary the amount of any assistance given such person under such fraudulent act. In any civil action for the recovery of assistance on the grounds the assistance was fraudulently obtained, proof that the recipient of the assistance possesses or did possess resources which does or would have rendered such person ineligible to receive such assistance shall be deemed prima facie evidence that such assistance was fraudulently obtained.

Kans. Stat. Ann. § 39-720

**§ 21-5801(b). Theft.**
(b)   Theft of:
    (1)   Property or services of the value of $100,000 or more is a severity level 5, nonperson felony;
    (2)   property or services of the value of at least $25,000 but less than $100,000 is a severity level 7, nonperson felony;
    (3)   property or services of the value of at least $1,500 but less than $25,000 is a severity level 9, nonperson felony, except as provided in subsection (b)(7);
    (4)   property or services of the value of less than $1,500 is a class A nonperson misdemeanor, except as provided in subsection (b)(5), (b)(6) or (b)(7);
    (5)   property of the value of less than $1,500 from three separate mercantile establishments within a period of 72 hours as part of the same act or transaction or in two or more acts or transactions connected together or constituting parts of a common scheme or course of conduct is a severity level 9, nonperson felony;
    (6)   property of the value of at least $50 but less than $1,500 is a severity level 9, nonperson felony if committed by a person who has, within five years immediately preceding commission of the crime, excluding any period of imprisonment, been convicted of theft two or more times; and
    (7)   property which is a firearm of the value of less than $25,000 is a severity level 9, nonperson felony.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Kans. Stat. Ann. §21-5801(b) | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
| --- | --- | --- |
| Kentucky | Felony | Ky. Rev. Stat. Ann. § 205.8463 |

In Kentucky, acquiring public benefits through fraud is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $300 or more.

**§ 205.8463. Fraudulent acts – Penalties.**

(1) No person shall knowingly or wantonly devise a scheme or plan a scheme or artifice, or enter into an agreement, combination, or conspiracy to obtain or aid another in obtaining payments from any medical assistance program under this chapter by means of any fictitious, false, or fraudulent application, claim, report, or document submitted to the Cabinet for Health and Family Services, or intentionally engage in conduct which advances the scheme or artifice.

(2) No person shall intentionally, knowingly, or wantonly make, present, or cause to be made or presented to an employee or officer of the Cabinet for Health and Family Services any false, fictitious, or fraudulent statement, representation, or entry in any application, claim, report, or document used in determining rights to any benefit or payment.

(3) No person shall, with intent to defraud, knowingly make, or induce, or seek to induce the making of a false statement or false representation of a material fact with respect to the conditions or operations of an institution or facility in order that the institution or facility may qualify, upon initial certification or upon recertification, as a hospital, skilled-nursing facility, intermediate-care facility, home-health agency, or other provider of services to the Medical Assistance Program.

(4) No person shall, in any matter within the jurisdiction of the Cabinet for Health and Family Services under this chapter, knowingly falsify, conceal, or cover up by any trick, scheme, or device a material fact, or make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry.

(5) Any person who violates subsections (1) and (2) of this section shall be guilty of a Class A misdemeanor unless the sum total of benefits or payments claimed in any application, claim, report, or document, or in any combination or aggregation thereof, is valued at three hundred dollars ($300) or more in which case it shall be a Class D felony. Any person who violates the provisions of subsection (3) of this section shall be guilty of a Class C felony. Any person who violates the provisions of subsection (4) of this section shall be guilty of a Class D felony

Ky. Rev. Stat. Ann. § 205.8463

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
| --- | --- | --- |
| Louisiana | Felony | La. Stat. Ann. § 14:2<br>La. Stat. Ann. § 14:70.9<br>La. Stat. Ann. § 14:68.2 |

In Louisiana, it is a felony to fraudulently obtain food stamps.

**§2. Definitions.**
A. In this Code the terms enumerated shall have the designated meanings:

…

(4) "Felony" is any crime for which an offender may be sentenced to death or imprisonment at hard labor.

…

(6) "Misdemeanor" is any crime other than a felony.

…

La. Stat. Ann. § 14:2

**§70.9. Government benefits fraud.**
A. The crime of government benefits fraud is the act of any person who, with intent to defraud the state or any person or entity through any government benefits administered by any state department, agency, or political subdivision, does any of the following:
(1) Presents for allowance or payment any false or fraudulent claim for furnishing services, merchandise, or payments.
(2) Knowingly submits false information for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services, merchandise, or payments.
(3) Knowingly submits false information for the purpose of obtaining authorization for furnishing services, merchandise, or payments.
(4) Knowingly makes or causes to be made a false statement or representation of material fact on an application or form for assistance, goods, services, or payments when the false statement or representation is made for the purpose of determining the person's eligibility to receive benefits or payments.
(5) Knowingly conceals or fails to disclose any material fact affecting the applicant's or recipient's initial or continued eligibility to receive benefits or payments.
B. Whoever commits the crime of government benefits fraud shall be imprisoned, with or without hard labor, for not more than five years, may be fined not more than ten thousand dollars, or both imprisoned and fined.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | C. For the purpose of this Section, government benefits include any record, voucher, payment, money or thing of value, good, service, right, or privilege provided or administered by a state government entity. | |
| La. Stat. Ann. § 14:68.2 | | |
| | **§14:68.2. Unauthorized use of supplemental nutrition assistance program benefits or supplemental nutrition assistance program benefit access devices.** | |
| | A. As used in this Section and in R.S. 14:68.2.1, the following terms have the following meanings: | |
| | (1) "SNAP benefits" means any supplemental nutrition assistance program benefits issued pursuant to the provisions of the Federal Food Stamp Act, 7 USC §2011 et seq. | |
| | (2) "SNAP benefit access device" means any card, plate, code account access number, or other means of access that can be used, alone or in conjunction with another access device, to obtain payment, allotments, benefits, money, goods, or other things of value or that can be used to initiate a transfer of funds pursuant to the provisions of the Federal Food Stamp Act. | |
| | B. The unauthorized use of SNAP benefits or a SNAP benefit access device is: | |
| | (1) To knowingly use, transfer, acquire, alter, or possess SNAP benefits or a SNAP benefit access device contrary to the provisions of the Federal Food Stamp Act or the federal or state regulations issued pursuant thereto. | |
| | (2) To knowingly counterfeit, alter, transfer, acquire, or possess a counterfeited or altered SNAP benefit access device. | |
| | (3) To present or cause to be presented a SNAP benefit access device for payment or redemption, knowing it to have been counterfeited, altered, received, transferred, or used in any manner contrary to the provisions of the Federal Food Stamp Act or the federal or state regulations issued pursuant thereto. | |
| | (4) To knowingly appropriate SNAP benefits or a SNAP benefit access device with which a person has been entrusted or of which a person has gained possession by virtue of his position as a public employee. | |
| | C. Whoever commits the crime of unauthorized use of SNAP benefits or a SNAP benefit access device shall be fined not less than five thousand dollars nor more than one million dollars or imprisoned, with or without hard labor, for not less than six months nor more than ten years, or both. | |
| | D. In addition to the foregoing penalties, a person convicted under this Section shall be ordered to make restitution in the total amount found to be the value of the SNAP benefits that form the basis for the conviction. If a person ordered to make restitution pursuant to this Section is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court shall order a periodic payment plan consistent with the person's financial ability. | |
| La. Stat. Ann. § 14:68.2 | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Maine | Misdemeanor | Me. Stat. tit. 17-A, § 905-C. |

Maine statutes do not use a misdemeanor/felony framework, but rather grade crimes Class A-E. Class A crimes are the most serious and Class A-C crimes largely correspond with a felony classification, while Class D-E crime correspond with a misdemeanor classification. It is a Class D crime to unlawfully obtain public benefits.

**§905-C. Misuse of public benefits instrument.**
1. A person is guilty of misuse of a public benefits instrument if the person knowingly:
    A. Transfers a public benefits instrument without authorization of the agency issuing the instrument; or
    B. Obtains or possesses a public benefits instrument that was obtained without authorization of the agency issuing the instrument.
2. As used in this section, "public benefits instrument" means electronic benefits transfer cards, coupons, vouchers and any other means for distributing benefits from the following programs:
    A. The municipal general assistance program under Title 22, chapter 1161;
    B. The TANF program under Title 22, chapter 1053-B;
    C. The statewide food supplement program under Title 22, section 3104;
    D. The child care subsidies under Title 22, chapter 1052-A; or
    E. The Women, Infants and Children Special Supplemental Food Program of the United States Child Nutrition Act of 1966.
3. Misuse of a public benefits instrument is a Class D crime.

Me. Stat. tit. 17-A, § 905-C

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Maryland | Misdemeanor | Md. Code. Ann., Crim Law § 8-503 |

In Maryland, it is a misdemeanor to obtain food stamps through fraud.

**§ 8–503.**

(a) This section applies to money, property, food stamps, or other assistance that is provided under a social or nutritional program based on need that is:

(1) financed wholly or partly by the State; and

(2) administered by the State or a political subdivision of the State.

(b) By fraud, a person may not obtain, attempt to obtain, or help another person to obtain, money, property, food stamps, or other assistance to which the person is not entitled.

(c) A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.

(d)(1) A person who is convicted of a violation of this section shall make full restitution of the money or the value of the property, food stamps, or other assistance obtained by the person in violation of this section.

(2) Full restitution under paragraph (1) of this subsection shall be made after the person has received notice and has been given the opportunity to be heard as to the amount of payment and how it is to be made.

Md. Code Ann., Crim Law § 8-503

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Massachusetts | Felony | Mass. Gen. Stat. ch. 274, § 1<br>Mass. Gen. Stat. ch. 18, § 5B<br>Mass. Gen. Stat. ch. 18, § 5K<br>Mass. Gen. Stat. ch. 18, § 5L |

In Massachusetts, any crime for which someone can be imprisoned in a state prison is a felony. It is a felony to obtain or attempt to obtain public benefits through false representation. Additionally, it is either a felony or misdemeanor to possess food stamps obtained in an unlawful manner; it is a felony if the unlawful benefits are valued at $100 or more. Finally, it is either a felony or misdemeanor to obtain public assistance through fraud; it is a felony if the unlawful benefits are valued at $250 or more.

**Ch. 274 § 1. Felonies and misdemeanors.**
Section 1. A crime punishable by death or imprisonment in the state prison is a felony. All other crimes are misdemeanors.

Mass. Gen. Stat. ch. 274, § 1

**Ch 8 § 5B. False representations or failure to disclose facts; penalty.**
Any person or institution which knowingly makes a false representation or, contrary to a legal duty to do so, knowingly fails to disclose any material fact affecting eligibility or level of benefits to the department of public welfare or its agents, for the purpose of causing any person, including the person making such representations, to be supported in whole or in part by the commonwealth, or for the purpose of procuring a payment under any assistance program administered by the department, shall be punished by a fine of not less than two hundred nor more than five hundred dollars or by imprisonment for not more than one year.
Nothing in this section shall be construed as preventing the institution of criminal proceedings for the violation of any other law of the commonwealth.

Mass. Gen. Stat. ch. 18, § 5B

**Ch 8 § 5K. Obtaining and receiving department of transitional assistance property through embezzlement, theft or fraud; penalty.**
Notwithstanding any general or special law to the contrary, whoever embezzles, steals or obtains by fraud any funds, assets or property provided by the department of transitional assistance and whoever receives, conceals or retains such funds, assets or property for his own interest knowing such funds, assets or property have been embezzled, stolen or obtained by fraud shall, if such funds, assets or property are of a value of $100 or more, be punished by a fine of not more than $25,000 or by imprisonment in a jail

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | or house of correction for not more than 2 1/2 years, or imprisonment in the state prison for not more than 5 years, or both such fine and imprisonment, or if such funds, assets or property are of a value of less than $100, by a fine of not more than $1,000 or by imprisonment in a jail or house of correction for not more than 1 year, or both such fine and imprisonment. | |
| | Mass. Gen. Stat. ch. 18, § 5K | |
| | **Ch. 8 § 5L. Food stamps benefits tracking; penalty.**<br>(a) As used this section and section 5M, "food stamp benefits" shall mean benefits issued pursuant to the federal Food and Nutrition Act of 2008, 7 U.S.C. §§ 2011 to 2029, inclusive, as amended, including such benefits contained on an electronic benefit transfer card.<br>(b) An individual commits the offense of food stamp benefits trafficking if the individual knowingly:<br>　(1) presents for payment or redemption or transfers food stamp benefits in any form, including transfers to another, who does not, or does not intend to, use the food stamp benefits for the benefit of the household for whom the benefits were intended, as defined in the regulations of the department; or<br>　(2) possesses, buys, sells, uses, alters, accepts or transfers food stamp benefits in any manner not authorized by the Food and Nutrition Act of 2008, 7 U.S.C. § 2011, as amended.<br>(c) An individual who traffics food stamp benefits, as described in subsection (b), shall:<br>　(1) if the food stamp benefits are of a value of less than $250 or if the item used, transferred, acquired, altered or possessed has a value of less than $250, be punished by imprisonment in a jail or house of correction for not more than 1 year or by a fine of not more than $1,000, or both such fine and imprisonment; or<br>　(2) if the food stamp benefits are of a value of $250 or more or the item used, transferred, acquired, altered or possessed has a value of $250 or more, be punished by imprisonment in a jail or house of correction for not more than 2 years or by imprisonment in a state prison for not more than 5 years or by a fine of not more than $5,000, or both fine and imprisonment.<br>(d) If a person is alleged to have committed the offense of trafficking in food stamps benefits 2 or more times within a 6-month period, those offenses may be aggregated and charged in a single count and the offenses so aggregated and charged shall constitute a single offense; provided, however, that, if the aggregate value of the food stamp benefits alleged to be trafficked is $250 or more, the person shall be subject to the penalties prescribed in clause (2) of subsection (c).<br>(e) Crimes under this section may be prosecuted and punished in any county where a defendant used, transferred, acquired or possessed food stamp benefits or in the county in which the state agency responsible for administering food stamp benefits is headquartered. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (f) An individual who traffics food stamp benefits, as described in subsection (b) and on 1 prior occasion has been convicted of trafficking food stamp benefits pursuant to said subsection (b) or conspiracy to traffic food stamp benefits shall be punished by imprisonment in a state prison for not more than 10 years or by a fine of not more than $25,000 or both. | |
| | Mass. Gen. Stat. ch. 18, § 5L | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Michigan | Felony | Mich. Comp. Laws § 750.300a |

In Michigan, it is either a felony or misdemeanor to obtain or try to obtain food stamps through unlawful means. It is a felony if the unlawful benefits are valued at more than $250 or if it is a secondary offense.

**§ 750.300a. Food stamps or coupons; conduct as crime; course of conduct as one offense; determination of degree; definitions.**

(1) A person who knowingly uses, transfers, acquires, alters, purchases, possesses, presents for redemption, or transports food stamps or coupons or access devices other than as authorized by the food stamp act of 1977, 7 U.S.C. 2011 to 2030, and the regulations promulgated under that act, or any supplemental food program administered by any department of this state pursuant to section 17 of the child nutrition act of 1966, 42 U.S.C. 1786, and the regulations promulgated under that act, is guilty of a crime as follows:

(a) Except as otherwise provided in this subdivision, if the aggregate value of the food stamps or coupons or access devices is $250.00 or less, the person is guilty of a misdemeanor, punishable by imprisonment for not more than 93 days, or a fine of not more than $1,000.00, or both. If the person has 1 prior conviction for violating this section, the person is guilty of a felony, and may be punished as provided in subdivision (b). If the person has 2 or more prior convictions for violating this section, the person is guilty of a felony, and may be punished as provided in subdivision (c). The existence of a prior conviction shall be determined by the court at sentencing.

(b) Except as otherwise provided in this subdivision, if the aggregate value of the food stamps or coupons or access devices is more than $250.00 but does not exceed $1,000.00, the person is guilty of a felony, punishable by imprisonment for not more than 5 years, or a fine of not more than $10,000.00, or both. If the person has 1 or more prior convictions for violating this section, the person is guilty of a felony, and may be punished as provided in subdivision (c). The existence of a prior conviction shall be determined by the court at sentencing.

(c) If the aggregate value of the food stamps or coupons or access devices is more than $1,000.00, the person is guilty of a felony, punishable by imprisonment for not more than 10 years, or a fine of not more than $250,000.00, or both.

(2) If food stamps or coupons or access devices of various values are used, transferred, acquired, altered, purchased, possessed, presented for redemption, or transported in violation of this section over a period of 12 months, the course of conduct may be charged as 1 offense and the values of the food stamps or coupons or access devices aggregated in determining the degree of the offense.

(3) As used in this section:

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Mich. Comp. Laws § 750.300a | (a) "Access device" means any card, plate, code, account number, or other means of access that can be used, alone or in conjunction with another access device, to obtain payments, allotments, benefits, money, goods, or other things of value, or that can be used to initiate a transfer of funds pursuant to the food stamp program established under the food stamp act of 1977, 7 U.S.C. 2011 to 2030, or any supplemental food program administered by any department of this state pursuant to section 17 of the child nutrition act of 1966, 42 U.S.C. 1786. (b) "Aggregate value of the food stamps or coupons or access devices" means the total face value of any food stamps or coupons involved in the violation plus the total value of any access devices involved in the violation. The value of an access device is the total value of the payments, allotments, benefits, money, goods, or other things of value that may be obtained, or the total value of funds that may be transferred, by use of the access device at the time of the violation. (c) "Food stamps or coupons" means the coupons issued pursuant to the food stamp program established under the food stamp act of 1977, 7 U.S.C. 2011 to 2030, or issued pursuant to any supplemental food program administered by any department of this state pursuant to section 17 of the child nutrition act of 1966, 42 U.S.C. 1786. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Minnesota | Felony | Minn. Stat. § 256D.14<br>Minn. Stat. § 256.98<br>Minn. Stat. § 609.821<br>Minn. Stat. § 609.02 |

In Minnesota, the Attorney General may choose whether to bring a criminal or civil action for food stamps fraud. If a criminal action is filed, the offense is graded a felony.

**256D.14. Violations.**
Whoever obtains or attempts to obtain, or aids or abets any person to obtain by means of a willfully false statement or representation, or by the intentional withholding or concealment of a material fact, or by impersonation, or other fraudulent device:

(1) assistance to which the person is not entitled; or

(2) assistance greater than that to which the person is reasonably entitled;

shall be considered to have violated section 256.98, and shall be subject to both the criminal and civil penalties provided therein.

Minn. Stat. § 256D.14

**256.98. Wrongfully obtaining assistance; theft.**
Subdivision 1. Wrongfully obtaining assistance. A person who commits any of the following acts or omissions with intent to defeat the purposes of sections 145.891 to 145.897, the MFIP program formerly codified in sections 256.031 to 256.0361, the AFDC program formerly codified in sections 256.72 to 256.871, chapter 256B, 256D, 256I, 256J, 256K, or 256L, child care assistance programs, and emergency assistance programs under section 256D.06, is guilty of theft and shall be sentenced under section 609.52, subdivision 3, clauses (1) to (5):

(1) obtains or attempts to obtain, or aids or abets any person to obtain by means of a willfully false statement or representation, by intentional concealment of any material fact, or by impersonation or other fraudulent device, assistance or the continued receipt of assistance, to include child care assistance or vouchers produced according to sections 145.891 to 145.897 and MinnesotaCare services according to sections 256.9365, 256.94, and 256L.01 to 256L.15, to which the person is not entitled or assistance greater than that to which the person is entitled;

(2) knowingly aids or abets in buying or in any way disposing of the property of a recipient or applicant of assistance without the consent of the county agency; or

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (3) obtains or attempts to obtain, alone or in collusion with others, the receipt of payments to which the individual is not entitled as a provider of subsidized child care, or by furnishing or concurring in a willfully false claim for child care assistance.

The continued receipt of assistance to which the person is not entitled or greater than that to which the person is entitled as a result of any of the acts, failure to act, or concealment described in this subdivision shall be deemed to be continuing offenses from the date that the first act or failure to act occurred.

…

Subd. 5. Criminal or civil action. To prosecute or to recover assistance wrongfully obtained under this section, the attorney general or the appropriate county attorney, acting independently or at the direction of the attorney general, may institute a criminal or civil action or both.

…

**609.821. Financial transaction card fraud.**
Subdivision 1.Definitions. For the purposes of this section, the following terms have the meanings given them:
(a) "Financial transaction card" means any instrument or device, whether known as a credit card, credit plate, charge plate, courtesy card, bank services card, banking card, check guarantee card, debit card, electronic benefit system (EBS) card, electronic benefit transfer (EBT) card, assistance transaction card, or by any other name, issued with or without fee by an issuer for the use of the cardholder in obtaining credit, money, goods, services, public assistance benefits, or anything else of value, and includes the account or identification number or symbol of a financial transaction card.
(b) "Cardholder" means a person in whose name a card is issued.
(c) "Issuer" means a person, firm, or governmental agency, or a duly authorized agent or designee, that issues a financial transaction card.
(d) "Property" includes money, goods, services, public assistance benefit, or anything else of value.
(e) "Public assistance benefit" means any money, goods or services, or anything else of value, issued under chapters 256, 256B, 256D, or section 393.07, subdivision 10.
(f) "Trafficking of SNAP benefits" means:
(1) the buying, selling, stealing, or otherwise effecting an exchange of Supplemental Nutrition Assistance Program (SNAP) benefits issued and accessed via an electronic benefit transfer (EBT) card, card number and personal identification number (PIN), or manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; | Minn. Stat. § 256.98 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
| --- | --- | --- |
| | (2) the exchange of one of the following for SNAP benefits: firearms, ammunition, explosives, or controlled substances as defined in United States Code, title 21, section 802; | |
| | (3) purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount; | |
| | (4) purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; | |
| | (5) intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or | |
| | (6) attempting to buy, sell, steal, or otherwise effect an exchange of SNAP benefits issued and accessed via an EBT card, card number and PIN number, or manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone. | |
| | Subd. 2. Violations; penalties. A person who does any of the following commits financial transaction card fraud: | |
| | (1) without the consent of the cardholder, and knowing that the cardholder has not given consent, uses or attempts to use a card to obtain the property of another, or a public assistance benefit issued for the use of another; | |
| | (2) uses or attempts to use a card knowing it to be forged, false, fictitious, or obtained in violation of clause (6); | |
| | (3) sells or transfers a card knowing that the cardholder and issuer have not authorized the person to whom the card is sold or transferred to use the card, or that the card is forged, false, fictitious, or was obtained in violation of clause (6); | |
| | (4) without a legitimate business purpose, and without the consent of the cardholders, receives or possesses, with intent to use, or with intent to sell or transfer in violation of clause (3), two or more cards issued in the name of another, or two or more cards knowing the cards to be forged, false, fictitious, or obtained in violation of clause (6); | |
| | (5) being authorized by an issuer to furnish money, goods, services, or anything else of value, knowingly and with an intent to defraud the issuer or the cardholder: | |
| | (i) furnishes money, goods, services, or anything else of value upon presentation of a financial transaction card knowing it to be forged, expired, or revoked, or knowing that it is presented by a person without authority to use the card; or | |
| | (ii) represents in writing to the issuer that the person has furnished money, goods, services, or anything else of value which has not in fact been furnished; | |
| | (6) upon applying for a financial transaction card to an issuer, or for a public assistance benefit which is distributed by means of a financial transaction card: | |
| | (i) knowingly gives a false name or occupation; | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|

(ii) knowingly and substantially overvalues assets or substantially undervalues indebtedness for the purpose of inducing the issuer to issue a financial transaction card; or

(iii) knowingly makes a false statement or representation for the purpose of inducing an issuer to issue a financial transaction card used to obtain a public assistance benefit;

(7) with intent to defraud, falsely notifies the issuer or any other person of a theft, loss, disappearance, or nonreceipt of a financial transaction card;

(8) without the consent of the cardholder and knowing that the cardholder has not given consent, falsely alters, makes, or signs any written document pertaining to a card transaction to obtain or attempt to obtain the property of another; or

(9) engages in trafficking of SNAP benefits.

§Subd. 3.Sentence. (a) A person who commits financial transaction card fraud may be sentenced as follows:

(1) for a violation of subdivision 2, clause (1), (2), (5), (8), or (9):

(i) to imprisonment for not more than 20 years or to payment of a fine of not more than $100,000, or both, if the value of the property the person obtained or attempted to obtain was more than $35,000, or the aggregate amount of the transactions under this subdivision was more than $35,000; or

(ii) to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both, if the value of the property the person obtained or attempted to obtain was more than $2,500, or the aggregate amount of the transactions under this subdivision was more than $2,500; or

(iii) to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the value of the property the person obtained or attempted to obtain was more than $250 but not more than $2,500, or the aggregate amount of the transactions under this subdivision was more than $250 but not more than $2,500; or

(iv) to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the value of the property the person obtained or attempted to obtain was not more than $250, or the aggregate amount of the transactions under this subdivision was not more than $250, and the person has previously been convicted within the preceding five years for an offense under this section, section 609.24; 609.245; 609.52; 609.53; 609.582, subdivision 1, 2, or 3; 609.625; 609.63; or 609.631, or a statute from another state in conformity with any of those sections, and the person received a felony or gross misdemeanor sentence for the offense, or a sentence that was stayed under section 609.135 if the offense to which a plea was entered would allow imposition of a felony or gross misdemeanor sentence; or

(v) to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both, if the value of the property the person obtained or attempted to obtain was not more than $250, or the aggregate amount of the transactions under this subdivision was not more than $250;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (2) for a violation of subdivision 2, clause (3) or (4), to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both; or<br><br>(3) for a violation of subdivision 2, clause (6) or (7):<br><br>(i) if no property, other than a financial transaction card, has been obtained by the defendant by means of the false statement or false report, to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both; or<br><br>(ii) if property, other than a financial transaction card, is so obtained, in the manner provided in clause (1).<br><br>(b) In any prosecution under paragraph (a), clause (1), the value of the transactions made or attempted within any six-month period may be aggregated and the defendant charged accordingly in applying the provisions of this section. When two or more offenses are committed by the same person in two or more counties, the accused may be prosecuted in any county in which one of the card transactions occurred for all of the transactions aggregated under this paragraph.<br><br>Minn. Stat. § 609.821 | |
| | **609.02. Definitions.**<br>Subdivision 1. Crime. "Crime" means conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment, with or without a fine.<br>Subd. 2. Felony. "Felony" means a crime for which a sentence of imprisonment for more than one year may be imposed.<br>Subd. 3. Misdemeanor. "Misdemeanor" means a crime for which a sentence of not more than 90 days or a fine of not more than $1,000, or both, may be imposed.<br>Subd. 4. Gross misdemeanor. "Gross misdemeanor" means any crime which is not a felony or misdemeanor. The maximum fine which may be imposed for a gross misdemeanor is $3,000.<br>§Subd. 4a. Petty misdemeanor. "Petty misdemeanor" means a petty offense which is prohibited by statute, which does not constitute a crime and for which a sentence of a fine of not more than $300 may be imposed.<br><br>Minn. Stat. § 609.02 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Mississippi | Felony | Miss. Code. Ann. § 97-19-71<br>Miss. Code. Ann. § 1-3-11 |

In Mississippi, it is a felony to fraudulently obtain or attempt to obtain public benefit.

