No. 21-2835

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

BRYAN DAVID RANGE,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

BRIEF FOR APPELLEES

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

JENNIFER ARBITTIER WILLIAMS
*United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
KEVIN B. SOTER
*Attorneys, Appellate Staff
Civil Division, Room 7222
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-3602*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUE...............................................................................1

STATEMENT OF RELATED CASES ....................................................................1

STATEMENT OF THE CASE ................................................................................1

     A.    Statutory Background.............................................................................1

     B.    Factual Background and Prior Proceedings ...........................................3

SUMMARY OF ARGUMENT ...............................................................................7

STANDARD OF REVIEW .....................................................................................9

ARGUMENT ........................................................................................................10

The district court correctly concluded that Range's constitutional challenge
    to Section 922(g)(1) lacks merit. ...................................................................10

     A.    Application of Section 922(g)(1) to Range does not burden
            conduct protected by the Second Amendment...................................11

           1.    Criminals convicted of serious offenses may be
                 constitutionally disarmed. ........................................................11

           2.    Range committed a serious offense when he defrauded
                 the government of thousands of dollars....................................15

     B.    If the Court concludes that means-ends scrutiny is necessary, it
            should remand to the district court or, alternatively, affirm the
            district court's judgment....................................................................26

CONCLUSION .....................................................................................................30

COMBINED CERTIFICATIONS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Berda v. CBS Inc.*,
 881 F.2d 20 (3d Cir. 1989) ...................................................................27

*Binderup v. Attorney General*,
 836 F.3d 336 (3d Cir. 2016) ........ 5, 6, 7, 10, 12, 13, 14, 15, 18, 19, 20, 24, 28, 29

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) .................................................... 7, 11, 12, 16, 26

*Folajtar v. Attorney General*,
 980 F.3d 897 (3d Cir. 2020),
 *cert. denied*, 141 S. Ct. 2511 (2021) ................. 7, 9, 12, 14, 15, 16, 21, 24, 27, 29

*Frank v. Gaos*,
 139 S. Ct. 1041 (2019) ........................................................................27

*Hamilton v. Pallozzi*,
 848 F.3d 614 (4th Cir. 2017) ...................................................... 16, 17

*Hatfield v. Barr*,
 925 F.3d 950 (7th Cir. 2019) ..............................................................16

*Holloway v. Attorney General*,
 948 F.3d 164 (3d Cir. 2020),
 *cert. denied*, 141 S. Ct. 2511 (2021) ... 5, 6, 7, 9, 10, 14, 18, 19, 20, 22, 23, 25, 26

*Jordan v. De George*,
 341 U.S. 223 (1951) ...........................................................................15

*Logan v. United States*,
 552 U.S. 23 (2007) ...............................................................................3

*McDonald v. City of Chicago*,
 561 U.S. 742 (2010) ...........................................................................11

*Medina v. Whitaker*,
  913 F.3d 152 (D.C. Cir. 2019)...............................................................17

*O'Hanlon v. Uber Techs., Inc.*,
  990 F.3d 757 (3d Cir. 2021) ................................................................27

*Plains All Am. Pipeline L.P. v. Cook,*
  866 F.3d 534 (3d Cir. 2017) ................................................................27

*Richardson v. Ramirez*,
  418 U.S. 24 (1974) ..............................................................................12

*Singleton v. Wulff*,
  428 U.S. 106 (1976) .............................................................................27

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ................................................................................12

*Tennessee v. Garner*,
  471 U.S. 1 (1985) ................................................................................22

*United States v. Bean*,
  537 U.S. 71 (2002) ..............................................................................14

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) ....................................................... 10, 27, 28

*United States v. Vongxay*,
  594 F.3d 1111 (9th Cir. 2010) .............................................................12

## Statutes:

18 U.S.C. § 921(a)(20).............................................................................2

18 U.S.C. § 921(a)(20)(A) .......................................................................2

18 U.S.C. § 921(a)(20)(B) ......................................................... 1, 2, 10, 11

18 U.S.C. § 922(g)(1).......................................................... 1, 2, 7, 10, 11

18 U.S.C. § 925(c) ................................................................... 2-3

18 U.S.C. § 1001 .......................................................................17

18 U.S.C. § 3559 ......................................................................23

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1865(b)(5)..............................................................12

2018 Pa. Legis. Serv. Act 2018-125 .........................................20

Colo. Rev. Stat. § 26-2-305(1)(a) ........................................ 25-26

Conn. Gen. Stat. § 53a-35a(8) ..................................................23

Del. Code Ann. tit. 11, § 4205(b)(5)..........................................23

Fla. Stat. § 775.081 ..................................................................23

Fla. Stat. § 775.082 ..................................................................23

Ga. Code Ann. § 49-4-15(a) ......................................................18

Ga. Code Ann. § 49-4-15(e) ......................................................18

Haw. Rev. Stat. § 706-660 ........................................................23

730 Ill. Comp. Stat. § 5/5-4.5-35 ..............................................23

Iowa Code Ann. § 902.9 ...........................................................23

Ky. Rev. Stat. Ann. § 532.020 ..................................................23

Ky. Rev. Stat. Ann. § 532.060 ..................................................23

Mass. Gen. Laws ch. 18 § 5B ....................................................18

Mass. Gen. Laws ch. 18 § 5K ..................................................................18

Md. Code Ann., Crim Law § 8-504(c) .....................................................18

Md. Code Ann., Crim Law § 9-101(b) .....................................................18

N.J. Stat. Ann. § 2C:20-2(b)(2)(a) ...........................................................18

N.J. Stat. Ann. § 2C:20-4 ........................................................................18

N.J. Stat. Ann. § 2C:43-6(a)(3) ...............................................................18

Or. Rev. Stat. Ann. § 161.705(1)(b) .........................................................18

Or. Rev. Stat. Ann. § 411.630 ..................................................................18