**§97-19-71. Fraud in connection with state or federally funded assistance programs; penalty.**

(1) Any person who knowingly:

(a) Fails, by false statement, misrepresentation, impersonation, or other fraudulent means, to disclose a material fact used in making a determination as to such person's qualification to receive aid or benefits or services under any state or federally funded assistance program; or

(b) Fails to disclose a change in circumstances in order to obtain or continue to receive under any such program aid or benefits or services to which he is not entitled or in an amount larger than that to which he is entitled, or who knowingly aids and abets another person in the commission of any such act is guilty of fraud.

(2) Any person who knowingly:

(a) Uses, transfers, acquires, traffics, alters, forges or possesses;

(b) Attempts to use, transfer, acquire, traffic, alter, forge or possess; or

(c) Aids and abets another person in the use, transfer, acquisition, trafficking, alteration, forgery or possession of a food stamp, a food stamp identification card, an electronic benefits transfer card or the benefits accessed by such card, an authorization for the purchase of food stamps, a certificate of eligibility for medical services, or a Medicaid identification card, for profit or in any manner not authorized by law or regulations issued by the agency responsible for the administration of the state or federally funded program is guilty of fraud.

(3) Any person who knowingly:

(a) Exchanges food purchased or obtained with; or

(b) Attempts to exchange food purchased or obtained with benefits or an electronic benefits transfer card under the federal Food and Nutrition Program for cash or anything of value other than food, is guilty of fraud.

(4) Any person having duties in the administration of a state or federally funded assistance program who fraudulently misappropriates, attempts to misappropriate, or aids and abets in the misappropriation of, a food stamp, an authorization for food stamps, a food stamp identification card, an electronic benefits transfer card, the benefits accessible by such card, a certificate of eligibility for prescribed medicine, a Medicaid identification card, or assistance from any other state or federally funded program with which he has been entrusted or of which he has gained possession by virtue of his position, or who knowingly fails to disclose any such fraudulent activity, is guilty of fraud.

(5) Any person who:

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (a) Knowingly files, attempts to file, or aids and abets in the filing of, a claim for services to a recipient of benefits under any state or federally funded assistance program for services which were not rendered; knowingly files a false claim for nonauthorized items or services under such a program; or knowingly bills the recipient of benefits under such a program, or his family, for an amount in excess of that provided for by law or regulations; or | |
| | (b) In any way knowingly receives, attempts to receive, or aids and abets in the receipt of unauthorized payment as provided herein is guilty of fraud. | |
| | (6) Any person who knowingly signs, or aids and abets any person to sign, a false application for the replacement of benefits or aid to which that person is entitled claiming that person's benefits or aid was not received, is guilty of fraud. | |
| | (7) Any person convicted of the crime of fraud under this section shall be: | |
| | (a) Punished by imprisonment in the State Penitentiary for a term not exceeding three (3) years, and fined not less than One Thousand Dollars ($1,000.00) nor more than Ten Thousand Dollars ($10,000.00); or | |
| | (b) Punished by imprisonment in the county jail for a term not exceeding one (1) year, and fined not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00); and | |
| | (c) Ordered to make full restitution of the money or services or the value of those services unlawfully received; and | |
| | (d) Where the legislation creating a program allows, suspended from participation in the program for the length of time allowed by the legislation creating the program. | |
| | (8) This section shall not prohibit prosecution under any other criminal statute of this state or the United States. | |
| | | Miss. Code. Ann. § 97-19-71 |
| | **§ 1-3-11. Felony.** The term "felony," when used in any statute, shall mean any violation of law punished with death or confinement in the penitentiary. | |
| | | Miss. Code. Ann. § 1-3-11 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Missouri | Felony | Mo. Rev. Stat. § 205.967 |
| | | Mo. Rev. Stat. § 570.030 |

In Missouri, it is considered stealing to obtain or attempt to obtain public benefits unlawfully. Stealing is a felony when the value of the benefits is over $750.

**§ 205.969. Public assistance benefits, defined — obtaining benefits unlawfully, penalty — actions to recover.**

1. As used in this section.

(1) "Public assistance benefits, programs and services" means anything of value, including money, food, food stamps, commodities, clothing, utilities, utilities payments, shelter, drugs and medicine, materials, goods, and any service, including institutional care, medical care, dental care, child care, psychiatric and psychological service, rehabilitation instruction, training, or counseling provided pursuant to chapters 198, 207, 208, 209, and 660, or benefits, programs, and services provided or administered by the department of social services;

(2) The term "person" means any individual or corporation who received any form of public assistance benefit in any manner for any reason.

2. Any person or corporation who obtains or attempts to obtain, or aids or abets any other person to obtain, by means of a willfully false statement or representation, or by willful concealment or failure to report any fact or event required to be reported by any law, regulation, or rule of this state or the United States, or by impersonation, collusion, or other fraudulent device, any public assistance benefits, programs, and services, shall be guilty of the crime of stealing as defined by section 570.030 and shall be punished as provided in section 570.030.

3. If at any time during the continuance of assistance to any person or corporation, the recipient thereof becomes possessed of any money, property, or income, from any source in any way or reason, it shall be the duty of the recipient to notify the person to whom that recipient's case is assigned, within ten days of the receipt of the money, income, or property, and that person may, after investigation, if required, cancel or modify the assistance payment in accordance with the circumstances.

...

Mo. Rev. Stat. § 205.967

**§ 570.030. Stealing – penalties.**

1. A person commits the offense of stealing if he or she:

(1) Appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (2) Attempts to appropriate anhydrous ammonia or liquid nitrogen of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion; or | |
| | (3) For the purpose of depriving the owner of a lawful interest therein, receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen. | |
| | 2. The offense of stealing is a class A felony if the property appropriated consists of any of the following containing any amount of anhydrous ammonia: a tank truck, tank trailer, rail tank car, bulk storage tank, field nurse, field tank or field applicator. | |
| | 3. The offense of stealing is a class B felony if: | |
| | (1) The property appropriated or attempted to be appropriated consists of any amount of anhydrous ammonia or liquid nitrogen; | |
| | (2) The property consists of any animal considered livestock as the term livestock is defined in section 144.010, or any captive wildlife held under permit issued by the conservation commission, and the value of the animal or animals appropriated exceeds three thousand dollars and that person has previously been found guilty of appropriating any animal considered livestock or captive wildlife held under permit issued by the conservation commission. Notwithstanding any provision of law to the contrary, such person shall serve a minimum prison term of not less than eighty percent of his or her sentence before he or she is eligible for probation, parole, conditional release, or other early release by the department of corrections; | |
| | (3) A person appropriates property consisting of a motor vehicle, watercraft, or aircraft, and that person has previously been found guilty of two stealing-related offenses committed on two separate occasions where such offenses occurred within ten years of the date of occurrence of the present offense; | |
| | (4) The property appropriated or attempted to be appropriated consists of any animal considered livestock as the term is defined in section 144.010 if the value of the livestock exceeds ten thousand dollars; or | |
| | (5) The property appropriated or attempted to be appropriated is owned by or in the custody of a financial institution and the property is taken or attempted to be taken physically from an individual person to deprive the owner or custodian of the property. | |
| | 4. The offense of stealing is a class C felony if the value of the property or services appropriated is twenty-five thousand dollars or more. | |
| | 5. The offense of stealing is a class D felony if: | |
| | (1) The value of the property or services appropriated is seven hundred fifty dollars or more; | |
| | (2) The offender physically takes the property appropriated from the person of the victim; or | |
| | (3) The property appropriated consists of: | |
| | (a) Any motor vehicle, watercraft or aircraft; | |
| | (b) Any will or unrecorded deed affecting real property; | |

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 52 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (c) Any credit device, debit device or letter of credit; | |
| | (d) Any firearms; | |
| | (e) Any explosive weapon as defined in section 571.010; | |
| | (f) Any United States national flag designed, intended and used for display on buildings or stationary flagstaffs in the open; | |
| | (g) Any original copy of an act, bill or resolution, introduced or acted upon by the legislature of the state of Missouri; | |
| | (h) Any pleading, notice, judgment or any other record or entry of any court of this state, any other state or of the United States; | |
| | (i) Any book of registration or list of voters required by chapter 115; | |
| | (j) Any animal considered livestock as that term is defined in section 144.010; | |
| | (k) Any live fish raised for commercial sale with a value of seventy-five dollars or more; | |
| | (l) Any captive wildlife held under permit issued by the conservation commission; | |
| | (m) Any controlled substance as defined by section 195.010; | |
| | (n) Ammonium nitrate; | |
| | (o) Any wire, electrical transformer, or metallic wire associated with transmitting telecommunications, video, internet, or voice over internet protocol service, or any other device or pipe that is associated with conducting electricity or transporting natural gas or other combustible fuels; or | |
| | (p) Any material appropriated with the intent to use such material to manufacture, compound, produce, prepare, test or analyze amphetamine or methamphetamine or any of their analogues. | |
| | 6. The offense of stealing is a class E felony if: | |
| | (1) The property appropriated is an animal; or | |
| | (2) A person has previously been found guilty of three stealing-related offenses committed on three separate occasions where such offenses occurred within ten years of the date of occurrence of the present offense. | |
| | 7. The offense of stealing is a class D misdemeanor if the property is not of a type listed in subsection 2, 3, 5, or 6 of this section, the property appropriated has a value of less than one hundred fifty dollars, and the person has no previous findings of guilt for a stealing-related offense. | |
| | 8. The offense of stealing is a class A misdemeanor if no other penalty is specified in this section. | |
| | 9. If a violation of this section is subject to enhanced punishment based on prior findings of guilt, such findings of guilt shall be pleaded and proven in the same manner as required by section 558.021. | |
| | 10. The appropriation of any property or services of a type listed in subsection 2, 3, 5, or 6 of this section or of a value of seven hundred fifty dollars or more may be considered a separate felony and may be charged in separate counts. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | 11. The value of property or services appropriated pursuant to one scheme or course of conduct, whether from the same or several owners and whether at the same or different times, constitutes a single criminal episode and may be aggregated in determining the grade of the offense, except as set forth in subsection 10 of this section. | Mo. Rev. Stat. § 570.030 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Montana | Felony | Mont. Code Ann. § 53-2-107<br>Mont. Code Ann. § 45-6-301<br>Mont. Code Ann. § 45-2-101 |

In Montana, it is considered theft to obtain public assistance through fraud. Theft is a felony if the benefits obtain are valued at $1,500 or more.

**§ 53-2-107. Fraudulent obtaining of public assistance treated as theft.**
Whoever knowingly obtains by means of a willfully false statement, representation, or impersonation or other fraudulent device public assistance to which the person is not entitled is guilty of theft as provided in 45-6-301.

Mont. Code Ann. § 53-2-107

**§ 45-6-301. Theft.**
(1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
    (a) has the purpose of depriving the owner of the property;
    (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
    (c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.
(2) A person commits the offense of theft when the person purposely or knowingly obtains by threat or deception control over property of the owner and:
    (a) has the purpose of depriving the owner of the property;
    (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
    (c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.
(3) A person commits the offense of theft when the person purposely or knowingly obtains control over stolen property knowing the property to have been stolen by another and:
    (a) has the purpose of depriving the owner of the property;
    (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
    (c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (4) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over any part of any public assistance provided under Title 52 or 53 by a state or county agency, regardless of the original source of assistance, by means of:<br><br>(a) a knowingly false statement, representation, or impersonation; or<br>(b) a fraudulent scheme or device.<br><br>(5) A person commits the offense of theft when the person purposely or knowingly obtains or exerts or helps another obtain or exert unauthorized control over any part of any benefits provided under Title 39, chapter 71, by means of:<br><br>(a) a knowingly false statement, representation, or impersonation; or<br>(b) deception or other fraudulent action.<br><br>(6) A person commits the offense of theft of property by embezzlement when, with the purpose to deprive the owner of the property, the person:<br><br>(a) purposely or knowingly obtains or exerts unauthorized control over property of the person's employer or over property entrusted to the person; or<br>(b) purposely or knowingly obtains by deception control over property of the person's employer or over property entrusted to the person.<br><br>(7)<br><br>(a) Except as provided in subsections (7)(b) and (7)(d), a person convicted of a first offense of the offense of theft of property not exceeding $1,500 in value shall be fined an amount not to exceed $500. A person convicted of a second offense shall be fined an amount not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both. A person convicted of a third or subsequent offense shall be fined an amount not to exceed $500 and be imprisoned in the county jail for a term of not less than 5 days or more than 1 year.<br><br>(b)(i) Except as provided in subsection (7)(c), a person convicted of the offense of theft of property that exceeds $1,500 in value and does not exceed $5,000 in value shall be fined an amount not to exceed $1,500 or be imprisoned in the state prison for a term not to exceed 3 years, or both. A person convicted of a second offense shall be fined an amount not to exceed $1,500 or be imprisoned in the state prison for a term not to exceed 5 years, or both. A person convicted of a third or subsequent offense shall be imprisoned in the state prison for a term of not less than 2 years or more than 5 years and may be fined an amount not to exceed $5,000.<br><br>(ii) A person convicted of the theft of property exceeding $5,000 in value or as part of a common scheme as defined in 45-2-101, or the theft of any amount of anhydrous ammonia for the purpose of manufacturing dangerous drugs, shall be fined an amount not to exceed $10,000 or be imprisoned in a state prison for a term not to exceed 10 years, or both.<br><br>(iii) A person convicted of the theft of any commonly domesticated hoofed animal shall be fined an amount of not less than $5,000 or more than $50,000 or be imprisoned in a state prison for a term not to exceed 10 years, or both. If a prison term is | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | deferred, the court shall order the offender to perform 416 hours of community service during a 1-year period, in the offender's county of residence. In addition to the fine and imprisonment, the offender's property is subject to criminal forfeiture pursuant to 45-6-328 and 45-6-329. | |
| | (c) A person convicted of the offense of theft of property exceeding $10,000 in value by embezzlement shall be imprisoned in a state prison for a term of not less than 1 year or more than 10 years and may be fined an amount not to exceed $50,000. The court may, in its discretion, place the person on probation with the requirement that restitution be made under terms set by the court. If the terms are not met, the required prison term may be ordered. | |
| | (d) A person convicted of a first offense for the offense of theft of property not exceeding $1,500 in value and who utilized an emergency exit in furtherance of that offense shall be fined an amount not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both. On a second conviction, the offender shall be fined an amount not to exceed $1,000 or be imprisoned in the county jail for a term not to exceed 1 year, or both. On a third conviction, the offender shall be fined an amount not to exceed $5,000 and be imprisoned in the county jail for a term of not less than 5 days or more than 1 year. | |
| | (8) Amounts involved in thefts committed pursuant to a common scheme or the same transaction, whether from the same person or several persons, may be aggregated in determining the value of the property. | |
| | (9) A person convicted of the offense of theft of property not exceeding $100 in value is presumed to qualify for a deferred imposition of sentence as long as the person has not been convicted of a misdemeanor or felony offense in the past 5 years. | |
| | | Mont. Code Ann. § 45-6-301 |
| | **§ 45-2-101. General Definitions.** | |
| | ... | |
| | (23) "Felony" means an offense in which the sentence imposed upon conviction is death or imprisonment in a state prison for a term exceeding 1 year | |
| | ... | |
| | | Mont. Code Ann. § 45-2-101 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Nebraska | Felony | Neb. Rev. Stat. § 68-1017.01 |

In Nebraska, it is a misdemeanor or felony to obtain or use food stamps in an unlawful manner. It is a felony if the benefits are valued at $1,500 or more.

**§ 68-1017.01. Supplemental Nutrition Assistance Program; violations; penalties.**
(1) A person commits an offense if he or she knowingly uses, alters, or transfers any Supplemental Nutrition Assistance Program benefits or electronic benefit cards or any authorizations to participate in the Supplemental Nutrition Assistance Program in any manner not authorized by law. An offense under this subsection shall be a Class IV misdemeanor if the value of the Supplemental Nutrition Assistance Program benefits, electronic benefit cards, or authorizations is less than five hundred dollars, shall be a Class III misdemeanor if the value is five hundred dollars or more but less than one thousand five hundred dollars, and shall be a Class IV felony if the value is one thousand five hundred dollars or more.
(2) A person commits an offense if he or she knowingly (a) possesses any Supplemental Nutrition Assistance Program benefits or electronic benefit cards or any authorizations to participate in the Supplemental Nutrition Assistance Program when such individual is not authorized by law to possess them, (b) redeems Supplemental Nutrition Assistance Program benefits or electronic benefit cards when he or she is not authorized by law to redeem them, or (c) redeems Supplemental Nutrition Assistance Program benefits or electronic benefit cards for purposes not authorized by law. An offense under this subsection shall be a Class IV misdemeanor if the value of the Supplemental Nutrition Assistance Program benefits, electronic benefit cards, or authorizations is less than five hundred dollars, shall be a Class III misdemeanor if the value is five hundred dollars or more but less than one thousand five hundred dollars, and shall be a Class IV felony if the value is one thousand five hundred dollars or more.
(3) A person commits an offense if he or she knowingly possesses blank authorizations to participate in the Supplemental Nutrition Assistance Program when such possession is not authorized by law. An offense under this subsection shall be a Class IV felony.
(4) When any Supplemental Nutrition Assistance Program benefits or electronic benefit cards or any authorizations to participate in the Supplemental Nutrition Assistance Program of various values are obtained in violation of this section pursuant to one scheme or a continuing course of conduct, whether from the same or several sources, such conduct may be considered as one offense, and the values aggregated in determining the grade of the offense.

Neb. Rev. Stat. § 68-1017.01

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Nevada | Felony | Nev. Rev. Stat. § 442A.700 |

In Nevada, it is a felony to fraudulently obtain public benefits.

**§ 442A.700. Fraudulent acts; penalties.**
1. Unless a different penalty is provided pursuant to NRS 422.361 to 422.369, inclusive, or 422.450 to 422.590, inclusive, a person who knowingly and designedly, by any false pretense, false or misleading statement, impersonation or misrepresentation, obtains or attempts to obtain monetary or any other public assistance, or money, property, medical or remedial care or any other service provided pursuant to the Children's Health Insurance Program, having a value of $100 or more, whether by one act or a series of acts, with the intent to cheat, defraud or defeat the purposes of this chapter is guilty of a category E felony and shall be punished as provided in NRS 193.130. In addition to any other penalty, the court shall order the person to pay restitution.
2. For the purposes of subsection 1, whenever a recipient of Temporary Assistance for Needy Families pursuant to the provisions of this chapter receives an overpayment of benefits for the third time and the overpayments have resulted from a false statement or representation by the recipient or from the failure of the recipient to notify the Division of a change in circumstances which would affect the amount of assistance the recipient receives, a rebuttable presumption arises that the payment was fraudulently received.
3. For the purposes of subsection 1, "public assistance" includes any money, property, medical or remedial care or any other service provided pursuant to a state plan.

Nev. Rev. Stat. § 442A.700

Case 5:20-cv-03488-GEKP  Document 14-1  Filed 01/15/21  Page 59 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| New Hampshire | Felony | N.H. Rev. Stat. Ann. § 167:17-b<br>N.H. Rev. Stat. Ann. § 167:17-c |

In New Hampshire, it is a felony to obtain food stamps through fraud if the benefits are valued at more than $1,000.

**§ 167:17-b. Prohibited Acts.**

I. No person shall:

(a) By means of an intentionally false statement or misrepresentation or by impersonation or other fraudulent act or device, obtain or attempt to obtain, or aid or abet any person in obtaining any assistance or benefit or payment under RSA 161 or RSA 167 to which he is not entitled;

(b) With intent to defraud the department of health and human services, buy or aid or abet in the purchase or the disposal of the property of a person receiving assistance or food stamps under RSA 161 or RSA 167, so as to affect the recipient's eligibility for assistance, without the consent of the commissioner of the department of health and human services;

(c) [Repealed.]

(d) Intentionally fail to disclose the receipt of property, wages, income or resources or any change in circumstances which would affect his eligibility for assistance or his initial or continued right to any benefit or payment for the purpose of receiving any assistance, benefit or payment under RSA 167 or RSA 161 to which he is not entitled;

(e) Knowingly use, transfer, acquire, alter, sell or possess food stamps or authorization to issue food stamps in any manner not authorized by the Federal Food Stamp Act, as amended, or by the federal regulations or state rules adopted pursuant to the act;

(f) Present or cause to be presented food stamps for payment or redemption, knowing the stamps were received, transferred or used in any manner not authorized by the Federal Food Stamp Act, as amended, or by the federal regulations or state rules adopted pursuant to the act;

(g), (h) [Repealed.]

II. When a person receiving assistance is convicted of an offense under this section, the commissioner of the department of health and human services shall discontinue his assistance, if such action has not already been taken.

N.H. Rev. Stat. Ann. § 167:17-b

**§ 167:17-c. Penalties.**

I. Any natural person who violates RSA 167:17-b shall, unless otherwise specified, be guilty of:

(a) A class A felony if the value of the monetary award or goods or services in question exceeds $1,500;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (b) A class B felony if the value of the monetary award or goods or services in question exceeds $1,000 but does not exceed $1,500; or | |
| | (c) A misdemeanor if the value of the monetary award or goods or services in question is $1,000 or less. | |
| | II. Any other person who violates RSA 167:17-b shall, unless otherwise specified, be guilty of: | |
| | (a) A felony if the value of the monetary award or goods or services in question exceeds $1,000; or | |
| | (b) A misdemeanor if the value of the monetary award or goods or services in question is $1,000 or less. | |
| | III. In the case of any natural person convicted of fraudulently using, presenting, transferring, acquiring, receiving, possessing or altering food stamps, the court may permit such person to perform work approved by the court for the purpose of providing restitution for losses incurred by the United States and the department of health and human services as a result of the offense for which such person was convicted. If the court permits such person to perform such work and such person agrees thereto, the court shall withhold the imposition of the sentence on the condition that such person perform the assigned work. Upon the successful completion of the assigned work the court may suspend such sentence. | |
| | N.H. Rev. Stat. Ann. § 167:17-c | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| New Jersey | Equivocal | N.J. Stat. Ann. § 44:8-140.1<br>N.J. Stat. Ann. § 30:4D-17<br>N.J. Stat. Ann. § 2C:1-4 |

In New Jersey, it is a crime of the third degree to obtain benefits through unlawful means. New Jersey does not use the terms felony and misdemeanor, but rather uses "crimes" and "disorderly person offenses" as equivalent terms respectively.

**§ 44:8-140. Wrongfully obtaining benefits; civil and criminal penalties.**

A person who willfully obtains benefits to which he is not entitled and a provider who willfully receives payments to which he is not entitled under the "Work First New Jersey General Public Assistance Act," P.L.1947, c. 156 (C.44:8-107 et seq.), shall be subject to the applicable civil and criminal penalties contained in the "New Jersey Medical Assistance and Health Services Act," P.L.1968, c. 413 (C.30:4D-1 et seq.).

N.J. Stat. Ann. § 44:8-140.1

**§ 30:4D-17. Penalties for violation of act; criminal and civil; judgments.**

(a) Any person who willfully obtains benefits under P.L.1968, c. 413 (C.30:4D-1 et seq.) to which a person is not entitled or in a greater amount than that to which a person is entitled and any provider who willfully receives medical assistance payments to which a provider is not entitled or in a greater amount than that to which a provider is entitled is guilty of a crime of the third degree, provided, however, that the presumption of nonimprisonment set forth in subsection e. of N.J.S.2C:44-1 for persons who have not previously been convicted of an offense shall not apply to a person who is convicted under the provisions of this subsection.

(b) Any provider, or any person, firm, partnership, corporation, or entity, who:

(1) Knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any cost study, claim form, or any document necessary to apply for or receive any benefit or payment under P.L.1968, c. 413; or

(2) At any time knowingly and willfully makes or causes to be made any false statement, written or oral, of a material fact for use in determining rights to such benefit or payment under P.L.1968, c. 413; or

(3) Conceals or fails to disclose the occurrence of an event which

(i) affects a person's initial or continued right to any such benefit or payment, or

(ii) affects the initial or continued right to any such benefit or payment of any provider or any person, firm, partnership, corporation, or other entity in whose behalf a person has applied for or is receiving such benefit or payment with an intent to fraudulently secure benefits or payments not authorized under P.L.1968, c. 413 or in a greater amount than that which is authorized under P.L.1968, c. 413; or

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 62 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (4) Knowingly and willfully converts benefits or payments or any part thereof received for the use and benefit of any provider or any person, firm, partnership, corporation, or other entity to a use other than the use and benefit of such provider or such person, firm, partnership, corporation, or entity; is guilty of a crime of the third degree, provided, however, that the presumption of nonimprisonment set forth in subsection e. of N.J.S.2C:44-1 for persons who have not previously been convicted of an offense shall not apply to a person who is convicted under the provisions of this subsection. … (e) Any person, firm, corporation, partnership, or other legal entity who violates the provisions of any of the foregoing subsections of this section or any provisions of section 3 of P.L.2007, c. 265 (C.2A:32C-3), shall, in addition to any other penalties provided by law, be liable to civil penalties of: (1) payment of interest on the amount of the excess benefits or payments at the maximum legal rate in effect on the date the payment was made to said person, firm, corporation, partnership or other legal entity for the period from the date upon which payment was made to the date upon which repayment is made to the State; (2) payment of an amount not to exceed three-fold the amount of such excess benefits or payments; and (3) payment in the sum of not less than and not more than the civil penalty allowed under the federal False Claims Act (31 U.S.C. s.3729 et seq.), as it may be adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L.101-410 for each excessive claim for assistance, benefits or payments. … (k) Notwithstanding the provisions of N.J.S.2C:43-3 to the contrary, but in addition to any other penalty or disposition that may be imposed by law: (1) a person who violates the provisions of subsection (a), (b), or (c) of this section shall be liable to a penalty of not less than $15,000 and not more than $25,000 for each violation; and (2) a person who violates the provisions of subsection (d) of this section shall be liable to a penalty of not less than $10,000 and not more than $25,000 for each violation. (l) A person who violates the provisions of subsection (a), (b), or (c) of this section under circumstances in which the aggregate amount obtained or sought to be obtained is $1,000 or more, who has previously been convicted of a violation of the provisions of subsection (a), (b), or (c) of this section within 10 years of the current violation, under circumstances where the aggregate amount obtained or sought to be obtained was $1,000 or more, is guilty of a crime of the second degree and, in addition to any other penalty or disposition authorized by law and notwithstanding the provisions of N.J.S.2C:43-3 to the contrary, shall be liable to a penalty of not less than $25,000 and not more than $150,000 for each such repeat violation. | N.J. Stat. Ann. § 30:4D-17 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 2C:1-4. Classes of offenses.** | |
| | a. An offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a crime within the meaning of the Constitution of this State. Crimes are designated in this code as being of the first, second, third or fourth degree. | |
| | b. An offense is a disorderly persons offense if it is so designated in this code or in a statute other than this code. An offense is a petty disorderly persons offense if it is so designated in this code or in a statute other than this code. Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of this State. There shall be no right to indictment by a grand jury nor any right to trial by jury on such offenses. Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime. | |
| | c. An offense defined by any statute of this State other than this code shall be classified as provided in this section or in section 2C:43-1 and, except as provided in section 2C:1-5b and chapter 43, the sentence that may be imposed upon conviction thereof shall hereafter be governed by this code. Insofar as any provision outside the code declares an offense to be a misdemeanor when such offense specifically provides a maximum penalty of 6 months' imprisonment or less, whether or not in combination with a fine, such provision shall constitute a disorderly persons offense. | |
| | d. Subject to the provisions of section 2C:43-1, reference in any statute, rule, or regulation outside the code to the term "high misdemeanor" shall mean crimes of the first, second, or third degree and reference to the term "misdemeanor" shall mean all crimes. | |
| | N.J. Stat. Ann. § 2C:1-4 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| New Mexico | Felony | N.M. Stat. Ann. § 30-40-1<br>N.M. Stat. Ann. § 30-40-4 |

In New Mexico, it is a felony make a false claim in order to obtain public assistance. Additionally, it is a felony to fail to disclose facts in order to obtain public assistance, unless the benefits are valued at $250 or less.