Or. Rev. Stat. Ann. § 411.990(2) ..............................................................18

18 Pa. Cons. Stat. § 106 ...........................................................................22

18 Pa. Cons. Stat. § 106(b) .........................................................................4

18 Pa. Cons. Stat. § 106(b)(4) ..................................................................20

18 Pa. Cons. Stat. § 1104 .............................................................. 4, 19, 22

18 Pa. Cons. Stat. § 1105 ................................................................... 4, 20

62 Pa. Cons. Stat. § 481 (1995) ......................................................... 3, 19

62 Pa. Cons. Stat. § 481(a)............................................................... 3-4, 16

62 Pa. Cons. Stat. § 481(b) (1995)..............................................................4

62 Pa. Cons. Stat. § 481(b) .......................................................................20

62 Pa. Cons. Stat. § 1104 (1995) .............................................................19

S.C. Code Ann. § 16-1-90(F)....................................................................23

30 Geo. II, c. 24 (1757) ........................................................................15

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ......................................................................1

**Legislative Materials:**

H.R. Rep. No. 104-183 (1995).................................................................3

S. Rep. No. 102-353 (1992) ....................................................................3

**Other Authorities:**

Francis Bacon, *Preparation for the Union of Laws of England and Scotland*, *in* 2
     *The Works of Francis Bacon* (Basil Montagu ed., Cary & Hart 1844)................15

Matthew R. Durose, et al., Bureau of Justice Statistics, Office of Justice Programs,
     U.S. Dep't of Justice, *Supplemental Tables: Most serious commitment offense
     and types of post-release arrest charges of prisoners released in 30 states in
     2005* (Dec. 2016), https://bjs.ojp.gov/content/pub/pdf/rprts05p0510_st.pdf.......29

1 Wayne R. LaFave, *Substantive Criminal Law* (3d ed.) .......................................15

2 *Wharton's Criminal Law* (16th ed.).....................................................................15

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331.  The district court

entered final judgment on August 31, 2021, Appx003, and plaintiff timely

appealed on September 29, 2021.  *See* Fed. R. App. P. 4(a)(1)(B); Appx001.  This

Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Federal law prohibits the possession of firearms by individuals convicted of

a state law misdemeanor punishable by more than two years' imprisonment.  *See*

18 U.S.C. §§ 921(a)(20)(B), 922(g)(1).  Plaintiff Bryan Range is subject to that

prohibition because he was convicted of defrauding the government of thousands

of dollars' worth of welfare assistance, which was a Pennsylvania first-degree

misdemeanor punishable by up to five years' imprisonment.

The issue presented is whether the district court correctly rejected Range's

as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(1).

## STATEMENT OF RELATED CASES

 This case has not previously been before any court other than the district

court, and counsel for appellees are not aware of any pending related cases.

## STATEMENT OF THE CASE

### A.    Statutory Background

Federal law has long restricted the possession of firearms by certain

categories of individuals.  One such disqualification, 18 U.S.C. § 922(g)(1),

generally prohibits the possession of firearms by any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," the traditional definition of a felony.

For purposes of Section 922(g)(1), "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include" a "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). Individuals convicted of misdemeanors punishable by more than two years, however, remain barred from possessing firearms. *See id.* §§ 921(a)(20)(B), 922(g)(1).

Section 922(g)(1) further excludes "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20).[1] Congress previously allowed an individual to obtain relief from Section 922(g)(1)'s firearms disability by demonstrating to the Bureau of Alcohol, Tobacco, Firearms and Explosives that "the circumstances regarding the disability, and the [individual's] record and reputation, are such that the [individual] will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary

---

[1] Congress also excluded any "Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A).

to the public interest." *Id.* § 925(c).  Since 1992, however, Congress has

suspended that program by enacting annual provisions barring the use of

appropriated funds to process applications for relief.  *Logan v. United States*, 552

U.S. 23, 28 n.1 (2007).  The Senate Appropriations Committee explained that

determining whether applicants were "a danger to public safety" was "a very

difficult and subjective task" that required "approximately 40 man-years . . .

annually" and that "could have devastating consequences for innocent citizens if

the wrong decision is made."  S. Rep. No. 102-353, at 19-20 (1992).  A later House

Report added that "too many . . . felons whose gun ownership rights were restored

went on to commit violent crimes with firearms."  H.R. Rep. No. 104-183, at 15

(1995).

## B.    Factual Background and Prior Proceedings

**1.**  Plaintiff Bryan Range pled guilty in 1995 to making a false statement to

fraudulently obtain $2,458 in public assistance, in violation of 62 Pa. Cons. Stat.

§ 481 (1995).  Appx176 ¶ 1; Appx048-050.  Specifically, Range willfully failed to

disclose his income on a food stamps application that he signed along with his

then-spouse, and thereby obtained more than $2,000 of public assistance from the

government to which he was not entitled.  *See* Appx045 ¶ 5 (Range's declaration

regarding facts underlying conviction); 62 Pa. Cons. Stat. § 481(a) (proscribing,

3

among other things, securing welfare "by wilfully failing to disclose a material fact regarding eligibility").

At the time, Range's offense was a "misdemeanor of the first degree," 62 Pa. Cons. Stat. § 481(b) (1995), which is the worst offense in its class and is by definition punishable by up to five years' imprisonment. *See* 18 Pa. Cons. Stat. §§ 106(b), 1104 (first degree misdemeanor punishable by five years, second degree by two years, and third degree by one year); *see also id.* § 1105 (classifying less serious "summary offenses" punishable by a maximum term of ninety days' imprisonment). Range was sentenced to three years' probation and was ordered to pay costs and a fine, in addition to $2,458 in restitution. Appx177 ¶ 3.

**2.** Range's conviction barred him from possessing a firearm under Section 922(g)(1). Since the conviction, Range has twice attempted to purchase firearms, and both times he was prevented from doing so by the instant background check system. Appx203-204 (Range Dep. 18:4-19:21). Despite these two background check denials, Range has possessed several firearms since the conviction both before and after the background check denials. Appx198-200, 208 (Range Dep. 13:23-15:19, 23:5-9).