**§ 30-40-1. Failing to disclose facts or change of circumstances to obtain public assistance.**
A. Failing to disclose facts or change of circumstances to obtain public assistance consists of a person knowingly failing to disclose a material fact known to be necessary to determine eligibility for public assistance or knowingly failing to disclose a change in circumstances for the purpose of obtaining or continuing to receive public assistance to which the person is not entitled or in amounts greater than that to which the person is entitled.
B. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is two hundred fifty dollars ($250) or less in any twelve consecutive months is guilty of a petty misdemeanor.
C. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more than two hundred fifty dollars ($250) but not more than five hundred dollars ($500) in any twelve consecutive months is guilty of a misdemeanor.
D. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more than five hundred dollars ($500) but not more than two thousand five hundred dollars ($2,500) in any twelve consecutive months is guilty of a fourth degree felony.
E. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more than two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) in any twelve consecutive months is guilty of a third degree felony.
F. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received exceeds twenty thousand dollars ($20,000) in any twelve consecutive months is guilty of a second degree felony.

N.M. Stat. Ann. § 30-40-1

**§ 30-40-4. Making or permitting a false claim for reimbursement for public assistance.**
A. Making or permitting a false claim for reimbursement of public assistance services consists of knowingly making, causing to be made or permitting to be made a claim for reimbursement for services provided to a recipient of public assistance for services not

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | rendered or making a false material statement or forged signature upon any claim for services, with intent that the claim shall be relied upon for the expenditure of public money.<br>B. Whoever commits making or permitting a false claim for reimbursement for public assistance services is guilty of a fourth degree felony. | |
| N.M. Stat. Ann. § 30-40-4 | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| New York | Felony | N.Y. Penal Law § 158<br>N.Y. Penal Law § 158.05<br>N.Y. Penal Law § 158.10<br>N.Y. Penal Law § 158.15<br>N.Y. Penal Law § 158.20<br>N.Y. Penal Law § 158.25 |

In New York, it is either a misdemeanor or felony to obtain or try to obtain welfare through fraud. It is a felony if the benefits are valued at more than $1,000.

**§ 158. Definitions; presumption; limitation.**
1. Definitions. The following definitions are applicable to this article:

(a) "Public benefit card" means any medical assistance card, food stamp assistance card, public assistance card, or any other identification, authorization card or electronic access device issued by the state or a social services district, as defined in subdivision seven of section two of the social services law, which entitles a person to obtain public assistance benefits under a local, state, or federal program administered by the state, its political subdivisions, or social services districts.

(b) "Fraudulent welfare act" means knowingly and with intent to defraud, engaging in an act or acts pursuant to which a person:

(1) offers, presents or causes to be presented to the state, any of its political subdivisions or social services districts, or any employee or agent thereof, an oral or written application or request for public assistance benefits or for a public benefit card with knowledge that the application or request contains a false statement or false information, and such statement or information is material, or

(2) holds himself or herself out to be another person, whether real or fictitious, for the purpose of obtaining public assistance benefits, or

(3) makes a false statement or provides false information for the purpose of (i) establishing or maintaining eligibility for public assistance benefits or (ii) increasing or preventing reduction of public assistance benefits, and such statement or information is material.

(c) "Public assistance benefits" means money, property or services provided directly or indirectly through programs of the federal government, the state government or the government of any political subdivision within the state and administered by the department of social services or social services districts.

N.Y. Penal Law § 158

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | **§ 158.05. Welfare fraud in the fifth degree.**<br>A person is guilty of welfare fraud in the fifth degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits.<br>Welfare fraud in the fifth degree is a class A misdemeanor. | N.Y. Penal Law § 158.05 |
| | **§ 158.10. Welfare fraud in the fourth degree.**<br>A person is guilty of welfare fraud in the fourth degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits, and when the value of the public assistance benefits exceeds one thousand dollars.<br>Welfare fraud in the fourth degree is a class E felony. | N.Y. Penal Law § 156.10 |
| | **§ 158.15. Welfare fraud in the third degree.**<br>A person is guilty of welfare fraud in the third degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits, and when the value of the public assistance benefits exceeds three thousand dollars.<br>Welfare fraud in the third degree is a class D felony. | N.Y. Penal Law § 158.15 |
| | **§ 158.20. Welfare fraud in the second degree.**<br>A person is guilty of welfare fraud in the second degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits, and when the value of the public assistance benefits exceeds fifty thousand dollars.<br>Welfare fraud in the second degree is a class C felony. | N.Y. Penal Law § 158.20 |
| | **§ 158.25. Welfare fraud in the first degree.**<br>A person is guilty of welfare fraud in the first degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits, and when the value of the public assistance benefits exceeds one million dollars.<br>Welfare fraud in the first degree is a class B felony. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| N.Y. Penal Law § 158.25 | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| North Carolina | Felony | N.C. Gen. Stat. § 108A-53 |

In North Carolina, it is a felony to fraudulently obtain or to attempt to obtain food stamps if the benefits are valued at more than $400.

**§ 108A-53. Fraudulent misrepresentation.**

(a) Any person, whether provider or recipient or person representing himself as such, who knowingly obtains or attempts to obtain, or aids or abets any person to obtain by means of making a willfully false statement or representation or by impersonation or by failing to disclose material facts or in any manner not authorized by this Part or the regulations issued pursuant thereto, transfers with intent to defraud any electronic food and nutrition benefit to which that person is not entitled in the amount of four hundred dollars ($400.00) or less shall be guilty of a Class 1 misdemeanor. Whoever knowingly obtains or attempts to obtain, or aids or abets any person to obtain by means of making a willfully false statement or representation or by impersonation or by failing to disclose material facts or in any manner not authorized by this Part or the regulations issued pursuant thereto, transfers with intent to defraud any electronic food and nutrition benefit to which he is not entitled in an amount more than four hundred dollars ($400.00) shall be guilty of a Class I felony.

(b) Whoever presents, or causes to be presented, electronic food and nutrition benefits for payment or redemption, knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this Part or the regulations issued pursuant to this Part shall be guilty of a Class 1 misdemeanor.

(c) Whoever receives any electronic food and nutrition benefits for any consumable item knowing that such benefits were procured fraudulently under subsections (a) and/or (b) of this section shall be guilty of a Class 1 misdemeanor.

(d) Whoever receives any electronic food and nutrition benefits for any consumable item whose exchange is prohibited by the United States Department of Agriculture shall be guilty of a Class 1 misdemeanor.

N.C. Gen. Stat. § 108A-53

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| North Dakota | Felony | N.D. Cent. Code § 12.1-23.02<br>N.D. Cent. Code § 12.1-23-05 |

North Dakota does not have a statute directly addressing fraud relating to food stamps, however, the state relies upon a general theft statute in such situations. *See State v. Hatch*, 346 N.W.2d 268 (N.D. 1984) (affirming conviction under N.D. Cent. Code § 12.1-23-02 when defendant obtained unemployment benefits by falsely claiming he was not employed). Under the theft statute, it is a felony if the value of the property stolen exceeds $1,000.

**12.1-23-02. Theft of property.**
A person is guilty of theft if he:
1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;
2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or
3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof.

N.D. Cent. Code § 12.1-23-02

**12.1-23-05. Grading of theft offenses.**
1. Notwithstanding subsection 3, theft under this chapter is a class A felony if the property or services stolen exceed fifty thousand dollars in value.
2. Notwithstanding the provisions of subsection 3, theft under this chapter is a class B felony if the property or services stolen exceed ten thousand dollars in value but do not exceed fifty thousand dollars or are acquired or retained by a threat to commit a felony.
3. Theft under this chapter is a class C felony if:
   a. The property or services stolen exceed one thousand dollars in value;
   b. The property or services stolen are acquired or retained by threat and (1) are acquired or retained by a public servant by a threat to take or withhold official action, or (2) exceed one hundred dollars in value;
   c. The property or services stolen exceed one hundred dollars in value and are acquired or retained by a public servant in the course of official duties;
   d. The property stolen is a firearm, ammunition, or an explosive or destructive device;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | e. The property consists of any government file, record, document, or other government paper stolen from any government office or from any public servant; | |
| | f. The defendant is in the business of buying or selling stolen property and the defendant receives, retains, or disposes of the property in the course of that business; | |
| | g. The property stolen consists of any implement, paper, or other thing uniquely associated with the preparation of any money, stamp, bond, or other document, instrument, or obligation of this state; | |
| | h. The property stolen consists of livestock taken from the premises of the owner; | |
| | i. The property stolen consists of a key or other implement uniquely suited to provide access to property the theft of which would be a felony and it was stolen to gain such access; | |
| | j. The property stolen is a card, plate, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit, or is a debit card, electronic fund transfer card, code, or other means of access to an account for the purposes of initiating electronic fund transfers; or | |
| | k. The property stolen is a prescription drug as defined in section 43-15.3-01, except when the quantity stolen is five or fewer capsules, pills, or tablets. | |
| | 4. All other theft under this chapter is a class A misdemeanor, unless the requirements of subsection 5 are met. | |
| | 5. Theft under this chapter of property or services of a value not exceeding five hundred dollars is a class B misdemeanor if: | |
| | a. The theft was not committed by threat; | |
| | b. The theft was not committed by deception by one who stood in a confidential or fiduciary relationship to the victim of the theft; and | |
| | c. The defendant was not a public servant or an officer or employee of a financial institution who committed the theft in the course of official duties. | |
| | The special classification provided in this subsection applies if the offense is classified under this subsection in the charge or if, at sentencing, the required factors are established by a preponderance of the evidence. | |
| | | N.D. Cent. Code § 12.1-23-05 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Ohio | Felony | Ohio Rev. Code Ann. § · § 2913.46 |

In Ohio, it is a felony to obtain or possess unlawful SNAP benefits.

**§ 2913.46 Illegal use of food stamps or WIC program benefits.**

(A)

(1) As used in this section:

(a) "Electronically transferred benefit" means the transfer of supplemental nutrition assistance program benefits or WIC program benefits through the use of an access device.

(b) "WIC program benefits" includes money, coupons, delivery verification receipts, other documents, food, or other property received directly or indirectly pursuant to section 17 of the "Child Nutrition Act of 1966," 80 Stat. 885, 42 U.S.C.A. 1786, as amended.

(c) "Access device" means any card, plate, code, account number, or other means of access that can be used, alone or in conjunction with another access device, to obtain payments, allotments, benefits, money, goods, or other things of value or that can be used to initiate a transfer of funds pursuant to section 5101.33 of the Revised Code and the Food and Nutrition Act of 2008 ( 7 U.S.C. 2011 et seq.), or any supplemental food program administered by any department of this state or any county or local agency pursuant to section 17 of the "Child Nutrition Act of 1966," 80 Stat. 885, 42 U.S.C.A. 1786, as amended. An "access device" may include any electronic debit card or other means authorized by section 5101.33 of the Revised Code.

(d) "Aggregate value of supplemental nutrition assistance program benefits, WIC program benefits, and electronically transferred benefits involved in the violation" means the total face value of any supplemental nutrition assistance program benefits, plus the total face value of WIC program coupons or delivery verification receipts, plus the total value of other WIC program benefits, plus the total value of any electronically transferred benefit or other access device, involved in the violation.

(e) "Total value of any electronically transferred benefit or other access device" means the total value of the payments, allotments, benefits, money, goods, or other things of value that may be obtained, or the total value of funds that may be transferred, by use of any electronically transferred benefit or other access device at the time of violation.

(2) If supplemental nutrition assistance program benefits, WIC program benefits, or electronically transferred benefits or other access devices of various values are used, transferred, bought, acquired, altered, purchased, possessed, presented for redemption, or transported in violation of this section over a period of twelve months, the course of conduct may be charged as one offense and the

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Ohio Rev. Code. Ann. § 2913.46 | values of supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefits or other access devices may be aggregated in determining the degree of the offense.<br>(B) No individual shall knowingly possess, buy, sell, use, alter, accept, or transfer supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit in any manner not authorized by the Food and Nutrition Act of 2008 (7 U.S.C. 2011 et seq.) or section 17 of the "Child Nutrition Act of 1966," 80 Stat. 885, 42 U.S.C. 1786, as amended.<br>(C) No organization, as defined in division (D) of section 2901.23 of the Revised Code, shall do either of the following:<br>(1) Knowingly allow an employee or agent to sell, transfer, or trade items or services, the purchase of which is prohibited by the Food and Nutrition Act of 2008 (7 U.S.C. 2011 et seq. or section 17 of the "Child Nutrition Act of 1966," 80 Stat. 885, 42 U.S.C. 1786, as amended, in exchange for supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit;<br>(2) Negligently allow an employee or agent to sell, transfer, or exchange supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit for anything of value.<br>(D) Whoever violates this section is guilty of illegal use of supplemental nutrition assistance program benefits or WIC program benefits. Except as otherwise provided in this division, illegal use of supplemental nutrition assistance program benefits or WIC program benefits is a felony of the fifth degree. If the aggregate value of the supplemental nutrition assistance program benefits, WIC program benefits, and electronically transferred benefits involved in the violation is one thousand dollars or more and is less than seven thousand five hundred dollars, illegal use of supplemental nutrition assistance program benefits or WIC program benefits is a felony of the fourth degree. If the aggregate value of the supplemental nutrition assistance program benefits, WIC program benefits, and electronically transferred benefits involved in the violation is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, illegal use of supplemental nutrition assistance program benefits or WIC program benefits is a felony of the third degree. If the aggregate value of the supplemental nutrition assistance program benefits, WIC program benefits, and electronically transferred benefits involved in the violation is one hundred fifty thousand dollars or more, illegal use of supplemental nutrition assistance program benefits or WIC program benefits is a felony of the second degree. | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Oklahoma | Felony | Okla. Stat. tit. 56, § 243 |

In Oklahoma, it is either a misdemeanor or felony to fraudulently obtain food stamps. It is a felony in the benefits are valued at more than $500.

**§56-243. Food stamp fraud - Penalties.**
A. No person shall:
1. Obtain;
2. Attempt to obtain;
3. Aid;
4. Abet;
5. Assist any person to obtain, by means of:
   a. a false statement or representation,
   b. false impersonation,
   c. a fictitious transfer, conveyance or encumbrance of property or income,
   d. knowing and willful failure to report to the Department of Human Services:
     (1)  income,
     (2)  personal property,
     (3)  real property,
     (4)  household members, or
     (5)  other eligibility factors,
   at the time of application or during a period of receipt of assistance, or
   e. any other fraudulent device:
     (1)  food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program, to which such applicant for food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program is not entitled, or
     (2)  a greater amount of food stamps or coupons, or a greater number of benefit or debit cards or any other device authorizing participation in the food stamp program than that amount or number which such applicant for food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program is justly entitled to;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | 6.  Acquire, possess, use or transfer food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program that has been issued to another person, except as authorized by this act and the rules of the Department of Human Services; | |
| | 7.  Acquire or transfer food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program, except in exchange for food or food products for human consumption.  For purposes of this paragraph, the phrase "food or food products for human consumption" shall not be construed as including alcoholic beverages, tobacco, beer, or imported foods; or | |
| | 8.  Transfer any food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program, to a person who is not authorized by this act and rules of the Department of Human Services to acquire, possess, or use the transferred food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program. | |
| | B.  1.  Any person, firm or corporation who violates any of the provisions of this section shall be guilty of a: | |
| | a.  misdemeanor, if the aggregate amount of food stamps or coupons, or the aggregate value of any benefit or debit card or any other device authorizing participation in the food stamp program obtained or transferred is Five Hundred Dollars ($500.00) or less, and, upon conviction thereof, shall be punishable by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for not more than three (3) months, or by both such fine and imprisonment, in the discretion of the court, or | |
| | b.  felony, if the aggregate amount of food stamps or coupons, or the aggregate value of any benefit or debit card or any other device authorizing participation in the food stamp program obtained or transferred is in excess of Five Hundred Dollars ($500.00), and, upon conviction thereof, shall be punishable by a fine of not more than Five Thousand Dollars ($5,000.00), or by imprisonment in the State Penitentiary for not more than two (2) years, or by both such fine and imprisonment, in the discretion of the court. | |
| | 2.  Any store which allows purchases of prohibited items shall not be allowed to participate in the program. | |
| | 3.  Any person, firm or corporation who knowingly traffics in food stamps or coupons or an aggregate value of One Hundred Dollars ($100.00) or less, or any benefit or debit card or any other device authorizing participation in the food stamp program with an aggregate value of One Hundred Dollars ($100.00) or less, shall, upon conviction, be guilty of a misdemeanor, punishable by a fine of not more than Five Hundred Dollars ($500.00), by imprisonment in the county jail for not more than three (3) months, or by both such fine and imprisonment, in the discretion of the court. | |
| | 4.  Any person, firm or corporation who knowingly traffics in food stamps or coupons of an aggregate value exceeding One Hundred Dollars ($100.00), or any benefit or debit card or any other device authorizing participation in the food stamp program with an aggregate value exceeding One Hundred Dollars ($100.00), shall, upon conviction, be guilty of a felony, punishable by a | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | fine of not more than Five Thousand Dollars ($5,000.00), by imprisonment in the State Penitentiary for not more than two (2) years, or by both such fine and imprisonment, in the discretion of the court. | |
| | 5. Any district attorney who enters into a deferred adjudication or who negotiates for a deferred sentence with a defendant charged with a violation of the provisions of this section shall present the defendant with a disqualification consent agreement as part of the deferred adjudication or sentence. | |
| | C. As used in this section, "to traffic or trafficking in food stamps" means: | |
| | 1. The buying, selling, stealing, or otherwise effecting an exchange of food stamp benefits issued and accessed via electronic benefit transfer cards, benefit or debit cards, card numbers and personal identification numbers, or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; | |
| | 2. The exchange of firearms, ammunition, explosives, or controlled substances, as defined in Section 802 of Title 21 of the United States Code, for food stamp benefits or food stamp electronic benefit transfer cards, benefit or debit cards; | |
| | 3. The possession of stolen food stamp electronic benefit transfer cards, benefit or debit cards; | |
| | 4. Purchasing a product with food stamp benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount; | |
| | 5. Purchasing a product with food stamp benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with food stamp benefits in exchange for cash or consideration other than eligible food; or | |
| | 6. Intentionally purchasing products originally purchased with food stamp benefits in exchange for cash or consideration other than eligible food. | |
| Okla. Stat. tit. 56, § 243 | | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Oregon | Felony | Or. Rev. Stat. § 411.840<br>Or. Rev. Stat. § 411.990<br>Or. Rev. Stat. § 161.705 |

In Oregon, fraudulently obtaining food stamps may be treated as theft and is a felony if the benefits are valued at $1,000 or more.

**§ 411.840 Unlawfully obtaining or disposing of supplemental nutrition assistance.**
(1) A person may not knowingly obtain or attempt to obtain, or aid or abet another person in obtaining or attempting to obtain, any supplemental nutrition assistance to which the person or such other person is not entitled to receive or use under ORS 411.806 to 411.845, or under any rule or regulation promulgated pursuant to ORS 411.806 to 411.845.
(2) A person may not knowingly give, sell, trade or otherwise dispose of supplemental nutrition assistance to another person who is not entitled to receive or use the assistance pursuant to ORS 411.806 to 411.845, or pursuant to any rule or regulation promulgated pursuant to ORS 411.806 to 411.845. [1963 c.599 §16; 1997 c.581 §15; 2009 c.599 §7]

Or. Rev. Stat. § 411.840

**§ 411.990 Penalties.**
(1) Violation of ORS 411.320 or 411.335 is a Class C misdemeanor.
(2) Violation of any provision of ORS 411.630 or 411.840 is a Class C felony which may be reduced to a Class A misdemeanor in accordance with ORS 161.705.
(3) Violation of ORS 411.675 is a Class C felony.
(4) Criminal prosecution of violators of ORS 411.675 shall be commenced in accordance with ORS 131.125 (8) and (9).

Or. Rev. Stat. § 411.990

**§ 161.705 Reduction of certain felonies to misdemeanors.**
Notwithstanding ORS 161.525, the court may enter judgment of conviction for a Class A misdemeanor and make disposition accordingly when:
(1)(a) A person is convicted of any Class C felony;
(b) A person is convicted of a Class B felony pursuant to ORS 475.860 (2)(a);
(c) A person is convicted of the Class B felony of possession of marijuana pursuant to ORS 475.864 (2); or

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
|  | (d) A person convicted of any of the felonies described in paragraphs (a) to (c) of this subsection, or of a Class A felony pursuant to ORS 166.720, has successfully completed a sentence of probation; and <br> (2) The court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that it would be unduly harsh to sentence the defendant for a felony. | Or. Rev. Stat. § 161.750 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Pennsylvania | Misdemeanor | 62 Pa Cons. Stat. Ann. § 481(a)–(b) |

In Pennsylvania, obtaining food stamps through fraudulent means is treated as either a misdemeanor or a felony, depending on the amount of assistance fraudulently obtained. It is a felony if the benefits received are valued at $3,000 or more.

## § 481. False Statements; Investigations; Penalty

(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a wilfully [sic] false statement or misrepresentation, or by impersonation or by wilfully [sic] failing to disclose a material fact regarding eligibility or other fraudulent means, secures, or attempts to secure, or aids or abets or attempts to aid or abet any person in securing assistance, or Federal food stamps, commits a crime which shall be graded as provided in subsection (b).

(b) Any person violating subsection (a) commits the grade of crime determined from the following schedule:

| Amount of Assistance of Food Stamps | Degree of Crime |
|---|---|
| $3,000 or more | Felony of the third degree |
| $1,500 to $2,999 | Misdemeanor of the first degree |
| $1,000 to $1,499 | Misdemeanor of the second degree |
| $ 999 and under, or an attempt to commit any act prohibited in subsection (a) | Misdemeanor of the third degree |

Pursuant to 42 Pa.C.S. § 1515(a)(7) (relating to jurisdiction and venue), jurisdiction over cases graded a misdemeanor of the third degree under this section shall be vested in district justices.

62 Pa Cons. Stat. Ann. § 481(a)–(b)

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Rhode Island | Felony | R.I. Gen. Laws § 40-6-16 |

In Rhode Island, it is a felony to obtain or attempt to obtain food stamps through fraud if the food stamps are worth more than $500.

**§ 40-6-16. Fraudulently use of food stamps.**

a) Any person who by any fraudulent device obtains, or attempts to obtain, or aids or abets any person to obtain, food stamps issued pursuant to the Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq., shall be guilty of larceny, and upon conviction thereof, shall be punished by imprisonment of not more than five (5) years or by fine of not more than one thousand dollars ($1,000), or both, if the value of the food stamps to which one is not entitled shall exceed five hundred dollars ($500); or by imprisonment by less than one year or by a fine of not more than five hundred dollars ($500), or both, if the value of the food stamps to which one is not entitled, shall not exceed five hundred dollars ($500).

(b) Upon conviction of the felony or misdemeanor, the individual shall be ineligible to participate in the food stamp program for not less than six (6) and not more than twenty-four (24) months, as determined by the court; provided, that the disqualification applies only to the individual so convicted and does not render the entire household ineligible for the program.

R.I. Gen. Laws § 40-6-16

**§ 11-1-2. Felony, misdemeanor – Petty misdemeanor, and violation distinguished.**
Unless otherwise provided, any criminal offense which at any given time may be punished by imprisonment for a term of more than one year, or by a fine of more than one thousand dollars ($1,000), is declared to be a felony; any criminal offense which may be punishable by imprisonment for a term not exceeding one year, or by a fine of not more than one thousand dollars ($1,000), or both, is declared to be a misdemeanor; any criminal offense which may be punishable by imprisonment for a term not exceeding six (6) months or by a fine of not more than five hundred dollars ($500), or both, is declared to be a petty misdemeanor; and any offense which may be punished by only a fine of not more than five hundred dollars ($500) is declared to be a violation.

R.I. Gen. Laws § 11-1-2

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| South Carolina | Felony | S.C. Code Ann. § 16-13-430 |

In South Carolina, it is a felony to fraudulently obtain food stamps if the benefits are valued at more than $2,000.

**§ 16-13-430. Fraudulent acquisition or use of food stamps.**
(A) It is unlawful for a person to:
  (1) obtain, attempt to obtain, aid, abet, or assist any person to obtain, by means of a false statement or representation, false impersonation, fictitious transfer, conveyance, or other fraudulent device, food stamps or coupons to which an applicant is not entitled or a greater amount of food stamps or coupons than that which an applicant is justly entitled; or
  (2) to acquire, possess, use, or transfer food stamps or coupons except as authorized by law and the rules and regulations of the United States Department of Agriculture relating to these matters.
(B) It is unlawful for a person to acquire or transfer food stamps or coupons except in exchange for food or food products for human consumption, which do not include alcoholic beverages, tobacco, beer, or wine.
(C) A person who violates the provisions of this section is guilty of a:
  (1) felony if the amount of food stamps fraudulently acquired or used is of a value of ten thousand dollars or more. Upon conviction, the person must be fined not more than five thousand dollars or imprisoned not more than ten years, or both;
  (2) felony if the amount of food stamps fraudulently acquired or used is of a value of more than two thousand dollars but less than ten thousand dollars. Upon conviction, the person must be fined not more than five hundred dollars or imprisoned not more than five years, or both;
  (3) misdemeanor triable in magistrates court or municipal court, notwithstanding the provisions of Sections 22-3-540, 22-3-545, 22-3-550, and 14-25-65, if the amount of food stamps fraudulently acquired or used is of a value of two thousand dollars or less. Upon conviction, the person must be fined not more than one thousand dollars, or imprisoned not more than thirty days, or both.
(D) A mercantile establishment which allows purchases of prohibited items in exchange for food stamps or coupons or currency of the United States must be disqualified from participation in the food stamp program for a period not to exceed two years and fined not more than five thousand dollars, or both.