 Range claims that he initially believed the background check denials were mistakes but that he did not investigate further at the time. Appx203-204 (Range Dep. 18:4-19:21). Range asserts that he conducted internet research years later and

that, upon realizing that the background check denials had been properly premised

on his welfare fraud conviction, he sold the only firearm then in his possession.

Appx200-203 (Range Dep. 15:22-16:6, 17:8-23, 18:4-7) (testifying that the

background check denials were in 1998 and approximately 2010 or 2011, and that

in 2013 Range sold the firearm that was then in his possession).

**3.** In 2020, Range filed suit in the United States District Court for the

Eastern District of Pennsylvania, claiming that Section 922(g)(1) is

unconstitutional as applied to him.  Appx019-029.  Following discovery, the

parties filed cross-motions for summary judgment.  *See* Appx016-017.  The district

court granted the government's motion for summary judgment and denied Range's

motion.  Appx004-014.

The district court rejected Range's challenge based on its application of this

Court's two-step framework for as-applied challenges to the constitutionality of

Section 922(g)(1).  At the first step of that framework, a court determines whether

the challenger has forfeited Second Amendment protections by committing a

"serious criminal offense, violent or nonviolent."  *Binderup v. Attorney General*,

836 F.3d 336, 348 (3d Cir. 2016) (en banc) (Ambro, J.); *see also Holloway v.*

*Attorney General*, 948 F.3d 164, 171 (3d Cir. 2020) (summarizing the "*Binderup*

holdings agreed to by a majority of judges"), *cert. denied*, 141 S. Ct. 2511 (2021).

If he has, the inquiry is complete and the challenge fails.  If the challenger is able

to show that he has not committed a serious offense, the court then considers

whether the regulation survives intermediate scrutiny as applied. *Binderup*, 836

F.3d at 346-47; *Holloway*, 948 F.3d at 171.

The district court held that Range's challenge fails at the first step because,

by defrauding the government of welfare funds, Range had committed a serious

criminal offense. The district court explained that, given Congress's determination

that "the conduct in question was sufficiently serious to justify disarmament,"

Range's challenge could succeed only if he could "make a 'strong showing that . . .

he has not committed a serious crime.'" Appx010, 014 (alteration in original)

(quoting *Holloway*, 948 F.3d at 172). The court held that Range had failed to do

so, emphasizing that jurisdictions across the United States have not only

unanimously criminalized the type of fraudulent conduct in which Range engaged,

but have also reached a "consensus" that the crime is a serious one; indeed, Range

conceded that at least 39 jurisdictions would label his crime a felony. *See*

Appx010. As the district court explained, *see* Appx012-013, this Court has

repeatedly indicated that a challenge fails at step one where, as here, the offense

possesses any of a number of potential indicators of seriousness—including a

"cross-jurisdictional consensus" that the offense is serious. *See Binderup*, 836

F.3d at 353 ("Were the Challengers unable to show that so many states consider

their crimes to be non-serious, it would be difficult for them to carry their burden

6

at step one."); *see also Holloway*, 948 F.3d at 173-76; *Folajtar v. Attorney General*, 980 F.3d 897, 903 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2511 (2021). The district court therefore upheld the constitutionality of Section 922(g)(1) as applied to Range, without proceeding to means-ends scrutiny.  Appx014 & n.4.

## SUMMARY OF ARGUMENT

Congress has, with limited exceptions that do not apply here, restricted the possession of firearms by persons "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Plaintiff Bryan Range is subject to that prohibition because he was convicted of a welfare fraud offense that the Pennsylvania legislature made punishable by imprisonment of up to five years.

Application of Section 922(g)(1) to Range does not implicate the Second Amendment's protection of "the right of law-abiding, responsible citizens to use arms."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).  This Court has held that Second Amendment rights are forfeited by those who commit a "serious criminal offense."  *Binderup v. Attorney General*, 836 F.3d 336, 348 (3d Cir. 2016) (en banc).  Range did precisely that when he "willfully deprived the Government of its property."  *Folajtar v. Attorney General*, 980 F.3d 897, 910 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2511 (2021).

Together, several considerations demonstrate the seriousness of Range's conviction. Fraud offenses similar to Range's have been recognized as serious for centuries. Unsurprisingly, numerous courts addressing challenges involving similar convictions, including this Court in *Folajtar*, have upheld the application of Section 922(g)(1) to individuals convicted of such offenses. And the seriousness of Range's particular offense is reflected across jurisdictions in the United States. Fraudulently obtaining government assistance is a crime under the law of every state and the District of Columbia. Moreover, the vast majority of jurisdictions— 44, by our count—impose a substantial maximum punishment of more than one year of imprisonment for this universally criminalized conduct. Pennsylvania, the state where Range was convicted, is in line with this consensus: at the time of Range's conduct, his offense carried a five-year maximum penalty (since increased to seven years), reflecting the legislature's determination of the gravity of defrauding the government.

Range fails to grapple with these indications of the seriousness of his offense. Range claims that Section 922(g)(1) cannot constitutionally be applied to him despite the numerous parallels between his offense and the crime at issue in *Folajtar*, where this Court rejected a Second Amendment challenge brought by an offender who had similarly defrauded the government, whose crime was subject to a lower maximum penalty than Range's (three years' imprisonment), and who was,

like Range, sentenced to three years' probation, a fine, costs, and an order requiring repayment. *See Folajtar*, 980 F.3d at 899. Range urges this Court to brush aside each of those similarities and instead focus narrowly on the fact that Range's offense was labeled a "misdemeanor." But the same was true of the offense in *Holloway*, and this Court rejected the challenge there. *Holloway v. Attorney General*, 948 F.3d 164, 173-77 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2511 (2021). As *Holloway* explained, the Pennsylvania legislature demonstrated its views about the seriousness of the offense by setting the same five-year maximum penalty that applied to Range's offense—which, as a result of Pennsylvania's unique criminal code, happens to be denominated a "first-degree misdemeanor," the same label that applies to offenses including involuntary manslaughter, terrorism, and assaulting a child. *See id.* at 175.