S.C. Code Ann. § 16-13-430

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| South Dakota | Misdemeanor | S.D. Codified Laws § 28-13-16.2 |

In South Dakota, it is a misdemeanor to obtain food stamps or public assistance through false statements.

**§ 28-13-16.2. Intentional fraud or deceit to receive assistance.**
Any applicant for assistance who knowingly makes any false statement, with intent to defraud, as to his financial status or other required information, or in any way intentionally deceives any county commissioner, or any welfare worker employed pursuant to § 28-13-22, in order to receive assistance, shall be guilty of a Class 1 misdemeanor.

S.D. Codified Laws § 28-13-16.2

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Tennessee | Felony | Tenn. Code Ann. § 71-5-314 |

In Tennessee, it is a felony to obtain fraudulent food stamps if the benefits are worth more than $100.

**§ 71-5-314. Fraudulent receipt of food assistance — Penalties — Statute of limitations.**

(a) A person commits an offense who, knowingly, obtains, or attempts to obtain, by means of a willfully false statement, representation, or impersonation, or by any other fraudulent means or in any manner not authorized by this part, or by the regulations or procedures issued or implemented by the department pursuant to this part, any food coupons, food stamps, or food assistance benefits provided by any electronic benefits transfer process, or any assistance provided pursuant to this part by any other means as determined by the department, to which such person is not entitled or of a greater value than that to which such person is entitled.

(b) A person commits an offense who, knowingly, in any manner not authorized by this part or the regulations or procedures implemented by the department pursuant to this part, presents for payment, or causes to be presented for payment, transfers, exchanges, sells, or otherwise uses, or aids or abets any person to present for payment, transfer, exchange, sell, or otherwise use any food coupons, food stamps or food assistance benefits, or any electronic benefits card, authorization or personal identification number, device or other thing or means issued or utilized for the purpose of providing temporary assistance benefits pursuant to this part electronically or otherwise.

(c) A person who receives food coupons, food stamps or food assistance benefits or any electronic benefits card, authorization or personal identification number, device or other thing or means issued or utilized for the purpose of providing food assistance benefits electronically or otherwise, knowing them to have been presented for payment, transferred, exchanged, sold or otherwise used in any manner not authorized by this part or the regulations or procedures implemented by the department pursuant to this part, commits an offense.

(d) An offense under this section is a Class E felony if the value of such food stamps, food coupons, or food assistance sought to be obtained, or that is obtained, is one hundred dollars ($100) or more, and upon conviction of the offense, such person shall be sentenced for such offense as provided by law, or shall be fined not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000), or both; and, if the food stamps, food coupons, or food assistance sought to be obtained, or that is obtained, is of a value less than one hundred dollars ($100), such person commits a Class A misdemeanor and shall be sentenced or fined, or both, as provided by law.

...

Tenn. Code Ann. § 71-5-314

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Texas | Misdemeanor | Tex. Penal Code Ann. § 31.03 |

Texas does not have a statute directly addressing fraud relating to food stamps, however, the state relies upon a general theft statute in such situations. *See Askari v. State*, 129 S.W.3d 160 (Tex. Ct. App. 2003) (affirming denial of a motion to quash an indictment for food stamp fraud brought under Tex. Penal Code Ann. § 31.03). In Texas, theft is a felony if the value of the property is $2,500 or more.

**§ 31.03 Theft**
(a) A person commits an offense if the unlawfully appropriates property with intent to deprive the owner of property.
(b) Appropriation of property is unlawful if:
(1) it is without the owner's effective consent;
(2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or
(3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

. . .

(e) Except as provided by Subsection (f), an offense under this section is:
(1) a Class C misdemeanor if the value of the property stolen is less than $100;
(2) a Class B misdemeanor if:
(A) the value of the property stolen is $100 or more but less than $750;
(B) the value of the property stolen is less than $100 and the defendant has previously been convicted of any grade of theft; or
(C) the property stolen is a driver's license, commercial driver's license, or personal identification certificate issued by this state or another state;
(3) a Class A misdemeanor if the value of the property stolen is $750 or more but less than $2,500;
(4) a state jail felony if:
(A) the value of the property stolen is $2,500 or more but less than $30,000, or the property is less than 10 head of sheep, swine, or goats or any part thereof under the value of $30,000;
(B) regardless of value, the property is stolen from the person of another or from a human corpse or grave, including property that is a military grave marker;

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (C) the property stolen is a firearm, as defined by Section 46.01; | |
| | (D) the value of the property stolen is less than $2,500 and the defendant has been previously convicted two or more times of any grade of theft; | |
| | (E) the property stolen is an official ballot or official carrier envelope for an election; or | |
| | (F) the value of the property stolen is less than $20,000 and the property stolen is: | |
| | (i) aluminum; | |
| | (ii) bronze; | |
| | (iii) copper; or | |
| | (iv) brass; | |
| | . . . | |
| | (f) An offense described for purposes of punishment by Subsections (e)(1)-(6) is increased to the next higher category of offense if it is shown on the trial of the offense that: | |
| | (1) the actor was a public servant at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant; | |
| | (2) the actor was in a contractual relationship with government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship; | |
| | (3) the owner of the property appropriated was at the time of the offense: | |
| | (A) an elderly individual; or | |
| | (B) a nonprofit organization; | |
| | (4) the actor was a Medicare provider in a contractual relationship with the federal government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship; or | |
| | (5) during the commission of the offense, the actor intentionally, knowingly, or recklessly: | |
| | (A) caused a fire exit alarm to sound or otherwise become activated; | |
| | (B) deactivated or otherwise prevented a fire exit alarm or retail theft detector from sounding; or | |
| | (C) used a shielding or deactivation instrument to prevent or attempt to prevent detection of the offense by a retail theft detector. | |
| | . . . | |
| | Tex. Penal Code Ann. § 31.03 | |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Utah | Felony | Utah Code Ann. § 76-8-1205<br>Utah Code Ann. § 76-8-1206 |

In Utah, it is a felony to obtain public assistance through fraudulent means if the benefits are valued at $1,500 or more.

**§ 76-8-1205. Public assistance fraud defined.**
Each of the following persons, who intentionally, knowingly, or recklessly commits any of the following acts, is guilty of public assistance fraud:

(1) a person who uses, transfers, acquires, traffics in, falsifies, or possesses SNAP benefits as defined in Section 35A-1-102, a SNAP identification card, a certificate of eligibility for medical services, a Medicaid identification card, a fund transfer instrument, a payment instrument, or a public assistance warrant in a manner not allowed by law;

(2) a person who fraudulently misappropriates funds exchanged for SNAP benefits as defined in Section 35A-1-102, or an identification card, certificate of eligibility for medical services, Medicaid identification card, or other public assistance with which the person has been entrusted or that has come into the person's possession in connection with the person's duties in administering a state or federally funded public assistance program;

(3) a person who receives an unauthorized payment as a result of acts described in this section;

(4) a provider who receives payment or a client who receives benefits after failing to comply with any applicable requirement in Sections 76-8-1203 and 76-8-1204;

(5) a provider who files a claim for payment under a state or federally funded public assistance program for goods or services not provided to or for a client of that program;

(6) a provider who files or falsifies a claim, report, or document required by state or federal law, rule, or provider agreement for goods or services not authorized under the state or federally funded public assistance program for which the goods or services were provided;

(7) a provider who fails to credit the state for payments received from other sources;

(8) a provider who bills a client or a client's family for goods or services not provided, or bills in an amount greater than allowed by law or rule;

(9) a client who, while receiving public assistance, acquires income or resources in excess of the amount the client previously reported to the state agency administering the public assistance, and fails to notify the state agency to which the client previously reported within 10 days after acquiring the excess income or resources;

(10) a person who fails to act as required under Section 76-8-1203 or 76-8-1204 with intent to obtain or help another obtain an "overpayment" as defined in Section 35A-3-102; and

(11) a person who obtains an overpayment by violation of Section 76-8-1203 or 76-8-1204.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Utah Code Ann. § 76-8-1205 | **§ 76-8-1206. Penalties for public assistance fraud.**<br>(1) The severity of the offense of public assistance fraud is classified in accordance with the value of payments, assistance, or other benefits received, misappropriated, claimed, or applied for as follows:<br>    (a) second degree felony if the value is or exceeds $5,000;<br>    (b) third degree felony if the value is or exceeds $1,500 but is less than $5,000;<br>    (c) class A misdemeanor if the value is or exceeds $500 but is less than $1,500; and<br>    (d) class B misdemeanor if the value is less than $500.<br>(2) For purposes of Subsection (1), the value of an offense is calculated by aggregating the values of each instance of public assistance fraud committed by the defendant as part of the same facts and circumstances or a related series of facts and circumstances.<br>(3) Incidents of trafficking in SNAP benefits as defined in Section 35A-1-102 that occur within a six-month period, committed by an individual or coconspirators, are deemed to be a related series of facts and circumstances regardless of whether the transactions are conducted with a variety of unrelated parties.<br><br>Utah Code Ann. § 76-8-1206 | |

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 88 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Vermont | Felony | Vt. Stat. Ann. tit. 33, § 141<br>Vt. Stat. Ann. tit. 33, § 143 |

In Vermont, it is a felony to obtain public assistance through fraudulent means if the benefits are valued at $1,000 or more.

§ 141(a). Fraud.
A person who knowingly fails, by false statement, misrepresentation, impersonation, or other fraudulent means, to disclose a material fact used to determine whether that person is qualified to receive aid or benefits under a State or federally funded assistance program; or who knowingly fails to disclose a change in circumstances in order to obtain or continue to receive aid or benefits to which he or she is not entitled or in an amount larger than that to which he or she is entitled; or who knowingly aids and abets another person in the commission of any such act shall be punished as provided in section 143 of this title.

Vt. Stat. Ann. tit. 33, § 141

§ 143(a). General penalty.
(a) A person who knowingly violates a provision of this title for which no penalty is specifically provided shall:
   (1) If the assistance or benefits obtained pursuant to a single fraudulent scheme or a course of conduct are in violation of subsection 141(a) or (b) of this title involving $1,000.00 or less, be fined not more than the amount of assistance or benefits wrongfully obtained, or be imprisoned not more than one year, or both.
   (2) If the assistance or benefits obtained pursuant to a single fraudulent scheme or course of conduct are in violation of subsection (a) or (b) of section 141 of this title, and involve more than $1,000.00, be fined not more than an amount equal to the assistance or benefits wrongfully obtained, or be imprisoned not more than three years, or both.
   (3) If the violation is under subsection (c), (d), or (e) of section 141 of this title, be fined up to $1,000.00, or up to an amount equal to twice the amount of assistance, benefits, or payments wrongfully obtained or be imprisoned for not more than 10 years, or both.

Vt. Stat. Ann. tit. 33, § 143

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Virginia | Felony | Va. Code Ann. § 63.2-522<br>Va. Code Ann. § 18.2-95<br>Va. Code Ann. § 18.2-10 |

In Virginia, it is a Class 5 felony to obtain public assistance through fraudulent means if the benefits are valued at $1,000 or more.

**§ 63.2-522. False statements, representations, impersonations and fraudulent devices; penalty.**
Whoever obtains, or attempts to obtain, or aids or abets any person in obtaining, by means of a willful false statement or representation, or by impersonation, or other fraudulent device, public assistance or benefits from other programs designated under regulations of the Board, State Board of Health or the Board of Medical Assistance Services to which he is not entitled or who fails to comply with the provisions of § 63.2-513 is guilty of larceny.

Va. Code Ann. § 63.2-522

**§ 18.2-95. Grand larceny defined; how punished.**
Any person who (i) commits larceny from the person of another of money or other thing of value of $5 or more, (ii) commits simple larceny not from the person of another of goods and chattels of the value of $1,000 or more, or (iii) commits simple larceny not from the person of another of any firearm, regardless of the firearm's value, shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor more than 20 years or, in the discretion of the jury or court trying the case without a jury, be confined in jail for a period not exceeding 12 months or fined not more than $2,500, either or both.

Va. Code Ann. § 18.2-95

**§ 18.2-10**
The authorized punishments for conviction of a felony are:
(a) For Class 1 felonies, death, if the person so convicted was 18 years of age or older at the time of the offense and is not determined to be a person with intellectual disability pursuant to § 19.2-264.3:1.1, or imprisonment for life and, subject to subdivision (g), a fine of not more than $100,000. If the person was under 18 years of age at the time of the offense or is determined to be a person with intellectual disability pursuant to § 19.2-264.3:1.1, the punishment shall be imprisonment for life and, subject to subdivision (g), a fine of not more than $100,000.
(b) For Class 2 felonies, imprisonment for life or for any term not less than 20 years and, subject to subdivision (g), a fine of not more than $100,000.

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| | (c) For Class 3 felonies, a term of imprisonment of not less than five years nor more than 20 years and, subject to subdivision (g), a fine of not more than $100,000. | |
| | (d) For Class 4 felonies, a term of imprisonment of not less than two years nor more than 10 years and, subject to subdivision (g), a fine of not more than $100,000. | |
| | (e) For Class 5 felonies, a term of imprisonment of not less than one year nor more than 10 years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both. | |
| | (f) For Class 6 felonies, a term of imprisonment of not less than one year nor more than five years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both. | |
| | | Va. Code Ann. § 18.2-10 |

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Washington | Felony | Wash. Rev. Code Ann. § 74.08.331<br>Wash. Rev. Code Ann. § 9A.56.030 |

In Washington, it is a class B felony to obtain public assistance through fraudulent means.

**§ 74.08.331. Unlawful practices—Obtaining assistance—Disposal of realty—Penalties.**

(1) Any person who by means of a willfully false statement, or representation, or impersonation, or a willful failure to reveal any material fact, condition, or circumstance affecting eligibility or need for assistance, including medical care, surplus commodities, and food stamps or food stamp benefits transferred electronically, as required by law, or a willful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, including unemployment insurance, or any other change in circumstances affecting the person's eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which the person is not entitled or greater public assistance than that to which he or she is justly entitled is guilty of theft in the first degree under RCW 9A.56.030 and upon conviction thereof shall be punished by imprisonment in a state correctional facility for not more than fifteen years.

Wash. Rev. Code Ann. § 74.08.331

**§ 9A.56.030. Theft in the first degree**

. . .

(2) Theft in the first degree is a class B felony.

Wash. Rev. Code Ann. § 9A.56.030

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| West Virginia | Felony | W. Va. Code Ann. § 9-5-4 |

In West Virginia, it is a felony to obtain welfare assistance through fraudulent means.

### § 9-5-4. Penalties for false statements, etc.

Any person who obtains or attempts to obtain, or aids or abets an applicant or recipient in obtaining or attempting to obtain, by means of a willfully false statement or misrepresentation or by impersonation or any other fraudulent device:

(1) Any class of welfare assistance to which the applicant or recipient is not entitled; or
(2) Any class of welfare assistance in excess of that to which the applicant or recipient is justly entitled; shall upon conviction be punished as follows:

(a) If the aggregate value of all funds or other benefits obtained or attempted to be obtained shall be five hundred dollars or less, the person so convicted shall be guilty of a misdemeanor and shall be fined not more than one thousand dollars or confined in jail not exceeding one year; or

(b) If the aggregate value of all funds or other benefits obtained or attempted to be obtained shall exceed five hundred dollars, the person so convicted shall be guilty of a felony and shall be fined not more than five thousand dollars or confined in the penitentiary not less than one year nor more than five years.

W. Va. Code Ann. § 9-5-4

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Wisconsin | Felony | Wis. Stat. Ann. § 946.92 |

In Wisconsin, it is a Class H felony to obtain food stamps through misstatements or concealing facts.

**§946.92. Food stamp offenses.**

(2)(a) No person may misstate or conceal facts in a food stamp program application or report of income, assets or household circumstances with intent to secure or continue to receive food stamp program benefits.

…

(3)(a) Whoever violates sub. (2) is subject to the following penalties:
1. If the value of the food stamp program benefits does not exceed $100, a Class B misdemeanor.
2. Except as provided in subd. 3., if the value of the food stamp program benefits exceeds $100, but is less than $5,000, a Class I felony.
3. If the value of the food stamp program benefits exceeds $100, but is less than $5,000, and the person has a prior conviction under this section, a Class H felony.

Wis. Stat. Ann. § 946.92

Case 5:20-cv-03488-GEKP   Document 14-1   Filed 01/15/21   Page 94 of 94

| State | Felony or Misdemeanor Designation | Statutory Citation(s) |
|---|---|---|
| Wyoming | Felony | Wyo. Stat. Ann. § 42-2-112 |

In Wyoming, it is a felony to obtain supplemental nutrition assistance through fraudulent means if the benefits are valued at $500 or more.

**§ 42-2-112. Misrepresentation; penalties; recovery, termination or modification of assistance and services.**

(a) No person shall knowingly make a false statement or misrepresentation, fail to disclose a material fact, aid, abet or conspire with any other person in obtaining any form of supplemental nutrition assistance benefit under the supplemental nutrition assistance program.

(b) No person shall knowingly make a false statement or misrepresentation, fail to disclose a material fact, aid, abet or conspire with any other person in obtaining any commodity under the supplemental nutrition assistance program.

(c) No person shall knowingly trade or otherwise dispose of any supplemental nutrition assistance benefit received under the supplemental nutrition assistance program, except to a federally authorized food retailer.

…

(k) Any person violating this section is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the commodity, supplemental nutrition assistance benefit or other public welfare benefit under this article is five hundred dollars ($500.00) or more; or

(ii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the commodity, supplemental nutrition assistance benefit or other public welfare benefit under this article is less than five hundred dollars ($500.00).

Wyo. Stat. Ann. § 42-2-112

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. 5:20-CV-03488-GEKP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM BARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PLAINTIFF BRYAN RANGE'S RESPONSES TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Bryan Range hereby submits his responses to Defendants' first set of interrogatories.

GENERAL OBJECTIONS

A.     Plaintiff objects to each definition, instruction, and interrogatory to the extent that it attempts to impose discovery obligations which are greater than those required under the Federal Rules of Civil Procedure.

B.     Plaintiff objects to each definition, instruction, and interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

C.     Plaintiff objects to each definition, instruction, and interrogatory to the extent that it requests information relating to matters that are not relevant to the pending lawsuit or not reasonably calculated to lead to the discovery of admissible evidence or otherwise exceeds the scope and manner of discovery permitted by the Federal Rules of Civil Procedure.

1

young children, that we were eligible for the assistance. Things were really bad at that point in life and we were literally trying to survive.

Interrogatory 2:

Describe in detail any circumstances – whether in a civil or criminal context – where you have been alleged to have made a false statement under oath.

Response to Interrogatory 2:

Aside from the response to interrogatory 1, none.

Interrogatory 3:

Describe in detail the circumstances surrounding your criminal history, including but not limited to any of the events mentioned in your complaint.

Response to Interrogatory 3:

On August 8, 1995, I was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing my income. The circumstances surrounding this misdemeanor conviction are described in my response to interrogatory 1. I was sentenced to three years probation, which I successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which I paid.

I have received some speeding tickets and parking violations, though not for several years. In 2011, I was convicted of a summary offense for fishing without a license. I was fishing at the Susquehanna River with some people, only one of whom I was acquainted with, when a fish warden approached our group and asked for licenses. He asked if I had a license and I said I did, because a few weeks earlier I had bought some new fishing equipment and believed that I

3

had a bought license as part of that purchase. The warden said he had to write me a ticket for

fishing without a license, but that I had ten days to produce the license. As it turned out I had

forgotten to buy the license when I picked up the fishing gear. I contacted the warden and

explained this mistake, and I believe he issued me a second citation. The fines totaled about

$200, and I paid them. I did not lose my fishing privileges.

Interrogatory 4:

Describe in detail the circumstances of any violent acts by you which may have subjected

you to state or federal criminal liability.

Response to Interrogatory 4:

None.

Interrogatory 5:

Describe any and all incidents where you possessed, handled or used a firearm after your

disqualifying conviction in August 1995.

Response to Interrogatory 5:

Objections: The interrogatory is overbroad, unduly burdensome, not "proportional to the

needs of the case," Fed. R. Civ. P. 26(b)(1), and calls for information that is irrelevant and not

likely to lead to the discovery of admissible evidence. The interrogatory is also vague as the term

"firearm" is not defined. Plaintiff shall interpret the term "firearm" as that term is defined in 18

U.S.C. § 921(a)(3), including its exception for "antique firearm" as defined in 18 U.S.C. §

921(a)(16). Notwithstanding said objections and without waiving same, and in accordance with

Plaintiff's understanding of "firearm," Plaintiff responds:

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BRYAN DAVID RANGE, | : |
| Plaintiff, | : |
| v. | :     Civil Action |
|  | :     No. 20-cv-3488 |
| MONTY WILKINSON, | : |
| Acting Attorney General of the United States, | : |
| REGINA LOMBARDO, | : |
| Acting Director, Bureau of | : |
| Alcohol, Tobacco, Firearms, and Explosives, | : |
| Defendants. | : |

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.  Bryan David Range, residing in Elizabethtown, Lancaster County, Pennsylvania, presently intends to purchase and possess firearms for self-defense within his own home and for hunting.  Range Decl., ¶ 1.
    a.  Admitted.


2.  Range is over the age of 21, is not under indictment, has never been convicted of a felony or misdemeanor crime of domestic violence, is not a fugitive from justice, is not an unlawful user of or addicted to any controlled substance, has not been adjudicated a mental defective or committed to a mental institution, has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner.  Range Decl., ¶ 2.
    a.  Admitted.

3.  On August 8, 1995, Range was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing his income.  Exh. A; Exh. B; Range Decl., ¶ 3.
    a.  Admitted.

4. Range's offense was graded as a first degree misdemeanor.  Exh. B. to Range Decl.
   a. Admitted.  Although Pennsylvania calls Range's crime a misdemeanor, the theft of public assistance funds is a misdemeanor that can result in an imprisonment of up to five years.  18 Pa. C.S. § 1104(1).  Moreover, in 2018 the Pennsylvania legislature lowered the felony threshold for a violation of 62 Pa. C.S. § 481 to $1,000.

5. In Pennsylvania, a first degree misdemeanor is punishable by up to five years' imprisonment, but carries no mandatory minimum sentence.  18 Pa. C.S. § 1104(1).
   a. Admitted.

6. At the time of Range's violation in January 1994, he was earning approximately $9 – $9.50 an hour, mowing lawns, taking home approximately $300 a week.  Range Decl., ¶ 4.
   a. Admitted.

7. Range and his then-wife were struggling to raise three children—a three and a half year old and twin two-year olds—on this income. Range's wife could not work as she was the children's primary caregiver.  Range Decl., ¶ 4.
   a. Admitted.

8. Range's wife had prepared the food stamp application, which she and Range both signed.  Range Decl., ¶ 5.
   a. Admitted.

9. The application under-reported Range's income.  Range Decl., ¶ 5.
   a. Admitted.  As a result of this fraudulent request for public assistance, Range fraudulently received $2,458 in public assistance that he was not entitled to receive.

10. Range does not recall reviewing the application, but he accepted responsibility for signing it and acknowledged that it was wrong for him to receive additional food stamps without having fully disclosed his income.  Range Decl., ¶ 5.
    a. Admitted.

11. Accordingly, Range agreed to plead guilty to violating 62 Pa. C.S. § 481(a). He was sentenced to three years' probation, which he successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which he paid.
Range Decl., ¶¶ 5-6; Exh. A; Exh. B.
    a. Admitted.

12. Range's only other criminal history consists of minor traffic and parking infractions, as well as a summary fishing offense in 2011 when he could not produce a license while fishing at the Susquehanna River. Range erred in thinking that he had renewed his fishing license. He paid fines for not having the license when asked by the fishing officer, and for not having the license he claimed. The incident did not impact Range's ability to fish.  Range Decl., ¶ 7.

    a.  Admitted.  By way of further answer, the offenses concerning the fishing violation for which he was charged and pleaded guilty to were: 1) making false statements and 2) fishing without a license.  December 30, 2020 Deposition of Bryan Range, attached as Exhibit 2 to Defendants' Summary Judgment Motion ("Range Dep.") at 37-39.

13. Range has never engaged in violence, nor has he ever threatened anyone with violence. Range Decl., ¶ 8.

    a.  Defendant currently has no evidence to the contrary, and therefore admits this.

14. To the extent that Range has possessed firearms and other weapons, he has always been careful to keep and use these responsibly.  Range Decl., ¶ 8.

    a.  Denied.  Plaintiff circumvented his disqualifying conviction, and the Pennsylvania Instant Check System ("PICS"), by having his wife purchase – on two occasions -- a hunting rifle for him when it was unlawful for him to possess or own a firearm. Range Dep. at 14-19; 21-22.

15. Range has always strived to comply with the law, including weapons laws, which he has never knowingly violated.  Range Decl., ¶ 8.

    a.  Denied.  Plaintiff circumvented his disqualifying conviction, and the PICS system, by having his wife purchase – on two occasions -- a hunting rifle for him when it was unlawful for him to possess or own a firearm.  Range Dep. at 14-19; 21-22.

16. Range has been married for the past 18 years to his second wife, with whom he has been together for the past 25 years.  Range Decl., ¶ 9.

    a.  Admitted.

17. He has lived at the same address for the past 24 years.  Range Decl., ¶ 9.

    a.  Admitted.

18. Range and his wife have successfully raised five now-adult children.  Range Decl., ¶ 9.

    a.  Admitted.

19. Range has been productively employed throughout his adult life. He is in his thirteenth year of employment as a machinist, prior to which he was self-employed as a painter for five years. Before then, was employed for ten years as a color technician for a printer.  Range Decl., ¶ 10.

    a.  Admitted.

20. Range was not represented by counsel during his prosecution for violating 62 Pa. C.S. § 481(a).  Range Decl., ¶ 11; Exh. A.

    a.  Admitted.