The district court correctly concluded that the Second Amendment does not require upending Congress's judgment that those convicted of offenses like Range's should be disarmed. This Court should affirm.

## STANDARD OF REVIEW

This Court reviews the district court's order granting summary judgment de novo. *Holloway v. Attorney General*, 948 F.3d 164, 168 n.1 (3d Cir. 2020) (describing "plenary" review in this posture), *cert. denied*, 141 S. Ct. 2511 (2021).

# ARGUMENT

## THE DISTRICT COURT CORRECTLY CONCLUDED THAT RANGE'S CONSTITUTIONAL CHALLENGE TO SECTION 922(G)(1) LACKS MERIT.

It is undisputed that, because Range's welfare fraud offense was punishable by up to five years' imprisonment at the time of his conviction, the conviction triggers Section 922(g)(1)'s bar. *See* 18 U.S.C. §§ 921(a)(20)(B), 922(g)(1). Range argues, however, that his offense was not sufficiently serious and that application of the statute in this case would violate the Second Amendment.

This Court has adopted a two-step approach to analyzing such Second Amendment challenges. *See Binderup v. Attorney General*, 836 F.3d 336, 346-47 (3d Cir. 2016) (en banc) (Ambro, J.) (citing *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)); *Holloway*, 948 F.3d at 171. At the first step, a court examines whether "the law or regulation at issue burdens conduct protected by the Second Amendment." *Binderup*, 836 F.3d at 356. Next, if the challenged law does burden such conduct, the inquiry proceeds to whether "the regulation at issue survives intermediate scrutiny" by examining whether there exists a "substantial fit" between disarmament and an "important government interest." *Id.*

## A.    Application of Section 922(g)(1) to Range does not burden conduct protected by the Second Amendment.

### 1.    Criminals convicted of serious offenses may be constitutionally disarmed.

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," but, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 592, 626 (2008). The Supreme Court in *Heller* identified the right as belonging to "law-abiding, responsible citizens," *id.* at 635, and consistent with that understanding, it stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *id.* at 626. The Court described these "permissible" measures as falling within "exceptions" to the protected right to bear arms. *Id.* at 635. Two years later, a plurality of the Court "repeat[ed]" its "assurances" that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

Section 922(g)(1) bars firearm possession by anyone convicted of a felony, or a misdemeanor under state law that is punishable by more than two years' imprisonment. *See* 18 U.S.C. §§ 921(a)(20)(B), 922(g)(1). Since *Heller*, this Court, "along with every court to consider the issue, [has] rejected challenges that

11

Section 922(g)(1) on its face violates the Second Amendment." *Folajtar v. Attorney General*, 980 F.3d 897, 901 (3d Cir. 2020) (collecting cases), *cert. denied*, 141 S. Ct. 2511 (2021). This Court does, however, "permit Second Amendment challenges to § 922(g)(1) as applied to individuals." *Id.*

In *Binderup*, this Court held that Section 922(g)(1)'s exclusion of "felons and felon-equivalents" generally "comport[s] with the Second Amendment because [it] affect[s] individuals . . . unprotected by the right to keep and bear arms." 836 F.3d at 343, 348 (Ambro, J.). The Court explained that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry." *See id.* at 348 (quotation marks omitted) (collecting academic literature). The Second Amendment thus incorporates a common-law tradition that permits restrictions directed at citizens who are not "law-abiding" and "responsible," *Heller*, 554 U.S. at 635, and it "'does not preclude laws disarming . . . unvirtuous citizens (*i.e.*, criminals),'" *Binderup*, 836 F.3d at 348 (alteration in original) (quoting *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010)). In this respect, the right to keep and bear arms is analogous to other civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, *see Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), the right to serve on a jury, 28 U.S.C. § 1865(b)(5), and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998).

This Court reasoned, however, that some applications of Section 922(g)(1) can be challenged on the ground that the disqualifying offense is not "serious" enough to support forfeiture of the right to keep and bear arms. *Binderup*, 836 F.3d at 350-51. Any such challenge is subject to the "presum[ption]" that Congress's judgment to include the offense within the scope of Section 922(g)(1) is "correct," so the challenger must identify a "strong reason" to conclude otherwise. *Id.* at 351. In evaluating seriousness, this Court has not identified "fixed criteria." *Id.* Judge Ambro's *Binderup* opinion articulated a non-exhaustive list of relevant "considerations," *id.* at 356, including whether the legislature labeled the challenger's offense a felony or a misdemeanor, whether the offense included the use or attempted use of force as an element, the actual sentence imposed, and whether a cross-jurisdictional consensus exists regarding the seriousness of the offense, *id.* at 351-52.

Neither "the passage of time" nor evidence that the challenger has been "rehabilitat[ed]" since the conviction is relevant at this step of the analysis, because such individualized risk assessments "tell[] us nothing about whether [the challenger] was convicted of a serious crime." *Binderup*, 836 F.3d at 349-50; *see also id.* at 350 ("[T]he Supreme Court and our Court have recognized in the Second Amendment context that the Judicial Branch is not 'institutionally equipped' to conduct 'a neutral, wide-ranging investigation' into post-conviction

assertions of rehabilitation or to predict whether particular offenders are likely to commit violent crimes in the future." (quoting *United States v. Bean*, 537 U.S. 71, 77 (2002))).