21. When Range pleaded guilty to violating 62 Pa. C.S. § 481(a), he understood only that he was pleading guilty to a misdemeanor, for which he would receive probation, be fined, and ordered to make restitution.  Range Decl., ¶ 12.

    a.  Denied.  While the government has been unable to obtain any record of the court proceeding where Range was sentenced, it is a court's obligation to set forth the consequences of a guilty plea. Furthermore, Range's two attempts to purchase a firearm were thwarted by the PICS system, which should have prompted him to investigate why he was disqualified from having a firearm.  Range Dep. at 14-19; 21-22.

22. Range was not advised of the maximum potential sentence, and he was not advised that the plea would cause him to be barred from possessing firearms.  Range Decl., ¶ 12.

    a.  Denied.  While the government has been unable to obtain any record of the court proceeding where Range was sentenced, it is a court's obligation to set forth the consequences of a guilty plea.  Furthermore, Range's two attempts to purchase a firearm were thwarted by the PICS system, which should have prompted him to investigate why he was disqualified from having a firearm.  Range Dep. at 14-19; 21-22.

23. Not suspecting that he was barred from possessing firearms, Range attempted to purchase a firearm, and was rejected by the instant background check system.  Range Decl., ¶ 13.

    a.  Admitted only that Range was rejected by the instant background check system; denied to the remainder of this paragraph for the reasons set forth in responses to Paragraphs 21 and 22.

24. Upon that rejection, a gun store employee reviewed with Range a list of prohibiting offenses, none of which Range committed. The employee then advised Range that the rejection was a typical error and that Range should just retry at a later time. Range Decl., ¶ 13.

    a.  Defendant currently has no evidence to the contrary, and therefore admits that the employee told him this.  By way of further answer, Range should have investigated his disqualification further.

4

25. Years later, Range was again denied a firearms purchase, and was again led to believe the rejection was a mistake as he had not committed any of the offenses that he was told were prohibiting. Range Decl., ¶ 13.

    a. Defendant currently has no evidence to the contrary, and therefore admits that a gun shop employee told him this. By way of further answer, Range should have investigated his disqualification further.

26. Range researched the matter further and was surprised to learn that he was barred from possessing firearms on account of his public assistance conviction. He thus immediately disposed of the only firearm within his possession. Range Decl., ¶ 14.

    a. Admitted.

27. Defendants instruct firearm dealers not to sell firearms to prospective purchasers who state that they have been convicted of a felony or other offense punishable by imprisonment for over a year. Answer, ¶ 17.

    a. Admitted.

28. "Section 922(g)(1) is by far the most frequently applied of Section 922(g)'s firearms disqualifications, forming the basis for thousands of criminal prosecutions, and tens of thousands of firearm-purchase denials each year." Petition for Writ of Certiorari, *Lynch* v. *Binderup*, U.S. Supreme Ct. No. 16-847, at 23 (citing U.S. Sent. Comm'n, *Quick Facts: Felon in Possession o f a Firearm* (July 2016), http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Felon_in_Possession_FY15).

    a. Admitted.

29. Range refrains from obtaining a firearm only firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under 18 U.S.C. § 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. Range Decl., ¶ 15.

    a. Admitted.

30. Range suffers the on-going harm of being unable to obtain firearms, which he would, in fact, obtain but for Defendants' enforcement of Section 922(g)(1).  Range Decl., ¶ 15.

  a. Admitted.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


 *s/ Susan R. Becker for GBD* 
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division


 */s Eric D. Gill* 
PAUL J. KOOB
ERIC D. GILL
Assistant United States Attorneys
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8432/8250
Eric.Gill@usdoj.gov


Date:  February 5, 2021

## CERTIFICATE OF SERVICE

I certify that on this day, the foregoing "Response to Statement of Undisputed Materials Facts in Support of Plaintiff's Motion for Summary Judgment" and supporting documents were filed electronically and are available for viewing and downloading from the court's ECF system.

Dated: February 5, 2021                                          s/ Paul J. Koob
                                                                 PAUL J. KOOB
                                                                 Assistant United States Attorney

Appx175

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. 5:20-CV-03488-GEKP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT M. WILKINSON, Acting | ) | |
| Attorney General of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS</u>

1.     On August 8, 1995, in the Court of Common Pleas of Lancaster County,

Pennsylvania, Range pled guilty to making a false statement to fraudulently obtain

public assistance. Compl. ¶ 7.

    *a.*     *Admitted.*

2.     Specifically, he falsified his income when he and his wife jointly applied to receive

approximately $2,458 in welfare assistance in violation of 62 Pa. C.S.A. § 481(a).

*Id.*

    *a.*     *Denied.*

    *b.*     *Range and his former wife did not specifically apply to receive $2,458 in*

*welfare assistance. Rather, that is the excessive amount the couple*

*received over a period of time on account of their application's incorrect*

*income statement. Moreover, Range did not "falsify" his income, to the*

*extent the government suggests that he deliberately presented an incorrect*

*figure. Rather, Range's application did not disclose income, as required.*

*The crime was one of omission, not creation. Range did not prepare the*

*document, but he did, and does, take responsibility for signing and*

*submitting it. Compl. ¶¶ 7, 9-10; Range Decl., ¶¶ 3-5; Range Dep. T.*

*("T.") 33:7-17; 34:16-20; 44:9-17; 46:10-47:3.*

3.    The Court of Common Pleas sentenced him to three years of probation; he was

assessed a $100 fine, $288.29 in costs and eventually paid $2,458 in restitution.

Compl. ¶ 9.

    a.    *Admitted.*

4.    Under Pennsylvania law, Range's crime was graded as a first-degree misdemeanor,

which is punishable by up to five years' imprisonment. See 18 Pa. C.S.A. § 1104(1);

Compl. ¶¶ 7-8.

    a.    *Admitted.*

5.    In the attached survey, *forty-two* states treat welfare fraud in the amount Range stole

to be a felony, in many cases punishable by a year or more in prison. *See*

*Defendants' 50 State Survey*, attached hereto as Exhibit 1.

    a.    *Denied as to the survey's accuracy; admitted only to the extent that the*

        *government correctly describes its survey's claims.*

    b.    *The government misclassifies seven states. As described below, it classifies*

        *three misdemeanor states as having a felony classification; one likely*

        *misdemeanor state has having a felony classification; one state where*

        *Range would likely not have been convicted as having a felony*

2

*classification; and two states that have a felony classification as misdemeanor jurisdictions.*

*1. The government asserts that Hawaii would treat Range's offense as a felony, based on Haw. Rev. Stat. § 346-34. That is incorrect. Range's conduct would have been covered by subdivision (c) of that section, violation of which is a **misdemeanor** under subdivision (h). The felony provisions of subdivision (h) upon which the government relies refer to violations of subdivisions (d)(2) and (e), which relate to food stamp trafficking, a different offense.*

*2. The government asserts that Massachusetts would treat Range's offense as a felony, based on Mass. Gen. Laws ch. 274, § 1; and Mass. Gen. Laws ch. 18, §§ 5B, 5K, and 5L. That is incorrect. Sections 5K and 5L cover theft from the state and food stamp trafficking, respectively. Range's offense, supplying inaccurate information to obtain benefits, falls under Section 5B, which provides for "imprisonment for not more than one year." The statute does not specify that imprisonment would be in state prison. "In the absence of reference to State prison as the place of confinement, the statute does not, in the first instance, describe a felony." Commonwealth v. Zawatsky, 41 Mass. App. Ct. 392, 395; 670 N.E.2d 969 (1996); accord DiMasi v. Galvin, 2020 Mass. Super. LEXIS 102, at \*12 n.11, 2020 WL 3619939 (Mass. Sup. Ct. Suffolk Jul. 2, 2020) ("Where a statute does not expressly state whether a given crime is punishable by*

3

*confinement in state prison (as opposed to a house of correction), the*

*court looks to the term of confinement the statute prescribes."). Because*

*people may be imprisoned in a "house of correction" for up to two and a*

*half years, Mass. Gen. Laws ch. 279, §§ 19, 23, a conviction under ch. 18,*

*§ 5B is classified as a **misdemeanor** under ch. 274, § 1.*

*3. The government asserts that Ohio would treat Range's offense*

*as a felony, based on Ohio Rev. Code Ann. § 2921.46. That is incorrect.*

*Section 2921.46(B) prohibits food stamp trafficking, a different offense.*

*Range's conduct would be covered by Section 2921.13(A)(4), making a*

*false statement "to secure the payment of . . . benefits administered by a*

*governmental agency or paid out of a public treasury," which is a*

***misdemeanor** per Section 2921.13(F)(1).*

*4. The government asserts that Oregon would treat Range's*

*offense as a felony, based on Or. Rev. Stat. Ann. § 411.840. That is*

*unlikely. Section 411.840 relates to food stamp trafficking, a different*

*offense. Range's conduct would be covered by Section 411.630,*

*"unlawfully obtaining public assistance." Violation of either section is*

*punishable as either a felony or as a misdemeanor, pursuant to Section*

*411.990(2), if "[t]he court, considering the nature and circumstances of*

*the crime and the history and character of the defendant, believes that a*

*felony conviction would be unduly harsh." Section 161.705(1)(b).*

*Considering Range's circumstances, the fact that this was his first (and*

4

*only) offense, and the court's lenient disposition, it is doubtful that an Oregon court would have classified his conviction as a felony.*

*5. The government asserts that Georgia would treat Range's offense as a felony, based on Ga. Code Ann. § 49-4-15. That is unlikely. Subdivision (e) provides that prosecutor may defer prosecution upon the filing of a restitution agreement. "Upon successful completion of the terms and conditions of the consent agreement, criminal prosecution of the individual for such offense shall be barred . . . [t]he successful completion of the terms and conditions of the agreement shall not be considered a criminal conviction." Ga. Code Ann. § 49-4-15(e)(3). Considering Range's circumstances, and the fact that he made full restitution, it is unclear whether he would have been convicted of anything under Georgia law.*

*6. The government classifies South Dakota as a misdemeanor jurisdiction under S.D. Codified Laws § 28-13-16.2, which punishes the making of false statements to county welfare officials. But as food stamps are administered by the state government, the correct provisions are apparently S.D. Codified Laws §§ 22-29-11, 16, which create a felony.*

*7. The government classifies Pennsylvania as a misdemeanor jurisdiction, notwithstanding the recent amendments of 2018 Pa. Act 125, § 5 (Oct. 24, 2018), which would make Range's offense a felony if it were committed today.*

5

Appx180

6.      The amount of welfare fraud that triggers felony status varies, with some states

treating a $100 violation as a potential felony, and others $2,500. *Id.* (see Arkansas

statutory threshold at $100 or more and Colorado statutory threshold at $2,500).

a.      *Admitted.*

7.      By contrast, *only seven* states treated a similar crime as a misdemeanor, and one

state was equivocal in its treatment. *See* Exhibit 1.

a.      *Denied.*

b.              *Eight states and the District of Columbia would clearly treat*

*Range's offense as a misdemeanor. Alaska Stat. § 47.25.985; Cal. Wel. &*

*Inst. Code § 10980(a); D.C. Code § 4-218.01(a); Haw. Rev. Stat. § 346-*

*34(h); Me. Rev. Stat. Ann. tit. 22, § 4315 ("Class E Crime" punishable by*

*6 months imprisonment per Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E));*

*Md. Code Ann., Crim. Law § 8-504(c); Mass. Gen. Laws ch. 18, § 5B;*

*Ohio Rev. Code §§ 2921.13(A)(4), (F)(1); Tex. Penal Code § 31.03(e)(3).*

         *Oregon would likely treat Range's offense as a misdemeanor. Or.*

*Rev. Stat. Ann. §§ 161.705, 411.630. 411.990(2). Since Range agreed to,*

*and did in fact, make full restitution, he would likely not have been*

*convicted in Georgia. Ga. Code Ann. § 49-4-15(e)(3).*

8. Range claims to be ignorant that his conviction prevented him from owning a firearm until years later. See December 30, 2020 Deposition of Bryan David Range ("Range Dep.") at 17-18, 20-21, excerpts attached hereto as Exhibit 2.

   a. *The sentence is unclear, and therefore denied.*

   b. *Range was, in fact, unaware that he was subject to Section 922(g)(1) on account of his misdemeanor conviction. Range was not represented by counsel during his prosecution. Range Decl., ¶ 11; Range Exh. A; Range Dep. T. ("T.") 35:21-36:6. The court never advised him of the federal prohibition. Range Decl., ¶ 12; T. 36:7-12. Range was also misled by gun store employees to believe that he was not prohibited from possessing firearms, as he had not committed an enumerated prohibiting offense. Range Decl., ¶ 13; T. 18:22-19:4, 19:18-21.*

9. However, he was prevented from purchasing a hunting rifle in 1998. Range Dep. 18-19.

   a. *Denied.*

   b. *Range admits that he was prevented from purchasing a hunting rifle in 1998, but to the extent the government introduces this fact with "however," suggesting that this fact informed Range that he was prohibited from having guns, the statement is false. Range was advised that the denial was a typical error because he did not commit a crime enumerated on a list of prohibiting offenses. Range Decl., ¶ 13; T. 18:22-19:4, 19:18-21.*

10.   Specifically, Pennsylvania's Instant Check System ("PICS") prevented Range from

buying the rifle at a gun store. *Id.*

   a.   *Admitted.*

11.   Shortly thereafter and knowing that the PICS system had denied him the ability to

purchase a rifle, his wife circumvented that denial by buying the hunting rifle for

him. Range Dep. 14-16; 21-22.

   a.   *Denied.*

   b.   *Plaintiff renews the objection to the deposition question whose answer is*

      *relied upon here, that the question called for the witness to speculate as to*

      *his wife's knowledge of his legal status. T. 22:1-6. Moreover, Range*

      *himself did not know that he was legally prohibited from purchasing guns.*

      *See responses to government proposed "facts" 8 and 9. Furthermore,*

      *Range testified that he and his wife reviewed a list of prohibiting offenses,*

      *knew that Range had not committed any such offenses, and believed that*

      *his purchase denials were, as gun store employees advised Range,*

      *erroneous. T. 22:12-20. Finally, the rifle was purchased as a gift. T. 14:2-*

      *4, 16:14-16, 17:4-7. Range's wife did not "circumvent" anything.*

12.   Range possessed that hunting rifle and a shotgun until he lost both firearms in a

house fire in 2006. Range Dep. at 15.

   a.   *Admitted.*

8

13.    After the fire and knowing that he could not legally purchase a firearm because of

the PICS system, Range's wife bought him another hunting rifle. Range Dep. at

16-17.

    *a.*    *Denied.*

    *b.*    *Range's wife gifted him a firearm after the fire, but neither she nor Range*

*knew that Range could not legally purchase a firearm. Range was never*

*advised of the prohibition, and had been repeatedly told that his purchase*

*denials were erroneous because he did not commit any specifically*

*enumerated prohibiting offense. See responses to government proposed*

*"facts" 8, 9, 11.*

14.    He possessed that rifle for a few years of ownership before selling it to a gun shop.

Range Dep. at 15-16.

    *a.*    *Admitted.*

    *b.*    *Range sold the rifle immediately upon learning that he was prohibited*

*from possessing it, and has since refrained from possessing firearms for*

*that reason. Range Decl., ¶¶ 14, 15; T. 16:4-6.*

15.    Finally, in 2011, Range violated the law again. Range committed summary offenses

of making a false statement and fishing without a license. Range Dep. Tr. at 37-39.

    *a.*    *Admitted.*

16.    He paid a summary fine of $200. *See* Plaintiffs' Response to Defendants'

Interrogatories at 3-4, excerpts attached hereto as Exhibit 3.

    *a.*    *Admitted.*

Dated: February 5, 2021          Respectfully submitted,

By:  /s/ Alan Gura               By:    /s/ Michael P. Gottlieb      
     Alan Gura*                            Michael P. Gottlieb
     Gura PLLC                             PA Bar No. 36678
     916 Prince Street, Suite 107          319 Swede Street
     Alexandria, VA 22314               Norristown, PA 19401
     703.835.9085/Fax 703.997.7665     610.279.4200
     alan@gurapllc.com                   Mikem1a1@aol.com

     *Admitted pro hac vice               Attorneys for Plaintiff

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
- - -

BRYAN DAVID RANGE,            : CIVIL ACTION
                             :
          Plaintiff,          :
                             :
     vs.                      :
                             :
WILLIAM BARR, Attorney        :
General of the United         :
States, et al.                :
                             :
          Defendants.    : NO. 20-cv-03488

- - -

        Video conference deposition of BRYAN DAVID

RANGE, taken on Wednesday, December 30, 2020,

commencing at 10:01 a.m., before Andrea M. Brinton,

Certified Court Reporter and Notary Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New Jersey 08037
(215) 985-2400 * (609) 567-3315 * (800) 477-8648
www.summitreporting.com

**BRYAN DAVID RANGE**

```
 1        ** ALL PARTIES PRESENT VIA VIDEO CONFERENCE **

 2     APPEARANCES:

 3     VANGROSSI & RECCHUITI
       BY:  MICHAEL P. GOTTLIEB, ESQUIRE
 4     319 Swede Street
       Norristown, Pennsylvania 19401
 5     (610) 279-4200
       mikem1a1@aol.com
 6             and
       GURA, P.L.L.C.
 7     BY:  ALAN GURA, ESQUIRE
       916 Prince Street
 8     Suite 107
       Alexandria, Virginia 22314
 9     (703) 835-9085
       alan@gurapllc.com
10     Counsel for Plaintiff

11     U.S. ATTORNEY'S OFFICE
       BY:  ERIC D. GILL, ESQUIRE
12     BY:  PAUL J. KOOB, ESQUIRE
       615 Chestnut Street
13     Suite 1250
       Philadelphia, Pennsylvania 19106
14     (215) 861-8200
       eric.gill@usdoj.gov
15     paul.koob@usdoj.gov
       Counsel for Defendants

16
       ALSO PRESENT:
17     Kathleen Jordan - Video Technician

18

19

20

21

22

23

24

25
```

**BRYAN DAVID RANGE**

1                                    I N D E X

2        WITNESS                                                    PAGE

3        BRYAN DAVID RANGE

4        EXAMINATION

5                By Mr. Gill                                          5

6                                    - - -

7

8                                E X H I B I T S

                                                          PAGE FIRST
9        EXHIBIT NO.        DESCRIPTION              REFERENCED

10       USA-1              12/10/11 Mobile Photos            52

11                                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**BRYAN DAVID RANGE**

```
 1              (By agreement of counsel, the
 2   reading, signing, sealing, certification and
 3   filing are waived; and all objections, except
 4   as to the form of the question, are reserved
 5   until the time of trial.)
 6                        -  -  -
 7              THE COURT REPORTER:   The
 8        attorneys participating in this
 9        proceeding acknowledge that I am not
10        physically present with the witness and
11        that I will be reporting this proceeding
12        remotely.
13              They further acknowledge that
14        in lieu of an oath administered in
15        person, the witness will verbally declare
16        that their testimony in this matter is
17        under penalty of perjury.
18              The parties and their counsel
19        consent to this arrangement and waive any
20        objections at this time or in the future
21        to this manner of reporting and swearing
22        in the witness.
23              They also acknowledge and agree
24        that the official transcript is solely
25        the one transcribed by the court
```

**BRYAN DAVID RANGE**

```
 1        reporter.
 2                 Counsel, please indicate your
 3        agreement by stating your name and your
 4        agreement on the record.
 5                 MR. GOTTLIEB:  Michael
 6        Gottlieb, agreed.
 7                 MR. GURA:  Alan Gura --
 8                 MR. GILL:  Eric Gill -- sorry.
 9        Eric Gill for the Government, agreed.
10                 MR. KOOB:  Paul Koob for the
11        Government, agreed.
12                          - - -
13           BRYAN DAVID RANGE, after having been first
14      duly sworn, was examined and testified as follows:
15                          - - -
16                 THE COURT REPORTER:  Usual
17        stipulations, Counsel?
18                 MR. GILL:  Fine for the
19        Government.
20                 MR. GOTTLIEB:  Okay.  Yeah,
21        that's fine for the witness.
22                          - - -
23                     EXAMINATION
24                          - - -
25      BY MR. GILL:
```

**BRYAN DAVID RANGE**

1      Q.   Good morning, Mr. Range.   My name is Eric

2 Gill. I represent the Government in this matter.

3            Have you ever been deposed before?

4 Have you ever given deposition testimony?

5      A.   No.

6      Q.   Okay.   I'll give you some basic

7 instructions. I'm sure your counsel has already told

8 you a bit about this, but I'll give you some initial

9 instructions.

10            This is a question-and-answer session,

11 and when you answer my questions, you have to give an

12 oral response. You can't nod your head or shrug or

13 say uh-huh. You have to --

14      A.   Okay.

15      Q.   -- say yes, no.

16            Do you understand that?

17      A.   Yes.

18      Q.   Okay.   It's unlike a normal conversation in

19 that I'm going to try not to speak over you and I ask

20 that you not try to speak over me.

21            So when I ask you a question, I

22 will -- please wait until I'm done asking the

23 question before you start your answer, and I'll try

24 to give you the same courtesy, that when you answer,

25 I won't try and cut you off, but wait until you

**BRYAN DAVID RANGE**

1  answer.

2             Do you understand?

3      A.   Yes.

4      Q.   Okay.  If I ask you a question and you

5  don't understand it, let me know and I'll rephrase

6  it; okay?

7      A.   Okay.

8      Q.   I don't think this will be a particularly

9  long deposition, we should be over by -- before

10  lunch, but if you do need to take a break, just let

11  me know and we can take a break for you.

12     A.   Okay.

13     Q.   My only request is that if I have a

14  question pending, that you answer the question before

15  we take the break.

16             Do you understand?

17     A.   Yes.

18     Q.   Okay.  Now, are you on any medication that

19  would limit your ability to answer my questions

20  completely and honestly?

21     A.   No.

22     Q.   Okay.  Any other reason that you're aware

23  of that you couldn't answer my questions completely

24  and honestly?

25     A.   No.

**BRYAN DAVID RANGE**

1       Q.   Okay.  And you understand that there are

2  consequences for you if you don't answer my questions

3  honestly?

4       A.   Yes.

5       Q.   Okay.  Let me ask you a couple of

6  background questions.

7             Where do you currently live?

8       A.   Elizabethtown, Pennsylvania.

9       Q.   What's your address there?

10      A.   ███████████████████.

11      Q.   Okay.  What's the zip?

12      A.   ██████.

13      Q.   How long have you lived there?

14      A.   Twenty -- estimating, about 22 years.

15      Q.   Okay.  And who do you live there with?

16      A.   My wife.

17      Q.   And what is her name?

18      A.   Michele.

19      Q.   Does she have the same last name as you?

20      A.   Yes, she does.

21      Q.   Michele Range.

22             Does anybody else live at the house

23  with you?

24      A.   No.

25      Q.   Okay.  Do you and your wife have any

**BRYAN DAVID RANGE**

1  children?

2      A.   We have five.

3      Q.   Okay.  What are their names?

4      A.   Nicole, Zachary, Bryan, Megan and Brandon.

5      Q.   And what are their respective ages --

6      A.   Oh --

7      Q.   -- roughly.

8      A.   Yeah.  Brandon would be just turning 25;

9  Bryan and Megan are twins, they would be turning 28;

10  Zachary would be turning 29; and Nicole will be 30

11  here in another, I don't know, couple weeks.

12      Q.   And in the past ten years, have any of your

13  children lived with you at ██████████████████?

14      A.   Ten years, yes.

15      Q.   Okay.  Which ones have lived with you

16  during that time frame?

17      A.   Well, I guess they -- they all have at one

18  point or another over that ten years.

19      Q.   Okay.

20      A.   Some moved in, some moved out, came back,

21  you know.

22      Q.   Understood.  Understood.  And have they

23  lived -- have any of your five children lived with

24  you during the past ten years for over a year?

25      A.   Yes.

**BRYAN DAVID RANGE**

1      Q.   Okay.  Which ones are those?

2      A.   It would be -- for over a year in the past

3  ten years, well, I would think all of them.

4      Q.   Okay.  Okay.  And these five children, are

5  they all your biological children or are some of

6  them --

7      A.   Three are mine -- three are mine and two

8  are my wife's.

9      Q.   Okay.  And the three that are yours, is

10  that Bryan, Megan and Brandon?

11      A.   Bryan, Megan and Nicole.

12      Q.   Bryan, Megan and Nicole.

13           Okay.  And who is the biological

14  mother of those children?

15      A.   Teri Nolt.

16      Q.   Okay.  And you're divorced from Teri Nolt;

17  correct?

18      A.   Correct.

19      Q.   When did you get divorced?

20      A.   I think it was '94 or '95, '93, somewhere

21  in there.

22           I had moved out.  I mean, the divorce

23  wasn't right away afterwards.

24      Q.   Okay.  Do you remember when you moved out?

25      A.   I'm going to have to estimate it would be

BRYAN DAVID RANGE

1    '93.  I think '93.

2        Q.   Okay.  Are you currently employed?

3        A.   Yes, I am.

4        Q.   What's your job?

5        A.   I work in a machine shop as a heat treat

6    operator.

7        Q.   What's the name of the machine shop?

8        A.   CNH America.

9        Q.   Okay.  Where do you work?  What's the --

10   what's the location?

11       A.   New Holland, Pennsylvania.

12       Q.   How long have you been in that job?

13       A.   Just now at 13 years.

14       Q.   Okay.  And before that, where was -- did

15   you have a job before that?

16       A.   Before that I was trying -- painting on my

17   own.

18       Q.   What was the name of your company?

19       A.   RPS, I believe.  RPS Painting.

20       Q.   What does RPS stand for?

21       A.   Range Property Services.

22       Q.   Okay.  How long did you run that company?

23       A.   Oh, four or five years.

24       Q.   Okay.  Sir, where did you go to high

25   school?

BRYAN DAVID RANGE

1          A.    Elizabethtown Area High School.

2          Q.    Okay.  What year did you graduate?

3          A.    I got my GED in '89.

4          Q.    Okay.  Did you pursue any schooling past

5    high school?

6          A.    I did, a semester, might have been a

7    semester and a half, at a business trade school.

8          Q.    Do you remember the name of that business

9    trade school?

10         A.    I do not.  It was in Harrisburg, that's all

11   I remember on that.

12         Q.    Okay.  Okay.  Do you have any military

13   service?

14         A.    No, I do not.

15         Q.    Now, I know you initiated this lawsuit, but

16   can you tell me why you want to -- why you want to

17   own a firearm?

18         A.    I would like to rifle hunt, I'd like to be

19   able to defend myself in my own home.

20         Q.    Anything else?

21         A.    I -- I don't think of anything else, no.

22         Q.    Okay.  Now, if you had the legal ability to

23   own a firearm, what firearm -- which firearms would

24   you get?

25         A.    I would say a deer rifle first, for sure.

**BRYAN DAVID RANGE**

1      Q.   Okay.  Anything else?

2      A.   Well, I guess something for, you know, in

3  my home.  I would think maybe a shotgun.