Three of this Court's published decisions have applied this framework to determine whether a crime is serious enough to justify disarmament. In *Binderup*, this Court sustained two challenges to Section 922(g)(1) where the underlying offenses were corrupting a minor and failing to have a license to carry a handgun, which satisfied none of the listed considerations that could have indicated seriousness. 836 F.3d at 351-53. In *Holloway,* the Court rejected a challenge to Section 922(g)(1) where the underlying conviction was for a repeated driving under the influence offense. The Court emphasized that the "various factors" discussed in *Binderup* were not exclusive, and that this DUI offense was serious for two primary reasons: the "potential for danger and risk of harm to self and others," and the Pennsylvania legislature's decision to specify a maximum penalty of up to five years' imprisonment plus a mandatory minimum jail term. 948 F.3d at 172-77. And in *Folajtar*, the Court rejected a challenge to Section 922(g)(1) where the underlying conviction was for federal tax fraud, an offense that Congress had classified as a felony punishable by up to three years' imprisonment and for which conviction turned on having "willfully deprived the Government of its property." 980 F.3d at 899, 910.

14

### 2.    Range committed a serious offense when he defrauded the government of thousands of dollars.

**a.** There is no "strong reason" to displace Congress's judgment that Range's crime of conviction disqualified him from possessing weapons. *Binderup*, 836 F.3d at 351.

Range was convicted of defrauding the government and thereby obtaining thousands of dollars to which he was not entitled, abusing a program whose funds are reserved for the neediest individuals. Fraud offenses similar to Range's have been recognized as serious for centuries. As this Court explained in addressing the fraud offense at issue in *Folajtar*, "willfully depriv[ing] the Government of its property" is "no less serious than larceny, one of the nine common law felonies, or forgery, one of the first felonies in the United States." 980 F.3d at 910; *see also, e.g.*, 1 Wayne R. LaFave, *Substantive Criminal Law* § 2.1(b) (3d ed.) (listing larceny as among the common law felonies that had become well established "by the 1600's"); *Folajtar*, 980 F.3d at 904 (listing repeated forgery as among the felonies identified by Francis Bacon in the seventeenth century (citing Francis Bacon, *Preparation for the Union of Laws of England and Scotland*, *in* 2 *The Works of Francis Bacon* 163-64 (Basil Montagu ed., Cary & Hart 1844)); 2 *Wharton's Criminal Law* § 28:2 (16th ed.) (explaining that the statutory crime of obtaining property by false pretenses was codified in England in 1757 (citing 30 Geo. II, c. 24 (1757)); *cf. Jordan v. De George*, 341 U.S. 223, 229 (1951)

15

("American courts have, without exception, included [fraud] within the scope of moral turpitude."). In defrauding the government of public assistance funds, Range thus committed a "significant offense[] reflecting disrespect for the law," *Hamilton v. Pallozzi*, 848 F.3d 614, 627 (4th Cir. 2017) (describing "[t]heft, fraud, and forgery"). That conduct is incompatible with his claims under the Second Amendment, which extends its protections only to those who are "law-abiding" and "responsible," *Heller*, 554 U.S. at 635.

In light of fraud's historical pedigree as a serious offense, it is unsurprising that individuals convicted of crimes similar to Range's have uniformly failed in their attempts to assert that Section 922(g)(1) cannot constitutionally be applied to them. This Court determined in *Folajtar*, for example, that a federal felony fraud offense punishable by up to three years' imprisonment—that is, substantially less than the maximum punishment Pennsylvania specified for Range's offense—was "serious," emphasizing the gravity of "willfully depriv[ing] the Government of its property." 980 F.3d at 910; *accord* 62 Pa. Cons. Stat. § 481(a) (Range's offense of conviction, which proscribes, among other things, securing welfare "by wilfully failing to disclose a material fact regarding eligibility"). Other courts of appeals have reached similar conclusions regarding the permissibility of disarming fraud offenders who committed offenses that were also strikingly similar to Range's. *See, e.g.*, *Hatfield v. Barr*, 925 F.3d 950, 951 (7th Cir. 2019) (upholding

application of Section 922(g)(1) to an individual who had been convicted after presenting a false representation of unemployment to the federal government and thereby wrongfully obtaining less than $2,000 of Railroad Retirement Board Benefits, for which he was "sentenced to three years' probation rather than imprisonment"); *see also Medina v. Whitaker*, 913 F.3d 152, 154, 160-61 (D.C. Cir. 2019); *Hamilton*, 848 F.3d at 618, 627.

The longstanding historical recognition of the seriousness of the type of crime committed by Range is reflected across United States jurisdictions today. Range does not dispute that fraudulently obtaining government funds is a crime under the law of every state, the District of Columbia, and federal law. *See* Br. 23-25 nn.6-12 (citing criminal provisions in the law of each state plus the District of Columbia); *see also, e.g.*, 18 U.S.C. § 1001. And Range further recognizes that at least 39 jurisdictions would punish his conduct as a felony. *See* Br. 22 & n.5; Appx010 n.2; *see also* Br. 23 n.6, 24 n.9 (collecting citations for these 39 jurisdictions). In fact, Range understates the magnitude of the consensus: 44 states would prescribe a maximum sentence of more than one year in prison for Range's conduct, satisfying the traditional threshold for a felony, with 42 of them labeling the offense a felony.[2]

---

[2] The difference between Range's analysis and the government's reflects Range's account of the laws of five states: Georgia, Maryland, Massachusetts,

Similarly serious treatment across so many jurisdictions—whether limited to the 39 jurisdictions that Range counts or properly extended to the 44 jurisdictions described above—plainly constitutes the sort of cross-jurisdictional consensus this Court relies upon in assessing seriousness.  As the district court explained, a "consensus" is "something short of total unanimity," and, "as the challenger, the burden rests with Mr. Range to make a 'strong showing that . . . he has not committed a serious crime.'"  Appx010 (alteration in original) (quoting *Holloway*, 948 F.3d at 172).  Plus, this Court looks not only to how severely states punish an offense, but also to whether, as here, "states unanimously agree" that conduct is "subject to punishment" under the criminal laws in the first place.  *Holloway*, 948 F.3d at 177; *cf. Binderup*, 836 F.3d at 352 (emphasizing that one of the *Binderup*