4      Q.   Okay.  Now, currently, do you possess a

5  firearm?

6      A.   I do not.

7      Q.   Okay.  Currently, do you possess any

8  firearm ammunition?

9      A.   I do not.

10      Q.   All right.  Now, I know in -- your counsel

11  has produced some Facebook posts relating to your

12  interest in firearms and guns, and you have one post

13  where you have liked the Trop Gun Shop.

14           Do you remember -- do you have any --

15  what's your connection to that store?

16      A.   I don't really have a connection, it's just

17  the local gun store.

18      Q.   Okay.  Have you purchased firearms from

19  there in the past?

20      A.   Have I purchased?  No.

21      Q.   Okay.  Have you ever purchased a firearm?

22      A.   Not that I recall.

23      Q.   Okay.  Now, I know that you had a deer

24  rifle and a shotgun; correct?

25      A.   Correct.

BRYAN DAVID RANGE

```
 1       Q.   How did you obtain the deer rifle?
 2       A.   The deer rifle, I believe, was either a
 3  Christmas or a birthday present from my wife, and I'm
 4  not sure which holiday it was; it was one of those.
 5       Q.   Your current wife or your first wife?
 6       A.   Current wife.
 7       Q.   Okay.  Do you remember when that was, what
 8  year?
 9       A.   I -- I do not.
10       Q.   Was it within the past five years?
11       A.   No.
12       Q.   Was it in the past ten years?
13       A.   No.
14       Q.   Longer than 20 years ago?
15       A.   I -- I'm not sure.  I don't -- I don't
16  believe so, but I'm not sure.
17       Q.   Okay.  And you also mentioned a shotgun
18  that you owned.
19       A.   Yes.
20       Q.   How did you get that shotgun?
21       A.   That was a shotgun that my dad had gotten
22  for me as a -- you know, I was probably -- I don't
23  know, a teenager, young teen, and he had given it to
24  me at some point.
25       Q.   Okay.  And the deer rifle, what model was
```

**BRYAN DAVID RANGE**

1    that, do you remember?

2         A.   I do not remember the model.

3         Q.   Okay.  And the shotgun, do you remember

4    what model that was?

5         A.   I don't.  I -- it was an old single-shot.

6    That's all I remember about it.

7         Q.   Okay.  And what happened to this deer rifle

8    and the shotgun?

9         A.   In, I believe it was, '06, we had a house

10   fire and it -- everything was destroyed, it took the

11   whole house.

12        Q.   Okay.  Between 2006 and the present, have

13   you possessed a firearm during that period?

14        A.   Yes.

15        Q.   Okay.  And what was that?

16        A.   I had a -- it was a deer rifle.  I believe

17   it was a seven-millimeter, I believe.  Yeah, I

18   believe it was seven-millimeter, 7mm-08 or something

19   like that.

20        Q.   Okay.  Do you remember the brand?

21        A.   No.

22        Q.   Okay.  And what happened to that, to that

23   deer rifle?

24        A.   I got rid of that, I believe, in 2013.  I'm

25   not exactly sure, but I believe it was 2013.

BRYAN DAVID RANGE

```
1       Q.   When you say got rid of it, what do you
2   mean?
3       A.   I sold it to Trop Gun Shop.
4       Q.   Why did you sell it?
5       A.   I came to realize that I was not allowed to
6   possess a firearm.
7       Q.   How did you come to that awareness?
8       A.   Just --
9       Q.   Sorry.  Sorry.  Withdrawn for a second.
10           How did you -- how did you obtain this
11  rifle, the --
12      A.   My wife had gotten it for me Christmas.
13  That was Christmas.
14      Q.   Okay.  So that was the Christmas present,
15  where you got the deer rifle?
16      A.   Yes.
17      Q.   Okay.
18      A.   I believe she --
19      Q.   And --
20      A.   I believe, actually, she got it for me
21  before Christmas, but, yes.
22      Q.   Okay.  But you've owned two deer rifles in
23  your adult life; correct?
24      A.   Correct.
25      Q.   And do you remember how you got the first
```

**BRYAN DAVID RANGE**

```
 1   one?
 2        A.   Yeah, I said my wife had bought that for
 3   me.
 4        Q.   Okay.  So your wife got you -- I'm sorry,
 5   your wife bought you both deer rifles as Christmas
 6   presents or presents around Christmas; correct?
 7        A.   Correct.
 8        Q.   Okay.  So you mentioned that you became
 9   aware that you weren't legally allowed to own a
10   firearm.
11             How did you come to that awareness?
12        A.   Well, I -- assuming it was just doing
13   research on the Internet and just digging and digging
14   until I could find something, and I finally came
15   across this one rule, and I was shocked, but that's
16   how I found out.
17        Q.   And you mentioned you were digging and
18   digging.
19             Why -- was there a reason why you were
20   looking to -- you were digging on the Internet?
21        A.   Yeah, I -- I mean, I wondered why I had
22   been turned down for PICS, why they had done that,
23   and, you know, they -- go ahead.
24        Q.   No, finish.  I don't want to interrupt you.
25        A.   All right.  It's nothing.  It's fine.
```

**BRYAN DAVID RANGE**

1     Q.   So you said you had been turned down for

2  PICS.

3     A.   Yes.

4     Q.   When were you turned down for PICS?

5     A.   I was turned down twice.  The first time I

6  remember was in '98 and the second time was, I'm

7  guessing at 2010, '11, somewhere in there.

8     Q.   Okay.  When you were turned down in 1998,

9  were you trying to buy a firearm?  Is that what

10  happened?

11     A.   I was, yes.

12     Q.   Okay.  Do you remember what you were trying

13  to buy?

14     A.   No.  No, I don't.

15     Q.   And at that time, did you do any research

16  then into why you couldn't purchase a firearm?

17     A.   I did not.

18     Q.   Okay.  Why -- at that time, why did you

19  think you were denied the right to --

20     A.   Well -- sorry.

21     Q.   -- to --

22     A.   I was -- sorry.  At that time, the guy at

23  the gun store had read off a list of stuff that said

24  if you ever do this, this and this.  I mean, it was

25  just crazy stuff, some of the stuff he read.

**BRYAN DAVID RANGE**

1              And of course I said no, and then he
2     said something like into the -- as to the effect
3     or -- that people get turned down, and I believe
4     he -- he said to me wait a couple days and try again.
5              I was just -- I was, you know, a
6     little bit embarrassed and I just -- I left then.
7          Q.   Okay.  And did you -- did you try a couple
8     days later or --
9          A.   I did not.
10         Q.   -- or sometime after that to -- okay.
11              And then you tried again in 2010 or
12     2011; correct?
13         A.   Somewhere in there, yes.
14         Q.   All right.  And what happened on that
15     occasion?
16         A.   It was turned down again and, you know,
17     they just -- the guy had asked me -- you know, he
18     read down drug trafficking and child stuff and just,
19     you know, stuff that, of course, I've never done.
20              And I still was at a loss.  I just --
21     I thought it had to be a mistake.
22         Q.   Okay.  So you knew -- you knew that you
23     couldn't -- that PICS would not allow you to purchase
24     a firearm, but at the time you were unaware why you
25     couldn't do it, is that fair to say, around the 2010,

**BRYAN DAVID RANGE**

1    2011 time frame and earlier?

2         A.   Yes.  Yes.

3         Q.   And then you did some more digging and then

4    you found out -- over the Internet and you found out

5    the reason why you couldn't legally purchase a

6    firearm?

7         A.   Yes.

8         Q.   And what is -- to your understanding, what

9    is that reason?

10        A.   My understanding is because of my welfare

11   fraud conviction, that because of the sentence I

12   could have gotten for it, not what I did get, but

13   what I could have gotten.

14        Q.   Okay.  And the fraud conviction, that

15   relates to the application for financial assistance

16   from the state for food stamps; correct?

17        A.   Yes.  I believe it was for food stamps.  I

18   just -- it was welfare fraud, so I'm not sure what

19   exactly.

20        Q.   Okay.  Now, and so -- and you became aware

21   that it was your welfare fraud conviction that

22   prevented you from legally possessing a firearm and

23   you can't -- that was the realization you had in the

24   sort of 2010, 2011 time frame?

25        A.   No.  I think by the time I had come to

**BRYAN DAVID RANGE**

1  that, it was -- it was a little bit after that.

2      Q.  Meaning a year or two later, longer?  What

3  time frame --

4      A.  Probably a year --

5      Q.  -- are we talking about?

6      A.  -- year or two, maybe.  Somewhere in that

7  time frame.

8      Q.  Did you take any steps to, other than the

9  filing of this lawsuit, you know, to expunge your

10  conviction so that you could own a firearm?

11      A.  I believe I did look at an expungement, but

12  if I remember correctly, that can't be done in the

13  state of PA.

14      Q.  Did you hire a lawyer for that or was that

15  something on your own?

16      A.  That -- my own, you know, Internet search.

17      Q.  All right.  Did you take any other steps

18  to -- you know, so that you could legally possess a

19  firearm, besides the filing of this lawsuit?

20      A.  I did not.

21      Q.  So, now, the -- in terms of the firearms

22  that you've owned or possessed -- wait, withdrawn.

23          So your wife, did you discuss that you

24  had been denied the PICS with your wife?

25      A.  Yes, I had.

**BRYAN DAVID RANGE**

1    Q.   And she bought you the deer rifles knowing
2    that you couldn't legally own a firearm; correct?
3    A.   Well.
4              MR. GURA:  Objection, that
5         calls for speculation as to what is his
6         wife knew, and --
7    BY MR. GILL:
8    Q.   You can answer.
9              MR. GOTTLIEB:  You're allowed
10        to answer, Bryan.
11             THE WITNESS:  Oh.
12             My wife did know.  We thought
13        for sure that it was a mess-up in the
14        system.  I mean, we looked down this list
15        of things and, I mean, I've never
16        drug-trafficked or, you know, any of
17        these things.
18             She's known me since
19        kindergarten, I don't think she was
20        concerned about it.
21   BY MR. GILL:
22   Q.   Okay.  Okay.  And it's your position that
23   once you figured out that you couldn't legally
24   possess it, that's when you, because of your welfare
25   fraud conviction, you then turned around and sold

**BRYAN DAVID RANGE**

| | |
|---|---|
| 1 | your gun, correct, your -- |
| 2 | A.   Right. |
| 3 | Q.   -- deer rifle? |
| 4 | A.   Correct. |
| 5 | Q.   Okay.  Now, in your answers to our |
| 6 | interrogatories, you also mentioned that you |
| 7 | possessed a pistol or a revolver for a short period |
| 8 | of time after your father's death -- |
| 9 | A.   Correct. |
| 10 | Q.   -- is that correct? |
| 11 | A.   Yes. |
| 12 | Q.   And do you remember what kind of model |
| 13 | or -- |
| 14 | A.   No.  It was -- |
| 15 | Q.   -- type that was? |
| 16 | A.   I know it was a .22. |
| 17 | Q.   Okay.  And when you got it, what did you do |
| 18 | with it? |
| 19 | A.   Put it -- I believe I put it in a closet -- |
| 20 | Q.   Okay. |
| 21 | A.   -- my bedroom closet. |
| 22 | Q.   Did you -- did you end up selling it to |
| 23 | somebody? |
| 24 | A.   I'm not sure what I did with that pistol. |
| 25 | I don't remember selling it.  I think I gave it to |

**BRYAN DAVID RANGE**

1   somebody, and I'm not sure who.

2              It was a very hectic time back at that

3   time frame.

4        Q.   Okay.  And around what year did your father

5   pass?

6        A.   That would have been 2008.

7        Q.   Okay.  And so in that time frame, I think

8   you were still under the impression that you could

9   legally possess a firearm, it was just some mix-up

10  that was preventing you from legally purchasing a

11  firearm; correct?

12       A.   That's correct.

13       Q.   So is there -- what was the reason for you

14  to give it to somebody -- the pistol or revolver to

15  somebody else, as opposed to keeping it yourself?

16       A.   Well, we had -- at the time, we were -- it

17  was me and five kids and my wife living at my

18  mother's house, my wife was going through chemo, life

19  was just -- was in shatters and we did not want a

20  pistol in the house when we had five young kids.  We

21  both worked a lot and, you know, there was just a

22  worry factor there.

23       Q.   Okay.  So other than this pistol that you

24  briefly possessed, the shotgun and the two deer

25  rifles, have you owned or possessed any other

BRYAN DAVID RANGE

```
 1    firearms over the course of your adult life?
 2         A.   Not that I recall.
 3         Q.   Okay.  Now, have you ever had a Sportsman's
 4    Firearm Permit?
 5         A.   I am not sure what that is.
 6         Q.   Or have you ever had a rifle hunting
 7    license?
 8         A.   Well, our -- our hunting licenses are --
 9    they're not weapon-specific in my state.
10         Q.   Okay.  So you have had hunting license;
11    correct?
12         A.   Yes.
13         Q.   Okay.  Do you currently have one?
14         A.   Yes.
15         Q.   Okay.  And in your interrogatory responses,
16    you mentioned that you're a bow hunter --
17         A.   Yeah.
18         Q.   -- and that you also hunt with a
19    muzzleloader --
20         A.   I have, yes.
21         Q.   -- correct?  Okay.
22         A.   Correct.
23         Q.   How long have you been bow hunting?
24         A.   Oh, I've got to do a little math in my head
25    here.  I'm 50.  Twenty years, approximately.
```

**BRYAN DAVID RANGE**

1   Q.   Okay.  And who do you -- who do you do bow

2   hunting with?

3   A.   Who do I bow hunt with?

4   Q.   Yeah.  Do you have any friends that you

5   hunt with on a regular basis?

6   A.   There are certain people that I know that

7   bow hunt, but bow hunting is kind of a solo thing.

8   Q.   Okay.  So no one that -- so you would do it

9   by yourself, you would say?

10  A.   Yeah.  I mean, yeah.  My --

11  Q.   And --

12  A.   -- son got into -- sorry.

13  Q.   No, go ahead.  Your son got into it?

14  A.   My son got into bow hunting as well here in

15  the last several years.

16  Q.   Do you ever hunt with him?

17  A.   I'm not sure what you mean by your

18  question.

19       Hunt with him?  No.  We've gone to the

20  woods at the same time, but, you know, he might be

21  three or four, 500 yards away from where I'm at.

22  Q.   Right.  I guess that's what I meant.  When

23  you decide to go on a hunt, I know you spread out,

24  but who would you -- are there people that you

25  would -- like your son, that you would drive to the

Case 2:21-cv-03488-Document 17 Time Page: 201 Filed Date Filed: 12/21/2021 2:21-cv-03488-Document 17 Time Page: 201 Filed Date Filed: 12/21/2021 2:162

Page 27

**BRYAN DAVID RANGE**

1    woods and then you would split up and then you would,

2    you know --

3        A.    No.

4        Q.    -- you would --

5        A.    No, I was pretty much alone.

6        Q.    Okay.  When you were rifle hunting, was

7    there anyone that you would drive to a hunt with or

8    regularly go out on a hunt with?

9        A.    No.

10        Q.    Okay.  That was a solo thing for you, too?

11        A.    Yeah.

12        Q.    Okay.  And the muzzleloader, do you -- how

13    long have you been hunting with a muzzleloader?

14        A.    I couldn't tell you exactly.  Not as long

15    as a bow, but maybe ten, 12 years, 13, maybe.

16        Q.    Okay.  How often do you do that now, go out

17    with your muzzleloader?

18        A.    Well, I -- I messed up my muzzleloader, so

19    now I can't do it at all.

20        Q.    Okay.  When did -- when did you mess up

21    your muzzleloader?

22        A.    We're in 2020.  I believe it was two years

23    ago, might have been -- two years ago, I believe,

24    might have been three.

25        Q.    What happened?

BRYAN DAVID RANGE

1     A.   Well, I got done hunting and I didn't

2  unload it, because, you know, it's not -- it's a

3  different thing to unload.  I put it in my closet in

4  the back corner, and my exterior chimney had a leak

5  coming in, and over about two months' time, it got

6  condensation on it and it got really rusted.

7     Q.   Got it.  So for -- like, how often do you

8  bow hunt during the course of a hunting season, on

9  average?

10     A.   Every day, if I can.

11     Q.   Okay.  So that would be -- how long is the

12  bow-hunting season?

13     A.   Six weeks.

14     Q.   Okay.  And when you were -- when you had a

15  deer rifle, how often were you hunting during the

16  course of the hunting season with your deer rifle?

17     A.   The first morning.  Depending on my work

18  schedule, it would be the first morning and usually

19  the two Saturdays.  That's only a two-week season.

20     Q.   Okay.  When was the last time you shot a

21  firearm?

22     A.   Well, a muzzleloader, I mean, I've shot

23  that.

24     Q.   Yeah, I'm not -- I'm not -- I'm sorry, I'm

25  not including --

**BRYAN DAVID RANGE**

```
 1        A.   Okay.
 2        Q.   I'm not including a muzzleloader in my
 3   definition of a firearm.
 4        A.   I -- I don't really recall.
 5        Q.   Was it within the last --
 6        A.   Several years.
 7        Q.   Okay.  Was it within the last five years?
 8        A.   No.
 9        Q.   Okay.  Do you remember the circumstances
10   the last time that you shot a firearm?
11        A.   No, I do not.
12        Q.   Okay.  Do you -- when were you last at a
13   shooting range?
14        A.   Oh, I think --
15             MR. GOTTLIEB:  Can you define
16        shooting range, because there are archery
17        ranges.
18             MR. GILL:  Fair point.
19   BY MR. GILL:
20        Q.   So by shooting range, I'm not talking about
21   an archery range, I'm talking about a range where you
22   would use either a muzzleloader or a pistol or a
23   rifle or a firearm.
24        A.   I couldn't tell you.  That's -- I have no
25   idea.  That's been a long time.
```

**BRYAN DAVID RANGE**

1    Q.    Longer than five years?

2    A.    Oh, yeah.  Yeah.

3    Q.    Okay.  Now, I know on your Facebook you

4    follow Second Amendment groups; is that correct?

5    A.    Probably, yes.  I don't know what I follow

6    offhand, but I --

7    Q.    Understood.  Are there any specific groups

8    that you tend to follow more than others?

9    A.    Do you mean as far as gun stuff or just in

10   general?

11   Q.    Yeah, Second Amendment rights and the like

12   and gun stuff.

13   A.    No, no particular -- no.

14   Q.    Okay.  One of the groups that you follow is

15   called Military Service Members Against Gun Control.

16   A.    Uh-huh.

17   Q.    Do you -- what's your connection to that

18   group?

19   A.    Well, I have no connection.

20   Q.    Okay.

21   A.    I support my military.  I -- they probably

22   popped up and I accepted it, you know.

23            From what I can tell, that would

24   probably have been what happened.

25   Q.    Okay.  And then there's a group Hunters

**BRYAN DAVID RANGE**

1   United for Sunday Hunting.

2            Do you follow that group much?

3     A.   Yeah, I did when they were trying to get us

4   Sunday hunting, yes.

5     Q.   Uh-huh.  Were they --

6     A.   Which we --

7     Q.   -- they successful?

8     A.   -- did get it.  We did get it, one Sunday

9   in each season.

10     Q.   And have you -- I mean, have you ever

11   supported these groups in person, like attended any

12   demonstrations --

13     A.   No.

14     Q.   -- or marches?

15     A.   No.

16     Q.   No?

17     A.   No.

18     Q.   So I know you liked -- there was a Facebook

19   post to a gun control hearing in the Pennsylvania

20   Senate dated September 18th, 2019, and that's not

21   something that you attended or --

22     A.   No.

23     Q.   -- marched at --

24     A.   No.

25     Q.   -- protested --

**BRYAN DAVID RANGE**

```
1        A.    No.

2        Q.    -- you just liked it?

3        A.    No, I don't protest or march.

4        Q.    Now, we talk earlier on about the welfare

5   fraud, and your conviction for that was in August of

6   1995.

7                    Does that sound right?

8        A.    Yeah.

9        Q.    Could you tell me what happened with that?

10                   What did you do?

11       A.    With the fraud or the conviction or --

12       Q.    Well, let's start with -- start with the

13  factual circumstances behind --

14       A.    Okay.

15       Q.    -- the fraud conviction.

16       A.    My -- I was with my children's mother at

17  the time.  I was the only one working.  She applied

18  for food stamp assistance and, I think, medical.  I'm

19  not sure on that.  I believe it was food stamps and

20  medical.

21                   She signed us up, we got approved, or

22  however they do it, and we got some food stamp

23  assistance.

24       Q.    And the amount you received was about --

25  was $2,458; is that right?
```

BRYAN DAVID RANGE

1          A.   If the number -- if that's what it says on
2    the paper.  I certainly wouldn't remember that.
3          Q.   Okay.
4          A.   I think it was, you know, so much per month
5    or every -- I think it was per month the way it
6    worked.
7          Q.   Okay.  And what was your involvement in the
8    application for this financial assistance?
9                    What did you do?
10         A.   I'm not sure.  I don't recall having much
11   of any involvement, if any.  I imagine I signed my
12   name or something, but I don't really recall.
13         Q.   Okay.  Do you remember listing how much you
14   were earning at the time or anything like that?
15         A.   I do not remember doing that, no.  If it
16   called for that, I'm sure my wife would have been the
17   one doing that.
18         Q.   Was your wife, was she convicted of this
19   offense, too?
20         A.   I think -- I don't -- I don't know what --
21   I don't want to speak for her what her conviction
22   was, but she was convicted of some sort of welfare
23   fraud as well.
24                    We were not together when the -- when,
25   you know, the charges and the conviction happened.

**BRYAN DAVID RANGE**

1     Q.  When you say you were not together, were

2  you -- were you separated, were you divorced?

3     A.  I'm not sure if we were divorced at that

4  point.  Certainly separated.

5             Divorce costs money, we didn't have

6  money.

7     Q.  Right.  Were you living together at the

8  time that you applied for the welfare assistance?

9     A.  Yes.

10     Q.  Okay.  And you were -- the crime that you

11  were convicted of was for making a false statement;

12  correct?

13     A.  I -- I believe that's what it was.  I don't

14  know the actual conviction.  I just thought it was

15  under welfare fraud.

16     Q.  Okay.  And you don't know what false

17  statement you may have made, is that fair to say,

18  about this welfare fraud?

19     A.  Well, from what I have learned and believe,

20  it was that my income was not reported.

21     Q.  Okay.  And although this crime qualifies

22  you for up to three years imprisonment, you only

23  served probation; correct?

24     A.  Yes, it was just probation.

25     Q.  And what other -- what other punishment was

**BRYAN DAVID RANGE**

1    involved?

2        A.   There was some -- the restitution, I

3    imagine there was a fine with it as well.  I'm not

4    sure.

5        Q.   Okay.  And at the time, did you -- when you

6    pled guilty, did you do that in open court?

7        A.   I assume it was -- yeah, I mean, I was in a

8    courtroom in front of a judge, so I assume that's

9    what it was, open court.

10       Q.   Right.  Okay.  So in front of a judge?

11       A.   Yes.

12       Q.   And was there any discussion in the

13    courtroom about the consequences this conviction

14    might have on your rights as a citizen?

15       A.   No.  I sat down, and I will assume it was

16    the prosecutor or whoever was there, the state

17    person, I remember her walking up and saying plead

18    guilty, you're going to get probation and a fine,

19    we'll be done.  I said okay.

20       Q.   Okay.

21       A.   I did not have an attorney.

22       Q.   So you don't -- do you remember any

23    discussion, either by the judge or your lawyer, about

24    this affecting --

25       A.   I didn't have a lawyer.

**BRYAN DAVID RANGE**

```
1        Q.    -- your ability to legally --
2        A.    I'm sorry, I did not have a lawyer.
3        Q.    Okay.  But you had a defender; correct --
4        A.    No, I did not.
5        Q.    -- beside you?
6        A.    No.
7        Q.    Okay.  So you don't remember any discussion
8   by the Court about whether you could legally possess
9   a firearm after this --
10       A.    No.
11       Q.    -- conviction?
12       A.    No, I do not.
13       Q.    Did this conviction affect your ability to
14  vote?
15       A.    Well, I didn't really start voting until
16  the last couple years, so I don't know if it affected
17  it or not.
18       Q.    Okay.
19       A.    I don't -- I don't -- I guess when asked if
20  it affected it, I don't know.
21       Q.    Have you received any -- I know you
22  received public assistance, you know, back in '95.
23             Other than that period, have you ever
24  received public assistance since?
25       A.    No, I have not.
```

BRYAN DAVID RANGE

```
1       Q.   Okay.  Now, moving forward to 2011, there
2   was an incident involving a fishing license.
3              Do you remember that?
4       A.   Yes.
5       Q.   And why don't you describe what happened
6   and what led to the -- what led to those criminal
7   offenses?
8       A.   I had gone fishing and the fish police -- I
9   believe that's what they called it, is fish police --
10  came and asked me for my license, and I -- I didn't
11  have it on me -- or I thought I didn't have it on me,
12  so they wrote me a ticket and I had so many days to,
13  you know, get ahold of them and show it to them.
14              And when I got home that afternoon or
15  that evening, I went to my old tackle box and started
16  looking, and my wife had informed me that I actually
17  had not gotten my fishing license, that year.
18      Q.   Whenever --
19      A.   I went -- I'm sorry, go ahead.
20      Q.   So you -- you found out that you didn't
21  have a license, and then what did you do?
22      A.   I believe I called the fish warden,
23  explained it to him.  If I remember, he didn't really
24  seem to care, and then he issued me two fines,
25  fishing without a license and saying I had a license.
```

**BRYAN DAVID RANGE**

1      Q.   And what was your penalty for that?

2      A.   It was an estimate of, like, $200 fine,

3  maybe.

4      Q.   Okay.  I mean, my understanding of your

5  charges, one is fishing without a license and then a

6  false ID or statement -- or a false statement.

7           Did you --

8      A.   Okay.

9      Q.   -- in your -- in your discussion with the

10  state police, did he say that you had made a false

11  statement to him?

12      A.   I believe -- I believe he did.  I don't

13  know what his words were, but I believe he did --

14      Q.   And --

15      A.   -- and I told him the circumstances, he

16  didn't seem to care and issued me the summons.

17      Q.   And it's your understanding that the false

18  statement that you were penalized for was that you

19  actually -- that you had an ID, when you actually

20  didn't; is that right?

21      A.   Correct.

22      Q.   Where were you fishing when this -- when

23  you ran -- when you had this incident with the state

24  police?

25      A.   It wasn't the state police.  The fish

**BRYAN DAVID RANGE**

1   warden they're called.

2                    It would have been Susquehanna River,

3   York County.  I believe it's York County.

4        Q.   Okay.  Have you had any traffic tickets

5   that have led to any criminal charges?

6        A.   Criminal, no.  No DUIs or anything like

7   that, no.