---

New Jersey, and Oregon.  As to Georgia and Oregon, Range assumes, without apparent basis, that he would have benefited from statutory discretion to either reduce a felony offense to a misdemeanor or to divert the charge.  *See* Br. 25 & nn.11-12; Or. Rev. Stat. Ann. §§ 411.630, 411.990(2), 161.705(1)(b); Ga. Code Ann. § 49-4-15(a), (e).  As to Massachusetts, Range fails to cite a felony statute that appears to correspond to Range's offense.  *Compare* Mass. Gen. Laws ch. 18, § 5K (felony), *with* Mass. Gen. Laws ch. 18, § 5B (misdemeanor provision cited by Range).  Finally, Maryland and New Jersey do not use the felony label for Range's offense, but they prescribe maximum sentences of ten and five years' incarceration, respectively.  *See* Md. Code Ann., Crim Law §§ 8-504(c), 9-101(b); N.J. Stat. Ann. §§ 2C:20-4, 2C:20-2(b)(2)(a), 2C:43-6(a)(3).  Such significant maximum punishment provides a meaningful indicator of seriousness under this Court's caselaw.  *See Binderup*, 836 F.3d at 352-53 (taking into account how many states "prescribe a maximum sentence" that "meet[s] the threshold of a traditional felony"); *Holloway*, 948 F.3d at 177 (assessing whether states impose penalties "that subject an offender to disarmament under § 922(g)(1)").

plaintiffs engaged in conduct that "would have been legal in many states" and that the other plaintiff's offense of carrying a weapon without a license stood in contrast to those states that "do not even require a specific credential to carry a concealed weapon"). This Court has already indicated that, when a challenger's showing across jurisdictions is as weak as Range's is here, the challenge should fail. *See Binderup*, 836 F.3d at 353 ("Were the Challengers unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one.").

The judgment of the Pennsylvania legislature accords with this longstanding consensus. As this Court has repeatedly emphasized, "'the maximum possible punishment is certainly probative of a misdemeanor's seriousness,'" as it "often reveals how the legislature views an offense." *Holloway*, 948 F.3d at 175 (quoting *Binderup*, 836 F.3d at 352). Here, at the time of Range's offense, the Pennsylvania legislature had set a maximum punishment of five years' imprisonment—that is, a penalty far above both the one-year threshold for a traditional felony and the two-year threshold for application of Section 922(g)(1) to offenses labeled as misdemeanors under state law. *See* 62 Pa. Cons. Stat. §§ 481, 1104 (1995). By establishing this maximum punishment, the Pennsylvania legislature chose to forego classification as a misdemeanor of a lesser degree, or even a "summary offense." *See* 18 Pa. Cons. Stat. § 1104 (first degree misdemeanor punishable by

19

five years, second degree by two years, and third degree by one year); *id.* § 1105 (summary offense punishable by 90 days). Since the time of Range's offense, the Pennsylvania legislature has made its views particularly clear, lowering the threshold for felony welfare fraud to $1,000 so that if Range had committed the same offense today, it would be considered a third-degree felony punishable by up to seven years' imprisonment. *See* 62 Pa. Cons. Stat. § 481(b); 18 Pa. Cons. Stat. § 106(b)(4); 2018 Pa. Legis. Serv. Act 2018-125 (S.B. 6), § 5. Someone convicted under the current statute could plainly be constitutionally disarmed; it would be anomalous to reach a different outcome in Range's case simply because the legislature previously imposed a five-year maximum sentence rather than a seven-year one.

In sum, Range committed an offense that has been deemed serious for centuries, is today a serious offense in the vast majority of states, and has been consistently considered serious by the legislature of the state that enacted the crime Range committed. "Together, these considerations demonstrate" that Range's conviction "constitutes a serious crime, placing him within the class of 'persons historically excluded from Second Amendment protections.'" *Holloway*, 948 F.3d at 177 (quoting *Binderup*, 836 F.3d at 347)). No challenge has previously succeeded where the disqualifying offense contains any similar indicia of

seriousness, and the district court correctly rejected Range's contention that he could carry his burden in these circumstances.

**b.**  Range urges that other factors that also may demonstrate the seriousness of an offense are not present in his case.  But in providing a non-exhaustive list of considerations, this Court set out different types of factors that signify a crime's seriousness.  It did not suggest that a variety of these considerations must be present in a given case.  Range notes, for example, that he was convicted for conduct that did not involve the use or attempted use of force, did not present a potential for danger and risk of harm to self or others, and that he was not incarcerated for the offense.  Br. 21-22.  These features of Range's conviction do not distinguish this case from *Folajtar*, which explained that this Court had already "repudiated three times"—now four including *Folajtar*—a "narrow focus on dangerousness" and violence, and where the challenger, like Range, was sentenced to three years' probation, a fine, costs, and an order requiring repayment of the amount wrongfully obtained from the government.  980 F.3d at 899, 907-10.[3] Moreover, as the Court noted in *Holloway,* "the maximum punishment" for Range's offense "is a more appropriate data point" than "the actual penalty imposed" because "it provides insight into how a state legislature views a crime—

---

[3] Range also contends (Br. 28-29) that his challenge should be assessed solely based on his dangerousness, but he acknowledges that this argument is foreclosed by this Court's precedent.

not how a sentencing judge views an individual." *Holloway*, 948 F.3d at 175 n.12

(explaining that "*Binderup* step one focuses on the offense and not the offender").