8        Q.   Have you ever been involved in a car

9   accident where someone was injured?

10        A.   I don't believe -- I mean, I was in some

11   fender-benders many years ago, but I don't believe

12   there was any injuries ever.

13        Q.   Okay.  Nothing that would rise to, like,

14   manslaughter or anything like that or --

15        A.   No.  No.

16        Q.   -- the like?

17                    Other than the incidents that we've

18   mentioned, have you ever been -- or that we've

19   discussed, have you ever been arrested?

20        A.   No.

21        Q.   Okay.  In the last 15 years, have you ever

22   had a physical fight with someone?

23        A.   No.

24        Q.   Okay.  Any time you've been involved in a

25   physical fight as an adult?

Case 2:21-cv-02835-... Document 17... Page: 214 Filed... Date Filed: 12/21/2021...

Page 40

**BRYAN DAVID RANGE**

1     A.   No.  I had a guy shove me once at a

2  concert, and that would be the extent of that.

3     Q.   And you didn't reciprocate?

4     A.   No.  No.

5     Q.   What -- with your -- with either your first

6  wife or your current wife, have there been any

7  domestic disturbances where the police have been

8  called?

9     A.   Not that I recall, no.

10     Q.   In the past 20 years, have you been treated

11  for any psychiatric condition?

12     A.   No.

13     Q.   Okay.  And do you take any medicine for a

14  psychiatric or mental condition?

15     A.   No.

16     Q.   Okay.  Have you ever?

17     A.   No.

18          MR. GILL:  Okay.  Why don't we

19       take a ten-minute break.  I think I'm

20       near done, but --

21          MR. GOTTLIEB:  Okay.

22          MR. GILL:  Let's take a

23       ten-minute break.  If we could maybe come

24       back on at 11:05.

25          MR. GOTTLIEB:  That's fine.  I

**BRYAN DAVID RANGE**

1  could use a break.

2  (Brief recess.)

3  BY MR. GILL:

4  Q.  All right.  I just have a few follow-up

5  questions and then you can be on your way, Mr. Range.

6  Just a timing question.

7  So I believe you said that your father

8  passed in -- was it 2006 or 2008?

9  A.  2008.

10  Q.  Okay.  And then as a result of his death,

11  you got his pistol or revolver, you can't remember

12  which --

13  A.  Yes.

14  Q.  -- and then you --

15  A.  Well, it was a pistol.

16  Q.  -- gave it to -- okay.

17  And then you gave that pistol to

18  someone else.

19  A.  Yes, I believe so.  I know I don't have it.

20  Q.  And do you remember when you gave that

21  pistol away?

22  A.  No, I don't believe -- I had it for

23  maybe -- oh, maybe a month, and that's -- that's an

24  estimate.  I'm not sure.

25  Q.  Okay.

**BRYAN DAVID RANGE**

1      A.   I did not have it long.

2      Q.   Okay.  And you don't remember who you gave

3  it to?

4      A.   No, I'm not sure.

5      Q.   Was it someone outside your family?

6      A.   I don't know.  The only -- the only

7  thing --

8            THE COURT REPORTER:  I'm sorry,

9     Mr. Range, Mr. Range --

10           THE WITNESS:  My father and he

11    did not have it.

12           THE COURT REPORTER:  Mr. Range,

13    can you just repeat your answer.

14           MR. GILL:  Repeat your answer.

15           THE WITNESS:  I said that I

16    thought maybe --

17           THE COURT REPORTER:  I'm sorry,

18    can you --

19           MR. GOTTLIEB:  You just have

20    to -- Bryan, say it again, because I

21    don't think she's picking you up.

22           VIDEO TECHNICIAN:  Mr. Range,

23    try muting yourself and speaking just

24    from the attorney's phone.  I think it

25    might be a bad connection coming from

**BRYAN DAVID RANGE**

```
 1          your phone.
 2                   MR. GOTTLIEB:  Yeah, it just
 3          kicked me out.
 4                   THE WITNESS:  Okay.  Can you
 5          still hear me?  I know you can see me.
 6                   VIDEO TECHNICIAN:  Yes.  We
 7          can't -- just mute yourself, if you can,
 8          on your phone and then we'll see if you
 9          can come through the attorney's phone,
10          because it seems like it's your phone.
11                   MR. GOTTLIEB:  All right.
12          Bryan, talk now.
13                   THE WITNESS:  I thought maybe I
14          had given it to my stepfather, and I had
15          asked him about it and he said no, I had
16          not.
17                   MR. GOTTLIEB:  Did you hear
18          that through my phone?
19                   THE COURT REPORTER:  Yes.
20                   MR. GILL:  Yes.
21                   MR. GOTTLIEB:  Okay.  All
22          right.  Who do you want to see, him or
23          me?
24                   MR. GILL:  Well, I think it
25          works if we -- if he's on mute and we can
```

BRYAN DAVID RANGE

```
 1        see his face, so --
 2                MR. GOTTLIEB:  All right.  Then
 3        I'll turn --
 4                MR. GILL:  I think this
 5        arrangement --
 6                MR. GOTTLIEB:  Oh, you can see
 7        him?  Oh, okay.  All right.  Fine.
 8   BY MR. GILL:
 9        Q.   Okay.  And in connection with the 1995, the
10   welfare fraud, the conviction for making a false
11   statement, you remember signing the application,
12   correct, for welfare?
13        A.   No, I do not actually remember signing.  I
14   do not actually remember signing.
15        Q.   Okay.  Do you remember reviewing the
16   application in any fashion?
17        A.   No.  No.
18        Q.   Would it have been your pattern or practice
19   to review and sign this kind of application for
20   public assistance in 1995?
21        A.   I don't understand your question.
22        Q.   I mean, it's --
23                THE COURT REPORTER:  I'm sorry,
24        I can't --
25                MR. GOTTLIEB:  You're frozen on
```

**BRYAN DAVID RANGE**

```
1        my phone.
2                THE WITNESS:  Yeah, he's frozen
3        on mine, too.
4                MR. GILL:  Can you hear me now?
5                MR. GOTTLIEB:  Yeah.  Bryan,
6        just make sure you -- since you're, like,
7        six feet away --
8                THE WITNESS:  Yes, I can hear
9        you.
10               VIDEO TECHNICIAN:  I think the
11       issue is you're not muted.  So if you can
12       mute your phone, I think that we can
13       still hear you through the attorney's.
14               MR. GILL:  Mr. Range should
15       mute his phone.
16               MR. GOTTLIEB:  All right.  Hold
17       on.
18               VIDEO TECHNICIAN:  Yes.  Keep
19       the camera on, but just mute it.
20               THE WITNESS:  That's what I'm
21       trying to do.  Audio -- this phone
22       works differently than mine.
23               VIDEO TECHNICIAN:  Okay.  So it
24       doesn't look like you're connected to
25       audio.  That might work now.
```

**BRYAN DAVID RANGE**

```
 1   BY MR. GILL:
 2       Q.   Okay.  Mr. Range --
 3                VIDEO TECHNICIAN:  Can you say
 4       something?
 5                THE WITNESS:  Yes.  Can you
 6       hear me?
 7                VIDEO TECHNICIAN:  Okay.  Is
 8       that better?  Yeah, that's better.
 9   BY MR. GILL:
10       Q.   Let me just repeat the question so that
11   we're all on the same page.
12                So would it have been your pattern or
13   practice or habit to review a document that you were
14   about -- that you would sign, a public document like
15   an application for welfare assistance?
16       A.   No, I don't -- I don't remember reviewing
17   it, and, I mean, I'm trying to think back as a
18   20-some-year-old and that time of life, I assume I
19   probably didn't review it.
20       Q.   Okay.  So you assume you did, but you have
21   no memory of doing so?
22       A.   No.
23       Q.   Just so I'm clear, you assume you reviewed
24   the document, but you don't remember doing so; is
25   that correct?
```

BRYAN DAVID RANGE

```
1         A.   Well, I don't -- I don't -- no, I'm not

2    assuming I reviewed it.  I don't -- I don't remember

3    reviewing it or looking at it.  I signed my name.

4         Q.   So do you think you were -- that your

5    conviction for making a false statement was in error?

6         A.   Looking back now, no, I do not.

7         Q.   Why do you -- why, looking back now, do you

8    not believe it was in error?

9         A.   Well, because I'm -- you know, I'm 50 years

10   old, I've lived life, you know, and if you sign

11   something for something, you know, you own it.

12        Q.   Okay.  Now, you became aware that you

13   weren't able to legally purchase a firearm sometime

14   in the 2011, 2012 time frame; correct?

15        A.   That's an estimate.  I mean, it could have

16   been more 2013.  I'm not real sure.

17        Q.   Okay.  Okay.  And then --

18        A.   Within those couple years there.

19        Q.   -- you waited until -- understood.  You

20   waited until 2020 to file this Complaint.

21             What was the sort of the triggering

22   factor to file this lawsuit?

23             Without -- and I don't want to get

24   into any discussions you may have had with your

25   attorneys or anything like that, but what was --
```

**BRYAN DAVID RANGE**

```
 1        A.    Right.
 2        Q.    -- what was the triggering event to file
 3   the lawsuit in 2020?
 4              MR. GOTTLIEB:  I'm going to
 5         object, because I think now you're really
 6         delving into attorney/client privilege.
 7              Are you asking him other than
 8         that?
 9              MR. GILL:  Yes.
10   BY MR. GILL:
11        Q.    I don't want to get into conversations you
12   had --
13              MR. GOTTLIEB:  Because if it's
14         something other than that --
15              THE COURT REPORTER:  Mr.
16         Gottlieb, you're freezing up.
17              MR. GURA:  I think I understand
18         my colleague's objection, and if I can
19         understand the question better, are you
20         asking whether or not there was some
21         event, some thing that happened that
22         prompted Mr. Range to do this, and you're
23         excluding any kind of legal advice he may
24         have received from anybody?  Am I --
25              MR. GILL:  Correct.
```

**BRYAN DAVID RANGE**

```
 1              MR. GURA:  -- understanding --
 2       is that the question?
 3              MR. GILL:  That's the question.
 4              THE WITNESS:  Do I answer?
 5              MR. GOTTLIEB:  Yes.  Yes, you
 6       can answer.
 7              THE COURT REPORTER:  I'm sorry,
 8       Mr. Range, you're freezing.
 9              THE WITNESS:  No, there was no
10       event or, you know, nothing -- I said
11       there was --
12              MR. GOTTLIEB:  Can you hear --
13       can you hear him?
14              VIDEO TECHNICIAN:  No, you're
15       really breaking up on the phone.
16              MR. GILL:  I heard -- well,
17       what I heard was Mr. Range stating that
18       there was no triggering event.
19  BY MR. GILL:
20       Q.   Mr. Range, is that a -- is that -- did I
21  understand that correctly?
22       A.   Yes, you did.
23       Q.   All right.  One question I had about
24  timing, you had -- in 2006, you lost your shotgun and
25  your deer rifle to a house fire; correct?
```

**BRYAN DAVID RANGE**

1   A.   Correct.

2   Q.   And how shortly after that time frame did

3   your -- when was that -- when was that house fire,

4   what time of year?

5   A.   Two weeks before Christmas would have

6   been -- my father was '08.  That would have been '06,

7   I believe.

8   Q.   Right, but what -- do you remember what

9   month it was?  Was it the beginning of the year?

10   A.   I said two weeks -- I had said two weeks

11   before Christmas.  It would have been December.

12   Q.   Okay.  Okay.  And was it that -- was that

13   the subsequent Christmas that you got -- that your

14   wife purchased the deer-hunting rifle for you, was

15   that two weeks --

16   A.   No, I do not believe so.  No.

17   Q.   Was it -- was it the next year?

18   A.   I'm not sure.  I know it wasn't the year of

19   the fire.  I mean it was so -- I don't even think I

20   hunted that year, as far as I can remember.  It was

21   just a chaotic time.

22   Q.   Understood.  Understood.  I don't -- that's

23   obviously a terrible situation, but I'm just trying

24   to understand, would she have -- would she have

25   gotten you the deer rifle as a present within the

BRYAN DAVID RANGE

```
 1    next year or two from that fire?
 2         A.   I don't want to guess and -- I just don't
 3    know.
 4         Q.   Okay.  But let me ask you this:  When
 5    you -- when did your -- when did you get your first
 6    deer-hunting rifle from your wife, do you remember
 7    that, when you got that, what year that was?
 8         A.   No, I don't remember the year.
 9         Q.   Okay.  But you were -- you were turned down
10    twice for PICS, the first time in 1998 and the second
11    time in 2010 or 2011; correct?
12         A.   I believe that's correct, yes.
13         Q.   Right.  And you had in your possession a
14    deer rifle during that intervening time, correct,
15    between '98 and 2010?
16         A.   Correct.
17         Q.   All right.  Do you remember if your wife
18    bought you your first hunting rifle after the '98
19    PICS denial?
20         A.   I'm -- I think -- I'm pretty sure she did.
21         Q.   Okay.
22              THE WITNESS:  I'm freezing
23         up again.
24              MR. GOTTLIEB:  Can you hear him
25         through my phone?
```

**BRYAN DAVID RANGE**

```
 1              MR. GILL:  Well, I'll restate
 2       what I thought I heard he said.  He said
 3       that he thinks his wife did buy the
 4       hunting rifle after the '98 PICS denial.
 5              Is that correct?
 6              MR. GOTTLIEB:  That is what he
 7       said, yes.  That is what he said.
 8  BY MR. GILL:
 9       Q.   Okay.  She bought you the second rifle
10  sometime after the 2006 -- after the 2006 fire, but
11  before the 2010, 2011 PICS denial; is that right?
12       A.   I don't know for sure.
13       Q.   Okay.
14       A.   I'm not sure on that.
15              MR. GILL:  Okay.  Well,
16       actually, if the court reporter -- I'm
17       sorry, Summit, there's a PDF that begins
18       with 12/10/11.  If you could pull up that
19       exhibit.  Kathleen, are you there?  And
20       if you can scroll down to the bottom of
21       the page.
22              THE WITNESS:  I see it.
23              MR. GILL:  Just keep going
24       down.  Do you see -- yeah, stay there.
25              THE WITNESS:  Yes, I see it.
```

**BRYAN DAVID RANGE**

```
 1    BY MR. GILL:
 2        Q.  Do you see that?  It's a Facebook post and
 3    it says, you know:  Nice big doe, wooohooo.
 4        A.  Yes.
 5        Q.  December 10, 2011.
 6        A.  Yes.  Yes, I see it.
 7        Q.  Is that your rifle pictured there?  Is that
 8    your deer rifle?
 9        A.  I -- I actually didn't even remember this
10    until it was found in my Facebook.  I don't remember
11    owning that rifle.  I believe I probably would have
12    maybe borrowed it from somebody, maybe.
13        Q.  Okay.  Okay.  So you don't -- you don't
14    think that that is your rifle?
15        A.  I don't believe so.
16        Q.  Okay.  I mean, would you -- you borrowed a
17    rifle from -- do you remember who you borrowed it
18    from?
19        A.  I don't, and, quite honestly, I'm only
20    guessing that I borrowed it from somebody because,
21    like I said, I did not -- I don't remember the doe,
22    but I shot a lot of doe --
23        Q.  Right.
24        A.  -- but I just -- until it came up on my
25    Facebook, I didn't -- I was clueless.
```

**BRYAN DAVID RANGE**

1      Q.   Yeah, well, okay.  This is, you know, about

2  ten years ago, so it's a while ago, but I -- how many

3  times have you -- do you think you borrowed a deer

4  rifle from somebody for shooting or for hunting?

5      A.   I'm guessing this time.  I don't know.  I

6  mean, the only one I know of now is this, and I'm not

7  even sure where -- who I would have borrowed that

8  from, but --

9      Q.   Okay.

10     A.   -- I must have.  I just don't remember.

11     Q.   Okay.

12     A.   And I have racked my brain.  I just don't

13  remember it.

14     Q.   Okay.  So other than this one time, you

15  have no memory of borrowing a deer rifle from anybody

16  for hunting purposes?

17     A.   No, I don't recall any other times.

18          MR. GILL:  Okay.  I don't have

19     any further questions.

20          P.J., do you have any questions

21     that you'd like to ask Mr. Range?

22          MR. KOOB:  Nothing from me.

23     Thanks, Mr. Range.

24          THE WITNESS:  Thank you.

25          MR. GILL:  Thank you for --

**BRYAN DAVID RANGE**

1        everybody for making themselves available

2        in the holiday period.  I appreciate it.

3                Thank you very much for your

4        time, Mr. Range, and have a happy New

5        Year.

6                VIDEO TECHNICIAN:  Question, do

7        you want the exhibit that we pulled up

8        marked as anything?

9                MR. GILL:  Just do U.S.A.

10       Exhibit 1.

11               THE COURT REPORTER:  Mr.

12       Gottlieb, do you want a copy of the

13       transcript?

14               MR. GOTTLIEB:  I don't think we

15       need two of them.

16               MR. GURA:  I mean, I guess we

17       get one copy at least.

18               (Deposition concluded at 11:29

19   a.m.)

20               (USA-1 marked for

21   identification.)

22

23

24

25

**BRYAN DAVID RANGE**

```
 1                    CERTIFICATION

 2                       -  -  -

 3            I hereby certify that the testimony

 4     and the proceedings in the aforegoing matter

 5     are contained fully and accurately in the

 6     stenographic notes taken by me, and that the

 7     copy is a true and correct transcript of the

 8     same.

 9

10

11

12

13            ----------------------------

14            Andrea M. Brinton, Certified
              Court Reporter and Notary Public
15

16

17

18            The foregoing certification does

19     not apply to any reproduction of the same by

20     any means, unless under the direct control

21     and/or supervision of the certifying

22     reporter.

23

24

25
```

**BRYAN DAVID RANGE**

**A**

**a.m** 1:13 55:19
**ability** 7:19 12:22 36:1,13
**able** 12:19 47:13
**accepted** 30:22
**accident** 39:9
**accurately** 56:5
**acknowledge** 4:9 4:13,23
**ACTION** 1:3
**actual** 34:14
**address** 8:9
**administered** 4:14
**adult** 16:23 25:1 39:25
**advice** 48:23
**affect** 36:13
**aforegoing** 56:4
**afternoon** 37:14
**ages** 9:5
**ago** 14:14 27:23,23 39:11 54:2,2
**agree** 4:23
**agreed** 5:6,9,11
**agreement** 4:1 5:3 5:4
**ahead** 17:23 26:13 37:19
**ahold** 37:13
**al** 1:7
**Alan** 2:7 5:7
**alan@guraplic.c...** 2:9
**Alexandria** 2:8
**allow** 19:23
**allowed** 16:5 17:9 22:9
**Amendment** 30:4 30:11
**America** 11:8
**ammunition** 13:8
**amount** 32:24
**and/or** 56:21
**Andrea** 1:13 56:14
**answer** 6:11,23,24 7:1,14,19,23 8:2 22:8,10 42:13,14 49:4,6
**answers** 23:5
**anybody** 8:22 48:24 54:15
**APPEARANCES** 2:2
**application** 20:15 33:8 44:11,16,19

46:15
**applied** 32:17 34:8
**apply** 56:19
**appreciate** 55:2
**approved** 32:21
**approximately** 25:25
**archery** 29:16,21
**Area** 12:1
**arrangement** 4:19 44:5
**arrested** 39:19
**asked** 19:17 36:19 37:10 43:15
**asking** 6:22 48:7,20
**assistance** 20:15 32:18,23 33:8 34:8 36:22,24 44:20 46:15
**assume** 35:7,8,15 46:18,20,23
**assuming** 17:12 47:2
**attended** 31:11,21
**attorney** 1:6 35:21
**attorney's** 2:11 42:24 43:9 45:13
**attorney/client** 48:6
**attorneys** 4:8 47:25
**audio** 45:21,25
**August** 32:5
**available** 55:1
**average** 28:9
**aware** 7:22 17:9 20:20 47:12
**awareness** 16:7 17:11

**B**

**B** 3:7
**back** 9:20 24:2 28:4 36:22 40:24 46:17 47:6,7
**background** 8:6
**bad** 42:25
**BARR** 1:6
**basic** 6:6
**basis** 26:5
**bedroom** 23:21
**beginning** 50:9
**begins** 52:17
**believe** 11:19 14:2 14:16 15:9,16,17 15:18,24,25 16:18 16:20 19:3 20:17 21:11 23:19 27:22

27:23 32:19 34:13 34:19 37:9,22 38:12,12,13 39:3 39:10,11 41:7,19 41:22 47:8 50:7 50:16 51:12 53:11 53:15
**better** 46:8,8 48:19
**big** 53:3
**biological** 10:5,13
**birthday** 14:3
**bit** 6:8 19:6 21:1
**borrowed** 53:12,16 53:17,20 54:3,7
**borrowing** 54:15
**bottom** 52:20
**bought** 17:2,5 22:1 51:18 52:9
**bow** 25:16,23 26:1 26:3,7,7,14 27:15 28:8
**bow-hunting** 28:12
**box** 37:15
**brain** 54:12
**brand** 15:20
**Brandon** 9:4,8 10:10
**break** 7:10,11,15 40:19,23 41:11
**breaking** 49:15
**Brief** 41:2
**briefly** 24:24
**Brinton** 1:13 56:14
**Bryan** 1:3,11 3:3 5:13 9:4,9 10:10 10:11,12 22:10 42:20 43:12 45:5
**business** 12:7,8
**buy** 18:9,13 52:3

**C**

**called** 30:15 33:16 37:9,22 39:1 40:8
**calls** 22:5
**camera** 45:19
**car** 39:8
**care** 37:24 38:16
**certain** 26:6
**certainly** 33:2 34:4
**certification** 4:2 56:1,18
**Certified** 1:14,22 56:14
**certify** 56:3
**certifying** 56:21
**chaotic** 50:21

**charges** 33:25 38:5 39:5
**chemo** 24:18
**Chestnut** 2:12
**child** 19:18
**children** 9:1,13,23 10:4,5,14
**children's** 32:16
**chimney** 28:4
**Christmas** 14:3 16:12,13,14,21 17:5,6 50:5,11,13
**circumstances** 29:9 32:13 38:15
**citizen** 35:14
**CIVIL** 1:3
**clear** 46:23
**closet** 23:19,21 28:3
**clueless** 53:25
**CNH** 11:8
**colleague's** 48:18
**come** 16:7 17:11 20:25 40:23 43:9
**coming** 28:5 42:25
**commencing** 1:13
**company** 11:18,22
**Complaint** 47:20
**completely** 7:20,23
**concerned** 22:20
**concert** 40:2
**concluded** 55:18
**condensation** 28:6
**condition** 40:11,14
**conference** 1:11 2:1
**connected** 45:24
**connection** 13:15 13:16 30:17,19 42:25 44:9
**consent** 4:19
**consequences** 8:2 35:13
**contained** 56:5
**control** 30:15 31:19 56:20
**conversation** 6:18
**conversations** 48:11
**convicted** 33:18,22 34:11
**conviction** 20:11 20:14,21 21:10 22:25 32:5,11,15 33:21,25 34:14 35:13 36:11,13

**44:10 47:5**
**copy** 55:12,17 56:7
**corner** 28:4
**correct** 10:17,18 13:24,25 16:23,24 17:6,7 19:12 20:16 22:2 23:1,4 23:9,10 24:11,12 25:11,21,22 30:4 34:12,23 36:3 38:21 44:12 46:25 47:14 48:25 49:25 50:1 51:11,12,14 51:16 52:5 56:7
**correctly** 21:12 49:21
**costs** 34:5
**counsel** 2:10,15 4:1 4:18 5:2,17 6:7 13:10
**County** 39:3,3
**couple** 8:5 9:11 19:4,7 36:16 47:18
**course** 19:1,19 25:1 28:8,16
**court** 1:1,14,22,22 4:7,25 5:16 35:6,9 36:8 42:8,12,17 43:19 44:23 48:15 49:7 52:16 55:11 56:14
**courtesy** 6:24
**courtroom** 35:8,13
**crazy** 18:25
**crime** 34:10,21
**criminal** 37:6 39:5 39:6
**current** 14:5,6 40:6
**currently** 8:7 11:2 13:4,7 25:13
**cut** 6:25

**D**

**D** 2:11 3:1
**dad** 14:21
**dated** 31:20
**DAVID** 1:3,11 3:3 5:13
**day** 28:10
**days** 19:4,8 37:12
**death** 23:8 41:10
**December** 1:12 50:11 53:5
**decide** 26:23
**declare** 4:15

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Appx242

BRYAN DAVID RANGE

**E**

deer 12:25 13:23
    14:1,2,25 15:7,16
    15:23 16:15,22
    17:5 22:1 23:3
    24:24 28:15,16
    49:25 50:25 51:14
    53:8 54:3,15
deer-hunting 50:14
    51:6
defend 12:19
Defendants 1:8
    2:15
defender 36:3
define 29:15
definition 29:3
delving 48:6
demonstrations
    31:12
denial 51:19 52:4
    52:11
denied 18:19 21:24
Depending 28:17
deposed 6:3
deposition 1:11 6:4
    7:9 55:18
describe 37:5
DESCRIPTION 3:8
destroyed 15:10
different 28:3
differently 45:22
digging 17:13,13
    17:17,18,20 20:3
direct 56:20
discuss 21:23
discussed 39:19
discussion 35:12
    35:23 36:7 38:9
discussions 47:24
DISTRICT 1:1,1
disturbances 40:7
divorce 10:22 34:5
divorced 10:16,19
    34:2,3
document 46:13,14
    46:24
doe 53:3,21,22
doing 17:12 33:15
    33:17 46:21,24
domestic 40:7
drive 26:25 27:7
drug 19:18
drug-trafficked
    22:16
DUIs 39:6
duly 5:14

**E**

E 3:1,7
earlier 20:1 32:4
earning 33:14
EASTERN 1:1
effect 19:2
either 14:2 29:22
    35:23 40:5
Elizabethtown 8:8
    12:1
embarrassed 19:6
employed 11:2
Eric 2:11 5:8,9 6:1
eric.gill@usdoj.g...
    2:14
error 47:5,8
ESQUIRE 2:3,7,11
    2:12
estimate 10:25 38:2
    41:24 47:15
estimating 8:14
et 1:7
evening 37:15
event 48:2,21 49:10
    49:18
everybody 55:1
exactly 15:25 20:19
    27:14
EXAMINATION 3:4
    5:23
examined 5:14
excluding 48:23
exhibit 3:8 52:19
    55:7,10
explained 37:23
expunge 21:9
expungement
    21:11
extent 40:2
exterior 28:4

**F**

face 44:1
Facebook 13:11
    30:3 31:18 53:2
    53:10,25
factor 24:22 47:22
factual 32:13
fair 19:25 29:18
    34:17
false 34:11,16 38:6
    38:6,10,17 44:10
    47:5
family 42:5
far 30:9 50:20
fashion 44:16