Range is similarly wide of the mark in urging (Br. 18-21) that the "most

important" feature of his crime is that the Pennsylvania legislature labeled the

offense a misdemeanor at the time.  The offense at issue in *Holloway* was also a

first-degree misdemeanor under Pennsylvania law, and this Court explained that

the label shed little light on how the Pennsylvania legislature viewed the DUI

offense there.  948 F.3d at 174-76.  While a misdemeanor label can have some

relevance to the analysis of seriousness, "it is not dispositive." *Id.* at 174.  For

good reason: the felony/misdemeanor distinction is "'minor and often arbitrary,'"

"'numerous misdemeanors involve conduct more dangerous than many felonies,'"

and "some states do not use the distinction at all." *Id.* at 174-75 (quoting

*Tennessee v. Garner*, 471 U.S. 1, 14 (1985)).

Moreover, as in *Holloway*, the "misdemeanor" designation for Range's

offense is the result of the preexisting structures of Pennsylvania's sentencing

laws.  Within that state's unique scheme, a crime that the legislature intends to

punish with a maximum of five years' imprisonment necessarily constitutes a

misdemeanor of the first degree.  *See* 18 Pa. Cons. Stat. §§ 106, 1104.  In other

jurisdictions—including under the federal criminal code—offenses punishable by

incarceration of up to five years are labeled felonies.[4]  It is therefore unsurprising that, particularly in Pennsylvania, "the maximum penalty that may be imposed" is especially "reveal[ing]" as to "how the legislature views the offense." *Holloway*, 948 F.3d at 175.

Placing undue weight on the state's decision to use the label "first-degree misdemeanor" rather than "felony" for these crimes, all of which by definition substantially exceed the traditional definition of a felony, would sweep in a surprising set of offenses as potentially non-serious. *Holloway*, 948 F.3d at 175 (explaining that offenses labeled first degree misdemeanors in Pennsylvania, and therefore carrying a five-year maximum penalty, include involuntary manslaughter, terrorism, assaulting a child, abusing a care-dependent person, making terroristic threats, threatening to use weapons of mass destruction, shooting a fire bomb into public transportation, indecent assault by forcible compulsion,

---

[4] *See* 18 U.S.C. § 3559 (specifying five-year maximum for class E felonies); *see also, e.g.*, Conn. Gen. Stat. § 53a-35a(8) (maximum incarceration of five years for class D felonies); Del. Code Ann. tit. 11, § 4205(b)(5) (maximum incarceration of five years for class E felonies); Fla. Stat. §§ 775.081, 775.082 (maximum incarceration of five years for felonies of the third degree); Haw. Rev. Stat. § 706-660 (maximum incarceration of five years for class C felonies); 730 Ill. Comp. Stat. § 5/5-4.5-40 (maximum incarceration of five years for class 3 felonies); Iowa Code Ann. § 902.9 (maximum incarceration of five years for class D felonies); Ky. Rev. Stat. Ann. §§ 532.020, 532.060 (maximum incarceration of five years for class D felonies); S.C. Code Ann. § 16-1-90(F) (maximum incarceration of five years for class F felonies).

concealing the murder of a child, luring a child into a motor vehicle or structure, restraining a person in circumstances exposing the person to risk of serious bodily injury, and stalking).[5]

Range nevertheless insists that *Folajtar* established that "[a]n offense's classification" is "generally conclusive." Br. 19 (quotation marks omitted). But as the district court explained, "that is not what *Folajtar* said. Rather, it said that 'the legislature's designation of an offense *as a felony* is generally conclusive in determining whether that offense is serious.'" Appx013 (quoting *Folajtar*, 980 F.3d at 900) (emphasis added). The fact that designation as a felony is generally dispositive does not suggest that the absence of a felony designation is similarly conclusive. Were that the case, there would have been no need for this Court in *Binderup* to engage in an extensive analysis and note a variety of factors that might evidence a crime's seriousness, nor for the Court to emphasize that it had "[n]o doubt" that "some misdemeanors are serious offenses." 836 F.3d at 351 (quotation marks and ellipsis omitted). Instead, as in *Holloway,* the presence of another

---

[5] Range observes (Br. 21) that one of the plaintiffs in *Binderup* was, like Range and Holloway, convicted of an offense classified by Pennsylvania as a first-degree misdemeanor. Binderup, however, engaged in conduct that was not serious in "the vast majority of states"—in fact, the conduct "would have been legal in many states." *Binderup*, 836 F.3d at 352. Nothing remotely similar can be said about Range's offense.

significant factor may demonstrate the serious nature of an offense regardless of its label. *See Holloway*, 948 F.3d at 175-76.

Finally, Range attempts to call into question the extent of the cross-jurisdictional consensus regarding his crime by arguing that the Court should exclude 14 jurisdictions from its analysis. Br. 23-26.[6] Range contends that these jurisdictions are somehow irrelevant because, even though his offense conduct would be a crime in all 14 jurisdictions (as it is in every jurisdiction), and even though at least 12 of them "would treat Range's offense as a felony," Br. 23, these states would charge Range's conduct as a "generalized" theft or falsification offense rather than solely under a statute specifically directed to welfare fraud. Br. 23-26.[7] Range does not suggest his crime would not be chargeable in these jurisdictions or that it would not be subject to serious punishment in almost all of them. As Range acknowledges, these are simply jurisdictions that either adopted a statute "direct[ing] that public assistance misstatements be prosecuted" as more "generalized offenses," or that declined to adopt a "more-specific crime addressing" welfare fraud. Br. 23-24 & nn. 6-8; *see also, e.g.*, Colo. Rev. Stat.

---

[6] Range's brief states that there are 15 jurisdictions in this category, but the brief identifies only 14. *See* Br. 23-24 nn.6-8.

[7] Of these 14 jurisdictions, 13 are properly included among the consensus in favor of serious punishment. *See* Br. 23 n.6 (recognizing that 12 jurisdictions in this category would treat Range's offense as a felony); *supra* note 2 (discussing New Jersey, where Range also recognizes his offense would be punishable by up to five years' imprisonment, *see* Br. 24 n.8).