**F**

father 24:4 41:7
    42:10 50:6
father's 23:8
feet 45:7
fender-benders
    39:11
fight 39:22,25
figured 22:23
file 47:20,22 48:2
filing 4:3 21:9,19
finally 17:14
financial 20:15 33:8
find 17:14
fine 5:18,21 17:25
    35:3,18 38:2
    40:25 44:7
fines 37:24
finish 17:24
fire 15:10 49:25
    50:3,19 51:1
    52:10
firearm 12:17,23,23
    13:5,8,21 15:13
    16:6 17:10 18:9
    18:16 19:24 20:6
    20:22 21:10,19
    22:2 24:9,11 25:4
    28:21 29:3,10,23
    36:9 47:13
firearms 12:23
    13:12,18 21:21
    25:1
first 3:8 5:13 12:25
    14:5 16:25 18:5
    28:17,18 40:5
    51:5,10,18
fish 37:8,9,22 38:25
fishing 37:2,8,17,25
    38:5,22
five 9:2,23 10:4
    11:23 14:10 24:17
    24:20 29:7 30:1
Fleming 1:24
follow 30:4,5,8,14
    31:2
follow-up 41:4
follows 5:14
food 20:16,17 32:18
    32:19,22
foregoing 56:18
form 4:4
forward 37:1
found 17:16 20:4,4
    37:20 53:10
four 11:23 26:21
frame 9:16 20:1,24

21:3,7 24:3,7
    47:14 50:2
fraud 20:11,14,18
    20:21 22:25 32:5
    32:11,15 33:23
    34:15,18 44:10
freezing 48:16 49:8
    51:22
friends 26:4
front 35:8,10
frozen 44:25 45:2
fully 56:5
further 4:13 54:19
future 4:20

**G**

GED 12:3
general 1:6 30:10
Gill 2:11 3:5 5:8,8,9
    5:18,25 6:2 22:7
    22:21 29:18,19
    40:18,22 41:3
    42:14 43:20,24
    44:4,8 45:4,14
    46:1,9 48:9,10,25
    49:3,16,19 52:1,8
    52:15,23 53:1
    54:18,25 55:9
give 6:6,8,11,24
    24:14
given 6:4 14:23
    43:14
go 11:24 17:23
    26:13,23 27:8,16
    37:19
going 6:19 10:25
    24:18 35:18 48:4
    52:23
Good 6:1
gotten 14:21 16:12
    20:12,13 37:17
    50:25
Gottlieb 2:3 5:5,6
    5:20 22:9 29:15
    40:21,25 42:19
    43:2,11,17,21
    44:2,6,25 45:5,16
    48:4,13,16 49:5
    49:12 51:24 52:6
    55:12,14
Government 5:9,11
    5:19 6:2
graduate 12:2
group 30:18,25
    31:2
groups 30:4,7,14

31:11
guess 9:17 13:2
    26:22 36:19 51:2
    55:16
guessing 18:7
    53:20 54:5
guilty 35:6,18
gun 13:13,17 16:3
    18:23 23:1 30:9
    30:12,15 31:19
guns 13:12
Gura 2:6,7 5:7,7
    22:4 48:17 49:1
    55:16
guy 18:22 19:17
    40:1

**H**

H 3:7
habit 46:13
half 12:7
Hammonton 1:24
happened 15:7,22
    18:10 19:14 27:25
    30:24 32:9 33:25
    37:5 48:21
happy 55:4
Harrisburg 12:10
head 6:12 25:24
hear 43:5,17 45:4,8
    45:13 46:6 49:12
    49:13 51:24
heard 49:16,17 52:2
hearing 31:19
heat 11:5
hectic 24:2
Hershey 8:10 9:13
high 11:24 12:1,5
hire 21:14
Hold 45:16
holiday 14:4 55:2
Holland 11:11
home 12:19 13:3
    37:14
honestly 7:20,24
    8:3 53:19
house 8:22 15:9,11
    24:18,20 49:25
    50:3
hunt 12:18 25:18
    26:3,5,7,16,19,23
    27:7,8 28:8
hunted 50:20
hunter 25:16
Hunters 30:25
hunting 25:6,8,10

Page 58

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Appx243

**BRYAN DAVID RANGE**

25:23 26:2,7,14
27:6,13 28:1,8,15
28:16 31:1,4
51:18 52:4 54:4
54:16

**I**

**ID** 38:6,19
**idea** 29:25
**identification** 55:21
**imagine** 33:11 35:3
**impression** 24:8
**imprisonment** 34:22
**incident** 37:2 38:23
**incidents** 39:17
**including** 28:25 29:2
**income** 34:20
**indicate** 5:2
**informed** 37:16
**initial** 6:8
**initiated** 12:15
**injured** 39:9
**injuries** 39:12
**instructions** 6:7,9
**interest** 13:12
**Internet** 17:13,20 20:4 21:16
**interrogatories** 23:6
**interrogatory** 25:15
**interrupt** 17:24
**intervening** 51:14
**involved** 35:1 39:8 39:24
**involvement** 33:7 33:11
**involving** 37:2
**issue** 45:11
**issued** 37:24 38:16

**J**

**J** 2:12
**Jersey** 1:24
**job** 11:4,12,15
**Jordan** 2:17
**judge** 35:8,10,23

**K**

**Kathleen** 2:17 52:19
**keep** 45:18 52:23
**keeping** 24:15
**kicked** 43:3
**kids** 24:17,20

**kind** 23:12 26:7 44:19 48:23
**kindergarten** 22:19
**knew** 19:22,22 22:6
**know** 7:5,11 9:11 9:21 12:15 13:2 13:10,23 14:22,23 17:23 19:5,16,17 19:19 21:9,16,18 22:12,16 23:16 24:21 26:6,20,23 27:2 28:2 30:3,5 30:22 31:18 33:4 33:20,25 34:14,16 36:16,20,21,22 37:13 38:13 41:19 42:6 43:5 47:9,10 47:11 49:10 50:18 51:3 52:12 53:3 54:1,5,6
**knowing** 22:1
**known** 22:18
**Koob** 2:12 5:10,10 54:22

**L**

**lawsuit** 12:15 21:9 21:19 47:22 48:3
**lawyer** 21:14 35:23 35:25 36:2
**leak** 28:4
**learned** 34:19
**led** 37:6,6 39:5
**left** 19:6
**legal** 12:22 48:23
**legally** 17:9 20:5,22 21:18 22:2,23 24:9,10 36:1,8 47:13
**let's** 32:12 40:22
**license** 25:7,10 37:2,10,17,21,25 37:25 38:5
**licenses** 25:8
**lieu** 4:14
**life** 16:23 24:18 25:1 46:18 47:10
**liked** 13:13 31:18 32:2
**limit** 7:19
**list** 18:23 22:14
**listing** 33:13
**little** 19:6 21:1 25:24
**live** 8:7,15,22
**lived** 8:13 9:13,15

9:23,23 47:10
**living** 24:17 34:7
**local** 13:17
**location** 11:10
**long** 7:9 8:13 11:12 11:22 25:23 27:13 27:14 28:11 29:25 42:1
**longer** 14:14 21:2 30:1
**look** 21:11 45:24
**looked** 22:14
**looking** 17:20 37:16 47:3,6,7
**loss** 19:20
**lost** 49:24
**lot** 24:21 53:22
**lunch** 7:10

**M**

**M** 1:13 56:14
**machine** 11:5,7
**making** 34:11 44:10 47:5 55:1
**manner** 4:21
**manslaughter** 39:14
**march** 32:3
**marched** 31:23
**marches** 31:14
**marked** 55:8,20
**math** 25:24
**matter** 4:16 6:2 56:4
**mean** 10:22 16:2 17:21 18:24 22:14 22:15 26:10,17 28:22 30:9 31:10 35:7 38:4 39:10 44:22 46:17 47:15 50:19 53:16 54:6 55:16
**Meaning** 21:2
**means** 56:20
**meant** 26:22
**medical** 32:18,20
**medication** 7:18
**medicine** 40:13
**Megan** 9:4,9 10:10 10:11,12
**Members** 30:15
**memory** 46:21 54:15
**mental** 40:14
**mentioned** 14:17 17:8,17 23:6

25:16 39:18
**mess** 27:20
**mess-up** 22:13
**messed** 27:18
**Michael** 2:3 5:5
**Michele** 8:18,21
**mikem1a1@aol.c...** 2:5
**military** 12:12 30:15 30:21
**mine** 10:7,7 45:3,22
**mistake** 19:21
**mix-up** 24:9
**Mobile** 3:9
**model** 14:25 15:2,4 23:12
**money** 34:5,6
**month** 33:4,5 41:23 50:9
**months'** 28:5
**morning** 6:1 28:17 28:18
**mother** 10:14 32:16
**mother's** 24:18
**moved** 9:20,20 10:22,24
**moving** 37:1
**mute** 43:7,25 45:12 45:15,19
**muted** 45:11
**muting** 42:23
**muzzleloader** 25:19 27:12,13,17 27:18,21 28:22 29:2,22

**N**

**N** 3:1
**name** 5:3 6:1 8:17 8:19 11:7,18 12:8 33:12 47:3
**names** 9:3
**near** 40:20
**need** 7:10 55:15
**never** 19:19 22:15
**New** 1:24 11:11 55:4
**Nice** 53:3
**Nicole** 9:4,10 10:11 10:12
**nod** 6:12
**Nolt** 10:15,16
**normal** 6:18
**Norristown** 2:4
**Notary** 1:14 56:14
**notes** 56:6

**number** 33:1

**O**

**oath** 4:14
**object** 48:5
**objection** 22:4 48:18
**objections** 4:3,20
**obtain** 14:1 16:10
**obviously** 50:23
**occasion** 19:15
**offense** 33:19
**offenses** 37:7
**offhand** 30:6
**OFFICE** 2:11
**official** 4:24
**oh** 9:6 11:23 22:11 25:24 29:14 30:2 41:23 44:6,7
**okay** 5:20 6:6,14,18 7:4,6,7,12,18,22 8:1,5,11,15,25 9:3 9:15,19 10:1,4,4,9 10:13,16,24 11:2 11:9,14,22,24 12:2,4,12,12,22 13:1,4,7,18,21,23 14:7,17,25 15:3,7 15:12,15,20,22 16:14,17,22 17:4 17:8 18:8,12,18 19:7,10,22 20:14 20:20 22:22,22 23:5,17,20 24:4,7 24:23 25:3,10,13 25:15,21 26:1,8 27:6,10,12,18,20 28:11,14,20 29:1 29:7,9,12 30:3,14 30:20,25 32:14 33:3,7,13 34:10 34:16,21 35:5,10 35:19,20 36:3,7 36:18 37:1 38:4,8 39:4,13,21,24 40:13,16,18,21 41:10,16,25 42:2 43:4,21 44:7,9,15 45:23 46:2,7,20 47:12,17,17 50:12 50:12 51:4,9,21 52:9,13,15 53:13 53:13,16 54:1,9 54:11,14,18
**old** 8:10 9:13 15:5 37:15 47:10

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Appx244

BRYAN DAVID RANGE

once 22:23 40:1
ones 9:15 10:1
open 35:6,9
operator 11:6
opposed 24:15
oral 6:12
outside 42:5
owned 14:18 16:22
21:22 24:25
owning 53:11

**P**

P 2:3
P.J 54:20
P.L.L.C 2:6
PA 21:13
page 3:2,8 46:11
52:21
painting 11:16,19
paper 33:2
participating 4:8
particular 30:13
particularly 7:8
parties 2:1 4:18
pass 24:5
passed 41:8
pattern 44:18 46:12
Paul 2:12 5:10
paul.koob@usdo...
2:15
PDF 52:17
penalized 38:18
penalty 4:17 38:1
pending 7:14
Pennsylvania 1:1
1:23 2:4,13 8:8
11:11 31:19
people 19:3 26:6,24
period 15:13 23:7
36:23 55:2
perjury 4:17
Permit 25:4
person 4:15 31:11
35:17
Philadelphia 1:23
2:13
phone 42:24 43:1,8
43:9,10,18 45:1
45:12,15,21 49:15
51:25
Photos 3:9
physical 39:22,25
physically 4:10
picking 42:21
PICS 17:22 18:2,4
19:23 21:24 51:10

51:19 52:4,11
pictured 53:7
Pike 1:24
pistol 23:7,24 24:14
24:20,23 29:22
41:11,15,17,21
Plaintiff 1:4 2:10
plead 35:17
please 5:2 6:22
pled 35:6
point 9:18 14:24
29:18 34:4
police 37:8,9 38:10
38:24,25 40:7
popped 30:22
position 22:22
possess 13:4,7
16:6 21:18 22:24
24:9 36:8
possessed 15:13
21:22 23:7 24:24
24:25
possessing 20:22
possession 51:13
post 13:12 31:19
53:2
posts 13:11
practice 44:18
46:13
present 2:1,16 4:10
14:3 15:12 16:14
50:25
presents 17:6,6
pretty 27:5 51:20
prevented 20:22
preventing 24:10
Prince 2:7
privilege 48:6
probably 14:22
21:4 30:5,21,24
46:19 53:11
probation 34:23,24
35:18
proceeding 4:9,11
proceedings 56:4
produced 13:11
prompted 48:22
Property 11:21
prosecutor 35:16
protest 21:5
protested 31:25
psychiatric 40:11
40:14
public 1:14 36:22
36:24 44:20 46:14
56:14

pull 52:18
pulled 55:7
punishment 34:25
purchase 18:16
19:23 20:5 47:13
purchased 13:18
13:20,21 50:14
purchasing 54:16
purposes 54:16
pursue 12:4
put 23:19,19 28:3

**Q**

qualifies 34:21
question 4:4 6:21
6:23 7:4,14,14
26:18 41:6 44:21
46:10 48:19 49:2
49:3,23 55:6
question-and-an...
6:10
questions 6:11
7:19,23 8:2,6 41:5
54:19,20
quite 53:19

**R**

racked 54:12
ran 38:23
range 1:3,12 3:3
5:13 6:1 8:21
11:21 29:13,16,20
29:21,21 41:5
42:9,9,12,22
45:14 46:2 48:22
49:8,17,20 54:21
54:23 55:4
ranges 29:17
read 18:23,25 19:18
reading 4:2
real 47:16
realization 20:23
realize 16:5
really 13:16 28:6
29:4 33:12 36:15
37:23 48:5 49:15
reason 7:22 17:19
20:5,9 24:13
recall 13:22 25:2
29:4 33:10,12
40:9 54:17
RECCHUITI 2:3
received 32:24
36:21,22,24 48:24
recess 41:2
reciprocate 40:3

record 5:4
REFERENCED 3:8
regular 26:5
regularly 27:8
relates 20:15
relating 13:11
remember 10:24
12:8,11 13:14
14:7 15:1,2,3,6,20
16:25 18:6,12
21:12 23:12,25
29:9 33:2,13,15
35:17,22 36:7
37:3,23 41:11,20
42:2 44:11,13,14
44:15 46:16,24
47:2 50:8,20 51:6
51:8,17 53:9,10
53:17,21 54:10,13
remotely 4:12
repeat 42:13,14
46:10
rephrase 7:5
reported 34:20
reporter 1:14 4:7
5:1,16 42:8,12,17
43:19 44:23 48:15
49:7 52:16 55:11
56:14,22
Reporters 1:22
reporting 1:22 4:11
4:21
represent 6:2
reproduction 56:19
request 7:13
research 17:13
18:15
reserved 4:4
respective 9:5
response 6:12
responses 25:15
restate 52:1
restitution 35:2
result 41:10
review 44:19 46:13
46:19
reviewed 46:23
47:2
reviewing 44:15
46:16 47:3
revolver 23:7 24:14
41:11
rid 15:24 16:1
rifle 12:18,25 13:24
14:1,2,25 15:7,16
15:23 16:11,15

23:3 25:6 27:6
28:15,16 29:23
49:25 50:14,25
51:6,14,18 52:4,9
53:7,8,11,14,17
54:4,15
rifles 16:22 17:5
22:1 24:25
right 10:23 13:10
17:25 18:19 19:14
21:17 23:2 26:22
32:7,25 34:7
35:10 38:20 41:4
43:11,22 44:2,7
45:16 48:1 49:23
50:8 51:13,17
52:11 53:23
rights 30:11 35:14
rise 39:13
River 39:2
Road 8:10 9:13
roughly 9:7
RPS 11:19,19,20
rule 17:15
run 11:22
rusted 28:6

**S**

S 3:7
sat 35:15
Saturdays 28:19
saying 35:17 37:25
says 33:1 53:3
schedule 28:18
school 11:25 12:1,5
12:7,9
schooling 12:4
scroll 52:20
sealing 4:2
search 21:16
season 28:8,12,16
28:19 31:9
second 16:9 18:6
30:4,11 51:10
52:9
see 43:5,8,22 44:1
44:6 52:22,24,25
53:2,6
sell 16:4
selling 23:22,25
semester 12:6,7
Senate 31:20
sentence 20:11
separated 34:2,4
September 31:20
served 34:23

Appx245

**BRYAN DAVID RANGE**

service 12:13 30:15
Services 11:21
session 6:10
seven-millimeter
15:17,18
shatters 24:19
shocked 17:15
shooting 29:13,16
29:20 54:4
shop 11:5,7 13:13
16:3
short 23:7
shortly 50:2
shot 28:20,22 29:10
53:22
shotgun 13:3,24
14:17,20,21 15:3
15:8 24:24 49:24
shove 40:1
show 37:13
shrug 6:12
sign 44:19 46:14
47:10
signed 32:21 33:11
47:3
signing 4:2 44:11
44:13,14
single-shot 15:5
Sir 11:24
situation 50:23
six 28:13 45:7
sold 16:3 22:25
solely 4:24
solo 26:7 27:10
somebody 23:23
24:1,14,15 53:12
53:20 54:4
son 26:12,13,14,25
sorry 5:8 16:9,19
17:4 18:20,22
26:12 28:24 36:2
37:19 42:8,17
44:23 49:7 52:17
sort 20:24 33:22
47:21
sound 32:7
speak 6:19,20
33:21
speaking 42:23
specific 30:7
speculation 22:5
split 27:1
Sportsman's 25:3
spread 26:23
stamp 32:18,22
stamps 20:16,17

32:19
stand 11:20
start 6:23 32:12,12
36:15
started 37:15
state 20:16 21:13
25:9 35:16 38:10
38:23,25
statement 34:11,17
38:6,6,11,18
44:11 47:5
States 1:1,7
stating 5:3 49:17
stay 52:24
stenographic 56:6
stepfather 43:14
steps 21:8,17
stipulations 5:17
store 13:15,17
18:23
Street 1:23 2:4,7,12
stuff 18:23,25,25
19:18,19 30:9,12
subsequent 50:13
successful 31:7
Suite 1:23 2:8,13
Summit 1:22 52:17
summons 38:16
Sunday 31:1,4,8
supervision 56:21
support 30:21
supported 31:11
sure 6:7 12:25 14:4
14:15,16 15:25
20:18 22:13 23:24
24:1 25:5 26:17
32:19 33:10,16
34:3 35:4 41:24
42:4 45:6 47:16
50:18 51:20 52:12
52:14 54:7
Susquehanna 39:2
swearing 4:21
Swede 2:4
sworn 5:14
system 22:14

T

T 3:7
tackle 37:15
take 7:10,11,15
21:8,17 40:13,19
40:22
taken 1:12 56:6
talk 32:4 43:12
talking 21:5 29:20

29:21
Technician 2:17
42:22 43:6 45:10
45:18,23 46:3,7
49:14 55:6
teen 14:23
teenager 14:23
tell 12:16 27:14
29:24 30:23 32:9
ten 9:12,14,18,24
10:3 14:12 27:15
54:2
ten-minute 40:19
40:23
tend 30:8
Teri 10:15,16
terms 21:21
terrible 50:23
testified 5:14
testimony 4:16 6:4
56:3
Thank 54:24,25
55:3
Thanks 54:23
thing 26:7 27:10
28:3 42:7 48:21
things 22:15,17
think 7:8 10:3,20
11:1 12:21 13:3
18:19 20:25 22:19
23:25 24:7 29:14
32:18 33:4,5,20
40:19 42:21,24
43:24 44:4 45:10
45:12 46:17 47:4
48:5,17 50:19
51:20 53:14 54:3
55:14
thinks 52:3
thought 19:21
22:12 34:14 37:11
42:16 43:13 52:2
three 10:7,7,9 26:21
27:24 34:22
ticket 37:12
tickets 39:4
time 4:5,20 9:16
18:5,6,15,18,22
19:24 20:1,24,25
21:3,7 23:8 24:2,3
24:7,16 26:20
28:5,20 29:10,25
32:17 33:14 34:8
35:5 39:24 46:18
47:14 50:2,4,21
51:10,11,14 54:5

54:14 55:4
times 54:3,17
timing 41:6 49:24
told 6:7 38:15
trade 12:7,9
traffic 39:4
trafficking 19:18
transcribed 4:25
transcript 4:24
55:13 56:7
treat 11:5
treated 40:10
trial 4:5
tried 19:11
triggering 47:21
48:2 49:18
Trop 13:13 16:3
true 56:7
try 6:19,20,23,25
19:4,7 42:23
trying 18:9 19:18
18:12 31:3 45:21
46:17 50:23
turn 44:3
turned 17:22 18:1,4
18:5,8 19:3,16
22:25 51:9
turning 9:8,9,10
Twenty 8:14 25:25
twice 18:5 51:10
twins 9:9
two 10:7 16:22 21:2
21:6 24:24 27:22
27:23 28:5,19
37:24 50:5,10,10
50:15 51:1 55:15
two-week 28:19
type 23:15

U

U.S 2:11
U.S.A 55:9
uh-huh 6:13 30:16
31:5
unaware 19:24
understand 6:16
7:2,5,16 8:1 44:21
48:17,19 49:21
50:24
understanding
20:8,10 38:4,17
49:1
understood 9:22,22
30:7 47:19 50:22
50:22
United 1:1,6 31:1

unload 28:2,3
USA-1 3:9 55:20
use 29:22 41:1
Usual 5:16
usually 28:18

V

VANGROSSI 2:3
verbally 4:15
Video 1:11 2:1,17
42:22 43:6 45:10
45:18,23 46:3,7
49:14 55:6
Videographers
1:22
Virginia 2:8
vote 36:14
voting 36:15
vs 1:5

W

wait 6:22,25 19:4
21:22
waited 47:19,20
waive 4:19
waived 4:3
walking 35:17
Walnut 1:23
want 12:16,16
17:24 24:19 33:21
43:22 47:23 48:11
51:2 55:7,12
warden 37:22 39:1
wasn't 10:23 38:25
50:18
way 33:5 41:5
we'll 35:19 43:8
we're 27:22 46:11
we've 26:19 39:17
39:18
weapon-specific
25:9
Wednesday 1:12
weeks 9:11 28:13
50:5,10,10,15
welfare 20:10,18,21
22:24 32:4 33:22
34:8,15,18 44:10
44:12 46:15
went 37:15,19
weren't 17:9 47:13
wife 8:16,25 14:3,5
14:5,6 16:12 17:2
17:4,5 21:23,24
22:6,12 24:17,18
33:16,18 37:16

**BRYAN DAVID RANGE**

40:6,6 50:14 51:6
51:17 52:3
**wife's** 10:8
**WILLIAM** 1:6
**withdrawn** 16:9
21:22
**witness** 3:2 4:10,15
4:22 5:21 22:11
42:10,15 43:4,13
45:2,8,20 46:5
49:4,9 51:22
52:22,25 54:24
**wondered** 17:21
**woods** 26:20 27:1
**wooohooo** 53:3
**words** 38:13
**work** 11:5,9 28:17
45:25
**worked** 24:21 33:6
**working** 32:17
**works** 43:25 45:22
**worry** 24:22
**wouldn't** 33:2
**wrote** 37:12
**www.summitrep...**
1:25

---
**X**
---
**X** 3:1,7

---
**Y**
---
**yards** 26:21
**yeah** 5:20 9:8 15:17
17:2,21 25:17
26:4,10,10 27:11
28:24 30:2,2,11
31:3 32:8 35:7
43:2 45:2,5 46:8
52:24 54:1
**year** 9:24 10:2 12:2
14:8 21:2,4,6 24:4
37:17 50:4,9,17
50:18,20 51:1,7,8
55:5
**years** 8:14 9:12,14
9:18,24 10:3
11:13,23 14:10,12
14:14 25:25 26:15
27:15,22,23 29:6
29:7 30:1 34:22
36:16 39:11,21
40:10 47:9,18
54:2
**York** 39:3,3
**young** 14:23 24:20

---
**Z**
---
**Zachary** 9:4,10
**zip** 8:11

---
**0**
---
**06** 15:9 50:6
**08** 50:6
**08037** 1:24

---
**1**
---
**1** 55:10
**10** 53:5
**10:01** 1:13
**107** 2:8
**11** 18:7
**11:05** 40:24
**11:29** 55:18
**12** 27:15
**12/10/11** 3:9 52:18
**1250** 2:13
**13** 11:13 27:15
**15** 39:21
**1500** 1:23
**1610** 1:23
**17022** 8:12
**18th** 31:20
**19102** 1:23
**19106** 2:13
**19401** 2:4
**1995** 32:6 44:9,20
**1998** 18:8 51:10

---
**2**
---
**2,458** 32:25
**20** 14:14 40:10
**20-cv-03488** 1:8
**20-some-year-old**
46:18
**200** 38:2
**2006** 15:12 41:8
49:24 52:10,10
**2008** 24:6 41:8,9
**2010** 18:7 19:11,25
20:24 51:11,15
52:11
**2011** 19:12 20:1,24
37:1 47:14 51:11
52:11 53:5
**2012** 47:14
**2013** 15:24,25
47:16
**2019** 31:20
**2020** 1:12 27:22
47:20 48:3
**215** 1:24 2:14
**22** 8:14 23:16

**22314** 2:8
**25** 9:8
**279-4200** 2:5
**28** 9:9
**29** 9:10

---
**3**
---
**30** 1:12 9:10
**319** 2:4

---
**4**
---
**424** 1:24
**459** 8:10 9:13
**477-8648** 1:24

---
**5**
---
**5** 3:5
**50** 25:25 47:9
**500** 26:21
**52** 3:9
**567-3315** 1:24

---
**6**
---
**609** 1:24
**610** 2:5
**615** 2:12

---
**7**
---
**703** 2:9
**7mm-08** 15:18

---
**8**
---
**800** 1:24
**835-9085** 2:9
**861-8200** 2:14
**89** 12:3

---
**9**
---
**916** 2:7
**93** 10:20 11:1,1
**94** 10:20
**95** 10:20 36:22
**98** 18:6 51:15,18
52:4
**985-2400** 1:24

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Appx247