§ 26-2-305(1)(a) (specifying that obtaining "food stamp coupons" or any other "device through which food stamp benefits may be delivered" through a willfully false statement or representation constitutes "the crime of theft").  That these states have chosen to rely on statutes that are not specific to welfare fraud in no way diminishes the consensus.  Range's contention is particularly anomalous in light of his assertion that some legislatures wish to "treat the offense [of welfare fraud] more leniently" than more generalized offenses.  Br. 23.  If that assumption is correct, it only underscores that any jurisdictions that have declined to adopt this distinction unquestionably recognize the gravity of such conduct.

**B.  If the Court concludes that means-ends scrutiny is necessary, it should remand to the district court or, alternatively, affirm the district court's judgment.**

As a person disqualified from possessing a firearm because of his conviction for a serious fraud offense, Range falls outside the scope of Second Amendment protection.  *See Heller,* 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.").  There is therefore no need to proceed to means-ends scrutiny to uphold application of Section 922(g)(1) to Range.  *See Holloway*, 948 F.3d at 177 n.16 ("Because Holloway has not carried his burden at step one to show he was not convicted of a serious offense, we need not move on to step two to determine whether the statute

26

as applied to him survives intermediate scrutiny."); *Folajtar*, 980 F.3d at 910 ("[W]e can be confident that Folajtar's offense falls outside 'the scope of the Second Amendment's guarantee' to possess firearms, and we need not proceed to Step Two of the *Marzzarella* analysis" (quoting *Marzzarella*, 614 F.3d at 89)). The district court appropriately declined to apply such scrutiny in dismissing Range's challenge.  Appx014 n.4.

If this Court were to conclude that Range did carry his burden at step one to show he was not convicted of a serious offense, it should remand for the district court to apply means-ends scrutiny in the first instance.  "[T]he general rule" is "that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).  As a "'court of review, not of first view,'" this Court "will analyze a legal issue without the district court's having done so first only in extraordinary circumstances." *O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 762 n.3 (3d Cir. 2021) (quoting *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019)); *see also, e.g.*, *Plains All Am. Pipeline L.P. v. Cook,* 866 F.3d 534, 545 (3d Cir. 2017) ("'Generally, in the absence of exceptional circumstances, we decline to consider an issue not passed upon below.'" (quoting *Berda v. CBS Inc.*, 881 F.2d 20, 28 (3d Cir. 1989)).

Range has failed to address this general rule, let alone identify any exceptional circumstances that would justify departing from it—as would be

necessary to reach his contentions (Br. 26-28) about means-ends scrutiny. If this Court were to conclude that means-ends scrutiny is necessary, the district court would be the appropriate forum for conducting the analysis in the first instance.

In any event, application of Section 922(g)(1) to Range based on his conviction satisfies applicable means-ends scrutiny. If a convicted criminal establishes that he has not committed a "serious" crime, the burden shifts to the government to demonstrate (1) a "substantial or important interest" served by the law, and (2) that the law "fits reasonably with that interest." *Marzzarella*, 614 F.3d at 98. "The regulation need not be the least restrictive means of serving the interest, but may not burden more [protected conduct] than is reasonably necessary." *Id.* (citations omitted). The government must "present some meaningful evidence . . . to justify [Congress's] predictive . . . judgment[]" that a person like plaintiff is more likely to misuse a firearm. *Binderup*, 836 F.3d at 354 (citation omitted).

Application of Section 922(g)(1) to Range satisfies these standards. The government undoubtedly has a substantial interest in protecting individuals from gun violence. *Binderup*, 836 F.3d at 353 (explaining that the government's interest in "promoting public safety by preventing armed mayhem" is "both important and compelling" (quotation marks omitted)). And there is a reasonable fit between the goal of protecting the public and disarming people who have been convicted of

crimes like Range's. As *Folajtar* recognized, statistical evidence reflects that fraud and forgery offenders commit future violent crimes at a significant rate, approaching the rate of future violent crimes by similarly situated individuals convicted of burglary and drug offenses. *See* 980 F.3d at 909 (citing Matthew R. Durose, et al., Bureau of Justice Statistics, Office of Justice Programs, U.S. Dep't of Justice, *Supplemental Tables: Most serious commitment offense and types of post-release arrest charges of prisoners released in 30 states in 2005*, at app. tbl.2 (Dec. 2016), https://bjs.ojp.gov/content/pub/pdf/rprts05p0510_st.pdf). Additional studies discussed in greater detail in the government's district court filings are in accord. *See* Dkt. No. 12 at 25-26. Moreover, in assessing means-ends fit, courts may consider "evidence of how individuals have lived their lives since committing crimes"—which is "irrelevant under *Marzzarella*'s first step." *Binderup*, 836 F.3d at 354 n.7. And here, if such evidence is considered, it reflects that, after being denied firearms through background checks, Range continued to possess multiple firearms. Appx198-200, 203, 208 (Range Dep. 13:23-15:19, 18:4-7, 23:5-9).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

JENNIFER ARBITTIER WILLIAMS
*United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT

 *s/ Kevin B. Soter*
KEVIN B. SOTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7222*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*California Bar No. 324524*
*(202) 514-3602*
*kevin.b.soter@usdoj.gov*

February 2022

## COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,846 words, excluding the parts of the brief exempted under Rule 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

3.      The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4.      This document was scanned for viruses using Symantec Endpoint Protection version 14, and no virus was detected.


*s/ Kevin B. Soter*
Kevin B. Soter

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 921 ...................................................................................A1

18 U.S.C. § 922 ...................................................................................A1

**18 U.S.C. § 921**

**§ 921. Definitions**

(a) As used in this chapter--

. . .

(20) The term "crime punishable by imprisonment for a term exceeding one year" does not include--

. . .

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

**18 U.S.C. § 922**

**§ 922.  Unlawful acts**

. . .

(g) It shall be unlawful for any person--

(1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

A1